LOUDOUN COUNTY PUBLIC SCHOOLS )

)

Employer,                     )

)

and                           )

)

BRIAN B. DAY                  )

)

Employee.                     )

DISMISSAL HEARING

Hearing Date: October 19, 2023, 10:30 a.m.

Hearing Officer: Hon. William T. Newman, Jr. (Ret.)

The McCammon Group

Location: 21000 Education Court

Ashburn, VA 20148

Job No.: 493213

Pages: 1 - 352

Transcribed by: Christian Naaden

Transcript of Hearing
Conducted on October 19, 2023                    2

A P P E A R A N C E S

SUPERINTENDENT:

Aaron Spence, Ed.D., Superintendent

Lisa Boland, Superintendent's Designee

By Counsel:

Kristi L. Johnson, Esquire

Loudoun County Public Schools

21000 Education Court

Ashburn, Virginia 20148

(571) 252-1100


EMPLOYEE:

Brian B. Day

By Counsel:

Thomas K. Plofchan, Jr., Esquire

Jaqueline A. Kramer, Esquire

Westlake Legal Group

46175 Westlake Drive, #320

Potomac Falls, Virginia 20165

(703) 406-7616

Day 000549

Transcript of Hearing
Conducted on October 19, 2023                    3

                    C O N T E N T S

                                                    PAGE

PROCEDURAL MATTERS                                   7

EXAMINATION OF BRIAN PAUL ELLIOT

          Examination by Ms. Johnson               85

          Cross Examination by Mr. Plofchan        100

EXAMINATION OF JOHN GABRIEL

          Examination by Ms. Johnson               122

          Cross Examination by Mr. Plofchan        145

EXAMINATION OF LAUREN NORTHART

          Examination by Ms. Johnson               161

          Cross Examination by Mr. Plofchan        184

          Redirect by Ms. Johnson                  211

EXAMINATION OF ANGELA WILEY-SMITH

          Examination by Ms. Johnson               216

          Cross Examination by Mr. Plofchan        252

          Redirect by Ms. Johnson                  318

EXHIBITS 5-10, 14-22 MOVED INTO EVIDENCE           328


                    E X H I B I T S

12  Complaint for G████ L████                       9

13  Ongoing complaint for G████ L████               9

Day 000550

Transcript of Hearing
Conducted on October 19, 2023                4

E X H I B I T S

(cont'd)

15 2/15/23 Notice of proposed dismissal                    9

11 Letter with attached complaints                        14

10 Title IX violation report                              18

9  Administrative leave report                            18

14 Investigative findings report                          21

15 Decision for proposed dismissal                        21

6  Procedure policy 7018                                  24

5  Procedure policy 7014                                  33

22 7/26/22 investigative report                           38

18 CPS regulations                                        42

20 2/27/23 hearing request                                47

17 Response to 2/27/23 hearing request                    50

16 Attire policy guidelines                              301

Transcript of Hearing
Conducted on October 19, 2023                    5

P R O C E E D I N G S

THE COURT:  Swear the court reporter.

CLERK:  [inaudible]

THE COURT -- though. You -- do you solemnly swear or affirm that you will transcribe these proceedings to the best of your ability?

COURT REPORTER:  I do.

THE COURT:  All right. We're here this morning in the case of Loudoun County Public Schools vs. Brian B. Day. It does come on for a -- a dismissal hearing pursuant to Loudoun County Public School grievance procedures.

And I am Retired Judge William T. Newman Jr. from the Arlington Circuit Court who has been -- it's been agreed that I would serve as the hearing officer for this particular case.

And for the record, I would like counsel for both sides to state their full names and spell any spellings for the court reporter.

MS. JOHNSON:  Kristi Johnson. It's K-r-i-s-t-i J-o-h-n-s-o-n. I am the associate counsel for Loudoun County Public Schools.

Transcript of Hearing
Conducted on October 19, 2023                    6

MR. PLOFCHAN:  I'm Thomas K. Plofchan. P as in Peter, l-o, F as in Frank, c-h-a, N as in navy, and I am the -- a junior at the end of that. And I am counsel for Mr. Day.

MS. KRAMER:  Good morning, everyone. Jaqueline Kramer, K-r-a-m-e-r, also counsel for Mr. Day.

THE COURT:  And your client, Mr. Day, is seated --

MS. KRAMER:  Yes, sir.

THE COURT:  Okay. Next to you. All right.

MR. PLOFCHAN:  Your Honor, can I ask -- I haven't been introduced to the gentleman next to Ms. Johnson.

THE COURT:  Oh. Yes. I'm sorry. Yes. Okay.

MR. MARTIN:  Justin Martin, director of workplace relations.

MR. PLOFCHAN:  Okay.

MR. MARTIN:  For Loudoun County Public Schools.

THE COURT:  He's -- he's going to be [inaudible] with counsel.

MR. MARTIN:  Yep.

Transcript of Hearing
Conducted on October 19, 2023                    7

THE COURT: [inaudible]. All right. Are there any preliminary matters that we need to address?

MR. PLOFCHAN: There are, Your Honor. There's a -- there are a couple and I want to make sure -- and I will tell the court I'm relying on --

THE COURT: We'll wait for a moment.

MR. PLOFCHAN: [inaudible]

MS. KRAMER: [inaudible] Oh. Sure. [inaudible]

THE COURT: [inaudible]

MS. JOHNSON: Thank you.

THE COURT: All right. Mr. Plofchan.

MR. PLOFCHAN: Thank you, Your Honor.

MS. JOHNSON: Thank you.

MR. PLOFCHAN: I am -- I have a couple of procedural matters that I think have to be addressed by the court. The first is that the -- we are bound, and I think the -- the school system is bound by the evidence that they've provided us beforehand as to our going forward.

Based on that, I don't believe that they can go forward today and we are invoking the statute of limitations and putting it on notice. And I'm citing

Transcript of Hearing
Conducted on October 19, 2023                    8

for the court Johnson v. Black, which actually is 115

years old, as the case. And yeah. Just -- and I've got

one for you, Ms. Johnson.

But what it -- it indicates is that any kind -- any kind of a municipal corporation or agency which can sue in its own name, which Loudoun County Public Schools can, and which is otherwise chartered, is subject to the statute of limitations.

The difficulty we have with this case is that the complaints allege that on 3/31/2022, not that an event occurred on March 31, 2022, but the date of the incident was continuant since he came to the school allegedly.

Well, Mr. Day came to the school in -- in 2020 and the complaints allege behavior that was in the 2020-2021 football season, which was in the fall of 2020. As the -- at the same -- that's for the complaint for G███ L████, which is at Exhibit Number 12 in your binder, Your Honor, as well as Exhibit 13, ongoing for the past two years.

There has been no specificity of any date of any action of Ms. L████ two year -- Mr. Day two years

Transcript of Hearing
Conducted on October 19, 2023                9

prior to the notice that triggered this hearing, which is the grievance process, which is the 2/15/23 notice of proposed dismissal, which is found in Exhibit 15 of your binder as --

THE COURT:  What was that date you just said?

MR. PLOFCHAN:  February 15, 2023. So all activities that can be complained of that they can be the source of any kind of discipline and so forth would have to go -- have to have occurred after February 15th, 2021.

We don't have any allegation of any activity that specifically took place after February 15th, 2021 in this case and no date of any of the interviews and so forth has been specified with regard to any statement.

And this is all about statements on the part of Mr. Day. Of any statement that occurred after that. Now, it is -- it is known very specifically that -- in this case, that under Grimes v. Nottoway, which is a Fourth Circuit Case -- and I have a copy of that and that's in your binder as well.

That's out of -- 1972 case out of the Fourth

Transcript of Hearing
Conducted on October 19, 2023                              10

Circuit and I just noted that because that's been kind of like the standard in the Fourth Circuit for the requirement that my client has procedural due process requirements and that the law applies because he has a property right.

My client has a property right in his continued employment, because he is a continuing employee. And as a consequence, the rights of due process in the law are applicable in addition to this so that the statute of limitations is one that nothing that would be after anything before February 15th, 2021 would be relevant.

The problem is is that my client doesn't have a discovery process but the school system has to establish the dates of when these alleged statements were made. And they haven't done so in their proc- -- in their proceedings.

So effectively, because there is no allegation of any statement of my -- of my client after February 15th, 2021, there is no relief and no basis for dismissal that the school system can rely upon.

THE COURT:  All right.

Day 000557

Transcript of Hearing
Conducted on October 19, 2023                    11

MS. JOHNSON:  Your Honor, I -- I would like to say, first of all, we have not had the opportunity to review this so the school division would request the opportunity to supplement or brief this issue in closing, but do believe that the notice is valid.

This is an administrative proceeding during which the employee was -- Mr. Day was notified of the actions first through the re- -- request for a reasons letter and then by the provision of the complaint itself that led to these complaints as well as the documentation that supports that complaint. So -- so there is notice and it does contain sufficient suf- -- sufficient details to put the employee on notice that this was going to proceed and on what grounds.

MR. PLOFCHAN:  Your Honor, I don't think that's the -- I -- I'm sorry. Are you finished, Ms. Johnson?

MS. JOHNSON:  Yes.

MR. PLOFCHAN:  Oh. Okay. So, Your Honor, in response to that, that's not the nature of our objection at this point in time. It's not notice that he had a hearing because clearly there is a -- a

Day 000558

procedural hearing process that one can grieve and so forth.

It's the question of whether or not the school board can invoke the jurisdiction essentially of -- of a hearing officer and seek to punish or use as a basis some act that precedes the applicable statute of limitations.

And the -- there is obviously no response from the school system that they can establish any date of any event so that they cannot exclude that these are events that occurred prior to the 21st of -- or the 15th of February 2021.

So even though you can say Mr. Day said the sky is blue and we find that to be the basis for dismissal, if that occurred in 2010, they can't do anything about it. So I was to go to the extreme. So now I come closer.

If he said the sky is blue and that's the basis for dismissal and they took action on February 15th, 2023, he had to have said the sky was blue between February 15th, 2021 and February 15th, 2023. Elsewise they had to wait [inaudible] because of the

Day 000559

applicability of the statute of limitations.

In this case -- and I -- and you have the binder there, Your Honor, but I will just indicate very clearly that we have no finding against him or giving him any notice and in the complaint itself, which is the July -- I'm sorry.

The complaints are -- there's a letter to him regarding -- or actually from Ms. Wiley in July 26, 2022 that attaches the complaints of these young ladies and there is no date. And that's Exhibit 11. Then it's Exhibit 12 and Exhibit 13.

Other than saying ongoing for the past two years without any specificity. Now, what's more problematic for the school system is that there are a -- allegations allegedly of not even precise statements, which I think will be a -- an issue for them from an evidentiary proof standpoint.

But there are multiple implications or inferences of statements. And clearly they -- in order to establish the relevancy, they would have to say this statement occurred after February 15th, 2021.

And if a statement occurred prior to February

Day 000560

Transcript of Hearing
Conducted on October 19, 2023                    14

15th, 2021, then they -- it can't be considered in that case because of the statute. That ties in with what will eventually be also a second -- what I will call my third motion pre- -- procedurally, is that they have some documents.

They want to talk about a prior not even reprimand but a letter in his personnel file regarding an incident that -- for which CPS found unfounded. But that also predates more than two years beforehand and is -- it cannot be the subject of this disciplinary hearing. I don't see how the school system can get beyond the statute of limitations issue.

THE COURT:  All right. The court has certainly heard your argument. The court will deny -- at this time take it under advisement at this particular time.

MR. PLOFCHAN:  Okay. So Your Honor, could I ask just to clarify? Instead of denying, are you just taking it under advisement?

THE COURT:  Well, the court -- at this time and taking it under advisement --

MR. PLOFCHAN:  Okay.

THE COURT:  [inaudible] a final ruling.

MR. PLOFCHAN:  Okay.

THE COURT:  It -- it's -- it's under advisement.

MR. PLOFCHAN:  All right.

THE COURT:  Okay.

MS. JOHNSON:  Thank you.

MR. PLOFCHAN:  Secondly, Your Honor, and I know that you most likely have -- you're aware that administratively there is a, you know, different set of rules and regulations obviously for these hearings.

And the -- not only does the Loudoun County policies that they have certain rules and regulations, but those policies echo, and for the most part are virtually verbatim of the applicable statute and the applicable Virginia Administrative Code provisions; okay?

And the statute is 22.1-307 and subsequent to that as to the grounds of dismissal, but the procedures are in 22-308. And the administrative code is found in 20 -- V -- 8VAC20-90-50. And in terms of -- hold on. I want to make sure I give everybody [inaudible] copies. Do we have the original --?

Transcript of Hearing
Conducted on October 19, 2023                    16

MS. KRAMER:  [inaudible]

MR. PLOFCHAN:  Is it -- did you put one in the judge's --?

MS. KRAMER:  Some of them are in the exhibit and some of them are not.

MR. PLOFCHAN:  Did you just -- Judge, you mind if we look at your -- oh wait. Hold on. Maybe this is -- no. Could you just look in your binder to make sure the judge has a copy of it? Otherwise I'll give him mine.

THE COURT:  What is it you're wanting me to see or look at?

MS. KRAMER:  The re- -- the regulations.

MR. PLOFCHAN:  20 -- 20-90-80 is what I'm actually having the court take a look at. That's in dismissal.

MS. KRAMER:  I don't have that one.

MR. PLOFCHAN:  8VAC20-90-80. I have a copy. I will read it first and then I will give a copy. Ms. Johnson, I -- do you have a copy of the regulation?

MS. JOHNSON:  The regu- -- not a physical copy but we can --

Day 000563

Transcript of Hearing
Conducted on October 19, 2023                    17

MR. PLOFCHAN:  8VAC20-90-80.

MS. JOHNSON:  We can get that if --

MR. PLOFCHAN:  Okay. So if you would give that to the judge. And the regulation is that the failure of the school board to comply with all substantial procedural requirements without just cause shall entitle the grievant, Mr. Day, his option to advance to the next step in the procedure or at the final step, which this is the final step, to a decision in his favor.

So if the school system has not complied with the rules and regulations of their own policies, and being an administrative agency they are bound by the rules and regulations of their own policies, and if they have not complied with those rules and regulations, then Mr. Day has the right at this time to request a decision in his favor.

And that's what we're doing at this point because they have now bound. Now, I will take -- and this -- I think it's important for the court to look at Exhibit Number 10. And it's in the black binder, sir. [inaudible] Jackie. He's got bad knees too.

Day 000564

Transcript of Hearing
Conducted on October 19, 2023                    18

MS. KRAMER:  I'm sorry. I'll -- I'm sorry.

THE COURT:  I got it. I got it. I got it.

MR. PLOFCHAN:  Okay. All right.

THE COURT:  Ten?

MR. PLOFCHAN:  Ten. Now, what's important in this case is that the school, for whatever reason, on April 4, 2022, they not only -- actually, ta- -- if you'll take a look at Exhibit 9, Exhibit 9 they placed him on administrative leave for allegations that he engaged in unprofessional conduct on March 31st, 2022.

On Exhibit 10, on April 4th, 2022, the same department indicated that he engaged in unprofessional conduct and a potential Title IX violation. Title IX violation identified Angel Wiley as the Title IX investigator. Title IX violations have certain procedures that are set forth in the policies because they're also set forth in the code.

But if you take a look at Policy 5, or as Policy 7014, which is one of the policies and it's under tab five, Your Honor. And if you look to page five of page -- of five, this identifies the policies and procedures for investigating 7014 which is one of

Day 000565

the policies that Mr. Day is supposedly subject to today. And it also identifies that this is the policy for -- and the procedures for Title IX investigations. If you look at page three of that document, Your Honor. It's document five but page three.

THE COURT:  Mm-hmm. Okay.

MR. PLOFCHAN:  You'll see in Roman net [ph] 5, Title IX of the education amendments of 1972 pres- -- certain things and that applicable as of Title IX, how this is all subject to Title IX. We then go to page four and it talks about how you file a complaint. And then we get to page five. Page five, in subparagraph E, talks about the investigation.

An investigation of all reported incidents shall be undertaken promptly and shall be completed in findings provided to the division of superintendent within 30 working days or as soon as practical from the filing of the complaint.

Now, that 30 working days has need to be a substantive right of my client because he's a continuing employee and under the regulations, not only under the grievance procedure under 22.1-308, but under

Transcript of Hearing
Conducted on October 19, 2023                    20

the regulation that I identified for the court and later on within its own policy.

And that was V8 -- 8VAC20-90-80, any failure to substantially comply with the regulations allows my client to seek either advancement to the final stage, or since this is the final stage, a finding in his favor.

Now, if you look at the -- the complaint was made on the 31st of March 2020 which means an investigation had to -- 2022. Means an investigation had to be completed by the 30th of April 2022.

If you look to Exhibit Number -- if you look to Exhibit Number 11, the report of an investigation did not happen until July 26th, 2022 which was May, June and July, three months, past the date that it was permitted to be done.

And no investigative finding was made, if you go to Exhibit 14, was made until September 22nd, 2022. Almost six months after the complaint, even though by Title IX regulations, everything had to be done within 30 days.

More importantly, he -- even though that was

Day 000567

Transcript of Hearing
Conducted on October 19, 2023                    21

their findings, they didn't make the decision for proposed dismissal, Exhibit 15, until February 15th, 2023, which is 10 months -- a little more than 10 months after -- alm- -- 10-and-a-half months after the complaint. My client's substantive right for an investigation to be completed under Title IX and under Policy 7014, because they brought it under both title and the policy separately, has been violated.

In addition to that, the next sentence says the division superintendent shall make the determination whether the complaint is founded or unfounded and that a violation of this policy occurred within 15 days of receipt of the compliance officer's recommendations.

Well, we know that the compliance officer's recommendations were July 26th, 2022, and that's Exhibit 11. And we know that the determination of whether it was founded or not was September 22nd, 2022, and that's Exhibit Number 14.

So instead of 15 days, even if the investigation had been timely -- well, actually, I'll say this. Under the rules, he was entitled to an

investigation that was completed by April 30th, a determination of whether it was founded or unfounded by April 15th.

What we have instead is that we don't have an investigation for more than three months after it was entitled to be done -- thank you. And then those are the -- the -- that's what -- what we had just provided you before.

THE COURT:  Mm-hmm.

MR. PLOFCHAN:  And what we have after that is that after the 26th I believe. Did I get that right? 26th? Yes. 26th of July, five days in July, 31 in August is 36 days, and 22 days is 58 days.

So instead of having a result 15 days afterwards, there's 58 days. Part of these procedural requirements are to protect Mr. Day because it makes the school decide promptly and not sit around and have large policy discussions. There's no justification. There's no basis.

I understand the school system was under some scrutiny for other events and so forth but frankly that's not Mr. Day's issue or problem. And that he had

Day 000569

a substantive right to a decision by April 15th and now it's -- the -- whether it was founded or not is September 22nd.

And then they had -- so they had to decide with that and they had to notify him within five working days of that decision which would have been by the -- should have been b- -- again April 20th at the earliest or the -- at the latest he should have been notified.

He was not notified of that decision, and as a consequence, substantively, his rights have been violated in terms of the procedures. When we go to the procedures under Policy 708 or 018, under his grievance procedure, if you look at page -- that's Exhibit Number 6, Your Honor. These are the two poli- -- 7014 and 7018 are the two policies supposedly for today.

THE COURT:  Mm-hmm.

MR. PLOFCHAN:  But if you look at page nine, that identifies the procedures for dismissals in his grievance, is that they have to notify him of a proposed decision of dismissal and he has 10 days after receiving the notice.

Well, that notice came in on the 15th of '23, 15th of February '23, and he did, within 10 days, notify that. They then provided a -- a hearing officer, if you look on page 10, Your Honor. A hearing officer appointed by the school board shall set a hearing within 15 days of the request for a hearing on this case. It should be set within 15 days.

That doesn't say it had to be conducted within 15 days but it had to be set within 15 days. That means when on the 27th, if you look to Exhibit 15, Your Honor -- 16. Mr. Day -- 15 and 16, I'll just say. On 15, he was notified on February 15th, 2023, he had the right to a hearing.

If you look at 16, he exercised that right on 2/27/23; okay? And in terms of in that regard, he exercised 2/27, which means that they had to set a hearing within 15 days of 2/27/23; okay? And as a consequence, they had to set the hearing by the 28th of February, the 14th of March this year. No hearing was set by the 14th of March. No hearing was set for months and then -- and we had -- obviously we had Judge Alper who then had to be removed.

Transcript of Hearing
Conducted on October 19, 2023                                        25

But again, substantive due process, procedural due process that we're guar- -- was guaranteed to my client under Grimes v. Nottoway, under the constitution, under the Virginia Constitution, as set forth in 22.1300 [inaudible] because he's a continuing employee, has been denied, and then the relief that comes from that -- now, Ms. Johnson gave you the procedure for Your Honor.

THE COURT:  Yes.

MR. PLOFCHAN:  Okay. So when you look at that procedure -- and I will take you to -- it should be VAC20-90-80. Did you not include -- doesn't look like that was included in there.

MS. KRAMER:  [inaudible]

MR. PLOFCHAN:  20-90-80. We have it. I gave that to you, Your Honor.

MS. JOHNSON:  It's last pa- -- the second to last page, page 9 of 10, from the printout that we just had brought in for the actual grievance procedures under administrative code. Time limitations.

MR. PLOFCHAN:  Yeah. That's what I'm -- oh. I -- I couldn't see. Thank you very much. If you look at

Transcript of Hearing
Conducted on October 19, 2023                    26

the second -- the second to last page, Your Honor,

8VAC20-90-80 and it might be easier just to point what

paragraph, Jackie. We're going to paragraph two so you

can see.

THE COURT:  Paragraph two. I see.

MR. PLOFCHAN:  Where it says the failure of

the school board or any supervisor employee to comply

with all substantial procedure requirements without

just cause shall entitle the grievant to advance, since

he's at the final step, not to advance anything but

he's entitled to a decision in his favor.

He was permitted to have resolution -- prompt

resolution. This is the administrative code equivalent

of speedy trial. And yet he's been languishing, sitting

on administrative leave for a year-and-a-half on

charges that they couldn't even bring because they

couldn't specify that there was any statement that he

ever made within the two years prior.

I don't believe that this court, this tribunal

or this hearing even has authority to take any evidence

because he has shown the procedural violation and he's

entitled to a determination in his favor under 19 -- or

Day 000573

Transcript of Hearing
Conducted on October 19, 2023                    27

under 8VAC20-90-80.

THE COURT:  All right.

MS. JOHNSON:  Okay. I realize that there was a -- a number of substantive points discussed. I'll -- I'll try to be brief in responding. Of course, the school division feels otherwise about the timeliness of this.

To start with 7014, which is the school board's policy, preventing harassments and abuse, the language is being narrowly interpreted for context and not actually including the actual context. There is a reference in that same policy using the exhibit that Mr. Plofchan provided. It's page 10, if you will.

THE COURT:  [inaudible]

MS. JOHNSON:  This is 7014 -- oh. I'm sorry. That is their tab.

MS. KRAMER:  Five.

MR. PLOFCHAN:  Five is our tab.

MS. JOHNSON:  Tab five. And then -- oh. There it is.

MR. PLOFCHAN:  We don't have a page count.

MR. MARTIN:  [inaudible] 7018 that he was on

Day 000574

[inaudible]

MS. JOHNSON:  7014. No. He said page 10 of 7014. Yeah. 7014. Sorry, Your Honor. We're trying to get back to what they were using. But the actual complaint -- and so -- go ahead. Under E investigation page five. Excuse me.

That's -- the -- the language that was cited refers that the complaint -- the report shall be completed and investigated -- the investigation, excuse me, completed and findings went -- and to quote, and findings provided to the division superintendent within 30 working days or as soon as practicable from the filing of the complaint.

And then it goes on to address some other circumstances that don't necessarily apply here because this complaint was not involving allegations against the superintendent or regarding the superintendent so I -- I will not quote that entire language.

But in this case, there were a number of circumstance that took place, which we will hear testimony on later if permitted to proceed, that address the nature of how this complaint proceeded

Day 000575

Transcript of Hearing
Conducted on October 19, 2023                    29

through the process.

But in any event, the school board is not held to 30 working days as if it's a tight and finite timeline as -- as Your Honor and as Plaintiff's counsel or Complainant -- Employee's counsel are aware.

There certainly are times and instances, since these are all done on a case-by-case basic and there's no true formula that you can apply that would dictate and necessitate whether this complaint could be finished in time, including in this particular instance, involvement by another county agency and -- and having to yield to that.

So that -- that -- as far as the school division is concerned, we just wanted to respectfully point out that that language does not -- is not as tightly confined with regard to the 30 working days as has been suggested.

With regard to the actual notice of when this was issued, while opposing counsel, Mr. Plofchan, has pointed out that we -- that the school -- that the notice was actually sent on February 27th.

That in fact was not sent until -- to the

Day 000576

Transcript of Hearing
Conducted on October 19, 2023                        30

school division until March 8th. So we're talking about the grievance procedure, Policy 7018, which parallels with Virginia's Administrative Code, Title 8, Section 20-90, for example, and some of the other procedures within the administrative code that applies to teacher grievances.

That timeline in which this was actually noticed was met. We --- the school division and I think the plain language of this -- this code provision provides that the notice has to be with a -- the notice for the hearing has to be provided within 15 working days. It does not state that the hearing has to occur within 15 working days.

That's administratively impossible in a lot of situations because, for example, in a situation like this where we have a hearing officer, the school division does have to procure one that can actually in fact have that hearing by that date. In any event, March -- that was on March 8th.

By March 23rd, we -- oppo- -- the [inaudible] counsel had contacted and set up to have a hearing held in May and -- and again, their circumstances proceed

Day 000577

Transcript of Hearing
Conducted on October 19, 2023                    31

from there as to why that hearing could not proceed as
scheduled, not by the fault of the school division.

So to hold the school division to a notice
that the school division did not receive on February
27th, albeit Mr. Day may have signed it that day, would
certainly be unfair and unreasonable and a -- and a
poor application and interpretation of the law here.

The Title IX reference, I -- I -- I do want to
just quickly point out that the notice that is p- --
that was provided to Mr. Day, as referenced in Mr.
Day's exhibits, I believe that was tab 11. Yes. It is.

It -- it states -- and again, the language is
probably too tightly -- and I would argue with -- or is
too tightly being construed here. It does not say he in
fact is being investigated for a potential Title IX
violation.

It states that HRTD, which stands for the
Department of Human Resources and Talent Development,
has received a complaint alleging that Mr. Day himself
engaged in unprofessional conduct and a potential Title
IX violation.

Again, the investigator is here, and if

Day 000578

Transcript of Hearing
Conducted on October 19, 2023                    32

allowed to proceed, the school division will put on evidence to address the actual nature of that investigation and how it proceeded as well as the policies that were implicated.

Again, in the sake of time and for purposes of brevity, that's -- that's all that I have to present at this time, Your Honor, unless you have other questions and I'll yield the floor to Mr. Plofchan.

MR. PLOFCHAN:  Thank -- Your Honor, I've got to -- I'll address it backwards in order because I think it's -- you know, it's always a valiant effort in trying to address these things. But -- because counsel doesn't create the problem but counsel is stuck with the problem on behalf of a client.

Going to Exhibit 10, this is to inform you we've received a complaint alleging you're engaged in unpres- -- professional conduct and a potential Title IX violation. The rules and regulations as set forth in 7018, which are -- is found in Exhibit 6, specifically say upon receipt of a complaint for Title IX -- I'm s- -- yeah. 7014, I apologize, Exhibit 5.

Upon receipt of a Title IX exhibit after --

Day 000579

Transcript of Hearing
Conducted on October 19, 2023                    33

that's page four -- the filing of a complaint, that the investigation shall be undertaken promptly and shall be completed and findings provided to the division superintendent within 30 working days.

Now, there's absolutely nothing and the -- and the -- the -- the school system has not set forth any fact or circumstance or etc. that indicates that there was anything that prevented them from doing an investigation within 30 days.

As a matter of fact, under Title IX, and the court can take judicial notice of this, not only pursuant to 29 are they to do an investigation, but within that same 30 days, they're supposed to have interviewed my client, received any information and documents from him, receive -- interviewed his version of events so that they could do an evaluation.

He wasn't even contacted for any kind of discussion until after the April 20th deadline when everything was supposed to have been done. There is absolutely nothing to suggest that the -- the school system has operated in accordance with their own rules and administrative agency is not allowed to forego its

Transcript of Hearing
Conducted on October 19, 2023                34

own rules.

It has to be strictly bound by its own rules nor -- and it's a federal regulation. It's a Title IX federal regulation that -- that has been adopted by the county. So there's nothing to claim that, oh. It's a potential Title IX investigation because paragraph in Exhibit 11 -- I'm sorry, Exhibit 10, you have received a complaint alleging a potential violation and that means that they have to investigate it.

Now, they could have found it unfounded and they could have done it otherwise. Now, what does that do for the court or Your Honor? And Your Honor, I'm going to call you the court all day long so I -- I --

THE COURT:  I understand that.

MR. PLOFCHAN:  Okay. So what it does is then it becomes an issue of collateral estoppel. And this is one of the reasons why -- or potential collateral estoppel and this is why my client is entitled, under their procedures, to say he's just entitled to a ruling in his favor.

Because the issue of collateral estoppel is, had they followed the rules and he was entitled to a

Day 000581

Transcript of Hearing

Conducted on October 19, 2023                    35

full Title IX investigation separate and distinct from the school system's investigation, it would have been -- he could have been exonerated.

As a consequence of him being exonerated, then that would have been an issue between the school, because it's the same investigator under 7014 and 7018 as under Title IX. But the -- and as a consequence, they would have been collaterally estopped from going forward. What has happened here is they know they screwed up.

They know they didn't meet the procedural deadlines and so all of a sudden this Title IX, federal law, federal law adopted by them, has disappeared. We still don't have a Title IX report of investigation.

The Title IX office still hasn't issued any kind of result or finding in this case. He still hasn't been interviewed for a -- the Title IX and allowed to provide X, Y and Z for Title IX because they knew they blew the deadlines and they're hoping nobody mentioned that they blew the deadlines. But procedurally, they can't go forward because he's entitled to relief today and he's entitled to -- and that's why -- because they

Transcript of Hearing
Conducted on October 19, 2023                                      36

denied him that relief beforehand.

And that's why the pretty draconian measure under 8 -- 20 -- 8VAC20-90-80, which clearly says the failure of the school board or any supervisory employee to comply with the substantial -- with all substantial procedure requirements without just cause shall entitle to the grievant at the final steps to a decision in his favor.

He's entitled to it because they denied him due process and they haven't even done the Title IX. Now, this go -- and I -- and all due respect to Ms. Johnson, she's just wrong. In terms of my client did not promulgate anything to the school system on -- in terms of the request for the hearing on 3/8. Mr. Day cited on the 27th and it was provided that time.

Ms. Kramer's signature was sent on the 8th but Mr. Day provided his notice independently and then they have Ms. Kramer's signature, which is on the 8th of March. Regardless of that, 15 days from the 8th of March would have been the 23rd of March. They did not set the hearing by the 23rd of March.

And I -- Ms. -- maybe Ms. Johnson didn't hear

Transcript of Hearing
Conducted on October 19, 2023                          37

me say that, but I agreed. Because I actually said to Your Honor, they don't have to have the hearing within 15 days but the procedural requirement is they have to set it within 15 days.

They did not set the hearing by the 23rd of March under her theory of dates, and they didn't set it by the 14th of March, which is under our theory of dates. They didn't set it until after that in the April timeframe, etc., because they were lackadaisical with their time, which is a substantive right of my client.

So all of a sudden now we're at a position where this happened. Allegations are have -- that allegedly happened more than three years ago are being addressed by a claim that they don't get around to actually providing him the substantive procedural rights un- -- until February of 2023 and then they still don't do it correctly.

The last issue -- and I'm going to -- I'm going to take the court to this. She said there were other issues that prevented them from going forward. And I'd like you to look at Exhibit 22. And I'm going to ask you to take a look at Exhibit 22, specifically

Transcript of Hearing
Conducted on October 19, 2023                 38

paragraph 33.

MS. KRAMER:  Page 33.

MR. PLOFCHAN:  Page 33. And it starts at lines 22 to 24 and it goes to the next page.

THE COURT:  I'm sorry. It starts at line what now?

MR. PLOFCHAN:  Lines 22 through 24. The investigator who issued her report on the 26th of July 2022, that whole --

THE COURT:  You -- one second. I'm sorry. You said page 33?

MR. PLOFCHAN:  Page 33, lines 22 through 24. Begins Ms. Wiley -- so I actually am the last to move.

THE COURT:  Yep.

MR. PLOFCHAN:  Okay. She claims, I have to wait for CPS to close their case before I can even start my case. There's no authority for that in the law. CPS is an independent investigation and actually cannot share its processes and results and so forth with the school system because it involves minors and there is no authority.

Then there's a statement here that is even

Day 000585

Transcript of Hearing
Conducted on October 19, 2023                    39

more disturbing on page 34. CPS and OCPS, I think that's Office of -- or should be LCPS -- at this time were working jointly. I was able to kind of tag along with some of those meetings and some of those interviews so I have my information but I can't submit anything until CPS tells me their case is closed.

Disturbingly, as well, CPS doesn't have the authority to work jointly with LCPS. They are an independent aspect. The sheriff can participate in an investigation with CPS but not LCPS. There's no authority.

Mr. Day was denied his rights because there's no authority to involve the school system with being able to tag along with some of those meetings and interview. And there's no authority to say that she couldn't have submitted anything until CPS tells me their case is closed.

Court, your -- Your Honor, you've done a lot I'm sure over your career with CPS. I'm going to ask you to take judicial notice that it is -- that the -- the confidentiality associated with the CPS investigation, because the allegations are so

significant, is something that is treated as sacrosanct.

Then she says, so I don't know when that is. They typically have I believe 90 days. And it's not 90 days. They have 30 days but then if they, for good cause shown, which they have to establish, they get an additional 60 days.

So they don't have 90 days. They have 30 plus a potential 60. But I think they're a little -- they're working a little outside of that timeline and it's 90 days from the first day they talked to a student. No. That's not the case either.

It would be because everyone's a mandatory reporter and if they made that complaint, they obli- -- the school system had an obligation to report that day, the 31st of March, 2022, to CPS and then they had to do something within 30 days.

As it is, the 26th of July is well outside even a CPS report and that -- she then says, so I'll say 90 days would be well into the summer. I point out this part of the transcript to show that Loudoun County Public Schools doesn't have their act together. They

Day 000587

obviously don't know the rules. They haven't familiarized them.

And it's not any fault on Ms. Johnson. She's -- you know, this is -- this is -- you know, this is all occurring outside of when -- I don't even think she was here at the time when this all began.

But the problem is they don't have their school -- their act together. And they have an obligation -- they have a fiduciary and legal obligation to my client, as well as to any complainant.

And the -- the obligation is they don't get to say, oh. I'm going to go to CPS and I'm going to, you know, do X, Y and Z and I'll just wait because I'll -- Title IX be damned. The policy 7014 be damned, 7018 be damned because I wanted to illegally tag along with -- with CPS. That is a -- and I wanted to -- we actually have that. I want the court to take a -- where's that?

MS. KRAMER:  CPS?

MR. PLOFCHAN:  Yeah.

MS. KRAMER:  It's in history.

MR. PLOFCHAN:  Oh yeah. If you look at Exhibit Number 18, Your Honor, in your binder.

Transcript of Hearing
Conducted on October 19, 2023                    42

THE COURT:  Okay.

MR. PLOFCHAN:  CPS didn't follow their own regulations in this case. Nobody seems to care about the substantive rights of my client. Because they acknowledge getting a complaint that they received on March 31, 2022, and instead of doing something within 60 days or 90 days or the 30 days they're supposed to do it, they don't write a letter until May 1, 2023, which is 13 months after the fact.

But they indicate that this report is unfounded so that the reporting about this is unfounded by CPS. Now, more disturbingly, with regard to this, we go back to Exhibit 22 and page 33 and 34. If Ms. Wiley supposedly has to wait to the closing of the CPS case before she can do anything -- it's 33 and 34, Your Honor.

THE COURT:  Okay.

MR. PLOFCHAN:  If she supposedly has to wait until the closing of the CPS case, then she couldn't even have begun her investigation until May 1, 2023. So all that is just a lie. It's just that they blew the deadlines, they blew his procedural rights.

Transcript of Hearing
Conducted on October 19, 2023                    43

They didn't provide him hi- -- what they were supposed -- supposed to provide him. So she made up something hoping at that time he was without counsel or wouldn't -- that she was interviewing him and that she would be able to, you know, get him to ignore his procedural rights.

The point of it is, when you get back to 8VAC20-90-80, the failure of the school board or any supervisory employee to comply with all substantial procedural requirements without just cause shall entitle the grievant at the final step, which this is, to a decision in his favor.

He's entitled to a decision without the court hearing anything because they've blown all the deadlines. And -- and I'm going to just make an observation, Your Honor. I know it was a pretrial conference and it wasn't on the record, but one of the things the court asked is, are we still going forward initially?

Because you said this was -- you know, there was -- this was a long time ago and that was kind of just, you know, background information. And the whole

Transcript of Hearing
Conducted on October 19, 2023                    44

point of this not supposed to be a long time ago.

Not only did they blow the statute of limitations deadline, but they blew every single procedural safeguard -- Title IX, 7014 and 7018 -- and they then tried to blame it on CPS but they blew every single procedural safeguard that is designed to protect my client.

And he, as a matter of regulation and that regulation not only -- Your Honor, and I just want to be clear. It's not just in the Virginia regulations but when we go to 7014 -- that's Exhibit 5. Or I'm sorry. Maybe Exhibit 6. Let me just -- yeah. Exhibit 6, Your Honor. And you'll see at the top page 13.

THE COURT:  Yep.

MR. PLOFCHAN:  Paragraph 3b, the failure of the school board or any supervisory employee to comply with all substantial procedure requirements without just cause shall entitle the grievant at the final step to a decision in his favor.

So not only am I relying on the regulation. I'm relying on their own policy which adopts the regulation verbatim. And as you know, as we -- and

Day 000591

Transcript of Hearing
Conducted on October 19, 2023                    45

which there's no contest to, an administrative agency has no authority to operate outside its own regulations, including all limitations on its authority under those regulations. So at this time, as a preliminary matter, I don't think we can go forward because my client is entitled to a resolution in his favor at this time.

THE COURT:  Okay. Anything further?

MS. JOHNSON:  Yes. Just a couple of points that really I want to try to limit this to or sum this up with. I -- I first want to address the notice itself. If you look at the agency's exhibits -- I apologize for asking you to look at two separate binders.

But the school division's exhibits, number 21, you will see there there is a cover letter from Ms. Kramer addressed to Angel Wiley-Smith and -- and -- and -- and I, Kristi Johnson, where it actually says enclosed, please find my client, Brian Day --

THE COURT:  I'm sorry; what was that exhibit number again?

MS. JOHNSON:  Sure. 21.

Day 000592

Transcript of Hearing
Conducted on October 19, 2023                46

THE COURT:  All right.

MS. JOHNSON:  Rec- -- and I'll -- I'll -- I apologize. I'll let you get there. You'll see the notice is dated March 8th --

THE COURT:  Mm-hmm.

MS. JOHNSON:  -- addressed to me and to Angel Wiley-Smith, the coordinator who is the investigator Mr. Plofchan has made at issue in this particular argument. It actually is addressed to us and it says, enclosed please find my client Brian Day's notice requesting a hearing before the school board and/or a hearing officer.

There's nothing else in here, even in that -- that February 27th notice that's referenced in this letter, which is also provided. If you flip to tab 20, you'll see that, that notice in there. There was a meeting that day.

And I -- and I want to wrap -- I want to mention and make a note, Your Honor, that Mr. Day has been represented by counsel throughout this proceeding, including during the interview for which the transcript that has been cited and is contained in Mr. Day's

Transcript of Hearing
Conducted on October 19, 2023                    47

exhibits. So it is no mystery that he's been represented and -- and no secret either.

But there's no reference in -- in that -- that -- that Exhibit 20 for the February 27th, 2023 correspondence that requests a hearing. The first time the school division learned of it was on March 8th.

So as far as timeliness and noting this, 15 days from March 8th is March 23rd. And you will see that there is another letter, correspondence, from me to Ms. Day, ex- -- at tab number 26, dated March 23rd.

Reflects that it was sent via e-mail and U.S. Mail to Ms. Kramer who at the time has stated again, and as she is here, was representing Mr. Day, and that was what was known to the school division, that follows up on my March 17th, 2023 correspondence and on Ms. Abigail Christi [ph], that's an LCPS employee, with the office concerning setting the above referenced matter for a hearing, the above referenced matter of course being the reason we are here today.

So the school division maintains and the evidence -- and as far as the school division has brought forward, the -- the evidence reflects and

Transcript of Hearing
Conducted on October 19, 2023                    48

confirms that this hearing was set within that 15-day timeline within the grievance procedure.

Another point that I'll make here is as far as the grievance procedure goes, opposing counsel is pulling in and making a number of policies and regulations part of this grievance procedure in order to say that there's a substantive issue here and that that's why this matter should be dismissed without a hearing at all.

This procedure makes clear, even within 8VAC20-90-80, that the procedure itself applies to the -- the -- the time limitations, rather, apply to the substantive process of the proce- -- the grievance procedure itself.

As far as that is concerned, the agency has met -- or the school division has met its timelines. If there is a substantive matter concerning whether this investigation was or was not a Title IX issue, I believe that I've already addressed that point, your Honor, and of course Mr. Plofchan has.

But all of that are substantive matters for which you, if we were allowed to proceed, would hear

evidence on or are able to hear evidence on and address that also at close -- closing briefings if you would like without -- without us having to deal -- address that now as a procedural matter.

The issue here is, is whether the eight -- the organization, the school division, has actually complied with the regulatory requirements and its policy concerning the procedure for adjusting grievance. And I respectfully submit that we have.

MR. PLOFCHAN:  Your Honor, and I read this -- this is obviously my motion so I'll respond to it. If you look at the exhibit that we identified, Mr. Day signed it on the 27th of February prior to having counsel and gave it to the school system.

Ms. Kramer's letter on the -- March 8th was acknowledging her appearance. Because she had already sent a letter on the 27th saying we also need the school -- what is the basis? Because under the regulations, you were entitled to ask what the basis was for -- what is the basis for your -- and I want to get that letter.

Here is -- do you have the 27th letter? The

Day 000596

school system responded to that March 10th which is Exhibit 17, March 10th, in response to the letter that Ms. -- that Ms. Johnson just identified. This is a response to her letter saying the reasons for your dismissal are -- and in terms of this, are the inappropriate comments of a sexual nature to multiple female students, etc.

So as a consequence, Ms. Kramer had not represent -- entered an appearance only with respect to asking for that but Mr. Day had requested the hearing on the 27th. 15 days was March 14th. They didn't set any hearing prior to March 14th. More importantly, I identified I believe six --

THE COURT:  [inaudible]

MR. PLOFCHAN:  I'm sorry. I was waiting for you to finish reading that.

THE COURT:  Okay. I -- okay.

MR. PLOFCHAN:  Okay. Thank you. I identified six noncompliance issues. Six. And they were -- they -- they didn't do the Title IX investigation. They didn't complete that within 30 days. They didn't give him the right to advise them of whatever evidence he had within

Transcript of Hearing
Conducted on October 19, 2023                    51

30 days.

Under 7014, which governs Title IX, they didn't comply with the 30-day investigation standpoint that they didn't give him the right to respond at that point in time, that they didn't follow within 15 days of the recommendation.

The superintendent didn't make a decision within five days of that making decision. They didn't notify him of his right to grievance and so forth and they did that four months later, etc. That's six that she didn't address because she says, oh. Well, we sent the letter.

Even if they s- -- we set it for a hearing within 15 days, which I don't believe they did and I don't think they established that in the evidence. But they can't ignore the substantive violations that this all should have been done by April of 2022.

Meanwhile, he's suffering continually reputational harm, embarrassment, etc., because he's not at a school where he's an employee and he's not in the job where he's supposed to be and somebody else is not temporarily in the job.

Day 000598

They've actually hired somebody else for that job and we're going to have to deal with all of those ramifications because the school system didn't have their act together. And they didn't have their act together because they didn't care about his substantive rights. This was all supposed to be done by April 15th.

And then regardless of whether there was counsel or not, there's no waiver. And then the argument of Ms. Wiley is just made-up ridiculousness. Oh. I have to wait until the CPS report. You're not even allowed to participate.

Once you make that filing to CPS, you're not allowed to participate in the investigation because that's supposed to be -- you know, that's super secret whether it's founded or unfounded and yet see -- and then we want to have another problem with this; right?

CPS was supposed to decide within six -- within 30 days if they could get an additional 60. They didn't do that. Waited for 13 months. This has been a cluster -- a -- a giant screwup from the get-go procedurally and -- and nobody cares about my client's substantive rights.

And yet the policy and the regulation says since this is the final phase, he's entitled to judgment in his behavior because they -- in his -- on his behalf because they didn't comply with the regulations and they didn't provide with the procedural protection.

One final point and then I think -- Ms. Johnson's just wrong; all right? There's an issue of -- there is both an issue of substantive protection and of procedural issues and then there are procedural within the system.

So there's procedural rights within the system that he still was entitled to but substantively he was entitled to it and that's why the whole issue of the statute of limitations. And that's Grimes v. Nottoway.

I'm entitled to timely and adequate notice. I'm entitled to have the pos- -- the -- the process proceed and be finished in accordance with the rules and regulations. The rules and regulations say you've got to complete the darn investigation within 30 days. Why? Because it's disruptive and embarrassing and causes problems to someone's, you know, reputation.

Transcript of Hearing
Conducted on October 19, 2023                                54

The school system knows that. I just finished in the -- in -- another [inaudible] which I'm not going to name names or anything. But Ms. Johnson and I just worked on something that there was a Title IX report on August 24th I think or along that timeframe. And by September 24th, within 30 days, they had completed the investigation and had a result.

Now, I do know that she wasn't here at the time and the school system was supposedly through turmoil. Not Mr. Day's problem. They know how to do it right. They didn't do it right. His rights have been violated. By regulation and policy and rule, he's entitled to a finding in his favor.

THE COURT:  Anything further from the school?

MS. JOHNSON:  Obviously we could go back and forth all day on how --

THE COURT:  I -- I know.

MS. JOHNSON:  -- you know, wrong we are and whatnot.

THE COURT:  [inaudible] to close [inaudible]

MS. JOHNSON:  Absolutely. I -- so at this time, Your Honor, if you will, I think the evidence

Transcript of Hearing
Conducted on October 19, 2023                          55

speaks for itself. The school division is going to

stand on the -- the documentation and the evidence

that's been presented and -- and -- and -- and unless

you have questions about something in particular, Your

Honor, I'll let you know.

THE COURT:  I have a question that -- where --

where does it show that the school received Mr. Day's

request?

MS. JOHNSON:  For a hearing?

THE COURT:  Yeah.

MS. JOHNSON:  That was the March 8th letter.

That's -- that's the only notice that the school

division received regarding the request for a hearing.

And that was -- Judge, I'm looking at it now.

THE COURT:  I mean, I -- I -- I -- I've seen

Ms. -- Ms. Kramer's letter but, I mean, where -- I -- I

-- is there something [inaudible]

MS. JOHNSON:  That -- that was it. That's --

that -- that -- the first time that the school division

received the request for a hearing, it was from Ms.

Kramer who has again represented Mr. Day throughout

this entire process including during his interview.

Transcript of Hearing
Conducted on October 19, 2023                                56

So that letter, that was the exhibit -- I'll tell you what number it was. March 8th. That was Exhibit 21 in the school division's exhibits. You'll see that that request for hearing was enclosed and that was the first time that the school division received the actual request for hearing.

MR. PLOFCHAN:  Now, that -- Your Honor, I'm just going to respond. Mr. Day is now looking for his e-mails because he sent it independently prior to having counsel. That's why it's dated on the 27th. And then obtained counsel who sent correspondence and sent the notice on March 8th.

Because the deadline, had he received it on like the 17th and he had -- and he had -- he had, you know, just 10 days to do it. And so he filed it on the 10th day. And she may not have the e-mail from Mr. Day but that's going to be his testimony and I'll make that proffer now. Said he sent it. That's why there's two dates. He's the 27th and she's not [inaudible] --

THE COURT:  I -- I see that and I -- I've looked at the letters. I [inaudible]

MR. PLOFCHAN:  Yeah.

Day 000603

Transcript of Hearing
Conducted on October 19, 2023                              57

THE COURT:  But they have a right to -- to send notice and I'm just saying, where does it show that they received notice?

MR. PLOFCHAN:  Well, the question is I think that it shows they received notice on the 27th because that's the day he -- he signed it. They have the --

THE COURT:  All that does is that shows that he signed it on the 27th. Doesn't show that they received notice of it.

MR. PLOFCHAN:  Well, Mr. Day, I can put him --

THE COURT:  Well, I mean, I'm just saying --

MR. PLOFCHAN:  I'll proffer and put him on. If we need to have an evidentiary matter on the first part, I'll pro- -- he's -- I'll proffer it. He says he e-mailed it to them on the 27th. And that's the proffer on that. And I'll put him under oath on that, that -- but I -- I'll just tell the court I'm going to re- -- underscore the thing.

And procedurally with whether 15 days whether this was set and so forth, even if the court were to say it's in [inaudible] or it's -- I don't -- I can't rule on that right now, they can't overcome all the

Day 000604

Transcript of Hearing
Conducted on October 19, 2023                           58

Title IX violations and the 30 days and the -- and the extension and the -- the failure to fully investigate and allow him to have his hearing within the 30 days.

They provided no evidence or -- or just cause or basis and procedurally he's -- his rights have been violated. This has been going on since March 31, 2022, which in one week will be 18 months on a matter that's supposed to take 30 days. 18 months versus 30 days is ridiculous.

And they were supposed to -- even if they -- you know, and then they were that -- if they were supposed to send -- he was supposed to -- he had10 days. So if they come in, they made the decision in 15 days. That's April 15th.

He has 10 days to set -- to object. That's April 25th. Then they have 15 days to set a hearing so that would have been April 30 -- March 10th or may 10th. So they would have had to have set the hearing by May 10th.

They didn't even interview him until the 17th of May and that they were already supposed to have set a hearing at that point in time and would have had a

Transcript of Hearing
Conducted on October 19, 2023                    59

hearing last summer. He has been in limbo for 15 months

minimum. Min -- minimum. That's the procedural

violation.

THE COURT:  And which what say you to the --

about the Title IX?

MS. JOHNSON:  Title IX, again, this is -- this

-- we put him on notice that he had a potential Title

IX investigation. So my understanding is that -- and --

and again, Ms. Wiley is here to investigate or to

testify, excuse me.

The -- the matter was reviewed under Title IX

and -- or to see whether Title IX was -- was something

that was going to pick it up. And it did not. The

investigation moved forward under 7014 which is the

school division's policy on antiharassment,

antidiscrimination and hostile environment or a vir- --

abusive environment.

So that's -- that's what this was investigated

under. The investigative report makes that clear. So as

far as the school division is concerned, there was no -

- no violation. He did get his substantive rights.

That's why we're here today, so that we can continue to

Transcript of Hearing
Conducted on October 19, 2023   60

carry that process out and give him an opportunity to be heard.

MR. PLOFCHAN:  Your Honor.

MS. JOHNSON:  I also want to point out just a couple of things because there were some representations made. The school division does have an interagency agreement with the -- with CPS that allows for some joint participation in investigations, for hopefully purposes of efficiency.

You know, I'm not -- if -- if there needs to be a debate about whether that's legal or not, you know, we -- we could certainly brief the matter and postpone this hearing if Your Honor wishes. This is not an uncommon agreement for agencies to issue and -- and they are made -- typically these agreements are made publicly available.

I don't -- my understanding of this and the way that what I'm going to present to you is, is because there is an investigation where an investigator might sit in so that they can complete that jointly from the school division's perspective and CPS's, it does not necessarily mean or nor shall we assume that

Day 000607

CPS then somehow broke their own law, their own codes and regulations application to them, or that agency, later on down the road when the school division is trying to just find out what the status of that investigation is and can they continue to move forward with -- with its own.

So I wanted to point that out. And also, you know, I believe there was some misrepresentation made on exactly what was said during your pre-hearing. So to the extent that that was made, I just want to ma- -- put my objection on the record with regard to that re- -- misrepresentation.

MR. PLOFCHAN:  Your Honor, I -- I need to -- I'll take the Exhibit 5, page four. Paragraph two. Ms. Johnson said we're proceeding under the harassment and discrimination complaint and investigative procedures of Policy 7014. That's where -- outlined. Harassment and discrimination complaint investigative procedures. Policy 7014 is at the top of the page. Turn the page.

THE COURT:  Mm-hmm.

MR. PLOFCHAN:  Paragraph E says what often happens an administrative agency adopts regulations and

Day 000608

Transcript of Hearing
Conducted on October 19, 2023                    62

rules wholesale, verbatim. Paragraph E are the Title IX deadlines but they're adopted in 7014. So this is an investigation and all reported incidents were being undertaken promptly and findings provided within 30 working days. They didn't comply.

She can't say, oh. We're not Title IX. We're just under 7014 when they didn't comply with 7014. And there's nothing to say that they couldn't have done it within 30 days, etc. The court can't allow them to say, oh. We have some interagency agreement, which they haven't provided us, nor is it permissible under the code.

THE COURT:  But -- but what -- it does also say as soon as practical when you file it.

MR. PLOFCHAN:  They have the burden of showing that, Your Honor, not me. They have the burden of -- the government always has the burden of showing that they complied with the rules.

I don't have that burden in an administrative hearing. I brought it to the attention so they would have the burden of showing that it was impractical and impossible under the law for them to go forward and

Day 000609

Transcript of Hearing
Conducted on October 19, 2023                        63

give him his r- -- his rights within 30 days.

THE COURT:  What say you to that?

MS. JOHNSON:  Well, again, this is something that is not something you decide procedurally. This is not a matter that -- I could talk all day long. I'm the attorney. And of course, as Mr. Plofchan is his client's attorney, he's going to make arguments that best advocate for his client's position.

So I could tell you and I have -- we have discussed this procedurally and during the pre-hearing, that there were in fact procedural matters that in other implica- -- you know, other issues and circumstances that arose that put this well within the -- the -- the bounds of that 30 working days or as soon as practicable.

But, you know, Mr. Plofchan can't have his cake and eat it too. He can't on one end argue this should be thrown out because it is, quote unquote, not within 30 -- 30 working days but then say that we now have to prove that it was not or as soon as practicable right now without the -- without being able to put on testimony with regard to that.

Day 000610

Transcript of Hearing
Conducted on October 19, 2023                    64

That's -- that's -- that's unreasonable and it seems to cut both ways only in favor of Mr. Plofchan and that's not the way that the policy or its c- -- or even code is written frankly. 30 days is obvi- -- 30 working days is certainly in there but it also states, as we have pointed out and as Your Honor has pointed out, or as soon as practicable.

And I submit that there are circumstances our investigator is willing to testify about, including the CPS va- -- issue which Mr. Plofchan pointed to when he cited the transcript that is part of his Exhibit 2022 - - 22, excuse me, that -- that, for example, an intervening investigation for which this organization had to wait.

So the argument, as far as I'm concerned, certainly happy to present, you know, additional evidence about what is as soon as practicable, including that which was discussed during pre-hearing. But that, to me, based on what a procedural matter is as opposed to a substantive one, is one that is substantive, on which you will hear testimony, Your Honor.

PLANET DEPOS
888.433.3767 | WWW.PLANETDEPOS.COM

Transcript of Hearing
Conducted on October 19, 2023                    65

MR. PLOFCHAN:  Your Honor, so we're -- last word. The last word. The investigator can say what she did and when she did it. The issue is that the c- -- the school system has the burden of proving that they complied with the rules and regulations.

They have offered -- we were all required to put our documents that we thought were relevant in this case. I see no interagency agreement because it can't exist because it violate -- it would violate statute.

I see nothing to suggest -- and it's not like, oh. This was a de minimis five days or three days or something practical. The report wasn't even completed until July 28th, which is almost 90 days after the original 30-day deadline. And the decision on the report wasn't done until September which when it was supposed to be done within 15 days of the report.

There is absolutely not evidence in any of the binders and everything we have that there was anything other than failure on their part to afford him his rights. And that's the -- we -- the -- the issue of -- of having a hearing and so forth is I think irrelevant because he's entitled, if this is the final phase, the

Day 000612

decision in his favor because they didn't comply.

I think it's int- -- and I'll just -- this is -- it's interesting when she says -- I say it's under Title IX, they mention the Title IX, I say that that's -- Title IX is incorporated in 714. She goes, oh. It's not Title IX. It's 714. I show the exact same language in 714 on page five.

You asked them about whether or not they have the obligation. What did they say about their obligation? She doesn't deny they had that obligation. What she says is I'm unprepared to establish that they -- that they have met that obligation. They have not met the obligation. His rights have been violated. We ask for this to be concluded in his favor under 8VAC20-90-80.

THE COURT: Again, the court's going to take it under advisement. The court's going to allow -- allow them to put on the evidence and the court will make a ruling as to whether or not it feels that they have shown what they're saying that they can show if the evidence were to go forward. I'm still waiting to see what, if anything, your client has regarding the

Day 000613

Transcript of Hearing
Conducted on October 19, 2023                    67

other in- -- matter. But for right now, the court's

going to allow for the hearing to go forward. The court

will make an ultimate ruling. You can make your motion

or renew your motion and see if the court feels whether

or not the -- they have established that it was

something that was -- did occur as soon as was

practical under the circumstances.

          MR. PLOFCHAN:  Okay. Thank you, Your Honor.

The --

          MS. JOHNSON:  Thank you, Your Honor.

          MR. PLOFCHAN:  The -- on that issue, I did

want to -- since the rules are -- rules of evidence and

procedure are lax, or relaxed in this case, I'd like

the court to consider a rule on witnesses that I don't

want them having a factual issue.

          They can ask questions of their investigator

but I don't want them prepping the investigator as to

what the questions are going to be with regard to this

procedural issue. I -- and so I'd like to treat that as

a rule on witnesses where what happened in this -- in

this hearing room is -- is not to be revealed to

potential witnesses so that they can change their --

Transcript of Hearing
Conducted on October 19, 2023                    68

their testimony.

MS. JOHNSON:  I'm -- I'm not sure exactly what -- what -- what the -- Mr. Plofchan is referring to, but we're operating within our own ethics. So as far as he thinks we're going to be coaching our witnesses, I could guarantee you we're not doing that. And in fact, our witnesses are currently sequestered. So some of them are not even in the building right now.

THE COURT:  Okay. Okay.

MS. KRAMER:  [inaudible]

MR. PLOFCHAN:  Oh. Yes. Your Honor, we also have one other issue because -- I'm sorry, Your Honor. I'm getting an emergency call that might be -- can I just have one second? It's -- it's --

THE COURT:  Sure. If you need to step out a moment --

MR. PLOFCHAN:  This -- hello. This is --

CLERK:  Off the rec- --

MR. PLOFCHAN:  It was --

THE COURT:  No problem.

MR. PLOFCHAN:  I thought it was [inaudible]

THE COURT:  I understand.

Day 000615

Transcript of Hearing
Conducted on October 19, 2023                    69

MR. PLOFCHAN:  I -- I -- it's -- my phone is on roaming. My family can reach me so I don't know how that came through.

THE COURT:  No. I -- I -- I totally -- totally understand. Emergencies do happen occasionally and if you thought it was, that's fine.

MR. PLOFCHAN:  So the other thing I have is a motion in limine with regard to certain things. There is a reference in their documents and in the final report that -- and the report -- the investigative report, paragraph 11, or it's under tab 11.

THE COURT:  In your book?

MR. PLOFCHAN:  Yes. Yeah. On page 6 of 10, going on to 6 of 10, there's a report of an allegation of alleged culturally insensitive and sexist comments. Those are not subject to the reasons for his dismissal based on the letter that was provided. And we would ask that hearing officer not receive information with regard to that and not consider it.

In addition, if you go to paragraph eight, they have attached and they -- they mention. Or page eight, not paragraph eight. In their attachment, they

Day 000616

Transcript of Hearing
Conducted on October 19, 2023                    70

list an Attachment E, which is a memorandum of expectation involving a prior investigation, and then they summarize it on page 10.

We specifically, upon -- we have asked the school to provide us, pursuant to the rule, what is the -- what are the reasons for the recommendation that my client be dismissed? And that's found in tab 17, Your Honor.

THE COURT:  Okay.

MR. PLOFCHAN:  The reasons are he made inappropriate comments of a sexual nature to multiple students and they violate 7560 and 7014. There is no reason given with regard to that we're considering alleged culturally insensitive and sexist comments or a prior investigation.

So even though it's in the, you know, report, I -- I'm asking a motion in limine that -- that the hearing officer not consider this and not receive anything with respect to that because it's not subject to -- it's not subject to the purpose of this hearing because they're bound by their letter which is Exhibit 17.

Transcript of Hearing
Conducted on October 19, 2023                    71

THE COURT:  Yes, ma'am.

MS. JOHNSON:  Okay. Thank you, Your Honor. So the reasons letter does provide that there were policies violated. 7560 and 7014 which covers all conduct. And, in fact, in that -- in the March 17th letter -- I apologize I ask you to go back to a different binder.

But the -- the school division's binder, that would be tab 23, Ms. Kramer, on behalf of her client, actually challenged the -- the -- this reasons letter as wholly deficient, you know, and addressed the fact that they felt that those actions or the -- she -- the counsel or the opposing counsel felt that the -- the letter did not specifically address those violations. That's the third full paragraph at the bottom of -- and it goes to the top of the second page, under that tab. It's tab number 23.

THE COURT:  Yes.

MS. JOHNSON:  So -- so she -- she actually challenged it and said that she did not believe he had the evidence that was necessary to rebut just based off of that one paragraph. So, Your Honor, on the 24th -- I

Transcript of Hearing
Conducted on October 19, 2023                                    72

mean, under tab 24, excuse me.

On March 17th later that same day, I followed up with Ms. Kramer and -- and provided her a copy of the full investigative report in -- in addition to other documents that were requested beyond the personnel file and -- and actually stated up front that it should address all outstanding inquiries regarding the above referenced matter, Mr. -- in -- in other words, Mr. Day's request for a hearing.

So th- -- these -- this evidence supports what the re- -- what is underlined, the reasons letter, and provides those reasons that support the -- the request for -- the recommendation for a termination.

So to -- to state now at this late stage that the evidence should not be included because there was absolutely no notice of what was -- what -- what the claims or the a- -- the specifics of the allegations were when -- when Ms. Kramer did actually object to what she believed was insufficient notice and then to receive them, is -- is a little disingenuous and so therefore provide that -- or ask that the motion be denied.

Transcript of Hearing
Conducted on October 19, 2023                           73

MR. PLOFCHAN:  I don't think we're making any disingenuous. It's kind of the idea in this case, just as in a criminal case, you could investigate two felonies and a misdemeanor but if you only charge one misdemeanor, the other -- the felony and the other mis- -- the two felonies are not relevant or material because they're not part of the charge.

So when we look at, under the rules [inaudible] we asked very promptly, give us the reason for the dismissal so we know what's involved. Tab 17, the reason for recommendations are the allegations reported that you made inappropriate comments of a sexual nature. Now, in the report, beginning on page four, this is Exhibit 11.

THE COURT:  Yes.

MR. PLOFCHAN:  Okay. This is the sec- -- I have no issue with discussing this section because this involved allegations of inappropriate sexual and disparaging comments. That relates to what we are on notice for this dismissal hearing.

When you go to page six, it's allegations of culturally insensitive and sexist com- -- and sexist,

PLANET DEPOS
888.433.3767 | WWW.PLANETDEPOS.COM

Day 000620

Transcript of Hearing
Conducted on October 19, 2023                        74

not sexual nature comments. Sexist comments. That's not subject. They -- we were not given notice that that's the reason for -- or that they've made any finding or that's the reason for dismissal.

And then we get to allegations of -- the next page. Allegations of unprofessional conduct and profanity is also not part of the reason that was put forward. And then we also know that the exhi- -- and then you go to page 8 out of 10. Memorandum of expectation for a prior issue.

And that's discussed on page 10 of 10 where they add an ac- -- prior accusation CPS determined to be unfounded. That also is not relevant to this because it wasn't -- we -- the whole purpose of asking them to tell us what is the nature of the dismissal is so we can narrow and tailor what we're having a hearing on.

They didn't -- those -- anything after essentially the -- the -- the section with regard to page four through six, anything after that is not c- -- cannot contain and not part of what they gave us notice. So I have a motion in limine that you're not going to hear it, receive it or consider it because

Day 000621

Transcript of Hearing
Conducted on October 19, 2023                    75

we're not on notice for it. Grimes v. Nottoway, his

substantive rights to due process.

They're bound by -- and they -- they can't --

they're bound by their -- their statement and I believe

that their statement -- even -- and it was objected to

as being imprecise and it's still bound by -- they're

still bound by it. And that's the equivalent of -- when

you ask for that statement, it's the -- it's the

equivalent of asking for a bill of particulars and they

responded and they can't go beyond the bill of

particulars.

THE COURT:  All right. The motion to -- in

this case will be granted.

MR. PLOFCHAN:  Thank you.

THE COURT:  Are there any other preliminary

matters to be addressed?

MR. PLOFCHAN:  No, Your Honor.

THE COURT:  All right. [inaudible] you want to

take five minutes and then we'll get started.

MR. PLOFCHAN:  Sure. Thank you, Your Honor.

THE COURT:  Yeah. You need to stand. Have all

preliminary matters have been concluded. Does anyone

Day 000622

Transcript of Hearing
Conducted on October 19, 2023                    76

wish at this time to be to begin by making an opening statement?

MS. JOHNSON:  Your Honor, in the interest of time, I'm going to just state that, you know, the evidence will -- we'll put on evidence that we think will reflect and that this action should be upheld and forego an opening statement. Thank you.

MR. PLOFCHAN:  We think this is going to be -- I will give an opening statement. That probably doesn't shock you. But I -- I do think there are -- are going -- you're going to have to look at the evidence, to the extent it comes in, on three different categories.

First category is going to be tied to whether or not the school board can meet the procedural or provide proof of their procedural regularity as we identified in the pretrial motions. In addition, the -- we're going to ask that the -- that you evaluate the evidence with respect to the nature of the allegations within the context of the [inaudible] of the speedy tr- -- or statute of limitations but the nature of the allegations as with regard to any specificity.

The -- there is not going to be any specific

Day 000623

Transcript of Hearing
Conducted on October 19, 2023                    77

aspect. It's my expectation that we are not going to have the two complainants here. The hearing officer is going to have to evaluate what evidence is put on in terms of the substantive rights of my client under Grimes v. Nottoway including the right of confrontation so that as -- as Your Honor is well aware, the -- an investigator can report what someone said.

But an investigator is not usually evidence other than -- because he can't be cross examined with respect to what someone wrote or what someone said, essentially under those -- those lines because they're not an eyewitness to any of the events. There will be no eyewitnesses to any events. The third thing I've asked the court or Your Honor to take consideration of is the -- and -- and I just had a memory freeze. The -- they have identified the [inaudible] help me with this, Jackie. It's -- the court's indulgence. One moment. The --

MS. KRAMER:  [inaudible]

MR. PLOFCHAN:  Right. And then --

MS. KRAMER:  [inaudible] -- of the questions.

MR. PLOFCHAN:  Well, we have the issue of how

Day 000624

Transcript of Hearing
Conducted on October 19, 2023                    78

-- when you're going to look at some of the evidence such as the investigator's questions that were asked specifically where you're going to have to look at the context of those questions.

Those questions were raised in like a leading context and then whether or not her conclusion's based on those answers, the answers given are sufficient. I will tell the court, we expect the evidence to be, when looking at the transcript, Ms. Wiley would ask my client, do -- do you recall making a statement?

And he says, I do not recall, answering the very specific question, and then she found that by him answering the very specific question and not providing a completely different answer was somehow indicative of -- of guilt in that regard.

And so I -- I think that the hearing officer needs to be examining not the conclusions of the department and of the investigator, but what are the objective facts that they actually had, because I believe that her conclusions are not sufficiently based in -- are not logically based.

That there's not an inference that someone is

Day 000625

untruthful when they answer your direct question because they didn't give an answer to a question that you didn't ask.

The -- one of the other issues is that I think you're going to have to -- address, in this particular case, the evidence is going to be that Mr. Day sent two communications to the school -- individuals in the school in March -- February and March of 2023 -- '22, I'm sorry.

February and March of 2022. Those communications identified students who were parking in the teachers' parking lot. And he identified these two young ladies as being those students who identified in the teachers' parking lot.

His response to the school and will be the response is that this was retaliation because they were disciplined. They were told they couldn't do that. They were -- and they had some repercussions at the school and they did it again and that was so they -- not only did it the first time and then one month later they did it.

It should not -- we're going to ask the -- the

Day 000626

Transcript of Hearing
Conducted on October 19, 2023                    80

court not to find a -- or lean a deaf ear to the notion that within two weeks, I believe it was, of the second report by Mr. Day, all of a sudden two, quote unquote, identical or quasi-identical complaints by these two women were made on the 31st of March, which don't identify a single date, don't identify any sexual contact, don't identify a quoted statement either.

They identify how alleged statements supposedly made them feel, but not a quoted statement or a general statement as, oh, he talked about the football -- me sleeping with the football team, but not a quote, etcetera.

In the investigation from Ms. Wiley, there's nothing in her report that they provided any of those specifics. With regard to -- you're going to ask the court to consider that this was turned over to CPS and no finding was -- well, a finding was made by CPS, but it was unfounded.

There's no allegation. Finally, to the extent that there's any reference to -- well, I'll try to summarize this.

When you review the -- when we reviewed the

Day 000627

Transcript of Hearing
Conducted on October 19, 2023                              81

report of the investigator, the investigator contacted one, two, three, four, five, six, seven individuals and investigated seven individuals.

Of those seven individuals, there were the two people who wrote the complaint and then they had five other individuals, none of whom or all five of those other individuals were mandatory reporters.

Mandatory reporters. None of them made any mandatory report that there was any concern or violation and they're mandatory reporters not only under CPS, but under the policy 7018 and 7014.

They were mand- -- if there was something that they believed was untoward, they were obligated to report.

No one reported anything, particularly Mr. Carnadi Ford, who ended up, we'll argue, has complete bias and -- and a willing -- a basis for lying or misremembering, I'll call it that, at this point, actually took over Mr. Day's job as the assistant football coach and he claims that these ladies -- is the only one who claims that these ladies ever had any prior to March 31, 2022, that on two prior occasions

Day 000628

they had conversations with him, but he couldn't remember the specifics of the conversation, but he didn't report it.

So if he's a mandatory reporter and these were allegedly conversations revolving a sexual and disparaging comment, he would have been required to report it.

Now, I will note that all these mandatory reporters that are identified by the investigator, none of them have been -- had any actions brought against them for not reporting a mandatory -- something they were mandatory report.

And that, you have to weigh, as to whether they can overcome that all these mandatory reporters don't report anything.

The -- I will ask you, we also think the evidence is going to show especially with G████  L████ and the court's been involved legal system for a long time. Each one of the young ladies, but G███a L████, her testimony, based on her report, is that there's no one to back me up.

I have no -- essentially I have no support of

this, but I would never lie about it. Now, in investigative school, we were always taught that as soon as someone says that, you know they're lying, but you're going to have to look at it, because there's a concession they have nothing to back them up.

And that's the -- the same thing, essentially, with regard to the second complaint. There's nothing to back up anything. No specific date. No specific time. No specific confrontation.

I'm also going to -- the -- the one other issue that I want -- I expect to make a number of objections under Grimes v. Nottaway and the right to confront witnesses.

I understand that the school doesn't have a subpoena power, but there will be no witnesses here, I believe, before the court, and my client will not be able --

THE COURT:  [inaudible]

MR. PLOFCHAN:  Well, I'm just going -- I'm just telling you that we're anticipate -- I'm anticipating the court opening that I will be making these arguments. I'm just letting the court know.

Day 000630

Transcript of Hearing
Conducted on October 19, 2023                    84

THE COURT:  All right.

MR. PLOFCHAN:  Okay? And that's where it is. At the end of the day, when you consider all the procedural problems, you consider the insufficiency of the evidence, you consider the fact that no one acted in accordance with the mandatory reporting, and there is no issue of specificity, even with -- even if you don't address the statute of limitations, then when you address it, the -- the school system will not have been able to meet it's burden in this case and we're going to ask you to find favor in Mr. Day.

THE COURT:  All right. First witness.

MS. JOHNSON:  Thank you.

MR. ELLIOT:  [inaudible]

BAILIFF:  Why don't you stand right here.

MR. ELLIOT:  Sure.

BAILIFF:  So that you can be sworn.

WITNESS BRIAN PAUL ELLIOT, DULY SWORN

CLERK:  Thank you.

MR. ELLIOT:  Thank you.

DIRECT EXAMINATION

BY MS. JOHNSON

Day 000631

Transcript of Hearing
Conducted on October 19, 2023                                85

Q.  Afternoon. Would you please state your full name and current position with Loudoun County Public Schools?

A.  Yes. I'm Brian Paul Elliot and I'm the lead SSO, school security officer, at Independence High School.

Q.  How long have you held your current position?

A.  As a lead, they introduced the position I think about two years ago, but I've been with Loudon County as an SSO since 2013.

Q.  Have all your years at -- with the school division been at Independence High School or were you somewhere prior to that?

A.  Prior to Independence opening in 2019, I was at John Champe since 2013.

Q.  Okay. How would you generally describe your position duties?

A.  Some, you know, physical security of the building and grounds. There's also counseling and mentoring students. Working with staff members. It's really the classic other duties as assigned job. Kind

Day 000632

Transcript of Hearing
Conducted on October 19, 2023                    86

of whatever is asked of me.

Q.  And have those been your duties -- let me back up.

MR. PLOFCHAN:  I'm going to object as irrelevant. I think they are limited to what is identified as Mr. Elliot's knowledge as -- in the documents themselves and he's not identified as a general opinion expert or expert.

MS. JOHNSON:  Establishing foundation.

THE COURT:  All right. I will -- I'm going to overrule [inaudible] question.

BY MS. JOHNSON

Q.  So as far as your position duties go, do you have any -- any role or -- or duties that regard the parking facilities at the school grounds at Independence High School?

A.  Yeah. At the beginning of every school year, I help with distributing parking permits, keeping track of who is permitted to park on campus and then periodically throughout the year, we'll randomly check cars in the lot to see if they have permits.

We also respond if, you know, staff members

Transcript of Hearing
Conducted on October 19, 2023                    87

are concerned about anything --

MR. PLOFCHAN:  And -- and I'm going to object to his responses, because I don't know who we is. But if he -- if he's talking about him, that's fine, but I don't know who we is.

THE COURT:  That's overruled.

BY MS. JOHNSON

Q.  And I'm sorry, could you repeat the -- the end of your last sentence? If you recall. It seems like you got cut off there.

A.  I, as a school security officer, sometimes respond to teachers or staff members who have concerns about anything in the parking lots.

Q.  Okay. So do you know Mr. Brian Day?

A.  Yes.

Q.  And how do you know him?

A.  He is a teacher, Independence PE teacher, football coach that I've known, I believe, since the year we opened.

Q.  What year was that?

A.  2019.

Q.  2019? How would you describe your

Day 000634

Transcript of Hearing
Conducted on October 19, 2023                    88

professional relationship with Mr. Day?

A.    Pleasant.

Q.    During your time as -- in your role as SSO
or safety and security officer, did you have an
occasion to have any interactions with Mr. Day?

A.    The only thing that comes to mind is a
couple times that he was concerned about some students
parking in some of the reserved spaces for staff on
campus.

Q.    Okay. So can you describe -- let's talk
about those -- those instances. You said there were a
couple of occasions. Do you recall particularly when
the first occasion happened?

A.    The first one, I believe, was February 23
of 2022.

Q.    What was the nature of that interaction?

A.    He sent some photos from the parking lot
of various vehicles, many of which had student parking
permits displayed, and asked me to talk to the students
to try to get them to stop parking in the reserved
areas.

Q.    Okay. And what was the outcome from --

Transcript of Hearing
Conducted on October 19, 2023                    89

from his communication with you?

A.   The students that I was able to track down from the pictures and from their parking permits, I just spoke to them and asked them not to park over there anymore.

Q.   All right and what --

A.   And explained to them where to park.

Q.   Okay. Where -- what about the second incident you described?

A.   I believe that was March 9, so you know, a couple weeks later. Sent some more photos of cars that were, again, I don't believe any of them were the same cars in those pictures as the first email, but we once again identified those cars, most of which as being student drivers, tracking them down and had the same conversations with those students.

Q.   Okay. Do you -- why is it that these incidents in particular stand out for you?

A.   Mostly because we've been talking about it recently.

Q.   Is there anything else about those incidents that come up?

Day 000636

Transcript of Hearing
Conducted on October 19, 2023                    90

A.  I generally don't get a lot of teachers that will --

MR. PLOFCHAN:  I'm going to object as irrelevant as to whether he gets a lot or not. He's a fact witness, not anything else. His opinion as to whether it was appropriate or not is not relevant.

THE COURT:  Overruled.

THE WITNESS:  I -- I generally don't get a lot of teachers that would go out of their way to send pictures of cars, but I mean, it makes it easier to identify the kids.

BY MS. JOHNSON

Q.  Okay. I'm going to ask you -- you have a white binder in front of you?

A.  Sure.

Q.  Would you please flip to -- there are tabs in there.

A.  Yep.

Q.  Numbered tabs. Okay. If you would flip to the tab numbered 27.

A.  Okay.

Q.  Could you take a moment to look through

Day 000637

Transcript of Hearing
Conducted on October 19, 2023                    91

that?

MR. PLOFCHAN:  I'm going to object.

MS. JOHNSON:  The document, please?

MR. PLOFCHAN:  I'm going to object.

CLERK:  [inaudible] 27?

MR. PLOFCHAN:  Twenty-seven is like 800 pages of which --

BY MS. JOHNSON

Q.  I apologize. Sorry, let me -- I've got to give you a page number. It's 85 -- go to page number 85 and then look at 85 through 89. I'm sure that resolves Mr. Plofchan's objections.

MR. PLOFCHAN:  Yes, I -- I just don't want him [inaudible] going to any other pages, because those confidential documents [inaudible].

THE WITNESS:  I understand.

THE COURT:  Sure.

MR. PLOFCHAN:  And Ms. Wiley, if you -- it might make it -- not Ms. Wiley, Ms. Johnson, it might make it easier, our exhibits 19 and 20.

MS. JOHNSON:  This is fine. He's -- he's there.

Transcript of Hearing
Conducted on October 19, 2023                    92

MR. PLOFCHAN:  Okay.

BY MS. JOHNSON

Q.  Thank you. If you could please read that and stop at page 89.

A.  Okay. Okay.

Q.  Do you recall this email?

A.  Yes.

Q.  Is this the email that you refer to when you stated that you that you first received communication from Mr. Day on February 23, 2022?

A.  Yeah, this is the -- this is the email that -- well, technically it's the email from me back to him saying that -- thanking him for bringing it to my attention, but yes, this is the thread of emails.

Q.  Okay. And with regard to this, did you speak to any -- did you -- did you happen to speak to any students by the names of Gi███ L████ or K██████, she also goes by K███, and I believe the last name is pronounced R███, R██████?

A.  I don't recall if it specifically was this -- this time or the March 9 batch of photos that I received, but I do -- I specifically recall speaking to

Transcript of Hearing
Conducted on October 19, 2023                    93

G███████    I don't specifically recall speaking to K████,

but if she was one of the vehicles in the photos, then

there was a good chance that I did.

        Q.   Do you know, sitting here today, whether

she was one of the vehicles in the photo? And she, I

mean K██████ R████ or K████?

        A.   No, I don't -- I don't know that

specifically one of these is her vehicle.

        Q.   Okay. So flip ahead or to the previous

pages, to page --

        A.   Which page? I don't want to --

        Q.   -- 75.

        A.   Seventy-five?

        Q.   And review -- please review that document

to page -- and stop at page 84.

        A.   Okay. Okay.

        Q.   Okay. Is this the string of communications

that reflect those which you previously testified about

regarding your second communication with Mr. Day on

March 9, 2022?

        A.   Yes.

        Q.   Okay. And so you said you might have

Transcript of Hearing
Conducted on October 19, 2023                94

spoken with G███ with regard to this email?

A.  I -- I specifically remember speaking to G███. I don't recall whether it was after the February -- I think she drove a Jeep, if I remember correctly, and I don't see one -- I think there was one in the February set of pictures.

So if that's her Jeep, which it might be, but I do specifically remember speaking to G███.

Q.  Okay. And the Jeep you're referring to, that's on the page labeled Day 088?

A.  Sorry?

Q.  Is it --

A.  Eight-eight?

Q.  Yeah, 088.

A.  Yeah. She -- she drove a Jeep and it was a -- it was a darker color Jeep, so it's possible that that's her Jeep.

Q.  Okay.

A.  But I do specifically remember speaking to her after one of these two -- one of these two [inaudible].

Q.  What is it about that conversation that

you remember?

A.  I remember she was a -- a manager for the football team and I remember trying to find her --

MR. PLOFCHAN:  I'm going to object. There's no report provided to us about any conversation with Mr. Elliot and G█████ other than she -- she had been identified as someone who parked in a staff parking, no disciplinary action was taken.

She took responsibility for parking in those parking spaces. That's page six of ten in Exhibit 11, Your Honor, at Bates stamp LCPS000149. It's the last full paragraph on that exhibit. That's the sum total of the information that was relayed is that he said she was identified.

THE COURT:  Does [inaudible] okay. You finish your objection?

MR. PLOFCHAN:  I'm just -- it -- any question about any -- any further conversation about anything goes beyond what they revealed to us.

THE COURT:  Well, I don't think -- what was the question again?

BY MS. JOHNSON

Transcript of Hearing
Conducted on October 19, 2023                    96

Q.   The question was did he recall speaking --
what was it that he recalled about speaking with
G██████.

MR. PLOFCHAN:  And what he started to respond
was --

THE COURT:  Overruled. Overruled.

MR. PLOFCHAN:  Okay.

THE COURT:  I think that they -- this could
certainly would have been what you received.

MR. PLOFCHAN:  No, my objection was moving to
strike his answer that was going. Not the question, but
it was striking the answer. It was going --

THE COURT:  I understand.

MR. PLOFCHAN:  -- beyond.

THE COURT:  No. I don't think so.

MR. PLOFCHAN:  Okay.

BY MS. JOHNSON

Q.   Thank you. Could you please continue with
your answer?

A.   I remember G██████ being the football
manager and in the course of tracking her down, I was
able to locate her in the football office doing some

Day 000643

work for one of the other football coaches and just kind of peeked my head in the office and said, hey, G████, and she responded and I reminded her that students have to park in the student lot.

That the spots over on the side of the building are reserved for people that paid for them, and she kind of smiled, laughed and said sorry about that, and that was the end of it.

Q.  Okay. Did you ever receive any more complaints or reports of G████ parking in the incorrect lot?

A.  Not that I can recall for G████ specifically, no.

Q.  What is the process for when you receive those types of complaints? Such as the one about G████ parking in the wrong spot?

A.  The first contact would be pretty much what I just described. It would be me tracking the student down and just kind of having the conversation, like, hey, you can't park over there, you've got to park where you're supposed to park.

If it is a continued problem and we continue

Day 000644

Transcript of Hearing
Conducted on October 19, 2023                              98

to get reports about the same kid parking over or I'm
finding that I'm talking to the same kid over and over
again, then I'll refer to them to their administrator
for discipline.

Q.   Okay. Was this the first time you ever
heard of -- or where, maybe where, that G████ had
parked in an unauthorized or staff parking spot?

MR. PLOFCHAN:  Objection, leading.

THE COURT:  Sustained.

BY MS. JOHNSON

Q.   How many times or could you describe your
interactions with G████ with regard to any parking
issues that may have occurred during her time at
Independence High School?

A.   This is the only interaction that I can
recall.

Q.   All right. Have you ever referred G████
to -- for discipline for --

A.   No.

Q.   -- any issue that you had in safety and
security?

A.   I don't believe so, no.

Transcript of Hearing
Conducted on October 19, 2023                99

Q.  And so going back to the -- the pages that you looked at, we'll start with 75 and then look at those all the way through 89. And you talked -- you talked earlier, or testified earlier about the cars. The vehicles there.

A.  Yes.

Q.  Did you -- did you tell us, you know, any distinctions or similarities regarding the vehicles that are in any of those -- between the two correspondences there? The ones starting on Day 075 and the second starting on Day 085?

A.  You mean are they -- any of them the same cars?

Q.  Yeah, so do you see any differences or distinctions with those vehicles? From one email to the other?

A.  They're -- they -- they don't see -- they're not the same cars. It's a different set of cars. It's a different set of --

MR. PLOFCHAN:  Objection. I think the documents speak for themselves.

THE COURT:  Overruled.

Transcript of Hearing
Conducted on October 19, 2023                    100

BY MS. JOHNSON

Q.  Were you finished with your answer, sir?

A.  Yes.

MS. JOHNSON:  Okay. Okay, that's all the questions I have at this time. Thank you.

THE COURT:  Any cross?

CROSS EXAMINATION

BY MR. PLOFCHAN

Q.  Did you speak with an Angel Wiley about this?

A.  Are you asking me?

Q.  Yes.

A.  Sorry, no, I had not spoken to Angel Wiley about this.

Q.  You did not speak with Angel Wiley on Thursday, July 14, 2022, via phone call?

A.  I spoke with someone. I don't remember the name of who I spoke to. The summer -- what -- what year did you say, '22?

Q.  '22.

A.  I spoke with someone over the summer. I don't remember the name of the person that I spoke

Transcript of Hearing
Conducted on October 19, 2023                    101

with.

Q.   Okay, so you didn't speak with anyone while school was still in session?

A.   About this?

Q.   Yeah.

A.   Not anyone -- I don't remember.

Q.   [inaudible]

A.   I don't think so.

Q.   So were you aware that Mr. Day had been placed on administrative leave on the 31st of March?

A.   I knew he wasn't in the building.

Q.   Okay. And you didn't speak to any -- and if there's a -- you don't have any -- if there's a report that says you spoke with Angel Wiley on Thursday, July 14, '22, you don't have any recollection of ever speaking to her prior to July 14, 2022?

A.   Not that I can recall, no.

Q.   Okay. Were you sick between March 31, 2022, and July 14, 2022, that would have not had you at school?

A.   Like for more than a day or?

Q.   Yeah, for more than a day.

Transcript of Hearing

Conducted on October 19, 2023                    102

A.   I -- I honestly don't remember.

Q.   Okay. Was there anything that would have prevented anyone, if they wanted, to reach you to speak with you?

MS. JOHNSON:  Objection.

MR. PLOFCHAN:  From March 31, 2022, to July 14, 2022?

MS. JOHNSON:  Objection. Calls for speculation.

MR. PLOFCHAN:  If he's aware of something.

THE COURT:  He can answer if he knows.

BY MR. PLOFCHAN

Q.   Yeah.

A.   March 30? March 30?

Q.   March 31, 2022, to July 14, 2022.

A.   Nothing comes to mind.

Q.   Okay.

A.   I mean, other than being on summer break for part of that.

Q.   All right, and you don't recall any effort or email or anything like that suggesting someone wanted to talk to you about this incident during that

Transcript of Hearing
Conducted on October 19, 2023                    103

time period, do you?

A.  I remember somebody contacting me towards the end of that.

Q.  Right.

A.  Before I -- before I talked to them, yeah.

Q.  Yeah. Just before you talked to them?

A.  In July, yeah.

Q.  Yeah, in July. Okay. And did you ever report that G██████ -- to the investigator or Ms. Wiley that G█████ had been identified as someone who parked in the staff parking?

A.  In July?

Q.  Uh huh. Did you report in July that G█████ had been identified as someone who parked in staff parking?

A.  I don't remember the conversation that I had -- the specifics of the conversation that I had.

Q.  Okay.

A.  I -- it's -- if that's what was asked of me at the time, then I would have --

Q.  Well, if you don't remember, you don't remember.

Day 000650

Transcript of Hearing
Conducted on October 19, 2023                                  104

A.   Okay.

Q.   Do you recall ever saying that no disciplinary action was taken? Do you recall saying that?

A.   I don't.

Q.   Do you recall ever saying that G████ took responsibility for parking in staff parking spaces?

A.   I -- I don't, because I don't recall the specifics of the conversation.

Q.   Okay. Do you recall sharing that you -- whether or not you disclosed to G████ that Mr. Day had made any complaints?

A.   No.

Q.   Okay. What did you do to prepare for testifying today?

A.   Looked at this email.

Q.   Okay. Who directed you to look at that email?

A.   Nobody.

Q.   So you just -- you -- no one said, hey, we're going to be talking about Brian Day. Look at any emails or anything?

Transcript of Hearing
Conducted on October 19, 2023                    105

A.   Well, I was in- --

MS. JOHNSON:  Objection. Mischaracterizes the -- the state -- the testimony.

MR. PLOFCHAN:  No, I'm asking him. So what did you do to prepare?

THE COURT:  I'll allow the question.

BY MR. PLOFCHAN

Q.   Yeah. How did you know that this -- that you were supposed to look at something for Mr. Day?

A.   I was told that that's the situation that I was coming here to talk about.

Q.   Okay, by whom?

A.   I believe Ms. Johnson, Ms. Dickerson.

Q.   Okay. What did they tell you?

A.   That I was going to be called to answer some questions about what had happened with Mr. Day.

Q.   Did they tell you the questions they were going to ask?

A.   No.

Q.   Did they tell you that they wanted you to look at any emails?

A.   No.

Day 000652

Transcript of Hearing
Conducted on October 19, 2023                     106

Q.  Then how would you have known to go and look at these particular emails?

MS. JOHNSON:  Objection. Asked and answered.

MR. PLOFCHAN:  How would you have known? I don't think it's been answered.

MS. JOHNSON:  The -- the judge has not ruled. Objection, asked and answered.

MR. PLOFCHAN:  I don't believe it has, Your Honor. I haven't asked that question before.

THE COURT:  You haven't asked that specific question, but you asked pretty close.

BY MR. PLOFCHAN

Q.  It was close, but it wasn't the same. How would you know to look at these particular emails from Mr. Day if all they said was we want to talk -- you to talk about Mr. Day?

MS. JOHNSON:  Your -- Your Honor, we've had about seven or eight different questions, if -- if not more, about this specific issue and whether this witness essentially has been prepped.

THE COURT:  He said he didn't -- at this point, I believe he's answered as best as he can.

Day 000653

Transcript of Hearing
Conducted on October 19, 2023                                    107

BY MR. PLOFCHAN

Q.  Okay. So you want to look at these pictures again?

A.  Sure.

Q.  Let's take a look at 71. Do you see that? It's a Volvo?

A.  Yes.

Q.  Okay. That's K█████s car, isn't it?

A.  I don't know.

MS. JOHNSON:  Objection, that's --

MR. PLOFCHAN:  What's the objection?

THE COURT:  He -- I'll allow him to answer it if he knows.

MR. PLOFCHAN:  Right. There's no parking pass on it.

THE COURT:  [inaudible] he's waiting -- you're waiting for his answer.

BY MR. PLOFCHAN

Q.  Oh, I'm sorry. Is that K████'s car?

A.  I don't know.

Q.  Okay. There's no parking pass on that car, is there?

Transcript of Hearing
Conducted on October 19, 2023                    108

A.  It does not appear as though there is, no.

Q.  Okay. How about looking at 70. There's no parking pass on that car, is there?

A.  Actually, it looks like there might be.

Q.  Not a school parking pass, is there?

A.  It looks like it could be. I don't know, it's hard to tell.

Q.  Okay. Look at 69. Can you see a parking pass on that one?

A.  No, I can't see much --

Q.  Okay.

A.  -- in the window of that one.

Q.  [inaudible] 68. Can you see a parking pass on that one?

A.  Not from the rear of the car, no.

Q.  Okay. Look at 66. Can you see a parking pass one that one?

A.  No.

Q.  And 64, can you see a parking pass on that one?

MS. JOHNSON:  Your Honor, can I object to relevance? [inaudible] we've already established that

these cars were sent and that he talked to several people, if not all of them, about the witnesses.

So I'm not quite clear where the direction is that we're going with establishing that the vehicles were already unauthorized park -- unauthorized to be parked there when that's already been covered extensively.

MR. PLOFCHAN:  [inaudible] Mr. Elliot began his statement that he received an email and that most of the cars had parking passes and it was clear to me that he had been rehearsed and I'm exploring whether he's been rehearsed, because none of these have parking passes.

THE COURT:  You asked and that -- he asked and he's already responded to that question. He said that he was not rehearsed.

MR. PLOFCHAN:  Well, I understand that, but I'm now ask -- I'm now establishing that I don't believe he's being truthful, but he also stated that he was familiar and these park -- all [inaudible] the quote was virtually all the cars had parking passes.

And I'm just going to his voracity so the

Transcript of Hearing
Conducted on October 19, 2023                 110

court can evaluate Mr. Elliot.

MS. JOHNSON:  And -- and again, I think that mischaracterizes the testimony. That's not what he said and it's already been established, again, that he -- especially on our direct that -- that he stated that these cars are not authorized to be parked there.

THE COURT:  All right. Move -- move on, Counsel, move on.

BY MR. PLOFCHAN

Q.  Okay. Look at 72. Is that G███████'s Jeep?

MS. JOHNSON:  I'll make an objection. He's already covered this, asked and answered.

THE COURT:  I thought the last time it was K████'s Jeep, but --

BY MR. PLOFCHAN

Q.  No, 71 was K████'s. I asked, he didn't know. This one --

MS. JOHNSON:  [inaudible] Jeep.

MR. PLOFCHAN:  Was G█████.

THE COURT:  Yeah, yeah, this is -- that was my recollection.

BY MR. PLOFCHAN

Q.  Okay. Is that G█████'s Jeep?

A.  It could possibly be her Jeep.

Q.  Okay.

A.  I know she drove a Jeep, but I don't know that this specifically is her Jeep.

Q.  Okay. And do you know what day you got that photo?

A.  Not by -- with looking at the date of the email when it was sent, that would be the only way that I would know.

Q.  Okay. Do you know -- so do you know if these pictures that are attached to each email are ascribed to the right dates of the emails?

A.  As they are printed out here?

Q.  Yeah.

A.  I -- I wouldn't know. I didn't prepare the binder.

MR. PLOFCHAN:  Okay. All right. So you don't know if, for example, if 72 was in the February group of emails with the -- with --

THE COURT:  Counsel, he's already answered that question.

Transcript of Hearing
Conducted on October 19, 2023                    112

MR. PLOFCHAN:  Okay, thank you. All right. Move on. Made the point. Thank you. [inaudible]

THE COURT:  Any redirect?

MS. JOHNSON:  No. No, Your Honor.

THE COURT:  All right. Is this witness excused now?

MS. JOHNSON:  The witness is excused.

THE COURT:  All right.

MS. JOHNSON:  We do not see the right -- the need to recall him, but request to reserve that if necessary.

THE COURT:  All right. You are free to go for right now.

MR. ELLIOT:  Thank you.

MR. PLOFCHAN:  Could he be instructed as not to discuss this [inaudible]?

THE COURT:  And do not discuss anything about your testimony with any other witness. Absolutely. All right, thank you.

MS. JOHNSON:  Thank you. It's okay.

MR. ELLIOT:  May I close this without looking at it?

Transcript of Hearing
Conducted on October 19, 2023                113

MS. JOHNSON:  Yes, that's fine. Thank you.

MR. ELLIOT:  There you go.

THE COURT:  Thank you.

MR. PLOFCHAN:  Thank you.

THE COURT:  All right. We want to try to get one more in before we have a break for lunch?

MS. JOHNSON:  Our next one is pretty lengthy and I believe that may be the case with all -- all the rest of the witnesses. I could see, because again, I -- I've purposefully kept several of them out of the building.

I could see a -- one of our witnesses, who is a -- she's -- she's located here at central office, if she's available and call her [inaudible].

THE COURT:  All right. I was trying to see if we can get one more done before we break.

MR. PLOFCHAN:  And could I ask how many witnesses are they planning on calling? And if they could be identified [inaudible].

THE COURT:  Okay, no problem.

MS. JOHNSON:  We have four additional witnesses who are left. One has already been identified

Transcript of Hearing
Conducted on October 19, 2023                         114

and that's -- well, two of them, without -- just not by name. Mr. John Gabriel and we also already identified Ms. Angel Wiley. She is the investigator.

          Ms. Janette Evans is who we are trying to locate right now and Ms. Lauren Northart. And request the same -- make the same request of opposing counsel.

          MR. PLOFCHAN:  Lauren Norkart?

          MS. JOHNSON:  Northart, N-O-R-T-H-A-R-T.

          MR. PLOFCHAN:  And so John Gabriel, Janette Evans, Lauren Northart. I'm sorry, I didn't --

          MS. JOHNSON:  Janette Evans.

          MR. PLOFCHAN:  Lauren Northart, Ms. Wiley.

          MS. JOHNSON:  John Gabriel and Angel or Angela Wiley-Smith is her full name. She goes by Angel.

          MR. PLOFCHAN:  So Gabriel, Evans, Northart and Wiley-Smith?

          MS. JOHNSON:  Correct. And I make the same request to know who is -- who you plan to call.

          MR. PLOFCHAN:  I don't know that at this time we plan on calling anybody.

          THE COURT:  All right.

          MS. JOHNSON:  Can we go off the record for a

Day 000661

Transcript of Hearing
Conducted on October 19, 2023                                    115

couple of minutes for a quick comfort break?

THE COURT:  Certainly. Certainly.

[break]

CLERK:  We're on record.

MR. PLOFCHAN:  Your Honor, I just -- we're going to object to any testimony by Janette Evans or Lauren Northart. They are not identified in any of the documents provided by the department.

They are not identified in the investigative report. They're not -- there's -- we have no information about who they are or what they could possibly testify relevant to this case and we would object to them testifying.

In addition, there is one sentence regarding Mr. Gabriel and -- and that is the -- a sentence that he received the report from R███ and L████, but those reports are attached.

And that's the only sentence and we would object to any testimony, because she says he could be lengthy and there is one sentence that we have been given that only says that he received the two attached reports.

Transcript of Hearing
Conducted on October 19, 2023    116

And I -- I'm going to object to -- and him providing any testimony that goes beyond what we have notice of in this case. They -- they could have said he's not -- and I will be clear. He is not identified as anyone that was interviewed by the investigator.

He's not identified as having any further knowledge other than having received the two reports. And I -- I would object to that, because this -- they were required under the rules to provide us their documents and -- and to the extent that that would be information and -- that they'd have and this isn't supposed to be trial by ambush.

MS. JOHNSON:  Your Honor, this is not a trial by ambush. The rules here are not the rules of evidence and there is no prehearing order in this case or anything of the like.

The school division has followed and abided by all requirements within the administrative code's grievance procedures as outlined and set forth there, the school division has provided all documents and evidence that, at the time that that request was made, [inaudible] would be able to do so.

Day 000663

Transcript of Hearing
Conducted on October 19, 2023                    117

Ms. Evans is particularly a rebuttal witness. Apparently -- again, that's why we reserved the right, off the record, but I'll put it now, we changed and decided that we might not provide her after all, because we do not know exactly what the -- the opposing counsel or Mr. Day's case in chief is going to be or rebuttal evidence, rather, his rebuttal case is going to be with regard to rejecting or, you know, requesting that the court reject the -- the recommendation for dismissal.

However, those doc- -- it's interesting that counsel makes this argument now, because they specifically requested documents that Ms. Evans could speak to directly, which is why she's here, and we provided those.

So -- so as far as that witness goes, they have been provided notice. We have complied with administrative code, and the same goes for the other witness as well. And we did provide a follow up immediately after the October 4 call to identify her by name, but she is identified in the -- in the investigative report as someone who has knowledge about

Day 000664

Transcript of Hearing
Conducted on October 19, 2023                        118

this.

And of course, as with any of our witnesses, as you've seen from Mr. Elliot's own testimony, anyone who is called to testify, will testify within the scope of their knowledge as it pertains to this summary of the investigation.

And of course, as you know, Your Honor, report is a summary. It does not detail word for word every single thing that was covered during testimony. But in this case, the school division stands on, Mr. Day has been provided ample and sufficient notice to put him on notice that these individuals could be called.

THE COURT:  The objection is overruled.

MS. JOHNSON:  Thank you.

MR. PLOFCHAN:  I would like to respond, and just for the record to respond. It's not true, that they provided us notice. The document --

THE COURT:  Are you speaking to the record now?

MR. PLOFCHAN:  Yeah. Yeah, for the record, just because you've made your ruling, but I have to preserve it.

Day 000665

Transcript of Hearing
Conducted on October 19, 2023                119

THE COURT:  Yeah. Okay. Yep.

MR. PLOFCHAN:  Is that it -- it's not true. We were to provide our documents that we intend to offer and show. They had to provide us their documents beforehand, because it's not trial by ambush.

The only mention we have of Gabriel is one -- the first sentence on page one of ten. No mention of Northart. No mention of Evans. We -- and with respect to what they intend to put on in their case and they -- there was no mention of what Northart is supposed to testify to.

I understand Evans may be something associated with the fact that we may put on some documentary evidence with regard to my client being a subject of the ADA at the time of this complaint.

We haven't made that decision, but they are not -- it's not open season that they can bring anyone in the school system, because that's what they choose to do. This is not supposed to be [inaudible] process.

They did have to provide us notice and that's -- I'm putting that for the record.

THE COURT:  All right. Are you going to call

Day 000666

Transcript of Hearing
Conducted on October 19, 2023                    120

anybody else now or?

MS. JOHNSON:  If Your Honor would like to, we do have someone. Mr. Gabriel is here in the [inaudible].

THE COURT:  Is it -- how long will they be?

MS. JOHNSON:  He's going to, I suspect, based on the way this has gone, that it will probably go beyond the 1:00 p.m. or, you know, 30 minutes or so. It's going to be -- I think it'll be quite a bit.

I don't have a lot for him. I think I can get it done pretty quickly, probably, you know, 20 -- 20 minutes or so. Again, his scope of knowledge on this is fairly limited, particularly taking into account the motion to eliminate that was granted earlier.

THE COURT:  All right. Well, in any event, we think we can get it done in about a half hour?

MS. JOHNSON:  I can. I can finish. I can't speak for opposing counsel.

MR. PLOFCHAN:  [inaudible] Your Honor?

THE COURT:  I said do we think we can get him on and off in a half hour?

MR. PLOFCHAN:  Given the -- what I believe is

Transcript of Hearing
Conducted on October 19, 2023                    121

the very limited nature, which it should be one

question, then that would be the case.

THE COURT:  All right.

MS. JOHNSON:  I can tell you there will not be

one question. Thank you.

THE COURT:  I'm -- I'm sure [inaudible].

MS. JOHNSON:  Just in fairness to the court,

Your Honor, I just wanted to make that clear.

BAILIFF:  Stand right over there.

THE COURT:  Why don't you just stand for a

moment.

WITNESS, JOHN GABRIEL, DULY SWORN

CLERK:  Thank you.

MS. JOHNSON:  And Your Honor, preliminarily,

before we begin, would -- would you like us or Your

Honor yourself, would you -- would you prefer to notify

Mr. Gabriel of the limits -- the subjects he cannot

talk about or would you like me to just go ahead and

skip past that?

THE COURT:  Well, I think that the questions

you ask will direct where -- where he should be going.

MS. JOHNSON:  Yes.

Transcript of Hearing
Conducted on October 19, 2023                    122

THE COURT:  And Counsel has to --

MR. PLOFCHAN:  I -- I will be attentive, Your Honor.

THE COURT:  I know. I know you will make -- you will make it known. We will make it known.

MS. JOHNSON:  Okay. It was -- I am concerned that we may go through some things, so if I can ask that he focus on a certain --

THE COURT:  Yes, [inaudible].

MS. JOHNSON:  I can certainly ask that.

THE COURT:  Certainly, yeah.

MS. JOHNSON:  I just wanted to make that clear.

THE COURT:  Yeah.

DIRECT EXAMINATION

BY MS. JOHNSON

Q.  Okay. All right. Thank you. So thank you, Mr. Gabriel, for coming in.

A.  Sure.

Q.  There has been a ruling earlier today that limits some of the topics about which we can discuss for the matters that bring us here.

Day 000669

Transcript of Hearing
Conducted on October 19, 2023                    123

A.   Okay.

Q.   And that will include any prior conduct that may have been raised or addressed or could have been a subject of discipline by Mr. Day. So we are going to limit this discussion to the facts that you have knowledge about.

A.   Okay.

Q.   And that's come to you, but will not include any prior conduct that you may have learned of or -- or may know of yourself.

A.   Sure.

Q.   Okay? All right. We've already covered who you are, but for the record, could you please state your -- your name and your current position?

A.   I'm John Gabriel, principal of Independence High School.

Q.   Okay. And how long have you been in your current position?

A.   At Independence?

Q.   At Independence, correct.

A.   I was appointed in 2018 and we're now entering our fifth year. My first year was a planning

Day 000670

Transcript of Hearing
Conducted on October 19, 2023                        124

year here in the admin building.

Q.   Okay, it is -- why -- you said you were appointed, but your first year was here in the building? Why is that?

A.   We had a year to plan to open up the -- the school. I was familiar with that process -- before that, let me start. I was -- in 2004, I was hired as assistant principal at Parkview High School. In 2011, I got the principalship of John Champe High School, which was a new high school. Got to open that.

Come to the admin building to get the entire year to plan for its opening, hire its staffing, all the design that goes into it. Then opened the building 2012.

Around 2018, I think it was, I was Principal of the Year for Loudoun County, a semifinalist in the Washington Post and I got Independence High School and came back here for a year and opened the school.

Q.   That's because Independence was a new high school?

A.   Correct.

Q.   Okay. And so would you please -- focusing

Day 000671

Transcript of Hearing
Conducted on October 19, 2023                                    125

on your position now, currently.

A.  Mm-hmm.

Q.  Would you describe what your general position duties are?

A.  I think it's a little bit of everything. You know, a lot of it is obviously supervision of staff and employees and, you know, ensuring in fact instruction is taking place, but it's handling parent complaints, it's dealing with athletics.

We have 90 coaches on staff just for athletics. I have about 220 people on staff in terms of teaching and support positions. So it's a lot.

Q.  Do you know Mr. Brian Day?

A.  I do.

Q.  How do you know him?

A.  In December of 2019, he came to a staff social at the Social House in Asheboro where we were having our staff holiday party. One of my coaches, my head coach, R.J. Windows, had expressed the interest in bringing him over as a varsity assistant coach.

Brian, I believe at the time, had just concluded Riverside's winning the season of their

Day 000672

Transcript of Hearing
Conducted on October 19, 2023                    126

history in football, I think they went 8-3, I can't

swear to that, but it was somewhere around there.

And for whatever reason, R.J. [inaudible] he

said that they were trying to get rid of him and didn't

know why, but let's get him over here.

MR. PLOFCHAN:  I'm going to object. This is

all way beyond anything that's relevant in this case.

Q.  I would say that it is relevant in that it

establishes a foundation and Mr. Gabriel, if you could

just limit anything about --

THE COURT:  I'll limit -- I'll -- I'll allow

some limited inquiry.

BY MS. JOHNSON

Q.  Thank you. Yeah, so if you can just limit

anything about any prior incidents as you know about

Mr. Day and I don't know if that was the end of your

answer, but you know, try to keep it [inaudible].

A.  No, yeah, I was just going to explain it.

So he [inaudible] bring him over to the staff social,

let's meet him, you know, I'm open to meeting anybody.

The idea of having another coach with varsity

experience on staff was certainly intriguing.

Day 000673

Transcript of Hearing
Conducted on October 19, 2023                    127

At that party, I remember interacting with Brian a little bit. I do know that afterwards, I had two staff members separately come to me and share a concern.

Q.   And we will leave that part off as well.

A.   Okay.

Q.   So -- so you know him basically in -- and was interested in having him come to Independence. Is that -- does that accurately summarize your --

A.   That does accurate summarize. I talked with my assistant athletic director, Matt Shannon, who's good friends with Brian Day, and he said you have nothing to worry about, he is great. Standup guy. You know, I vouch for him.

And in January, at some point in January, we interviewed him and then HR extended an offer I'm sure later on in the spring.

Q.   Okay.

A.   To come over and teach, that is.

Q.   Okay.

A.   The coaching is separate. I interviewed him to be a teacher in January.

Transcript of Hearing
Conducted on October 19, 2023                    128

Q.  Was he a coach as well? At Independence?

A.  He was going to be coming over as a coach as well.

Q.  Okay. Okay, all right. And so during your time now as principal at Independence, have you -- what -- how would you describe the nature of your interactions with Mr. Day?

A.  He has -- always had been courteous, respectful, polite. You know, we were in a unique position, because when we started -- he came on board as teaching staff, it was 2020 -- the fall 2020.

We were fully remote with the exception of, you know, a handful of special ed students. So my interactions would be limited for that reason, of course. At some point, we had [inaudible] students come back to school.

I think by April we were in full hybrid. So we had, you know, teaching and learning in the actual school building with gen ed students, but at some point in the spring there, we were allowed to play our fall -- we were allowed to play sports.

I think that was in 2021. And I had

Day 000675

Transcript of Hearing
Conducted on October 19, 2023                    129

interaction with Mr. Day regarding a video he had taken inside the team room, the locker room.

Q.  And yeah, we'll leave that at that. If you could please stop right there.

A.  Okay.

Q.  I'm going to fast forward us a little bit.

A.  Okay.

Q.  Thank you, again, for providing that background. So in March of 2022.

A.  Okay.

Q.  Did you ever come to learn about any concerns regarding Mr. Day?

A.  I had concerns -- well, I guess I had concerns in terms of teaching, pedagogical concerns.

Q.  Okay. And other than that, any conduct related concerns on or about March 31, 2022?

A.  About -- yes. We had two students who came down to the counseling office that day and they had shared some concerns about inappropriate comments and behavior on Mr. Day's part.

Q.  All right, and how would you have learned about this information?

Day 000676

Transcript of Hearing
Conducted on October 19, 2023                    130

A.   As soon as they told their counselor, they came over and let us know in the main office.

MR. PLOFCHAN:  Objection. Hearsay.

MS. JOHNSON:  This is an administrative proceeding. Some hearsay -- considerable hearsay is typically allowed. We are not bound by the federal court rules.

THE COURT:  I will allow it. I'll allow it.

BY MS. JOHNSON

Q.   Thank you. Okay. You can finish your answer [inaudible].

A.   So we were informed and I think the two girls wrote statements about what had occurred and then we filed a CPS report that morning.

Q.   Okay. And you -- and you've mentioned we a few times. Could you walk us through the -- well, first of all, let's -- let's talk about who -- what do you mean by we?

A.   So when I say we, oftentimes I'm talking about the administrative team. In this case, I'm talking about my director of school counseling, Jaclyn Smith, who is a member of the administrative team.

Transcript of Hearing
Conducted on October 19, 2023    131

But when I say we, it's myself, [inaudible] all of us acting together.

Q. Okay. And do you have any -- who are those students that you referred to?

A. G███ La███ and K███ R███.

Q. Do you have any personal knowledge of these two individuals as students at Independence High School?

A. Yes. I mean --

Q. What -- what -- what's the extent of your -- your knowledge then with these individuals?

MR. PLOFCHAN: Objection. Relevance.

Q. It's quite rele- --

MR. PLOFCHAN: [inaudible]

THE COURT: One -- one -- one at a time. Let him make his objection, then I'll take your response.

MR. PLOFCHAN: Right. Okay. It's not relevant as to his personal knowledge, whether he liked them or not, etcetera. They didn't make a complaint to him, based on his testimony. He received a report and he processed it.

He is not an expert. He is not here involved

Transcript of Hearing
Conducted on October 19, 2023                    132

in any of the investigation. He is purely an

administrative --

THE COURT:  This is becoming a speaking

objection now.

MR. PLOFCHAN:  Well, it's just -- I'm -- I'm

telling you --

MS. JOHNSON:  Thank you.

MR. PLOFCHAN:  -- why it's not probative, Your

Honor. So when I make an argument about relevance, I'm

implying in materiality --

THE COURT:  Okay. All right.

MR. PLOFCHAN:  -- which is probative --

THE COURT:  That's your -- that's your --

MR. PLOFCHAN:  -- [inaudible]

THE COURT:  -- object -- that's your

objection.

MR. PLOFCHAN:  Thank you.

BY MS. JOHNSON

Q.  Thank you, Your Honor. The evidence is

relevant, as was made clear earlier the -- the -- these

students' character has been called into -- into

question. He is a witness as to their character, so

Transcript of Hearing
Conducted on October 19, 2023                                    133

we're allowed to establish that. It should be permitted to establish that.

THE COURT:  I'll allow some brief questions along the line --

BY MS. JOHNSON

Q.  Thank you. I'm sorry, do you recall the question or would you like me to re-ask?

A.  [inaudible]

Q.  Okay. I'll try to ask as close as I did before, but what is the extent of your -- your knowledge? Your first hand knowledge of these -- let's start with G█████ as a student, G█████ L████. Well, we call -- I'll call her G████.

A.  Yep.

Q.  Okay.

A.  I -- I knew her as a student. I knew her because one, she's a football manager, and two, she was a wrestling manager as well.

She did great in both those -- I hate to call them positions, but they are kind of like positions, unpaid, thankless positions, but she worked diligently in both of them, so I knew her pretty well in that

Day 000680

Transcript of Hearing
Conducted on October 19, 2023                    134

regard.

I don't know how much to share about her. I know -- well, if I can talk about K████?

Q.  Yes, please. If you would, please.

A.  I knew Katie better than G████. I mean, I knew G████ well enough, I knew her by first name in a school of, you know, last year we were at almost 2000 students, so you know someone by name, usually speaks to them in a positive way for me, at least.

MR. PLOFCHAN:  I'm going to object as nonresponsive. It's not asking generally how that means. It's what does he know about someone and -- and not how he -- how he generally approaches people.

THE WITNESS:  What I know about her?

MS. JOHNSON:  Just wait a minute. Wait a minute. Wait a minute. There's an objection, so we'll -- we'll let you know. It's okay, Mr. Gabriel. I'm sorry, were you about to say something?

THE COURT:  I was about to say do you have any response to his objection.

MS. JOHNSON:  I do. He's -- he's providing his background, and of course there's got to be some

Transcript of Hearing
Conducted on October 19, 2023                                135

contextual -- this -- everything about this case, from

opposing counsel's view, is based on context and what

was captured, so we have to be given some leeway for

context purposes so that he can explain [inaudible].

THE COURT:  I'll allow some -- some context.

MR. PLOFCHAN:  If -- if -- if I may, just to

respond on the objection, pursuant -- where's that

regulation? Pursuant to the regulation they were

required and they are limited under 7018 subparagraph

of paragraph C, procedures for dismissal, subparagraph

two, Roman A, Roman three, the superintendent had to

provide reasons for a recommendation in writing and the

division super- -- well, the teacher, we have the right

to inspect and copy of personal file and other

documents relied upon in reaching the dismissal and

then we have to respond in rebuttal to that evidence in

dismissal.

This is not part of any document that was

provided to us that was relied upon for the

superintendent's dismissal.

THE COURT:  It's overruled.

BY MS. JOHNSON

Day 000682

Transcript of Hearing
Conducted on October 19, 2023                136

Q.   Thank you. You can answer the question, sir.

A.   So I knew G████ as a student also because she had some health concerns to the point that -- caused [inaudible] missed a lot of school. I mean, she was -- I mean, really emaciated.

I know missing school and the health components both impacted her mental health in a sense that, you know, it created anxiety and the more you're out, the more anxious you get, how am I going to get this work done?

Am I going to be healthy enough to be able to do X, Y and Z. So I knew her in that capacity as well.

Q.   Okay. What kind of students did you know G████ and K████ to be?

MR. PLOFCHAN:  I'm going to object as the relevance to their grades.

MS. JOHNSON:  I asked, again, the question --

MR. PLOFCHAN:  [inaudible]

THE COURT:  Hold on, one at a time, please. One at a time, Counsel. Have you finished your objection?

Day 000683

Transcript of Hearing
Conducted on October 19, 2023                137

MR. PLOFCHAN:  I have.

THE COURT:  All right.

BY MS. JOHNSON

Q.  Again, the question is what kind of students they are to be. Their -- these students' credibility has been called into question here, very clearly by counsel. So he can speak to if he has personal knowledge about the types of students they are.

THE COURT:  Why don't you rephrase your question.

BY MS. JOHNSON

Q.  All right. Would you -- would you please, Mr. Gabriel, describe the character from the personal knowledge you have about the character of -- of G█████ and K████?

MR. PLOFCHAN:  I object as foundation, calls for a narrative. He -- there's a way to ask a question that she's -- for the point she's trying to make rather than inviting a narrative based on his opinion, which would not be -- should not be considered by the court.

THE COURT:  What, if anything, do you know

Day 000684

Transcript of Hearing
Conducted on October 19, 2023                138

about the character of these two students?

MS. JOHNSON:  Now, see, if I had asked, it would have been leading, so I just want to make that [inaudible].

THE COURT:  [inaudible] anything. What, if anything.

MR. PLOFCHAN:  And I would have just said it's not --

MS. JOHNSON:  And he -- can we please --

MR. PLOFCHAN:  What he knows about the character as a fact, not an opinion, and I would object to the extent that that question asked for any opinion. So if the -- and I would say has -- has he had any --

THE COURT:  That is the question that he will answer.

MR. PLOFCHAN:  Okay.

THE COURT:  What, if anything, do you know about the character of these [inaudible]?

THE WITNESS:  I know them to be of high character, good students, honest students. They had no discipline over their four years at Independence. They had never been in the office on a referral. Never

Day 000685

Transcript of Hearing
Conducted on October 19, 2023                    139

received punitive consequences.

         To the point that K███ R███, I specifically wrote a letter of recommendation for her in June to, I want to say the University of Alabama for a sorority she was pledging. It was a two-page, single space letter speaking to her character.

BY MS. JOHNSON

         Q.  Excuse me one moment here, please.

         Okay. You -- you have a white binder in front of you --

         A.  Okay.

         Q.  -- Mr. Gabriel. Could you please turn to tab four?

         A.  Yep.

         Q.  Do you recognize that document?

         A.  That is my letter.

         Q.  Okay. Is that the letter about -- about -- to which you referred just a moment ago in your testimony?

         A.  For K███, yes.

         Q.  Thank you. And so --

         MR. PLOFCHAN:  I'm going to move to strike.

Day 000686

Transcript of Hearing

Conducted on October 19, 2023                                    140

That's not -- that wasn't provided. Our LCPS document 001 is here. This is a document that we have not seen before today and I'm going to move to strike any reference to it and move to stri- -- his previous issue about a letter and so forth, because that has -- first time ever seeing it is today.

MS. JOHNSON: Again, this is -- the reason these documents are in here is because --

THE COURT: Well, you haven't moved them into evidence.

MS. JOHNSON: Right. I haven't moved anything into evidence, that's correct, and also I do believe he can speak to it, because --

THE COURT: He can speak to any letter he wrote.

MS. JOHNSON: Thank you.

THE COURT: And then -- but not -- not -- he can't -- it's not in evidence, but I'll let -- the fact that he can say I wrote a letter [inaudible] he can say that.

MR. PLOFCHAN: But the -- but the content then would get -- and that's the whole issue and that's

Transcript of Hearing
Conducted on October 19, 2023                                     141

moving to strike that, because the content then goes to

a violation of best evidence rule. We -- if they --

[inaudible].

THE COURT:  I think it goes to the weight that

this hearing officer will record it. Next question.

MS. JOHNSON:  Can I please make a note really

quickly for the record? I just wanted to point out that

these issues about these students' credibility were

first impressed upon this counsel during our October 4

prehearing prior -- so prior to that, we did not know

this information would come up to light.

So hence we're talking about the students'

character and -- and I just want that noted for the

record.

MR. PLOFCHAN:  And -- and if they wanted to

put in evidence about character, especially documentary

evidence, they were obligated under the rules to

provide it.

THE COURT:  Well, it's not -- it's not -- it's

not coming in as -- as an exhibit.

MR. PLOFCHAN:  And -- and -- and, if I may,

his mere opinion of character, which also I think could

Day 000688

Transcript of Hearing
Conducted on October 19, 2023                                    142

suggest bias, because he -- out of all the 2000

students, he writes one person a two-page letter --

THE COURT:  No, no, we don't know how many

letters he's written to [inaudible] other student.

MS. JOHNSON:  Objection, [inaudible].

MR. PLOFCHAN:  All right.

THE COURT:  Don't -- don't try to [inaudible].

You're trying to [inaudible] a hearing officer or a

judge. Not to the -- not to the jury. I -- I

[inaudible].

MR. PLOFCHAN:  I get it. All right.

THE COURT:  Okay.

MS. JOHNSON:  Thank you.

THE COURT:  All right.

BY MS. JOHNSON

Q.  Okay, so give me one moment for a second,

please. I apologize.

All right. So did you ever -- are you aware of

any parking concerns in terms of these two students?

G█████ and K█████? Or either one of them parking in

unauthorized parking spots at the school?

A.  I am aware of several student --

Day 000689

Transcript of Hearing
Conducted on October 19, 2023                    143

MR. PLOFCHAN:  I'm going to move and I'm going to object that that was not included as information that he would have in the documents that were provided.

THE COURT:  I'll let you ask a different question.

BY MS. JOHNSON

Q.  Were the students ever disciplined for parking, at all, at the school?

A.  The students never received punitive consequences for parking.

Q.  Okay. All right, thank you. Now, with regard to the students' complaint, could you describe the process for the recording of a CPS complaint?

MR. PLOFCHAN:  I object, again.

MS. JOHNSON:  Or CPS referral, excuse me.

MR. PLOFCHAN:  That's asking him to describe a statutory process the court can take judicial notice of. Additionally, it's not part of any knowledge ascribed to this witness in any of the documents that we received.

THE COURT:  What, if anything, do you know regarding the process of filing a complaint with CPS?

Transcript of Hearing
Conducted on October 19, 2023                    144

MS. JOHNSON:  And I would say that's not a statutory process. We're talking about internal to the school.

THE COURT:  I'm just saying what, if anything, do you know?

MS. JOHNSON:  You can answer, it's Your Honor.

THE WITNESS:  So we are mandated reporters. So if we are made aware of an allegation of abuse or neglect, we are mandated to report it to CPS. That can involve calling them up, leave -- talking to an intake officer as well as completing an internal [inaudible] form about it.

BY MS. JOHNSON

Q.  All right. Did this -- did this -- how did you -- how do you know that these complaints actually followed that process?

A.  Because I was in the main office when it occurred.

MS. JOHNSON:  Okay, thank you. At this time, Your Honor, we have no more questions for Mr. Gabriel, but reserve, obviously, depending on how things go later on during Mr. Day's case in chief, we may need to

Transcript of Hearing
Conducted on October 19, 2023                    145

recall him.

THE COURT:  All right.

MS. JOHNSON:  Okay. Thank you.

CROSS EXAMINATION

BY MR. PLOFCHAN

Q.  From February 15, 2021, through March 31, 2022, was there any complaint ever made by G█████ L█████ or K████ R████ regarding Mr. Day?

A.  No, there was not.

Q.  Okay.

THE COURT:  What were those dates again?

Q.  February 15, 2021, to March 31, '22.

A.  March 31 is the day they made the complaint.

Q.  From the time Mr. Day -- Mr. Day became an employee until February 15, 2021, was there ever any complaint by G█████ L█████ or K████ R████ regarding Mr. Day?

A.  No.

Q.  Okay. Had any of your mandatory reporters reported any complaint regarding G█████ L█████ or K████ R████ prior to March 31, 2022?

Day 000692

Transcript of Hearing
Conducted on October 19, 2023                    146

MS. JOHNSON:  Objection, beyond the scope.

MR. PLOFCHAN:  I don't think so. He said he was aware of the complaint. I'm asking did --

THE COURT:  I'll allow him to answer the question.

THE WITNESS:  Are you asking me were there other complaints that were filed on their behalf?

BY MR. PLOFCHAN

Q.  I'm -- on -- were -- did any of your mandatory reporters report a complaint against Ms. L██████ regarding conduct with G████ -- Mr. Day regarding conduct with G████ L████ or K██████ R████ prior to March 31, '22?

A.  Prior to March 31, no.

Q.  Okay. Did you receive a letter dated September 22 from Lisa Gray regarding investigative findings by Ms. -- relating to Mr. Day?

A.  I believe so.

Q.  Did you take any steps beyond receiving that letter to investigate?

A.  In September that he was -- I'm sorry, can you --

Day 000693

Transcript of Hearing
Conducted on October 19, 2023                              147

Q.   In September of 2022, did you receive a letter from Lisa Gray regarding Mr. Day and investigative findings?

A.   Correct, I did.

Q.   Okay. Did you take -- did you further investigate that letter in any way, shape or form between September 22, 2022, and February 15, 2023?

A.   Can you define what you mean by investigate?

Q.   Well, did you -- did you have a question with or conversation with anyone regarding that letter?

A.   I mean, I had questions regarding what they meant for a timeline, you know, what's HR going to do next? At what point will this occur? Because I think the letter said there will be something in touch in the future regarding your employment status.

So naturally, that would be a question I have.

Q.   Okay. Did you -- who did you speak to -- did you ever have any questions or have any conversations regarding the conclusions of the letter? Other than -- the conclusions of the letter -- did you have any conversations around the conclusions of the

Day 000694

Transcript of Hearing
Conducted on October 19, 2023                    148

letter?

A.    Questions about the conclusions of the letter from Lisa Gray?

Q.    Uh huh. Yeah.

A.    I don't think. I don't recall.

Q.    Okay. So Ms. Gray did not identify any basis of her conclusions to you?

A.    I don't know if I would be privy to that.

Q.    Okay. And so you're not aware if she said that there was conclusive evidence was found regarding a violation, that was not shared with you as to what the conclusive evidence was?

A.    I don't recall what -- if the letter said conclusive evidence or not. I just remember that they were recommending termination.

Q.    Well they -- not in September of 2022, they weren't.

A.    [inaudible] I got that in -- that was in something, though.

Q.    February of 2023.

A.    February? Okay.

Q.    So in September 2022, did you ever have

Day 000695

Transcript of Hearing
Conducted on October 19, 2023                    149

any conversation with Lisa Gray or anyone about the
nature of any evidence?

A.  No.

Q.  Okay. And you did not interview with Ms.
Wiley-Smith with regard to this case, did you?

A.  Together with her? When she questioned
[inaudible]?

Q.  Did she question you? Ask you any
questions? Did anything like that?

A.  I don't recall.

Q.  Well, if she didn't identify you as
someone that she interviewed, would that be indicative
that you didn't interview with her?

MS. JOHNSON:  Objection. Calls for
speculation.

BY MR. PLOFCHAN

Q.  Well, when you say you don't recall, is
that because you didn't interview with her or you might
have interviewed with her, but you just don't remember?

A.  At this point, I'm on year three of not
having Brian Day in my building. So it's been awhile.
So to recall the exact -- I'm not sure.

Transcript of Hearing
Conducted on October 19, 2023                    150

Q.   Your Honor, year three?

A.   Right. He went out 20- --

Q.   Oh, so March of '22 is one year, the next school year?

A.   No, I'm counting like a school year.

Q.   Okay.

A.   So for me, it's been a long time.

Q.   Okay.

A.   So I may not recall all those details.

Q.   Okay. What more can you tell me about G████'s mental health? Was she seeing a counselor?

A.   Like a -- like a school counselor? Like in the school?

Q.   Or otherwise?

A.   I don't know about outside school. We're not often aware of that information. Oftentimes if we are, we'll ask for a waiver so we can communicate counselor to counselor.

Q.   I didn't say what you can do. Did you do that in this case?

A.   Did I do that in this case?

Q.   Yeah, did you -- do you have any

Day 000697

Transcript of Hearing
Conducted on October 19, 2023                              151

information about whether G███ was -- you mentioned that she has issues with mental health. Do you have any information about any mental health counseling and so forth she was undergoing outside of the school?

A.  I'm not aware of that.

Q.  How about inside the school?

A.  I am -- would say she did talk to her counselor.

Q.  How often?

A.  That I would not know.

Q.  Okay. How many letters of recommendation did you write to sororities for former graduates of your school?

A.  That was the first one I've ever written to a sorority. I didn't realize, at University of Alabama, that you had to have a letter for a sorority. But I write letters of recommendation for all kinds of placements.

It could be like, you know, the naval academy, it could be for a commission to West Point, it could be just for a college acceptance. I have one that's due next Friday for a current student.

Transcript of Hearing
Conducted on October 19, 2023                          152

Q.   Okay. So I'm -- I'm ask -- my question was resolved to sororities.

A.   Okay.

Q.   That is your first one, right?

A.   My first one that I've written to a sorority?

Q.   Yeah.

A.   Correct.

Q.   Okay. And would you agree that when you write letters of recommendation, usually they're related to people getting into schools, correct?

A.   Except it could be for a scholarship, it could be for a commission.

Q.   How many letters do you write for post -- for scholarships after someone is already matriculating into college?

A.   I've never had one for a scholarship after they matriculate.

Q.   Okay. And how many letters of recommendation have you written to -- for someone after their matriculating out of college?

A.   I was asked before she had graduated, I

Day 000699

Transcript of Hearing
Conducted on October 19, 2023                              153

just couldn't get to it until June, so that was the first time.

MR. PLOFCHAN:  Okay. Those are the questions I had.

THE COURT:  Anything on redirect?

MS. JOHNSON:  Not on redirect. Again, we reserve the right --

THE COURT:  Okay.

MS. JOHNSON:  -- the school division reserves the right to recall if needed.

THE COURT:  Okay. All right. So for right now, Mr. Gabriel, you are -- you are free to go.

MR. GABRIEL:  Okay.

THE COURT:  However, they could, at some point in the future, call you back in. So I would direct that you not discuss anything about anything that was asked of you today while you were here.

MR. GABRIEL:  Okay. Be brought back again today or another date?

MS. JOHNSON:  Potentially today.

MR. GABRIEL:  Okay, so should I not go back to school or should I go upstairs?

Day 000700

Transcript of Hearing
Conducted on October 19, 2023                          154

MS. JOHNSON:  We'll go off the record, if we will, on that part of the conversation. I don't think that's necessary.

MR. GABRIEL:  Okay.

THE COURT:  All right.

MR. PLOFCHAN:  Do you need more than a half hour, Your Honor?

THE COURT:  For lunch?

MR. PLOFCHAN:  Yeah.

THE COURT:  No, I don't need more than a half hour.

MR. PLOFCHAN:  Okay.

[recess]

THE COURT:  Face that way.

MS. JOHNSON:  I guess I'll keep -- help you keep the secret for now.

CLERK:  On the record.

WITNESS LAURA NORTHART, DULY SWORN

CLERK:  Thank you.

MR. PLOFCHAN:  Okay. Give me a second.

Your Honor, before this witness begins, I'm going to note an objection, again pursuant to the rule

Day 000701

that -- where is it? I had it and I want -- it's found in the grievance procedure and it's found in tab six with regard to our issue and paragraph -- page nine beginning C2 AIII.

The -- the division was required to allow us to inspect and copy all documents relied upon in reaching the decision to recommend dismissal and we had to provide our documents in rebuttal on this and then on page 10 they had a continuing duty to disclose and produce any additional documents identified later that may be used in the respective party's case in chief.

The documents that were provided, we were able to deal with our issues, particularly exhibit number 11 does not mention this witness at all.

I have no idea what she's expected to testify to, nor does it identify any -- whether her testimony is related to any document of which there would then be an issue of trying to get around the rule of providing documents by trying to put in the content of a document prior to it -- so that they -- because they did not provide us the document in the first place.

MS. JOHNSON:  Your Honor, you already

addressed this ad nauseum, but I -- I will state for the record number one, this person is the counselor who actually filed -- prepared or met with the students and that is referenced that she met with the students.

When Mr. Plofchan asked during the prehearing call on this matter on October 4, whether everyone -- the documents that we had, the school division had already produced would they be able to discern who the witnesses were.

I -- I told him yes. I answered in the affirmative with that. I followed up by email within an hour or two, I could get you these [inaudible] if you would like it for the record, Your Honor, to clarify that, look, this person is identified in the report, but not by name.

This is her name, just for clarification's sake so that there's no question. I never got a response to that email. So as far as the school division is concerned, she was identified and she's been out there and we made very quickly in good faith to disclose that information.

Prior to that, there was no request for us to

Transcript of Hearing
Conducted on October 19, 2023                                    157

disclose witnesses who may be testifying, which I

regularly do in these types of situations. But again,

this is a grievance procedure. The -- the rule and what

were -- the parties are required to do, as Mr. Plofchan

keeps pointing out, is there and is very limited.

        And we're not otherwise required to disclose

information that's not requested.

        MR. PLOFCHAN:  In response, Your Honor, I'm

going to ask you to take a look at Exhibit 12 and 13,

not in the content, but just the form. The 12 is a

complaint by G█████  L█████  and the person she spoke to

is Kelly James, 3/31/22, and K████████  R██████  on number

13, is the report of Katelyn Ravas and the person she

spoke to is Kelly James.

        MS. JOHNSON:  And I'll object. That has not

been established yet. Objecting to the response, I

apologize, but that's not established.

        MR. PLOFCHAN:  To the extent that this witness

is going to attempt to provide any information not

contained in the statements of Ms. L█████  or Ms. R████,

we would object, because they -- that would be an end

runaround the documentary evidence, because this is

Day 000704

Transcript of Hearing
Conducted on October 19, 2023                    158

what we are prepared to defend against, because these are the documents in accordance with the rule that they provided.

And they had an ongoing obligation to supplement that and telling a name and so forth is not a supplementation if the testimony is going to go beyond the documents.

MS. JOHNSON:  And the last resp- -- you know, I'll make one final response. You know, first I have to take objection -- exception to the -- the -- the regular arguments and implication that school division, particularly, or even counsel to the extent involved, is -- is trying to get one over, if you will, on -- on -- during this process and acting in ways that are not in good faith.

[inaudible] terms of my involvement in this case, like I say, that I pretty much disclosed everything that I was obligated to disclose, particularly when asked.

And then secondly, not withstanding that, again, this guidance counselor was mentioned or referenced in the report, but not by name. So I stand

Transcript of Hearing
Conducted on October 19, 2023                           159

on once the request was made during the October 4 call, immediately followed up.

And again, I can get you the exact time of that -- that -- that follow up correspondence. Aside from that, the procedure speaks for itself and it's my position that the school division has complied with that process.

And so this -- this witness's testimony should not be limited as requested.

MR. PLOFCHAN:  And -- and just [inaudible] I don't know where she's referring to that the guidance counselor is mentioned, but not by name, more importantly. And I want to be clear. I'm not arguing that she didn't do anything in good faith.

That's not the issue. The issue is that under the rules, they had to disclose documents. Under the rules, you can't then say, oh, I didn't disclose the document, so I'm going to try to get it in through oral testimony when it's actually part of a document, because we're supposed to know that's the -- the administrative equivalent of the best evidence rule in that regard.

Transcript of Hearing
Conducted on October 19, 2023                    160

And I don't see where there is any identification of a guidance counselor. She was present, but she didn't take any statement, and therefore that would -- that's it. The only thing they mentioned for Ms. Northart is that she was present when these two were -- gave their statements.

But not that they -- she gave a statement, had anything else known, and therefore I think we're limited to the statement of these two young ladies. And that's -- that's it. She can't supplement the statement that they didn't provide in this case.

THE COURT:  Well, the court is going to allow her to testify and if, at the end, there is something that is said that is beyond, then you can make -- make your objection and the court will decide whether or not to allow it or -- or limit how much of it, it will receive.

MR. PLOFCHAN:  Very well.

THE COURT:  Okay.

MS. JOHNSON:  Thank you, Your Honor.

DIRECT EXAMINATION

BY MS. JOHNSON

Transcript of Hearing
Conducted on October 19, 2023                    161

Q.   Ms. Northart, before we begin, just to let you know that there has been a ruling earlier today that -- that limits this matter to only conduct that is -- that is addressed in the CPS referral or that was the subject of ultimately the CPS referral and events that occurred after that.

So please, if you have any thoughts or opinions or knowledge of what you consider to be or perceived to be or issues or dialogue, what have you, about Mr. Day's employment or conduct while at Independence High School or any other time prior to then, do not talk about that today. Okay?

A.   Mm-hmm.

Q.   All right. So Ms. Northart, I believe we got your name on the record, but would you state your full name so that we can ensure that we have captured it?

A.   Laura Northart.

Q.   Okay. And your current position at LCPS?

A.   School counselor at Independence High School.

Q.   And how long have you been in your current

Day 000708

Transcript of Hearing
Conducted on October 19, 2023                                  162

position?

A.  So in the county, 11 years. This is my 11th year. Six years at Dominion High School. This is my fifth year at Independence.

Q.  Okay. What, generally, are your position duties when it comes to complaints or concerns that warrant a CPS referral?

MR. PLOFCHAN:  I'm going to object as non-probative. The issue is in terms of the facts is what did these two people report and if she has any knowledge outside that could be admissible, which I don't think she can. What she generally does is not probative of the issue regarding Mr. Day.

MS. JOHNSON:  Again, lays a foundation, Your Honor. You can't probe the issues that are germane to this case and her role in them without at least laying the foundation.

THE COURT:  I'll allow a couple foundation questions.

BY MS. JOHNSON

Q.  Thank you. Could you please describe your duties in that regard?

Day 000709

Transcript of Hearing
Conducted on October 19, 2023                    163

A.   Mm-hmm. So if a student comes to me with a concern that is of physical harm, emotional harm or neglect, which would warrant a CPS referral, I will speak to them, let them tell me their story, what's occurred, and then based on that information, if it does reach that level, then I report that information to my superior -- my counseling director, and then she makes the actual CPS report.

Q.   Okay. How do you know or do you know G██████ L█████ or -- and/or K███ -- K██████ or K████ R███? Am I saying the name correctly?

A.   Mm-hmm. Yep.

Q.   Okay.

A.   So G█████, I was her school counselor in eleventh grade, which was the 2021-'22 school year. And then for K████ R███, I was her counselor in ninth grade. So 2019-2020, I believe that would have been.

MR. PLOFCHAN:   And -- and the year, I'm sorry, for G█████ was 20?

THE WITNESS:   2021-2022. Her eleventh-grade year.

BY MS. JOHNSON

Transcript of Hearing
Conducted on October 19, 2023                    164

Q.  Have you -- would you describe their character, your personal knowledge about each of these students' character?

A.  Mm-hmm. They -- in --

MR. PLOFCHAN:  I'm going to object again as to her knowledge of their character is nothing but an opinion and her opinion is not probative of the issue. Whether she likes them, whether she finds them trustworthy with her is not probative of whether they were trustworthy with regard to Mr. Day.

MS. JOHNSON:  Were they trustworthy, the character of these witnesses have been placed at the heart of the issue.

THE COURT:  I'll allow you to ask a slightly different question.

BY MS. JOHNSON

Q.  Thank you, Your Honor. Tell us -- let's see. Do you know these individuals to have ever -- have ever been untruthful in their discussions with you?

A.  Not to my knowledge, no.

Q.  And these -- these individuals, speaking about G█████? If you could give a verbal answer.

Transcript of Hearing
Conducted on October 19, 2023                165

A.  Not to my knowledge has she been untruthful.

Q.  And also K███?

A.  Not to my knowledge.

Q.  Okay. Did you -- was there ever a time when they actually, either one of these students, came to you in 2022 -- 2021-2022 school year to discuss any concerns with you regarding Mr. Day?

A.  Yes.

Q.  What -- can you walk us through how that happened?

A.  Mm-hmm.

MR. PLOFCHAN:  I'm going to object. There's absolutely nothing in any document regarding any report or statement regarding Mr. Day. If it was such that she became a mandatory reporter, we would have had to have had the document. We don't have that.

MS. JOHNSON:  You know -- but --

MR. PLOFCHAN:  And this woman is not -- this witness, I shouldn't -- shouldn't say woman, I don't mean to imply anything with that, but this witness is not identified as being interviewed or actually taking

Transcript of Hearing
Conducted on October 19, 2023                    166

the statement from either of these two young people.

MS. JOHNSON:  I supplemented, again, on October 4, which was my obligation under the code -- the school division's obligation, when I notified opposing counsel that this individual was the counselor to whom these students talked about -- talked to, and to whom the report is referencing.

MR. PLOFCHAN:  She --

MS. JOHNSON:  So she has provided -- I have provided that information and they might not accept or appreciate that that was a supplementation, but it did come through, and again, there were no objections or anything to that information at that time.

But I've met my obligations under VA 20 90, excuse me.

MR. PLOFCHAN:  Identifying someone who has information is not the same thing as identifying a document and I don't have a -- any recollection of any supplementation, but I'm not going to challenge that, because that's not really -- that's a -- that's a side game on that.

The issue is, if there's -- if this woman or

Day 000713

Transcript of Hearing
Conducted on October 19, 2023                               167

this witness received information for which she had a

concern or write a report or had to do a mandatory

report, we don't have it. And it's not proper for us to

have to deal with that now.

THE COURT:  Well, I'm not sure that she's

referencing a report. She's just referencing anything

that she may know.

MR. PLOFCHAN:  But her knowledge, if it -- you

can't -- they can't say, oh, I didn't -- you know,

essentially if I found -- they didn't write a report

when she had something of her knowledge or if she had

knowledge that, oh, at the time, and they reduced it to

a report and it's not in the report, then we're getting

-- we're getting sandbagged in that regard.

So it's a trial by ambush. So the -- the issue

is when -- the way of the phrase of the question is I

now know that at some time in the '21 to '22 school

year, there's some report to this counselor that we

have no knowledge of.

THE COURT:  I'm going to allow her to testify

to what she believes she recollects or she knows and I

think it will go to the weight that any -- that the

Day 000714

Transcript of Hearing
Conducted on October 19, 2023                    168

hearing officer will accord it.

BY MS. JOHNSON

Q. Thank you. You can answer the question.

A. So they came down to speak to me on March 31, and they came back and they indicated that they had some concerns with Mr. Day and some comments that were made.

So they shared with me everything that is written in that report and then what my duty is, at that point, is to hand them the report to have them write down what we call an incident report, and then as they're doing that, I would go speak to Ms. Smith, our counseling director, and then she makes the CPS referral.

Q. Okay. I'm going to back up and address certain parts of what you just described there.

A. Mm-hmm. Sure.

Q. But I'm going to try to work backwards.

A. Sure.

Q. So you -- you identified a Ms. Smith. What -- who is that individual? You said the director of counseling --

Day 000715

Transcript of Hearing
Conducted on October 19, 2023                    169

A.  Our counseling director.

Q.  -- but what is the full -- the full name for that individual?

A.  Jaclyn Smith.

Q.  Okay. And why is it that Ms. Smith would be the one who makes the report as opposed to you, since the students came to see you?

MR. PLOFCHAN:  I'm going to object as irrelevant and nonprobative. We don't have anything from Ms. Smith either.

MS. JOHNSON:  That's incorrect. It's the CPS referral references the report being made by Ms. Smith. So I'm trying to provide context, which seems to be a recurring theme and word and argument from opposing counsel.

We're trying to provide a context that she described and speak to her actual reports.

THE COURT:  All right, I'll let you --

MR. PLOFCHAN:  I'm sorry, I'm trying to address where she says the CPS referral.

MS. JOHNSON:  The CPS referrals, which are attached to, Your Honor, the investigative report in

Day 000716

Transcript of Hearing
Conducted on October 19, 2023                    170

our binder there, tab 10, in the -- I believe it's tab -- subtab A.

MR. PLOFCHAN:  The question of --

MS. JOHNSON:  B. Excuse me, subtab B as in boy.

MR. PLOFCHAN:  One second, Your Honor, I just want to see if it was attached to what we received. Do you have a Bates number that you believe it was attached?

MS. JOHNSON:  Sure. One moment. Bates number beginning LCPS 000158 and that goes through to Bates number LCPS 000161. It was also referenced on the first page, Ms. Jaclyn Smith, that is, of the actual report itself, LCPS 000144.

MR. PLOFCHAN:  I think Ms. Smith can testify to whatever her document is and that as a document I don't think this witness is appropriate to try to get Ms. Smith's actions into this witness.

MS. JOHNSON:  Again, this witness has already testified that she sat there with then as they wrote the report and provided the information for the referral. So, this witness has already established that

she was there. She can testify as you -- Your Honor pointed out earlier. This testimony now goes to the weight for there is nothing that's she's testified to currently that does not address the -- the -- the nature of the objection and put it to bed.

MR. PLOFCHAN:  Well, it's the -- Ms. Smith's relevance and probative nature is only what she allegedly reported to CPS not what -- and that's maybe different or is different than what this witness is speaking to.

THE COURT:  We'll allow the testimony.

MS. JOHNSON:  Thank you. So, back up. You said don't remember. Your Honor, I think I have to have the question read back into the record, if you don't mind.

THE COURT:  It will take me a moment to locate. Please stand by.

MS. JOHNSON:  Thank you.

COURT REPORTER:  Okay. And why is it Ms. Smith would be the one who makes the report as opposed to you who the students came to see you?

THE COURT:  [inaudible].

BY MS. JOHNSON

Transcript of Hearing
Conducted on October 19, 2023                    172

Q.   Did you hear the question?

A.   Yes.

Q.   All right. Would you please answer, Ms. Northart?

A.   Yes. So, it's LCPS policy that administration is the one to actually make the report to CPS.

Q.   Okay. And, okay. So, and again, backing up, you said referred to a few reports in here. Um, one being -- sounds like it was a CPS referral?

A.   Yes.

Q.   Okay. So, what was your role with regard to the CPS referral itself?

A.   Mm-hmm. So, after I speak with the students, and I went to Jaclyn Smith, I sit down with her, share that information. She makes that call to the CPS hotline and I am there with her while she makes that report.

Q.   And why are you there with her?

A.   Since I'm the one that the student spoke with.

Q.   Okay. So, it -- so, how did that how did

Transcript of Hearing
Conducted on October 19, 2023                    173

that process play out? Like, what exactly -- strike that. What was your role then sitting there that day on the -- on March 31st with Ms. Smith?

A.   To share the -- to relay the information that the two students shared with me.

Q.   Okay. And then you also referenced another report. You have that -- the white binder in front of you?

A.   Yes.

Q.   Um, would you flip to the tab number 10?

A.   Yes.

Q.   And then to -- within that there's a tab A.

A.   Yes.

Q.   Okay. Do you see those documents there?

A.   Yes.

Q.   You can take the time and look at them for a moment. Okay. And these, for the record, the -- the Bates numbers are LCPS 000013 through 16.

A.   Yes.

Q.   Do -- you had stated that there was a form of some sort or a report. You called it a report that

Transcript of Hearing
Conducted on October 19, 2023                    174

they -- that they -- I'm -- I'm putting quotes on they

fill out. Uh, is this the report that you -- to which

you were referring?

         A.   Yes. This is the incident report that I

give the students.

         Q.   Okay. So, who filled out the -- the first.

Let's look at the first one. LCPS 00013, LCPS 00014.

         A.   Mm-hmm.

         Q.   Who filled that out?

         A.   K███ R███.

         Q.   Okay. And then the second one -- second

document in the same set, LCPS 00015 through LCPS

00016. Who filled that report out?

         A.   G███ L███.

         Q.   What was your role in -- in these reports

being filled out? Can you speak to that specifically?

         A.   Yes. So, after they share their concerns

with me, I handed them these incident reports and I

asked them to fill it out just as they spoke to me.

         Q.   Okay. Who -- and at the bottom there

there's a name, administrator name. Why is your name

not there?

Transcript of Hearing
Conducted on October 19, 2023                                    175

A.   So, the incident report, after the students complete it, it gets handed to an administrator. And the administrator that these were handed to was Ms. Kelly James.

Q.   Okay. And why does it have to be handed to a administrator? And I ask this because you talked about how you sat with Ms. Smith and now we have a court report that's signed by Kelly James.

A.   Mm-hmm.

Q.   So, what -- what -- why is that report handed to Kelly James to handle?

A.   Mm-hmm. So, this is our Independence High School incident report, which always goes to administration so that they can then further investigate it within the school system. The CPS referral is with CPS.

Q.   In timeline wise, considering the reports that we just talked about plus the CPS referrals you referred to earlier, what is the timeline on this particular date, March 31st, when these students came to you and you collected, or helped them to collect this information.

Transcript of Hearing
Conducted on October 19, 2023                    176

A.   Mm-hmm. Um, immediately after they spoke with me -- immediately I would have given them this incident report to write while I go speak with Ms. Smith to do the CPS referral.

Q.   So, this -- while they were writing this you were not with them -- they being the students. You were not with either student K███ or G████?

A.   I'm -- so, I may have been in there for a few minutes but for the majority of it, no.

Q.   Okay. What are you saying -- what's happening while you're sitting in there with them?

A.   I'm usually doing my work and I tell them when they're done to hand it back to me.

Q.   Okay. I want you to flip to another tab in that binder -- tab B as in boy.

A.   Mm-hmm.

Q.   That's LCPS 00017 through LCPS 000 -- excuse me. I misstated the numbers. I'll correct that. The Bates numbers are LCPS 00 -- no it is, 00017 through LCPS 00020. Okay. Are these the CPS referrals to which you referred in your earlier testimony?

A.   Yes.

MR. PLOFCHAN:  Foundation? She didn't make them. She's not listed as -- as part of them. Uh, it's not an email to or from her. So, I wouldn't know how she knows that.

MS. JOHNSON:  She's testified to it. We've already laid the foundation as to why she was there and what she did. You -- you know, opposing counsel doesn't have to agree but she's testified to that, and it goes to the weight.

MR. PLOFCHAN:  She said report -- reports were made by Ms. Smith after she went there but she can't -- there's no foundation that she knows that these were the reports that were made by Ms. Smith.

MS. JOHNSON:  And we're -- again, we're limiting the testimony and revisiting something that's already been established. Uh, Ms. Northart stated that she was -- she talked about two sets of reports. We've covered tab A, which are the student's incident reports statements that they completed.

And she also stated, and actually gestured with her hand when she did, that she was there to sit with Jaclyn Smith when she made the -- the -- the other

Day 000724

reports. Went through a long line of testimony where I said are you talking about a CPS referral? Yes.

There was an objection to that in which we had to establish who Jaclyn Smith was, and in the probative value of Ms. Northart's testimony. So, that was already done. And here we are. Here are the reports.

MR. PLOFCHAN:  There is no foundation that this is the report, not a copy of it, not an alteration, etcetera.

This is actually a copy of something from Angela Wiley at the top. And it appears to be an email from LCPS to LCPS CPS report was cc'd to people. Ms. Northart is not there.

Uh, and it's -- Ms. Jaclyn Smith is a cc, meaning she's receiving this from somebody not sending it to someone. There's no foundation that this report is the referral that Jaclyn Smith made in the presence of Ms. Northart.

This is a copy of something; then of which Ms. Smith is the recipient of not the sender of.

MS. JOHNSON:  Your Honor, the document speaks for itself. It is -- the subject matter states CPS

Transcript of Hearing

Conducted on October 19, 2023                    179

referral 3468 from Jaclyn Smith on page --

THE COURT: Well, at this point the court will receive it. Again, it -- it -- I I hear what you're saying but it does go to the weight that the court ruled accorded. I mean at this point.

MR. PLOFCHAN: Your Honor, I thought it went to the foundation that they hadn't established that this was the document that was sent. But the court has made its ruling.

MS. JOHNSON: Go ahead and answer or --

THE COURT: Yes.

MS. JOHNSON: Uh, again. Foundation. We -- we just started. I just started asking about the question. I haven't even been able to, you know. The first question was is this the report? And then we had the objection saying I hadn't laid a foundation. So, I haven't had an opportunity.

THE COURT: All right. Go ahead.

BY MS. JOHNSON

Q. Thank you. Uh, so, Ms. Northart, I think there's a question out there about do you recognize these. Well, I didn't think I -- I asked the question

Day 000726

Transcript of Hearing
Conducted on October 19, 2023                    180

yet so, I ask it again, just in case, and make it clear. Do you recognize the documents, basically, as LCPS 00017 and LCPS 00018 and a document with it LCPS 00019 through LCPS 00020?

A.   Yes.

Q.   What are these documents?

A.   So, this is the CPS referral. The referral is made over the phone.

Q.   Explain that please.

A.   Yeah. So when a referral is made, Jaclyn Smith calls the CPS hotline, and it is made over the phone. Um, I don't get a copy of this, but it is sent to all of the other parties.

MR. PLOFCHAN:  I want objection. Again, foundation. She's never -- she doesn't get a copy of this how is she able to say this is what was sent?

MS. JOHNSON:  I actually was going to ask clarifying question before --

THE COURT:  Well, I'll approve -- withhold.

MR. PLOFCHAN:  Appreciate it.

BY MS. JOHNSON

Q.   All right. So, how did you become familiar

Transcript of Hearing
Conducted on October 19, 2023                    181

with this document since, as you noted, you did not get

-- you're not copied on the -- the immediate recipients

of this referral.

        A.  Ms. Smith forwarded -- has since forwarded

me a document.

        MR. PLOFCHAN:  Now, I'm going to object that

that now comes to another document we would show the

forwarding, which is not part of the package.

        MS. JOHNSON:  Your -- Your Honor, this is a

document that's attached to the the investigative

report. And she's testifying as to whether she's seen

it before. Um, we could certainly provide the forward

as well if that would alleviate any concerns about the

document.

        I -- I fear we're going to be back to the same

place about whether foundation has been laid or is

actually -- actual document. The point here is she was

part of the conversation and was actually in the

conversation to have a referral made.

        THE COURT:  I'll allow it.

BY MS. JOHNSON

        Q.  Thank you. So, if you would look at -- at

Transcript of Hearing
Conducted on October 19, 2023                              182

the bottom of LCPS 00017 going -- going down to the bottom, the -- under narrative. There's a -- it looks like there's a box.

A.    Mm-hmm.

Q.    And it begins in the first -- the first couple words in that box are G█████ reported.

A.    Mm-hmm.

Q.    Uh, would you please re-familiar -- re-familiarize yourself with that and -- and advise -- answer whether whether that is what you -- you provided -- you provided to Jaclyn Smith.

MR. PLOFCHAN:  Objection. Leading. Uh, and -- and validating. If the documents in, the documents in. She can't validate the document.

MS. JOHNSON:  Her validating the document. Part of the issue is, is whether she's actually -- she provided the information. That's the whole point of this con -- this -- this establishment is did she actually -- does she have firsthand knowledge about what was put in the referral.

THE COURT:  I choose read it and see if it refreshes your -- or not doesn't refresh but what does

Day 000729

Transcript of Hearing
Conducted on October 19, 2023          183

it -- your recollection as to what occurred.

THE WITNESS:  Yes.

MS. JOHNSON:  Okay. In this -- the next document, LCPS 00019 --

MR. PLOFCHAN:  Your Honor, before we go any further I don't believe Ms. Northart was sworn.

THE COURT:  Yes she was.

MR. PLOFCHAN:  Was she?

THE COURT:  Yeah.

MR. PLOFCHAN:  Okay. Okay. Thank you.

BY MS. JOHNSON

Q.  The bottom of LCPS 00019.

A.  Mm-hmm.

Q.  Under the narrative in the box that begins two words, K█████ reported.

A.  Mm-hmm.

Q.  Does that confirm your recollection of what you communicated to Ms. Smith.

A.  Yes.

Q.  Thank you. Did you have any other involvement in the -- the March 31st reports by G█████ and K█████ other than what we talked about today?

Transcript of Hearing
Conducted on October 19, 2023                184

A.  No.

MS. JOHNSON:  All right. Thank you. That's all the questions I have at this time.

CROSS EXAMINATION

BY MR. PLOFCHAN

Q.  So, you testified that your -- the -- the -- this complaint was made on March 31, 2022. Correct?

A.  Yes.

Q.  And you had no complaints about Mr. Day from these two people prior to that day. Correct?

A.  Yes. Correct.

Q.  And they came in together. Correct?

A.  Yes.

Q.  And you didn't segregate them to see if they would tell a consistent story, did you?

A.  I can't recall.

Q.  You didn't, did you?

A.  I can't recall.

Q.  Well, you can't recall segregating them meaning you can't establish that you did segregate them, right?

A.  Correct.

Day 000731

Transcript of Hearing
Conducted on October 19, 2023                    185

Q.  Okay. And so, they were there feeding on each other talking to you. Correct?

MS. JOHNSON:  Um, objection. Calls for speculation.

MR. PLOFCHAN:  No. I -- they were the -- so, if G▇▇ said something, K▇▇ was there in her presence so that she could learn what the statement was and possibly repeat it. Correct?

MS. JOHNSON:  Again, objection. Speculation. I'm sorry. She can't speak to the mindset of these two students by sitting there.

MR. PLOFCHAN:  I'm speaking of the circumstances that she was there where she could hear it and potentially --

THE COURT:  Well, I think that you -- you're adding something. Were you there when --

BY MR. PLOFCHAN

Q.  Okay. So, K▇▇ was there when G▇▇ talked. Correct?

A.  I can't recall.

Q.  If they were there together, how can you not recall whether Katie was there when G▇▇ talked.

Transcript of Hearing
Conducted on October 19, 2023                    186

A.  They signed in at the same time.

Q.  And you met with them together. Correct?

MS. JOHNSON:  Sorry. Could we please let the witness answer?

THE COURT:  Yeah. Give her --

BY MR. PLOFCHAN

Q.  I'm sorry.

A.  Yes.

Q.  Okay. And you then didn't -- you didn't do any investigation, did you?

A.  No.

Q.  You just heard what they -- they had to say collectively and asked them to write it. Correct.

A.  Yes.

Q.  Okay. And yet, you made --

MS. JOHNSON:  I'm sorry. I didn't get a chance --

MR. PLOFCHAN:  What's your definition --

THE COURT:  Hold on. Wait a minute. One at a time.

MS. JOHNSON:  I'm sorry. I just want to object to that -- that -- the question, uh. Because it

Day 000733

Transcript of Hearing

Conducted on October 19, 2023                    187

misstates her testimony. She did not state that they collectively responded to that question. So, I was objecting to a misstatement.

MR. PLOFCHAN:  She answered it.

MS. JOHNSON:  To get in an objection --

MR. PLOFCHAN:  It's not my misstatement if she answers it.

MS. JOHNSON:  I'm -- I'm objecting, again, I'm preserving my objection.

MR. PLOFCHAN:  Okay.

MS. JOHNSON:  For the state -- because -- and I ask that we move to strike that answer.

THE COURT:  Well, let's go back. And let's do it over again.

BY MR. PLOFCHAN

Q.  They were -- they came in together and then you -- you heard what they had to say and then you gave them each a sheet of paper to write on. Correct?

A.  Yes.

Q.  Okay. And were they in the same room when they were writing it?

A.  I can't recall.

Transcript of Hearing
Conducted on October 19, 2023                    188

Q.   Well, where else would they have been?

A.   Conference room, perhaps.

Q.   Well, you don't know.

THE COURT:  That's what she said.

BY MR. PLOFCHAN

Q.   Okay. So, then you also said that you had reason to suspect that they were abused or neglected. Correct?

A.   Correct.

Q.   What is your definition of abuse and neglect?

MS. JOHNSON:  Objection. Relevance. Her definition is not what's at issue here.

MR. PLOFCHAN:  Well, I -- I need to know her understanding of what is something to be abused or neglected. The -- the school wants to say that there was some valid finding or a -- or sufficient finding for a referral and frankly, there isn't because there doesn't mean anything based on what your --

THE COURT:  Well, I don't know whether there is or not. Now, why -- why don't you try to ask a different question.

Day 000735

Transcript of Hearing
Conducted on October 19, 2023                    189

MR. PLOFCHAN:  Okay. What is the definition of abuse, neglected under the statutes governing CPS?

THE COURT:  Well, not that. No, I -- I think she can give what her opinion is for that.

BY MR. PLOFCHAN

Q.  Well, that's why I asked her what does -- what does it mean to be abused or neglected?

A.  That can be under physical or emotional abuse.

Q.  Okay.

A.  And -- okay.

Q.  Are you finished?

A.  Mm-hmm.

Q.  I didn't -- okay. Was there any allegation made of physical abuse?

A.  No.

Q.  What you said is your definition of emotional abuse?

A.  If a student is experiencing distress over comments, statements being made to them.

Q.  So, your opinion of whether someone is emotionally abused deals with the student's reaction to

Transcript of Hearing
Conducted on October 19, 2023                    190

statements as opposed to any investigation of what the actual statements were. Correct?

A.  Can you restate that?

Q.  Well, you said that if the student is distressed and so forth. So that's the student's reaction to an alleged statement and is not dependent on whether the alleged statement is properly reported. Correct?

A.  I guess I should rephrase what I said in terms of causing the student distress and dependent on what the statements were.

Q.  Okay. So, let's say that the student reported that he says things to me that makes me feel like a whore. And I'm very distressed about that. Is that a candidate for someone who is emotionally abused?

A.  I would have to ask further questions.

Q.  But you didn't ask any further questions. Correct?

A.  I did.

Q.  I thought I just ask you if you had done any further investigation and you said no.

MS. JOHNSON:  Objection. Mr. Plofchan is --

testimony.

MR. PLOFCHAN:  It's not a characterization. It's exactly what I asked her, and she said she hadn't done any further investigation.

THE COURT:  Well, I -- I think that -- well why don't you ask a different question. What -- what if anything further did you say or do as a result of what you heard?

BY MR. PLOFCHAN

Q.  Okay. I'll ask that question. I thought my question was fine, but I'll ask that question. What, if anything, did you do -- say or do as a result of what you had heard?

A.  What -- I asked what comments were made to you.

Q.  Okay. And you didn't write those down?

A.  They wrote those down.

Q.  Well, I'm -- so, that's what I'm curious about. You said that what they wrote down was exactly what they reported. Correct?

A.  Yes.

Q.  So, if they don't report what the comment

Transcript of Hearing
Conducted on October 19, 2023                                    192

was but just say, that the comment made me feel like a whore, and you found that that was evidence of abuse. Correct.

MS. JOHNSON: Objection. The she can't speak to what's in these student's mind. Again he's calling for speculation. And he's also -- it's calling for testimony that's really not in the record. She's nowhere saying that she makes a determination about what is abuse based on her opinion of what is abuse.

MR. PLOFCHAN: She said --

MS. JOHNSON: Or otherwise.

MR. PLOFCHAN: She reported it as a mandatory reporter of evidence of abuse and neglect. She said there was no sexual abuse. I asked her what the definition was, and she said it's either sexual -- physical abuse or emotional abuse. There was no physical abuse.

Now, we're dealing with emotional abuse. I asked her what did she do when the -- and I said isn't it related to how the young person reacts as opposed to necessarily what the other person says. She got tripped up.

Transcript of Hearing
Conducted on October 19, 2023                                  193

She then says well maybe I asked other things at that point because the court asked questions. Then I said, well, if it's only a question of whether or not the comments make me feel like I'm a whore. And that's the answer. That's --

THE COURT:  No, that's not the answer, Counsel. She said that they wrote it down.

MR. PLOFCHAN:  Right. They wrote it down. And the comments he -- he makes -- the comments he makes, it makes me feel like he's implying that I'm a whore, is what it says in the document. Okay.

THE COURT:  I think it says more than that if you read the whole thing.

MR. PLOFCHAN:  And that's not the best feeling. Period. So, based on that -- based on that statement, you believe that that it -- whether you think that she was sufficiently, emotionally abused based on that statement. Is that what you're saying?

MS. JOHNSON:  Your Honor, before she answers I would like approval on my objection please, respectfully.

THE COURT:  Sustained.

Day 000740

Transcript of Hearing
Conducted on October 19, 2023                                    194

MS. JOHNSON:  Thank you.

MR. PLOFCHAN:  I don't know what the objection was.

MS. JOHNSON:  Again, it called for speculation, uh --

MR. PLOFCHAN:  I'm asking you your basis for saying that there was a valid reason for a CPS referral. You said there was no physical abuse.

MS. JOHNSON:  Objection.

MR. PLOFCHAN:  That it was emotional abuse.

MS. JOHNSON:  Objection. We're not allowing the witness to answer the question.

THE COURT:  Hold on. Wait. Wait a minute, Mr. Plofchan.

MR. PLOFCHAN:  Sure.

THE COURT:  When the court is speaking, just wait.

MR. PLOFCHAN:  Yes, Sir. I get it.

THE COURT:  Well, my -- what -- ask one question at a time. You go along with this long narrative as opposed to just asking a question.

MR. PLOFCHAN:  Well, I'm trying to give the

Day 000741

Transcript of Hearing
Conducted on October 19, 2023                195

predicates for what I -- what she previously said.

THE COURT:  Then -- then break it up. Then break it up.

MR. PLOFCHAN:  Okay. I'm going to give you some predicates. The predicate is, I asked you if there was physical or emotional abuse and you said there was no physical abuse. Then you said --

THE COURT:  Is that correct?

BY MR. PLOFCHAN

Q.  Is that correct?

A.  Yes.

Q.  And then you said that you had a basis for a referral to the CPS for potential emotional abuse. Correct?

A.  Yes.

Q.  And that that -- and I asked you the question of is that based on the young lady's perception or something that was actually said. Correct? Is that correct?

A.  Yes.

Q.  And you said it was based on her perception. Correct?

Day 000742

Transcript of Hearing
Conducted on October 19, 2023                    196

A.  I would say it's based on both.

Q.  Okay. So, what statement -- if it was made -- based on both, what statement is identified by G███ L███? Any specific statement that becomes a basis for sexual abuse -- emotional abuse.

A.  So, where the accusation that she has had sex with the whole football team.

Q.  Where does it say that?

A.  On LCPS 00018.

Q.  That's not in her report, Ma'am. That's not -- her having -- I'm going to get to 00018 in a minute.

MS. JOHNSON:  Objection. I don't think that we actually identified a report that you -- that -- which the witness should testify about. She was just asked to provide a statement that was reported to her.

MR. PLOFCHAN:  I'm sorry. If we go exactly to 0013, which is exhibit A, which was identified by Ms. Johnson, because these were the incident reports that you said you generated. Right?

MS. JOHNSON:  Is there, again is there a ruling on the objection.

Transcript of Hearing
Conducted on October 19, 2023                    197

THE COURT:  Wait. One at a time. One at a time.

MS. JOHNSON:  Is there a ruling on the objection?

MR. PLOFCHAN:  The objection. I don't -- the objection is that -- I'm responding to the objection. I'm looking at 0013, 0016 that she identified as exhibit A to the incident -- to the investigation report. And it's the same documents that Ms. Northart said she asked them to write, which contains --

THE COURT:  Now, let -- again, you're going on this long narrative.

MR. PLOFCHAN:  Sorry.

THE COURT:  Why don't you break it up. Why don't we talk about 0013. What, if anything, in that statement led you to believe that they -- he had said something that was abusive?

BY MR. PLOFCHAN

Q.   That's fine. What, if anything, in 0013 indicates anything that said that he was abusive?

A.   Um, she -- she writes ongoing staff said to me on coach day about being a slut whore. He said

Day 000744

Transcript of Hearing
Conducted on October 19, 2023                    198

that I'm always on my knees, going to buy me a gift from Toys R Us for my baby shower that would happen in high school. The only reason I'll go to college is to F around with all the D-1 football athletes. If he was our age, we would be all over him and he would reject us.

Q.   Where were those statements made?

MS. JOHNSON:  Sorry. Was the witness done testifying?

THE COURT:  No, she wasn't.

BY MR. PLOFCHAN

Q.   All right. Go right ahead.

A.   Boys will only use me for my money.

Q.   Okay. Are those statements or are those conclusions of her statements?

MS. JOHNSON:  Again, objection. Calls for speculation.

MR. PLOFCHAN:  No, it doesn't call for speculation, Judge. Because --

THE COURT:  No. I -- I disagree. Over -- that's -- you -- you -- you -- I'll sustain your objection. No. No. Now, she's saying that this is what

Transcript of Hearing

Conducted on October 19, 2023                        199

they -- he -- he supposedly said to them.

BY MR. PLOFCHAN

Q.   That's what I'm asking. Did they -- is this what they summarize him saying or are these his statements?

A.   This is what they have reported he said.

Q.   That he said or that they -- it's a summary?

THE COURT:  No, it's what he said. Because there are about four or five different things, counselor.

MR. PLOFCHAN:  I know. And the question is, he says I'm always on my knees. He says that. He says -- when you say he says that, Judge, that's not a statement, that's a summary. All right. Uh, that he's going to buy me a gift for my my baby shower. And that's what I'm getting around. Is that he -- that they say Mr. Day said quote this or did he say he -- that he said that he was going to do this as if it's a summary. And that's what I'm trying to get at.

THE COURT:  Sustained.

MR. PLOFCHAN:  What investigation --

Transcript of Hearing
Conducted on October 19, 2023                    200

THE COURT:  I said sustained.

MR. PLOFCHAN:  I'm asking another question.

THE COURT:  Okay.

BY MR. PLOFCHAN

Q.  What investigation did you do to determine whether these were summaries or actual statements?

A.  When they came in and they said comments were made. We're uncomfortable. I would say what comments were made? They'd tell me and I'd have them write them down.

Q.  So, they wrote down -- and I -- so, I asked you what did you do to determine whether these were statements versus summaries? Anything?

MR. JOHNSON:  Again, objection, Your Honor. You -- you've already addressed this topic in a previous objection and sustained it. Uh, and ask for the question to be worked another way.

THE COURT:  Next question.

BY MR. PLOFCHAN

Q.  Okay. That number 00 -- no, not that. The next previous one. 0015. What statements in there are actual statements that amount to emotional abuse, in

Transcript of Hearing
Conducted on October 19, 2023                    201

your mind?

A.   That I'll never get a boyfriend because I've been around too much. My outfits are skimpy. Um, said guys only use me for my body.

Q.   Define emotional abuse.

MS. JOHNSON:  Objection, Your Honor. Asked and answered.

THE COURT:  Sustained. That would -- that's what I'm going to say. She doesn't have to go any further than where she's gone. You asked that question earlier and she gave her opinion.

MR. PLOFCHAN:  Okay. And so, her opinion is it made her feel distressed?

THE COURT:  No. She gave her opinion as to what --

MR. PLOFCHAN:  That's what her opinion was.

THE COURT:  No. No. Counselor, you -- you beating a dead horse here at this point. Let's move on.

MR. PLOFCHAN:  Well, I'm concerned that the court is not -- or the judge is not wanting me to discern that --

THE COURT:  Counselor, I believe in giving I

Transcript of Hearing
Conducted on October 19, 2023                                   202

owe you, counselor, the opportunity to cross examine but when you start -- you going over the same ground constantly, after it's been asked and answered. No. Move on. That -- that's -- move on.

MR. PLOFCHAN:  I understand. I -- know, for the record, part of our defense is that these are not accurate, reported statements. They are summaries. And that's why I'm exploring this line because -- and they -- they are not some -- they are not statements, they're summaries.

THE COURT:  Are you finished, for the record?

MR. PLOFCHAN:  I am.

THE COURT:  I made my ruling.

MR. PLOFCHAN:  Okay.

THE COURT:  Okay. Let's go on.

BY MR. PLOFCHAN

Q.  So, you also indicated that not to your knowledge, have they ever been untruthful to you. Correct?

A.  Yes.

Q.  Did you ever investigate whether they were ever untruthful to you?

Transcript of Hearing
Conducted on October 19, 2023                203

A. No.

Q. So, you saw G[REDACTED] for a whole year, from '21 through '22, the whole school season, right? You were her counselor.

A. Yes.

Q. And from the begin -- and how often did you see her as her counselor?

A. Once a month, maybe.

Q. Okay. So, you saw her in August, September, October, November, December, January, February and March. Correct?

A. Roughly. Yes.

Q. Okay. So, you saw her at least eight times. And how long were those sessions?

A. I couldn't tell you.

Q. Were they at least a half hour?

A. I couldn't tell you.

Q. Were they one minute?

A. Longer than a minute.

Q. Longer than 10 minutes?

A. I couldn't tell you.

Q. So, you saw her -- but you saw her in a

Day 000750

Transcript of Hearing
Conducted on October 19, 2023                     204

counseling function. Correct?

A.  Yes.

Q.  That's to make sure she's emotionally well and doing well?

A.  Or academically or college and career focused.

Q.  Okay. And in none of those times did she ever mention anything about Mr. Day, did she?

A.  No.

Q.  And yet, in her report she says this has been continuous since he came to the school, which was in 2020. Did that discrepancy cause you to question whether they were being truthful or not?

MS. JOHNSON:  Objection. Objection. Assumes facts not in the record.

Q.  What facts does -- are not in the record?

MS. JOHNSON:  That -- that she's not being truthful. You said you called it a discrep -- I'm sorry, Your Honor, Counsel called it a discrepancy. Uh, there -- there's nothing established that there was a discrepancy.

Q.  There's a discrepancy -- there's an abs --

Transcript of Hearing
Conducted on October 19, 2023                                    205

I'll rephrase it. Did the absence of her ever saying anything for the eight months that you saw her and the and the inconsistency of alleging that this was going continuously for since 2020 ever cause you to question whether she was being untruthful on March 31st, 2022?

A.   No.

Q.   No?

A.   No. It's not my job.

Q.   Your job is just to report?

A.   Yes.

Q.   Oh, really. So, counselors don't have any -- any role in determining whether or not the person reporting to them is being truthful?

A.   No.

Q.   So, you don't have an opinion as to whether she's truthful or not?

MS. JOHNSON:  Objection.

THE COURT:  Sustained. She already gave her opinion. She said in her -- the best to her recollection, she had not been untruthful. That's as much as you can go -- get counselor.

BY MR. PLOFCHAN

Day 000752

Transcript of Hearing
Conducted on October 19, 2023                                206

Q.  So, let's go to the tab B. LCPS 0017. You see that?

A.  Yes.

Q.  This is a document you say was sent by Ms. Smith while you were present to CPS. Correct?

A.  She makes the referral over the phone. I'm not sure this is written by her or the reporter taking the information.

Q.  But you said you got a copy of it from her.

A.  Since then. Yes.

Q.  When, since then.

A.  Last week. In preparation for this.

Q.  Last week. So, you don't know what you received last week, whether that was made contemporaneously on the 31st of March do you?

A.  I know this information in this report was reported on the 31st of March.

Q.  Really? So, when it says in the report that the complaint date was the 22nd of March 2022 and not March 31st, 2022, is that what was reported?

A.  I don't know why that date is there.

Day 000753

Transcript of Hearing
Conducted on October 19, 2023                        207

Q.  Or maybe it wasn't the report that was made on the 31st of March '22. You don't know, do you?

A.  This information was shared on the 31st of March.

Q.  Was there a complaint dated March 22nd?

A.  I don't know why that date is on there.

Q.  Okay. And do you know if these were the exact words that were shared on March 31 or you just -- was that in your preparation. You just presumed they were?

A.  No, I shared this based on what the students shared with me.

Q.  You shared this?

A.  With -- I shared this information with Ms. Smith.

Q.  Did you write -- did you write this up?

A.  No.

THE COURT:  Counsel, wait a minute. There's certain questions -- why are we asking. We know that she didn't write it up. We know that.

MR. PLOFCHAN:  Because I don't believe she's being truthful, Your Honor. And she's --

Day 000754

Transcript of Hearing
Conducted on October 19, 2023                    208

THE COURT:  Counsel, I've -- I've given you -- I've given you a lot of leeway because you cross exam but don't take it too far.

BY MR. PLOFCHAN

Q.  All right. What did you do to prepare? I mean, you just got something last week. What did you do to prepare?

A.  I reviewed the report.

Q.  Who asked you to prepare?

A.  Nobody.

Q.  So, how did you know you were going to even be testifying?

A.  I got a phone call.

Q.  From whom?

A.  Lydia -- Linda.

Q.  Okay. And what did she say you were going to be testifying about?

A.  Uh, Mr. Day.

Q.  Okay. And then you decided to look at your own documents?

A.  So, I spoke with Ms. Smith and told her that I would be coming to speak with Ms. Johnson.

Day 000755

Transcript of Hearing
Conducted on October 19, 2023                     209

Q.   Okay. And did you look -- what documents did you look at?

A.   That's when Ms. Smith sent this to me, a copy of it.

Q.   So, she sent you a copy of this document?

A.   Yes.

Q.   That has the attachment up at the top from Angela Wiley?

A.   I -- she sent me this report. I don't know if it's the same email.

Q.   And you didn't memorize the report.

A.   No.

Q.   So, you don't even know if it's the same report, do you? It may have some of the same words, but you don't know if it's the same report, do you?

A.   I know that I shared this information.

Q.   Did your report that you looked at say that the complaint date was the 22nd of March 2022.

A.   Yes.

Q.   And that didn't cause you to question whether it was the same report?

A.   I don't know why the date was the 22nd.

Transcript of Hearing
Conducted on October 19, 2023                    210

Q.  I didn't ask that, Ma'am. I asked if it caused you to question whether it was the same report from a year ago.

A.  No.

Q.  Okay. Have you ever done any investigation regarding the incidents under this case?

A.  No.

Q.  Uh, when was the last time you spoke to either G███ or K███?

A.  Some time in the spring of 2023.

Q.  So, this past year.

A.  Yes.

Q.  Did you continue to act as their counselor, either of them?

A.  No.

Q.  Okay. And did you talk about this incident?

A.  No.

Q.  When was the last time you asked them anything about any incident related to Mr. Day?

A.  Ask them anything? The 31st of March.

Q.  When was the last time they told you

Transcript of Hearing
Conducted on October 19, 2023                                    211

anything?

A.  Told me anything?

Q.  Related to Mr. Day.

A.  That would be the 31st.

Q.  So, all your information is what -- is from the 31st of March 2022.

A.  Regarding these statements, yes.

Q.  Okay.

THE COURT:  Any redirect?

REDIRECT

MS. JOHNSON:  I have one -- it will be just one or two follow up questions. Uh, fairly minor, if -- if you would.

BY MS. JOHNSON

Q.  Ms. -- Ms. Northart, will you flip to tab nine.

A.  Yes.

THE COURT:  In your book?

MS. JOHNSON:  Yes. I -- yes Your Honor, the white -- it's the white binder. Do you recognize the documents labeled LCPS 001 and L 0 -- excuse me. LCPS 00001 and LCPS --

Transcript of Hearing
Conducted on October 19, 2023                    212

MR. PLOFCHAN:  Yeah. This wasn't provided to us in advance.

MS. JOHNSON:  LCPS 00002.

MR. PLOFCHAN:  I'm going to object. This wasn't provided to us in advance.

MS. JOHNSON:  Again Your Honor we provided the documents that we had at the time. Um, supplemented as we know the issues about these individuals' credibility did not come up until the October 4th pre-hearing.

MR. PLOFCHAN:  This was not provided to us in advance, Your Honor. The first time I'm seeing this document is in this binder today.

THE COURT:  Sustained.

BY MS. JOHNSON

Q.  All right. Did that -- and so -- putting that aside what day did these students come to talk to you?

A.  March 31st, 2022.

Q.  All right. And then, with regard to the CPS report you were asked questions about the -- it looks like the complaint date. And this is LCPS 00017 and -- and on the second document LCPS 00019.

Day 000759

Transcript of Hearing
Conducted on October 19, 2023                    213

A.  Mm-hmm.

Q.  March 22, 2022, complaint date.

A.  Mm-hmm.

Q.  Is that -- do you -- do you know -- is it your testimony that you do not know what that date references?

A.  I don't know why that date was there. I can speculate.

Q.  Don't want you to speculate.

A.  Okay.

Q.  If that's your answer, that's your answer. Just want to clarify that.

A.  Okay. Yes. I do not know.

Q.  Did you provide that date to Ms. Smith or to anyone else?

A.  I don't believe so. No.

MS. JOHNSON:  Okay. That's all that I have.

THE COURT:  All right. Is she excused?

MS. JOHNSON:  Yes. You -- you are excused. Thank you.

THE COURT:  Thank you, Ma'am. Thank you for coming.

Day 000760

Transcript of Hearing
Conducted on October 19, 2023                214

MS. NORTHART:  Thank you.

MS. JOHNSON:  And Your Honor, did you want to make the the [crosstalk] witness.

THE COURT:  Oh, yeah. Please. Uh, don't -- make sure you do not discuss anything about anything you testified with anybody else.

MS. NORTHART:  Okay.

THE COURT:  And okay. Thank you.

MS. NORTHART:  Thank you.

THE COURT:  Uh-huh.

MS. JOHNSON:  Thank you. Currently as it stands, Your Honor, we have one more witness. Justin is going to get her now.

THE COURT:  Okay.

MS. JOHNSON:  Uh, it will be Ms. Angela Wiley. We expect that this based on the nature of the proceeding so far, this one may be the longest or the lengthiest based on the way the day is broken up. That's why we have her reserved at this point. The other ones, there was school -- they said they had to get back to school.

THE COURT:  I understand.

Transcript of Hearing
Conducted on October 19, 2023                215

MS. JOHNSON:  Uh, so if -- I don't know if you want to take that into account for any comfort break or -- or brief recess prior to her coming in at this time or if you would like to wait until, Your Honor, we get a little further along.

THE COURT:  Well, we'll see how far your direct goes and if we need to, we may break it up between before cross.

MS. JOHNSON:  Okay. Thank you.

THE COURT:  My sentiments exactly.

MS. JOHNSON:  She's just upstairs so, they should be --

THE COURT:  No problem.

MS. JOHNSON:  Sorry about the wait.

THE COURT:  Well, maybe it's just as well. We can't see outside. Because it's --

MS. JOHNSON:  Is it raining.

THE COURT:  No, no, it's a beautiful day out there. That's what I'm just saying. It -- it would be worse if I could see out beautiful as it was out. Please come stand right here for just a moment. And turn.

Day 000762

Transcript of Hearing
Conducted on October 19, 2023                   216

WITNESS ANGELA WILEY-SMITH, DULY SWORN

CLERK:  Thank you.

DIRECT EXAMINATION

BY MS. JOHNSON

Q.  Could you state your full name for the record, please?

A.  Sure. Angela Marie Wiley-Smith.

Q.  Okay. Do you go by any other name than that?

A.  Angel.

Q.  How long have you held your current position at LCPS?

A.  I have been in this position almost eight years. The title has changed but my position is really the same.

Q.  Okay. What is -- what -- what is what is your current position?

A.  I am the HRTD coordinator for equity and compliance.

Q.  What are your duties in that position?

A.  I primarily work with investigations and employee conduct primarily around 75 or school board

Day 000763

Transcript of Hearing
Conducted on October 19, 2023                          217

policy 7516, just professional conduct and school board

policy 7014, which is environments free from

harassment, discrimination and abuse.

Q.   As part of your duties, do you actually

conduct any investigations?

A.   I do conduct investigations.

Q.   And how often do you conduct

investigations?

A.   Um, very frequently. Um that's my daily --

daily -- daily tasks are to conduct investigations.

Q.   Okay. So we going -- fast forward and

switching gears -- um, switch gears here for a moment.

Do you -- are you -- did there come a time when you

became known -- or it became known to you that there

was a referral or report of suspected abuse and neglect

in violation of school policies against Mr. Brian Day?

A.   Yes.

Q.   When was that? When did you become aware

of that?

A.   Um, that was March 31st, 2022.

Q.   Okay. So -- and what was the complaint

that you received?

Transcript of Hearing
Conducted on October 19, 2023                                      218

A.   Um, the complaint was that there were some unprofessional comments made to particularly female students at Independence High School. Um, there was a CPS report submitted.

Q.   How did you learn about this -- these report -- this report?

A.   Through the CPS report that was submitted to Loudoun County public schools. We, in addition to them submitting a report to CPS, they also do an internal form that comes to all the HRTD investigators. And that was -- that was given through the administration over at Independence High School.

Q.   Okay. So, walk us -- what is your next steps when you -- once you received that information?

A.   So, once we receive the information there was a written statement that was also attached to that that CPS report. Um, once that happens, we typically do an intake. In this particular case CPS was involved so a CPS worker was assigned to this case and we were notified via email that CPS worker was assigned to the case.

And then we work jointly with CPS when law

Day 000765

Transcript of Hearing
Conducted on October 19, 2023                    219

enforcement is not involved at that time. So, during that time, CPS assigned the caseworker. Caseworker reached out to me and then we were to schedule intake interviews with the alleged victims.

Q. You referred to we a few times in there, particularly with your last statement. Who is -- who are the we?

A. We would be the CPS caseworker, which was, at the time, Brenda Dehass and myself.

Q. Why are you conducting the investigation with Ms. Dehass?

A. Yes. Um, typically when we have an investigation that CPS is involved in it works better for us to speak with victims or alleged victims jointly instead of having them re-hash the same thing two and three times with different people. So, that's why we try. We don't always have the ability to work jointly with CPS but in this particular case we did.

Q. Who was --

A. We meaning -- we meaning HR for Loudoun County public schools.

Q. Okay. Who make -- do you know who makes

Transcript of Hearing
Conducted on October 19, 2023                220

the determination as to whether it's appropriate to
work with CPS on a particular investigation?

A.    Um, typically, the director of and
supervisor of my director and supervisor would, um --

MR. PLOFCHAM:  I'm going to object as to
typically. That's a --

Q.    She's testifying -- she's in the middle of
testifying about the general process so, I -- I -- it -
- it's --

THE COURT:  Well, why don't you direct the
question to the what did you do in this case.

Q.    For this case, who made the decision about
working with CPS?

A.    In this particular case my supervisor,
Alex Smith and myself made the decision for us to work
with CPS jointly.

Q.    Were you providing support to CPS?

A.    No, we were not supporting C -- we were
not providing support, we were simply helping to
coordinate when we would do interviews because they
sometimes do interviews on their own and they have to
contact the school, make arrangements to come out to

Day 000767

Transcript of Hearing
Conducted on October 19, 2023                    221

the school.

So, in this case, I made the call to Independence High School to say that we were coming out to speak with these students and to get parental permission and make sure that the parents were okay with meeting with both CPS and LCPS at the same time at Independence High School.

Q.  Okay. So, now you -- now that's been made. What happens next?

A.  We do the actual intake with the students and their parents and we, meaning CPS and HRTD me being the representative for HRTD. Um, once we do that, we start to schedule other interviews with potential witnesses and the accused. Once that happens, I craft a report. That report is submitted, and we go through the process of getting that report to whomever it needs to go to.

Q.  Okay. So, to back up, with regard to what happens next. Do you -- what is the extent of your discretion to make any of the decisions or to -- to carry -- conduct the investigation in the manner in which you just described?

Transcript of Hearing
Conducted on October 19, 2023                                        222

MR. PLOFCHAM:  I'm going to object to the form of question as to calls for a legal conclusion to what her discretion is.

MS. JOHNSON:  That's not a legal conclusion. We're talking about something in her position, description and duties.

MR. PLOFCHAM:  Well, she says what is the extent of your discretion is a legal conclusion. She can say what she perceives the extent of her discretion is but --

THE COURT:  As to the form of the question, I will sustain.

MR. PLOFCHAM:  Thank you.

BY MS. JOHNSON

Q.  Excusing the legal duty, how -- what -- how do you -- who makes the determination about your dicre- -- your -- your actual discretion, your role in how the investigation is conducted?

A.  I -- I'm kind of confused as to what the question is but if I'm understanding correctly what your question is we have a standard procedure for doing all of our investigations. Um, my investigation goes

Transcript of Hearing
Conducted on October 19, 2023                    223

through my supervisor, which then goes through my

director, which then goes through the chief human

resource officer or the compliance office, if there is

a 7014 complaint. Um, go ahead.

Q. Are you finished?

A. Yes.

Q. I didn't mean that the way it sounded so

please excuse me.

A. No, that's fine.

Q. Uh, I just didn't want to jump in. So,

back it up. You were describing the entire process

about interviewing and then crafting. You say crafting

a report.

A. Right.

Q. Who makes those calls, who to interview?

A. Typically, myself. Not typically. Myself

and CPS in this particular case decided who they wanted

to interview. Um, in this particular process, there was

a gap with CPS because they switched workers. So, in

this case, I moved on without CPS in July because there

was no communication with CPS and LCPS at the time.

Q. It sounds like -- I'm trying to clarify. I

Transcript of Hearing

Conducted on October 19, 2023                224

want to clarify something.

A.   I understand.

Q.   Because it sounds like you were saying, you know, moved on without CPS. What do you mean? Are you guys conducting a joint -- and investigation together?

A.   We were conducting a joint investigation but because their worker was not available and was non-responsive, we as in LCPS, had to continue on with our investigation and they were not included in the last interviews.

Um, and I do recall that Mr. Day's attorney did not want CPS involved in any interview that we did with Mr. Day. So, we did not do a joint investigation or a joint interview with Mr. Day. We did not jointly do interviews with the staff members that I spoke to. Um, but we did start our investigation doing it jointly. We did not end doing it jointly.

Q.   Okay. Are you using -- is -- are you using CPS standards for your investigation?

A.   No.

Q.   You mentioned joint so, what do you mean

Day 000771

Transcript of Hearing
Conducted on October 19, 2023                                    225

by that?

A.   Right. We do not use CPS standards. We do not use CPSs finding or anything of that nature. When -- when I say we jointly investigate, it is solely interviews that we're doing together. It is not our conclusion.

It is not our recommendation. It is solely we are both in the room at the same time that we are speaking to the parties involved in the particular investigation. And in this case, we started that way, but we did not end that way because of something that was happening on the CPS side.

Q.   Okay. So, you said you crafted your report.

A.   Correct.

Q.   Do you have any determination on what goes into the report?

A.   I do.

Q.   Can you explain and elaborate on exactly what your role is in crafting the report?

A.   So, what we do with our reports is we take our interviews with the accused, the victims, and the

Transcript of Hearing
Conducted on October 19, 2023                                      226

witnesses. We compile all of that information, and we use our school board policy to determine if there's a school board policy violation.

Q.    Okay. Did you do that in this case?

A.    I did.

Q.    Okay. Then so -- so, going back to the begin -- start right back at the beginning of the investigation. Uh, how -- how did you decide who to interview?

A.    I decided who to interview by speaking with the two alleged victims in the beginning. They mentioned some adult witnesses that they spoke to about their allegations. I chose to speak with those witnesses.

Um, and then through that there were some accusations that came through when I spoke to the adult witnesses that prompted me to speak with additional adult witnesses. And again, when I spoke with Mr. Day, there was an additional prompt to speak to an additional adult witness. We only -- we only spoke with two victims and two students because there were no student witnesses to the specific allegations that the

Transcript of Hearing
Conducted on October 19, 2023                    227

students were making.

Q.  Oh, and want to clarify something. You said you spoke to two witnesses, I mean, two victims and two students?

A.  No, the two victims were the two students. Those were the only students that we talked to.

Q.  And when you're saying victims, are you referring to the complaint -- the complainants?

A.  The complainants. Correct.

Q.  Who were the complainants in this case?

A.  Um, can I look at -- look at this. Don't want to get their names wrong.

Q.  Well, let me -- I'll tell you where to go. Um, we're looking in the white binder that's there in front of you, tab 10. And that's for the record document with Bates label LCPS 00003 through LCPS 0000 -- excuse me. I apologize. LCPS 00026.

MR. PLOFCHAN:  Uh, I'm going to move to strike the court dates and rulings that parts of this are not subject. So, I think, at best, could be 003 through 008. I believe it is. Eight.

MS. JOHNSON:  At this time, I'm not -- I'm not

Transcript of Hearing

Conducted on October 19, 2023                    228

asking Ms. Wiley to talk about anything in the report.

I'm doing a refresher -- refreshing the recollection,

if you will, regarding who she talked to. So, the

court's ruling is certainly noted. We've covered it

several times earlier in previous testimony. At this

point I'm only trying to identify the document so that

she can then have her recollection, excuse me,

refreshed.

        MR. PLOFCHAN:  Okay.

BY MS. JOHNSON

        Q.  Okay. So, do you recognize that document,

Ms. Wiley?

        A.  I do.

        Q.  Okay. What is this document?

        A.  This is the investigative report that that

I crafted.

        Q.  Okay. If you will please turn to, in that

document, pages LC -- excuse me bate -- the page Bates

label is LCPS 00006. And -- and just take a look at

that page.

        A.  Yes.

        Q.  Okay. And if you've had a moment to review

the information at the top in the section labeled
interviews, could you let me know.

A.  Yes.

Q.  Okay. All right. Does that refresh your
recollection as to whom you spoke?

A.  It does. It does.

Q.  Okay. All right. And so, out of those, who
were the students who you -- who you identified as
making the report that you investigated?

A.  The two students were K███ R███ and
G███ L███.

Q.  Okay. All right. So now before we continue
as it was just noted in an objection Ms. Wiley, want to
let you know, and if there's any additional supplement,
I ask Your Honor to please add to it.

But there's been a ruling that certain parts
of the report are not going to be admissible and
therefore cannot be testified to. So, I'm going to jump
around a little bit, perhaps, depending on your
answers.

But I want you to be aware that you cannot
discuss any uh, references to prior conduct in this

report as well as any references to remarks that are not identified as -- or conduct that you did not investigate -- that you investigated that was not otherwise identified as sexual in nature.

A.   Okay.

Q.   Okay. So, if there's anything in there that refers to something other than conduct complained of that was sexual in nature, we will not be discussing it today.

A.   Okay.

Q.   Okay. Is there anything else, Your Honor, or did that capture.

THE COURT:  I don't -- I don't think so.

BY MS. JOHNSON

Q.   Okay. Thank you. Uh, so -- so, Ms. Wiley, focusing only on the allegations about comments or conduct that was sexual in nature and therefore violative or alleged to be violative of school board policy 7014 and 7560, walk me through whom you -- to whom you spoke and -- and -- and the information that was collected.

And if you need a moment to -- to look at that

Transcript of Hearing
Conducted on October 19, 2023                                    231

document to refresh your recollection, feel free to do so. Again, keeping in mind the rulings that we discussed.

A.   Sure. Um, so, what was investigated that pertains to what you just explained statements such as -- excuse my language -- um, there was the accusation that K██████ made that Mr. Day said to her that the only reason she was going to go to college was to fuck around with all of the D-1 athletes. Um, referring to her in a sexual manner as always being on her knees. Um, and inferring that she was a slut or a whore.

G██████ also made some statements or allegations that Mr. Day made comments that men would only use her for her body. Um, and that she had sex with the entire football team. And again, inferred that she was a slut or whore -- and/or a whore.

Q.   And did you speak to any witness -- did you speak to the students about these comments in particular?

A.   I did.

Q.   Okay. What was -- what -- what -- tell us -- summarize the -- the interview that you had, please,

Day 000778

Transcript of Hearing
Conducted on October 19, 2023                    232

for -- for the record.

A.   So -- so, in the interviews, the students had provided written statements with the -- basically the same information.

Q.   All right. I apologize. I will jump in really quickly for that. You said the students. Were they interviewed together?

A.   The -- the students were not interviewed together. They were interviewed separately.

Q.   Okay.

A.   Um, and their written statements were written separately as well. Um, in those -- okay.

Q.   You can continue.

A.   Okay. In those interviews -- the separate interviews the students outlined that they felt uncomfortable with some of the statements that Mr. Day had allegedly made and that they had made reports to the head football coach and the department chair for P.E., Mr. Windows about some of the statements that they were very uncomfortable with over a period of two years that they had not reported previously.

Um, and the students shared that they had also

Day 000779

Transcript of Hearing
Conducted on October 19, 2023                                    233

had conversations with another coach, football coach. Um, and those two individuals prompted them to speak with the counselor in the administration about their -- their claims.

Q.   Okay. Now you -- you made a statement earlier on -- when you were summarizing that the students prepared their written statements -- or their -- there's written state -- their statements were written separately as well.

A.   Correct.

Q.   Could you explain what you mean by that?

A.   So, there were written -- written statements that were provided before we -- before I interviewed them. Those statements were provided by Independence High School to us through email and a there's an -- an attachment with the -- the CPS report. Um, those statements were written by the students at Independence High School. They were separate --

MR. PLOFCHAN:  Objection. Foundation.

MS. JOHNSON:  She's just talking about what she knows about the statements. Uh, what she reviewed in preparation for interviewing students.

Transcript of Hearing

Conducted on October 19, 2023                    234

MR. PLOFCHAN:  She's making a conclusion as that they were written independently and I'm -- I'm objecting there's no foundation that she would know.

MS. JOHNSON:  Actually, that was not the question I asked her to clarify what she meant when she says statements written separately as well. And that's what she's -- that's what she's stating. I have not heard her say one thing about she concluded that those students wrote those statements separately. I mean, there's something to be said about separately.

I understand where Mr. Plofcham is going with this and and that's why -- it's part of the reason I wanted to clarify that for my own understanding is whether -- what she meant when she says statements written separately as well. And that's what she's describing is her -- her own words in explaining what she meant by that. Um, she's not providing any opinion.

THE COURT:  I'll allow her to give her -- uh, answer the question Mr. Plofcham, you follow up with your -- with your cross.

MR. PLOFCHAN:  Sir, thank you.

BY MS. JOHNSON

Day 000781

Transcript of Hearing
Conducted on October 19, 2023                              235

Q.   You were in the middle of your answer. Do you recall what you were --

A.   Yes. I think I lost a little bit of my train of thought but they -- they were statements that were -- were provided by Independence High School. And like I said, they were separate.

Q.   Okay. Uh, what do you mean by separate?

A.   I -- I mean that according to their process at Independence High School, the students would not have been in the same room at the same time writing a written statement.

MR. PLOFCHAN:  Objection. Foundation. Move to strike. Or I'll bring it up on cross.

THE COURT:  I'll let you follow that up. How'd she know? I don't know.

MS. JOHNSON:  That -- that's what I was trying to ask.

THE COURT:  Okay.

MS. JOHNSON:  So, I -- if I -- Your Honor, if I may please.

THE COURT:  Yeah. Okay.

BY MS. JOHNSON

Day 000782

Transcript of Hearing
Conducted on October 19, 2023                    236

Q.   How would you know that they -- in this particular case, I -- we don't want to talk about what their policy typically is.

A.   Right.

Q.   Um, but how do you know, in this particular case, that the students sat separately or were separate however you phrased it. Excuse me. Um, when they gave their statements?

A.   So, I don't know 100 percent because I was not in the room with them or with the principal when the statements were made. That was what was conveyed to me, was that the statements were written separately.

Q.   Do you recall who conveyed it to you?

A.   Mr. Gabriel.

Q.   John Gabriel, the principal?

A.   Correct.

Q.   Okay. Did he say how he knew?

A.   No.

Q.   Okay. Did -- so, moving forward did you actually conduct the interviews of those students with CPS?

A.   I did.

Transcript of Hearing
Conducted on October 19, 2023                    237

Q. Okay. And then, so what was the summary of the testimony from those students?

A. So, the summary for -- of the testimony from those students do you want me to do them --

Q. Separate -- well, do them how you conducted the interviews.

A. Okay.

Q. So, you know, I want you to walk through you know, you -- you -- your testimony and how you --

MR. PLOFCHAN: I'm going to object. The summary's in -- in the written summary itself. And I'm going to object if -- to have her just repeat what's already in the document itself. This is what we were given and -- and I can't go beyond what's in the document.

MS. JOHNSON: Yeah. There's nothing in the procedure that says that she cannot testify about the -- the extent of her investigation. The document is the document. We weren't going to recraft an investigative report to put again, more in there than what's already in there. Uh, what was provided was provided and she is the most qualified witness to talk about what actually

Day 000784

Transcript of Hearing
Conducted on October 19, 2023                          238

occurred in the investigation that she took.

MR. PLOFCHAN:  We were given knowledge of -- about what occurred. It's in the document. The document speaks for itself. Best evidence would say you can't try to put something that's not -- that could have been in the document and try to embellish the document. The document speaks for itself. This is the summary of what it was. Asking her to summarize when we already have her summary would be inappropriate. This is the best evidence.

MS. JOHNSON:  Uh, and so, again, you know, she's best able to speak to her interview process and what happened. The whole issue with her credibility or this interview is Mr. --

THE COURT:  She can say what -- what she did and what the students -- what -- what happened.

MS. JOHNSON:  Okay.

THE COURT:  Without getting a word for word as to what was in the report because of --

MS. JOHNSON:  Correct. Thank you, Your Honor.

BY MS. JOHNSON

Q.  So, would you please summarize, Ms. Wiley,

Transcript of Hearing
Conducted on October 19, 2023                                   239

your interview, starting with which -- whichever --

whatever one of the students you interviewed first.

A.  Okay. So, K█████.

MR. PLOFCHAN:  I'm going to -- can I ask for

clarification. My understanding was that she can say

the process. Someone came in. I talked. Etcetera. But

she's not to repeat the whole interview.

THE COURT:  Well, that's exactly right.

MR. PLOFCHAN:  That's what I thought. Thank

you.

THE COURT:  Yeah.

THE WITNESS:  So, I met with K██████, her

mother Lauren Northart, who was K██████ counselor.

MR. PLOFCHAN:  And, Your Honor, I don't know

if the court deals with she's just reading from the

document at that point. So, I didn't know if this has

to be her recollection and shut it off or if you allow

her to read.

THE COURT:  Well, I didn't notice she was

reading the document.

MS. JOHNSON:  I did not notice either. So, I

don't know but if we have to [inaudible] recollection

Transcript of Hearing
Conducted on October 19, 2023                240

has to be refreshed.

THE COURT:  Well, if -- yeah, if we can. If we have to refresh, we refresh it. But just want you to close the book right now.

MS. JOHNSON:  Sure.

THE COURT:  Makes Mr. Plofchan a little more comfortable.

MS. JOHNSON:  Thank you, Your Honor.

THE COURT:  That's good.

BY MS. JOHNSON

Q.  Thank you. So, talking -- and I don't know if you recall which one you interviewed first.

A.  Sure.

Q.  So, if it's easier -- whichever -- however you want to do it. I just -- if you could just walk through what we just talked about.

A.  So, I -- I interviewed K█████ and I -- I don't know names of parents off the top of my head, but I'll just say her mother, her counselor, and Ms. Dehass. Um, we interviewed over at Independence High School.

We went through the process of explaining to

them what the process was. Um, K████ shared with us her thoughts on what was happening with Mr. Day and the comments that he was making, allegedly, to her.

Um, she explained that she felt uncomfortable and she, kind of, gave us a run down of all of the comments that were made to the best of her recollection over the period of two years.

And I asked questions regarding witnesses who may have been around when those comments were made. She shared that those comments were mostly made in a private fashion when they were on the football field.

Um, she explained that she was a football manager. She had been a football manager for several years with Independence High School. Um, and that she had interactions with Mr. Day on a regular basis.

Um, other than that I can't share the other details because they're excluded but the gist of it was that she shared the -- the comments that I discussed earlier and how uncomfortable it made her feel. And it made her feel like she didn't want to continue being a football manager at times.

Q.  Okay. Did you have an opportunity to

Transcript of Hearing
Conducted on October 19, 2023                              242

assess Ms. -- K████████ credibility during this -- this process -- this interview?

MR. PLOFCHAN:  Objection. Leading.

BY MS. JOHNSON

Q.  Uh, can you speak to her credibility at all as a witness during this interview? Sorry. I rephrased. I didn't give you a chance to --

MR. PLOFCHAN:  I'm going to object to foundation on that. Again, this is an issue of her opinion as opposed to any test of credibility, etcetera. There's -- it's -- there's nothing that this witness could provide that would establish that Ms. R████ was credible or not.

BY MS. JOHNSON

Q.  As an investigator, Your Honor she does have to make certain assessments with regard to the validity or the voracity of the evidence and whether it, according to the standard it applies --

THE COURT:  I -- I will allow the testimony. I think it goes to whether how much the court accepts what she says. But I think that given the fact she is an investigator that does give her a certain amount of

Day 000789

Transcript of Hearing

Conducted on October 19, 2023                                    243

expertise above and beyond the average lay person.

BY MS. JOHNSON

Q.  Thank you, You Honor. Do you -- do you recall the question or ready to answer.

A.  I do. I do. Um, the student, K████████ was consistent in the things that she explained to myself. Um, she didn't really stray from what was provided in the written statement. Um, she didn't have the written statement in front of her.

Um, she wasn't reading. She didn't seem like she was being prompted. It was very free-flowing. Um, she didn't appear to have ill will towards Mr. Day. She appeared to -- I don't want to make that conclusion, but she appeared to be honest in what she was saying. She --

MR. PLOFCHAN:  Move to strike. I'm mean she -- I -- I didn't stray and that's fine but appeared to be honest is -- is just a subjective conclusion.

THE COURT:  As suggested that -- that I will -- I will strike.

MS. WILEY:  So, again, she didn't stray from -- from her -- the allegations that were presented. Um,

Transcript of Hearing
Conducted on October 19, 2023                                    244

and to me, it was consistent, and it didn't, like I said, it didn't stray. I'll just leave it at that.

BY MS. JOHNSON

Q.   Okay. Based on your experience, and your training as an investigator, how did you -- how did you find out on -- on K█████████ credibility?

A.   So, I --

MR. PLOFCHAN:   Again, I think that would calls for an improper opinion. She's not identified as an expert. She hasn't been identified as an expert. There's no specialized training to determine credibility. She can draw these comments that was consistent, didn't stray, not reading, appeared no will. Then I get to cross examine on that. But she can't come to a conclusion. That's up to the court as to whether that's sufficient in this regard.

MS. JOHNSON:   Who the entire report is being challenged as Mr. Plofchan said in is his opening statement. It represented even during pre-hearing that there are challenges and questions regarding Ms. Wiley's ability to have conducted this investigation in a way that was fair towards Mr. Day. The whole crux of

Day 000791

Transcript of Hearing
Conducted on October 19, 2023                                    245

this -- the reason why we're here. So, she can --

THE COURT:  I think she says the fact that -- the things that she felt was important in analyzing uh, what K████, what, if anything, K████ did or said. So, I think that that's -- that's as far as it goes. It does that.

MS. JOHNSON:  May I ask her what her decision was about credibility?

THE COURT:  No.

BY MS. JOHNSON

Q.  Okay. Uh, so, G████ -- how did you assess her credibility?

A.  Um, again, I met with G████, her mother, the counselor and the CPS worker, of course, was there. Um, in her testimony, again, she did not stray from the statements that she made in the written statement.

Um, she, again, didn't appear to have any ill will towards Mr. Day. She was very uh, I believe conscientious of the words that she was choosing. Um, and I -- I don't want to continue to say the same thing but, she -- she seemed consistent.

Q.  All right. You also interviewed Mr. Day.

Day 000792

Transcript of Hearing
Conducted on October 19, 2023                    246

A.  Correct.

Q.  Okay. we'll -- we'll stop there for a moment in terms of getting into his credibility. I'll get into that later, or how you assessed it, rather. But but when did you conduct Mr. Day's interview? Do you recall?

A.  I do recall conducting an interview with Mr. Day and his attorney. Um, the specific date, if it's -- I believe it was -- I can't recall the specific date without looking. Um, but I do recall interviewing Mr. Day.

Q.  Where did he fall in the order of the interviews that you conducted?

A.  Um, Mr. Day was interviewed after G▮ and K▮. Um, I want to say it was July, but may I look just to -- to be accurate in my statement?

Q.  Before we do that, did you interview him more than once?

A.  I did interview him twice.

Q.  Okay. Was the first -- now, I'll ask you do you recall when the first interview happened?

A.  I don't recall the exact date without

Day 000793

Transcript of Hearing
Conducted on October 19, 2023                                    247

looking.

Q.   Okay. If you would please turn back to tab 10 and that will be the page number bated as, basically, as LCPS 00006.

A.   So, that was May 17th. Um, the first interview was on May 17, 2022 -- uh, excuse me, 2022. The second interview was via a Google Meet, and it was on July 25th, 2022.

Q.   Why did you have a follow -- a second interview?

A.   I had follow up questions. Um, and the reason I had follow up questions for Mr. Day was because after we initially met with him, I did speak with other coaches and there was an allegation in there that I had to follow up with Mr. Day about. And that was the only reason that we had a conversation on the 25th.

Q.   Okay. How did you arrive at your findings with regard to this investigation?

A.   Um, so, using the policy -- using school board policy to determine if there was a policy violation. Um, using the testimony of the students and

Day 000794

Transcript of Hearing

the adult witnesses as well as Mr. [crosstalk]

testimony.

MR. PLOFCHAN:  I'm going to object as to her

findings and any further questioning regarding her

findings. Uh, obviously we're here because she made a

report. The superintendent then made a ruling and it's

going to be the hearing officer's decision as to

whether that was appropriate, there was enough

information. So, why she reached her conclusion or not,

I don't think is relevant or probative for the hearing

officer.

MS. JOHNSON:  The purpose, again, in all of

this and why we're here now is because there was a

finding on this investigation that was reviewed and --

and this is the document that supported that finding.

And was the reason why the superintendent made

his recommendation. So, all of this is definitely

probative and relevant to how the supervise --

superintendent arrived at his decision to make the

recommendation.

MR. PLOFCHAN:  This -- this is a de novo

hearing and where the hearing officers make a

Transcript of Hearing
Conducted on October 19, 2023                    249

determination as to whether there's a -- a sufficient basis to support a dismissal.

Uh, and therefore, anyone else's conclusions outside of the facts that they discerned and any conclusions of law or etcetera would not be probative in this case.

THE COURT:  That is the law. That is basically it. It is based upon basically a de novo hearing. The ruling of the hearing officer should be based upon the evidence that judicated at this hearing. So, that being the case, I'll sustain your objection.

BY MS. JOHNSON

Q.  Okay. Uh, so is there anyone else that you interviewed that talked about any comments or the subject of the comments were about the sexual nature of the remarks made towards K███████ and G██████?

MR. PLOFCHAN:  I'm going to object as leading.

THE COURT:  As to the form of the question.

BY MS. JOHNSON

Q.  Did you -- how -- who else -- how else did you investigate the claims regarding sexual nature?

A.  So, I spoke with other witnesses.

Transcript of Hearing
Conducted on October 19, 2023                                250

Q.  Please -- and if you would please close that your binder. We'll ask you about -- I'll ask you a question if I need you to refresh exactly who or based on your testimony.

A.  Sure. So, I did speak with other witnesses. Um, one of the witnesses being Carnadi Ford. Um, that witness did mention there were some inappropriate --

MR. PLOFCHAN:  I'm going to object as hearsay and if he mentions anything that's not related to --

THE COURT:  Well, we'll get there if she says it.

MR. PLOFCHAN:  Okay. Very well.

THE WITNESS:  So, Carnadi Ford did mention some things that he knew that G█████ and K█████ had reported to him as being inappropriate.

Um, and he, of course, asked them to speak with the head coach, as I said before. And ultimately spoke with administration. Um, and that was directly related to the sexualized comments that Mr. Day had allegedly made. Um, I also spoke to Mr. --

MR. PLOFCHAN:  Move to strike with regard to

Day 000797

the comments regarding Mr. Ford is that they're not part of the complaint from G█████ and K█████.

THE COURT: I'm going to overrule.

MR. PLOFCHAN: Okay.

THE WITNESS: Um, I also spoke -- spoke to Mr. Windows about K█████ and G█████'s allegations against Mr. Day as far as the sexualized comments. He also corroborated that the two students reported that information to him.

Um, neither Mr. Windows or Mr. Carnadi Ford said that they specifically heard those comments made to those students but that it was reported to them that Mr. Day allegedly made those comments to them.

Um, other than that none of the adult witnesses overheard any of the sexualized comments that K█████ and G█████ had alleged that Mr. Day made to them privately over the course of the two years.

MS. JOHNSON: Okay. Thank you. That's all I have, Your Honor.

THE COURT: All right.

MR. PLOFCHAN: I can keep going, Your Honor, or did you want to take a break. You had mentioned we

Transcript of Hearing
Conducted on October 19, 2023                    252

might stop after their --

THE COURT:  Well, I don't know. Is there -- is everybody -- does anybody need a break?

MR. PLOFCHAN:  I don't need a break.

THE COURT:  Mr. Day. Mr. Day. Okay. We'll -- why don't we just take we'll take 10 and see if we can finish this. Okay.

MS. JOHNSON:  Thank you.

MR. PLOFCHAN:  Whenever you're ready, Judge. Or are we waiting for --

MS. JOHNSON:  If it's okay with everyone that he come in when he walks in --

THE COURT:  That's fine.

MS. JOHNSON:  Then okay. All right.

CROSS EXAMINATION

BY MR. PLOFCHAN

Q.  Okay. Um, Ms. Wiley, when you interview people, do you place them under oath?

A.  No, I do not.

Q.  Okay. And then did you record everyone?

A.  Yes. All of the meetings were recorded with the exception of the Google Meet that we did with

Day 000799

Transcript of Hearing
Conducted on October 19, 2023                253

Mr. Day in July.

Q. And did you obtain transcripts of all of them?

A. I did.

Q. Do you know why -- is there some reason why you didn't share the transcripts with Mr. Day for this hearing?

A. We do -- I do not share any documentation from a report with any employee. That is something that would have to go through attorneys.

Q. Did you share it with Ms. Johnson?

A. Who?

Q. Ms. Johnson.

A. Um, yes, she does have them.

Q. So, she has all the transcripts but -- so for anyone to go through the transcripts to see whether your rendition of whether somebody was consistent or not and didn't stray or not but you agree that if we don't have the transcripts, we have no way of challenging or validating you. Is that correct?

A. I don't know if you were provided with the transcripts or not.

Day 000800

Transcript of Hearing
Conducted on October 19, 2023                    254

Q.   I'm assume -- assuming we're not.

A.   Okay.

Q.   So, if we are not, then we have no way of challenging or validating your conclusion of what was said because we don't know what was said. Is that correct?

A.   Yes.

Q.   Okay. And then would you look at do you recall -- I don't know if it's in the white book or not. Do you recall a letter dated September 22, 2022, with that the -- Lisa Gray would have written regarding the investigative findings?

A.   Um, I do recall a letter, but I would not remember the date or the content without looking at it, as I look at a lot of documentation.

Q.   Sorry, I don't have an extra binder for the witness. So, we're just going to show her and then we'll -- we'll come back.

THE COURT:  Okay. What was that?

MR. PLOFCHAN:  It's exhibit 14.

THE COURT:  Okay.

BY MR. PLOFCHAN

Transcript of Hearing
Conducted on October 19, 2023                    255

Q.   Have you seen that letter?

A.   Yes.

Q.   Uh, in that letter it indicates that there were did -- Ms. Gray indicates that there were findings. Did you participate in any findings from the school board that was made by Loudoun County public schools.

MS. JOHNSON:  I believe there was an objection about this. I just wanted to clarify that. But also, for -- just for the record purposes, I just wanted the record to reflect that the copy handed appeared to have highlights on it. So, I mean, that's not the -- those highlights are not replicated in the version provided to counsel.

MR. PLOFCHAN:  No, and I'll tell you what I -- it's just what I'm going to ask the question about, so was the date. So, it was September 22, 2022. Correct? Yes.

BY MR. PLOFCHAN

Q.   All right. And I -- that's what it says. I'm not -- but that's not really the issue. The only -- I'm not asking your opinion on it or anything like

Transcript of Hearing
Conducted on October 19, 2023                                256

that. I want to know is, did you participate in any decision that Liz -- Lisa Gray would have made after the fact -- after your report?

A.    I'm not really understanding your question.

Q.    Okay.

A.    But I think I'm going to try -- I'm going to try to answer the question to the best of my ability. Um, the findings that are -- are spoken of on that particular letter are based on the investigative report that was provided to her that I wrote.

Q.    Right. Okay. So, there's some language in that report but I'm still going to ask you a question. Is there a Loudoun County public schools' statutory regulatory definition of conclusive evidence?

A.    Conclusive evidence in what I do --

Q.    No. I -- just is there a --

A.    Is there a statute?

Q.    A statute, regulation or definition in any policy of conclusive evidence?

A.    No, there is not.

Q.    Okay. And would you agree that on May 1st,

Day 000803

Transcript of Hearing
Conducted on October 19, 2023                    257

2023, Child Protective Services completed their investigation and determined that the report was unfounded?

A.   I would have to look at the actual document to make sure that that is the correct date.

Q.   So, I'm looking at exhibit 18 in our black binder.

MS. JOHNSON:  Your Honor, I just want the record to reflect that from what I can see is the documents moving forward it has highlights in it. Um, that's not

MR. PLOFCHAN:  I'll show you the highlights. [crosstalk].

MS. JOHNSON:  Included in the -- in the day -- in the day -- in the day 001 under tab 18 that's been provided to counsel.

BY MR. PLOFCHAN

Q.   So, you agree, May 1, 2023, it was found as unfounded.

A.   That is the letter that was provided to me from CPS.

Q.   Okay. And in your report in fact, you

Transcript of Hearing
Conducted on October 19, 2023                    258

conducted interviews on -- let me get this right. Uh, April 5, 2022?

A. Correct.

Q. Okay.

A. Those -- those were the dates that we interviewed the two students.

Q. Did you ever interview a student without another adult present?

A. No.

Q. Did you ever interview a student without their mother present?

A. No.

Q. Okay. Um, what information did you provide to the mother about why they were there?

A. So, the information that would have been provided to parents --

Q. I don't want generally.

A. Okay.

Q. Do you -- if you don't let me rephrase. Do you recall the information you specifically provided to Jullianne R█████?

A. Without looking at -- at notes, I can't --

Day 000805

Transcript of Hearing
Conducted on October 19, 2023                                      259

Q.  Okay.

A.  Say specifically, exactly what I said. No.

Q.  And do you recall the information that you specifically would have provided to K█████ L█████?

A.  Same -- same thing. If I didn't have --

Q.  Okay.

A.  If I couldn't look at my notes, I couldn't say exactly what I said to her.

Q.  Do you have any information as whether R.J. Windows was on leave at any time after May 31, 2022?

A.  I would like to ask my -- my counsel if I can answer -- answer that question because that's a personnel -- that is a personnel matter that I should not speak to other people about. Can I answer that question? That was my question. Sorry.

Q.  Uh, I -- I think that I'm asking it in this hearing and if she's got that knowledge -- it's a confidential hearing. I don't think that there'd be any -- anything inappropriate, Your Honor. I'd like to ask that question.

MS. JOHNSON:  What -- what was the question

Day 000806

Transcript of Hearing
Conducted on October 19, 2023                    260

again. Is it --

Q.   Does she know whether R.J. Windows was on leave after May 31, 2022.

MS. JOHNSON:  I object to relevance.

Q.   I'm -- I'm going along the line of his availability, Your Honor, for being interviewed and so forth.

THE COURT:  Sustained.

Q.   Okay. Does anything prevent you from interviewing R.J. Windows prior to May 5, 2022?

A.   No.

Q.   Did there any -- anything prevent you from interviewing Carnadi Ford prior to June 13, 2022?

A.   Yes.

Q.   What was that?

A.   Um, Carnadi Ford is a part time, hourly employee. At the time, he was not working for Loudoun County public schools. Um, I did not contact him outside of his quasi-contractual obligation with Loudoun County public schools, which is why all of the coaches were interviewed on that date.

Q.   Okay. Is there anything that prevented you

Transcript of Hearing
Conducted on October 19, 2023                    261

from contacting him from May 31st to July 13th, 2022?

A.  Nothing prevented me from contacting him but contractually he was not an LCPS employee.

Q.  Okay. Is there anything that prevented you from contacting Patrick Nufable between May 31 and July 13 -- March 31 and July 13, 2022?

A.  Same answer. Uh, because he was a coach contractually he was not working with LCPS.

Q.  But again, nothing prevented you.

A.  No.

Q.  How about did anything prevent you from talking to Brian Elliot from March 31, 2022, through July 14, 2022?

A.  What were the dates again? I'm sorry.

Q.  March 31, 2022, through July 14, 2022.

A.  Brian Elliot was not someone that was brought up until after I interviewed Mr. Day. So, I would not have interviewed him prior to my interview with Mr. Day.

Q.  Well, your first interview with Mr. Day was May 17th, 2022. Is there anything that prevented you from contacting Mr. Elliot from between May 17,

Transcript of Hearing
Conducted on October 19, 2023                                          262

2022, and July 14, 2022?

A.  No.

Q.  Now, you also indicated that Mr. Nufable was a contract employee because he was a coach. Mr. Nufable is also a teacher. Correct?

A.  Correct.

Q.  So, you could have contacted him because he was a teacher at any time. Correct?

A.  Mr. Nufable, again and I can't remember every single date for every single person without looking at it. Um, the relevancy to Mr. Nufable's testimony was based on comments made by someone else that we interviewed.

So, his interview would have occurred after we interviewed that person. He was not -- and that is -- the reason we interviewed him was regarding something that I can't speak about today.

Q.  If you look at -- who is Lisa Gray?

A.  Lisa Gray is the former director of human resources workplace relations.

Q.  Did you report to her?

A.  Not directly.

Q.  Okay. And do you agree that on April 4th, 2022, she sent a letter to Mr. Day, the department had received a complaint that included a potential Title IX violation?

A.  Again, I would have to see it in order to say that, that is the exact date.

Q.  This is Exhibit 10, Your Honor, in our black book.

A.  I'm sorry, I have to pick it up. So yes, this is a letter that, that Lisa Gray would have sent on April 4th.

Q.  Okay.

A.  Yes.

Q.  Can you identify any statute or regulation that authorizes LCPS to do a joint investigation with CPS?

A.  I believe that there is an MOU with CPS. I couldn't speak to the specifics of it without it being in front of me right now.

Q.  So, you've never read it?

A.  I have read it before, but I can't speak to the specifics.

Transcript of Hearing
Conducted on October 19, 2023                                264

Q.  Do you -- are you aware of any statutory authority that would allow for such an MOU?

MR. JOHNSON:  Objection. He is asking for a legal conclusion from this witness and it's already been established based on prior objection on Mr. Plofchan that she's not able to provide those types of legal conclusions.

MS. JOHNSON:  I'm not asking for a legal conclusion, I'm just asking if she's aware of the statute.

THE COURT:  She can answer that question.

THE WITNESS:  Without something being in front of me, I would not be able to answer.

BY MR. PLOFCHAN

Q.  Okay. Do you recall telling Mr. Day in his interview that you couldn't start your case until CPS closed their case?

A.  In some cases that is the process. I don't -- I don't know specifically if I said that. I would have to look at the actual transcript to be sure that I said that.

Q.  This is page 33 of Exhibit 22, Your Honor.

Transcript of Hearing
Conducted on October 19, 2023                                    265

MR. JOHNSON:  Again, I just want to know for the regulars, highlights on that have been not divided in the version provided to counsel.

Q.  I'll tell you what I've highlighted, lines 21 through 24.

MR. JOHNSON:  Page 33. Thank you. Thank you.

Q.  Do you recall telling that to Mr. Day?

A.  So, based on that document that you just shared with me, yes, I did tell him that.

Q.  Okay. Can you identify any policy of Loudoun County Public Schools with regard to grievance procedures related to dismissal that authorizes a statement that you can't begin your investigation until CPS closes their investigation?

A.  No, we do not have that.

Q.  All right. And are you aware of any authority that would allow you to tag along with a CPS meeting and participate in their interviews?

A.  I believe that would be in the MOU.

Q.  Okay. And you don't know if that's a valid MOU or not?

A.  The last -- the last MOU that I saw, we

Day 000812

Transcript of Hearing
Conducted on October 19, 2023    266

were allowed to do that if they deemed it okay.

Q.  But you don't know what the authority stated in the MOUs?

A.  No, I don't.

Q.  Okay. And are you aware that CPS is required by law to resolve an issue within 30 days and then they have the authority to get an additional 60 days if needed, but they don't have authority to do something after 90 days?

A.  I don't know the ins and outs of CPS' regulations as far as are concerned.

Q.  All right. And, but you are familiar with the regulations that govern LCPS policies, is that correct?

A.  Depends on specifically which one you're talking about. I don't know everything.

Q.  Okay. Are you familiar with the regulations of 7018? Policy 7018?

A.  The grievance policy.

Q.  Uh-huh.

A.  For the most part, I do have to still consult the paper version to make sure that my

statements are accurate.

Q.   Okay. And are you familiar with the policies regarding -- or the regulations regarding policy 7014?

A.   Yes, environment is free from harassment, discrimination, and abuse.

Q.   Okay.

A.   And again, if there's something specific, I would rather rely on seeing the words rather than going from --

Q.   And would you agree that you were bound by the regulations as set forth in policy 7014 both in regard to Title IX investigations or investigations relating to harassment and discrimination complaints?

A.   They would come through our office, correct.

Q.   And you're bound by those regulations.

A.   That's what we use to determine if someone has violated a policy.

Q.   Okay. And so, when there's a regulation that you have to investigate all these incidents and it has to be completed, the findings provided to the

Transcript of Hearing
Conducted on October 19, 2023                                    268

superintendent within 30 days, or as soon as

practicable from filing a complaint, you would be bound

by that, correct?

        A.   As soon as practicable is also a piece of

that, but yes.

        Q.   Okay. And it is, but there was nothing

that prevented you from doing your investigation of --

or interviewing additional people within the 30 days,

correct?

        A.   Can I explain?

        Q.   No, I just want to know, is that nothing

prevented you from doing that, correct?

        A.   I think that some things did prevent us

from completing our investigation within 30 days, yes.

        Q.   Well, you know, the only two people you

interviewed were Ms. R████ and Ms. L████ within 30

days.

        A.   Right.

        Q.   And you indicated to me that there was

nothing that prevented you from interviewing Mr.

Windows, Mr. Ford, Mr. Nufable, Mr. Elliott, or Mr. Day

within 30 days, correct?

Day 000815

Transcript of Hearing
Conducted on October 19, 2023                           269

MR. JOHNSON:  You know, I have to object here.  Some of these witnesses were witnesses that for parts of the report, the investigation, testimony today have been stricken.  It -- it -- there has already been explanation provided to some extent procedurally as to why that occurred, but to get into it more it -- it -- it -- it's already been refined.

MR. PLOFCHAN:  Is that Mr. Nufable, you're referring to? I'll -- I'll withdraw. That is part of it, in terms of that, because that was -- that was related to something that the court ruled or granted a motion.

BY MR. PLOFCHAN

Q.  So, there -- but you had already testified that nothing prevented you from interviewing Mr. Windows, Mr. Ford, Mr. Elliott, or Mr. Day.

A.  So, there was nothing preventing me, however, with the fact that --

Q.  It's a yes or no question, ma'am. Thank you. And then, so do you agree that you are limited to investigate activities that took place within two years under the statute of limitations?

Transcript of Hearing
Conducted on October 19, 2023                    270

MR. JOHNSON:  Objection, Your Honor. There is no foundation for that.

MR. PLOFCHAN:  I'm asking if she understood, that's part of our understanding of her role.

THE COURT:  She can answer that question if she knows.

BY MR. PLOFCHAN

Q.  Okay.

A.  It -- it does not. If someone gives us a complaint and it's over two years ago, we would still investigate it. So, the information that they would provide would still be a part of  my investigation.

Q.  Would you agree that someone can't be disciplined for something that took place more than two years ago?

A.  I would not agree.

Q.  Okay. Do you have any authority that supports that?

A.  As the investigator, other than me, fact finding and -- and giving information regarding what I found.

Q.  Okay. So, you're not -- you don't ever

Day 000817

apply a statute of limitations to your work, is that correct?

A.  I have not.

Q.  Okay. And would you agree that you, in the entirety of your report, you did not identify a single date on which any alleged statement took place, correct?

A.  No.

Q.  And you also agree that the statements of the students indicated that the behavior was continuous since he came to the school in 2020, correct?

A.  Correct.

Q.  So, if there was a statement, which we're not -- I'm just -- hypothetically from our perspective, if there was a statement that said K███████ needed to know when to sit down and shut the fuck up, you wouldn't know if that was made in 2020, 2021, or 2022 prior to March 31, 2022, correct?

A.  Correct, there were no dates.

Q.  Okay. And so, you wouldn't know if all of the statements were made prior to February 15th, 2021, would you?

Day 000818

Transcript of Hearing
Conducted on October 19, 2023                    272

A.  As far as the sexualized statements, there were no dates, so I did not know.

Q.  Okay. Now, you did not speak with any other witnesses, correct?

A.  Correct.

Q.  So, even though K██████ and G█████ told you that members of the football team had supposedly witnessed this behavior, you didn't confirm that, did you?

A.  Neither K██████ or G█████ stated that Mr. Day made these comments in front of -- the sexualized comments in front of other students. They both maintained that those statements were made privately.

Q.  One second. I thought that one of them told you that when they complained to the members of the football team, they just said Day was being Day.

A.  Correct.

Q.  Okay, did you ask them to identify any of the students who allegedly could corroborate that they made those statements.

MR. JOHNSON:  Objection, it misstates the evidence in testimony.

Transcript of Hearing
Conducted on October 19, 2023                          273

MR. PLOFCHAN:  I don't think it is, but I'll reword it.

BY MS. JOHNSON

Q.  On page 5 of your report, 5 of 10, and Your Honor, I'm looking in the black book. Well, their book, it would be, LCPS00007 in Exhibit A. I'm looking at the second full paragraph.

Okay, Ms. Wiley-Smith, it says, K███████ shared she told various football players that she was uncomfortable with some of Day's comments, but the players laughed it off and said, that's Day being Day. You did not ask her to identify any of these various football players, did you?

A.  I do not believe so, no.

Q.  And you did not contact any football players to corroborate or to discredit the statements of K███████, correct?

A.  No, I did not.

Q.  Okay. Your next sentence says, she also shared that Day's behavior was previously reported to the school administration, and that she was aware that Day's other student reported him for making

Day 000820

inappropriate comments and using inappropriate language. Who are you alleging that she -- that Dave's behavior was previously reported to the school administration?

A.   So, I think that needed to say other students reported him for making inappropriate comments and using inappropriate language, but I thought we couldn't talk about entire --

Q.   Well, no, I'm not asking about -- I'm asking about she also shared that Day's behavior was previously reported to the school administration.

A.   And she was referring to that previous conduct that I'm talking about.

Q.   Oh, so she's not referring to her comments that were allegedly previously reported.

A.   Correct.

Q.   Okay. She shared that other students were knowledgeable of Day's behavior, but they just accepted his actions?

A.   Correct.

Q.   Did you contact any other students to see about that?

Transcript of Hearing
Conducted on October 19, 2023                    275

A.  I did not.

Q.  Okay. She also indicates that she reported Day's behavior to Ford and Windows, correct?

A.  Correct.

Q.  When did those reports allegedly happen?

A.  Those specific reports were what prompted the report on March 31st.

Q.  So, the question is when did she allegedly report Day's behavior to Ford or to Windows?

A.  March 31st is -- is the one that I'm specifically talking about here.  And that's when Ford instructed her to speak to Windows and Windows instructed her to speak to her counselor and school administration, who ultimately reported that to us on March 31st.

Q.  What time does school start?

A.  I knew that there was a school change roughly at 9:00. I mean the school time changed over the past couple of years.

Q.  So, according to the reports, on March 31st, K████ reported that at 8:35 in the morning, when would she have had an opportunity to report the

Day 000822

behavior to Ford and to Windows, and then as a consequence, report it on March 31st? How did it all happen on March 31st?

A.   Can I refer back to the CPS report?

MR. JOHNSON:  I actually want to object. I believe we laid the foundation for how she personally knew how these students were reporting the conduct at the time that is being asked about.

MR. PLOFCHAN:  I don't understand the objection.

MR. JOHNSON:  Okay. The objection is, is there's a lack of foundation and also it potentially mischaracterizes testimony.  Ms. -- Ms. Wiley has not provided any testimony that she knows when these students reported this specifically outside of the date of the CPS referral itself, which was what she says she received on 03/31.

I'm not -- I wasn't trying to give a speaking objection, but I just wanted to clarify based on the response.

MR. PLOFCHAN:  And in response, I'd ask you to overrule the objection, because I specifically asked

Transcript of Hearing
Conducted on October 19, 2023                          277

her because her report says she reported Day's behavior to Ford and Windows, and I asked when that was, and she told me March 31st. So, I'm just exploring what answer Ms. Wiley-Smith gave me.

THE COURT:  All right, I'll allow it.

BY MR. PLOFCHAN

Q.  Now, interestingly, if you go on the next page, LCPS0008.

A.  You didn't give me an opportunity to answer that question, right?

Q.  Oh, so tell me how they did it. I thought you said you didn't know how they did it on May -- March 31st.

A.  So, I didn't say that I didn't know. I said I would need to refer to the CPS report for the date on the CPS report just to make sure that what you're saying at 8:42 or whatever time it was in the morning, because there are a multitude of things that could have happened at that point. They do have practice before school at times.

Q.  Do you know if they did that day?

A.  I do not.

Transcript of Hearing
Conducted on October 19, 2023                    278

Q.  Okay. All right. So then, if you go to the next page, which is 00008 in the first -- Exhibit 10, in the first full paragraph, it says that Windows shared he had verbal conversations with Day regarding professionalism over the course of his tenure, but he stated that he did not formally document any conversations with Day, and did not recall any specific things he discussed with Day or the dates he met with him.

A.  Correct.

Q.  Okay.

MR. JOHNSON:  Objection. This is already the subject of a -- of a ruling. You know, the -- the evidence is going to go this way, we should be able to follow up.

MR. PLOFCHAN:  I don't think it's -- I'm talking about the complaints about and then he said, so he didn't have any discussion with Day.

MR. JOHNSON:  Could we get a ruling please, Your Honor, on that objection.

MR. PLOFCHAN:  I -- I understand the agenda. I'm not talking specifically about March 31. He says he

Day 000825

Transcript of Hearing
Conducted on October 19, 2023                        279

doesn't have any -- he didn't document any

conversations and doesn't recall any specific things he

discussed.

        MR. JOHNSON:  Your Honor, we just read an

entire passage and it was quoted Windows shared that he

had verbal conversations with Day regarding

professionalism over the course of Day's tenure at

Independence High School.

        There's nothing in here to indicate that this

is actually about the March 31st conversation, but what

was stricken from any testimony being provided was

about Day's --

        THE COURT:  Okay.

BY MR. PLOFCHAN

        Q.  Okay. Is Windows a mandatory reporter?

        A.  Yes.

        Q.  Is Ford a mandatory reporter?

        A.  Yes.

        Q.  Did Windows or Ford ever make any reports

about Mr. Day at any time?

        A.  Not to my knowledge.

        Q.  Okay. Now, were Windows and Ford subject

Transcript of Hearing
Conducted on October 19, 2023                              280

to any investigation because they, as mandatory
reporters, they didn't make a report?

MR. JOHNSON:  Objection. Relevance.

MR. PLOFCHAN:  I think it's -- it's relevant
and probative if they were mandatory reporters and they
didn't report.

THE COURT:  I think it is probative.

MR. PLOFCHAN:  Thank you. Were they ever
subject to any investigation for not reporting
something as mandatory reporters?

MR. JOHNSON:  And objection, again, of
relevance and also, I maintain that objection but also
there's been no foundation laid as to whether this
particular individual would have been privy to, subject
to, or involved in any conversations than what it
established when an investigation was launched.

THE COURT:  She can answer if she doesn't --
whether she knows or not.

BY MR. PLOFCHAN

Q.  Were they ever subject, to your knowledge?

A.  To my knowledge, I -- I -- I mean, I don't
know.

Transcript of Hearing
Conducted on October 19, 2023                    281

Q.  Okay.

A.  It wasn't brought to me.

Q.  But when part of your investigation, as stated on page 00008, in that same second full paragraph, you say Windows shared that the severity of K█████ and G█████'s complaints in May was that supposed to be in March?

A.  It was supposed to be March.

Q.  Okay. Prompted them to have K█████ and G█████ report their concerns to school counseling and the school administration, but he never reported it to anybody. Correct?

A.  There were conversations. He did have a conversation with John Gabrielle.

Q.  When did he have that because that's not documented anywhere?

A.  To the -- to the best of my recollection, when those girls, when he sent them to the counseling department and administration, he informed them that he had sent them there because there were complaints that he felt were severe enough that they needed to be addressed by the school administration and counsel.

Day 000828

Transcript of Hearing
Conducted on October 19, 2023                    282

Q.  So, there were supposedly activities related to this -- these reports for over two years, and you never had any documented conversation with Day or any -- you never in your investigation found any documented conversation regarding these alleged complaints, correct?

A.  The -- the two students said that they were -- they didn't want to report the information to anyone until it became severe enough that they felt they needed to talk to someone about it, and they felt uncomfortable enough that they needed to talk to someone about Mr. Day's comments.

Q.  That doesn't make sense to me, so I'm going to ask you to explain. If you look at 0008, the very first paragraph, Ford stated that both K▇▇▇ and G▇▇▇ had confided in him regarding feeling uncomfortable around Day.

A.  Right.

Q.  Ford shared the two spoke with him on at least two separate occasions since the beginning of the 2021-2022 school year. And on the last occasion in, I'm assuming March, he suggested they speak with Windows.

Day 000829

Transcript of Hearing
Conducted on October 19, 2023                  283

A.  Right.

Q.  Ford never, as a mandatory reporter, reported anything, did he?

A.  He never specified that there were sexual conversations that were alleged.

Q.  So then, when you conclude, I'm just looking at based on your interviews then, Windows did not confirm the existence of any sexual conversations, correct?

A.  Other than the March 19th allegations.

Q.  And Ford did not confirm the existence of any sexual conversations, correct?

A.  Other than the March 31st situation.

Q.  And Brian Elliott did not confirm the existence of any sexual conversations.

A.  He had no frame of reference regarding that.

Q.  And Brian Day did not confirm the existence of any sexual conversations, correct?

A.  He didn't outright deny making comments for every single statement.

Q.  Let's go over those statements. Because

Transcript of Hearing
Conducted on October 19, 2023                                    284

isn't it a fact that you phrased your questions to him

in what I would call a very specific manner. For

example, you asked him, did you recall making

inappropriate or insensitive comments to female

students, and his response was, not to my recollection.

Correct?

        A.  Can I look at the transcript?

        Q.  Sure. How about we look at page -- Exhibit

22 in the transcript? I don't know, Ms. Johnson, is the

transcript in your binder?

        MR. JOHNSON:  Yes.

        MR. PLOFCHAN:  I don't know what number it

might be, since she has the yellow binder. Or she has

the white binder.

        MR. JOHNSON:  It's in the black binder.

        MR. PLOFCHAN:  Oh, you're in your black

binder. Do you have -- you didn't put it in your white

binder.

        MR. JOHNSON:  No.

        MR. PLOFCHAN:  Okay. Okay, so.

        MR. JOHNSON:  That's something a lot -- the

transcript is something that a lot of --

Day 000831

Transcript of Hearing
Conducted on October 19, 2023                           285

MR. PLOFCHAN:  Okay. So I'm going to ask you to look at this now -- just one second. Okay.

BY MR. PLOFCHAN

Q.   So, I'm looking at page 4 Your Honor, page 4 of Exhibit 22, and I'm going to ask you to confirm Ms. Wiley, you asked him a question, do you have any idea about any times that you would have used any kind of any inappropriate language or foul language with students, and he says not off the top of my recollection, no.

A.   Yes.

Q.   Okay. And then, you then followed up and said, is it something you would typically do? I know when you're a coach as well, or in either capacity as a teacher as a coach, would you have used inappropriate language at any time, and his response was something I try very hard not to do, correct?

A.    That is what the transcript says. Correct.

Q.    Okay. And then there -- you tell him there's an allegation of inappropriate or insensitive comments to female students, specifically students that manage the football team, and during that period of

Day 000832

Transcript of Hearing
Conducted on October 19, 2023                          286

time when it's in between practice and school, making

insensitive comments or comments that may be perceived

as inappropriate.

Do you have any idea what that would be about?

He says, not to my recollection, no. [Inaudible] by

saying, no, I don't know what that's about, to his

recollection, not having any recollection of that? That

not an appropriate denial that, that occurred.

MR. JOHNSON:  May I ask what page.

MR. PLOFCHAN:  Page 5.

MR. JOHNSON:  And what lines?

BY MR. PLOFCHAN

Q.   The question was lines 3 through 9. His 3

through 11. His answer is on 12. Then you asked -- I'm

sorry, did you -- the -- the question was that's the

way the conversation took place, correct?

A.   Based on those transcripts, yes.

Q.   Right. And do you have any reason to

believe that not to my recollection, no is not a denial

of that?

A.   For some specific questions.

Q.   Okay. Then you ask, is it something that

Day 000833

Transcript of Hearing
Conducted on October 19, 2023                287

would be uncharacteristic, and he tells you, very. I have a great relationship with all my kids, especially managers, since they're all volunteers.

A. So, the -- the -- I think that the question that you're asking me is about the whole not to my recollection. Typically, if you --

Q. Now, the question I was asking was about what's in the transcript.

A. Okay, well then -- then if that's what's in the transcript, then yes.

Q. Okay. All right. And then you asked, do you recall commenting that the student would, "fuck around" with all the D-1 athletes? And he said he could not speak to that conversation, it's not something I would say.

MR. JOHNSON: What page are we referring to?

Q. I'm going to find that for you. Actually, it's in your report. If you look at LCPS 0008, you actually quote in that report 6 of 10 in the big paragraph, Wiley asked Day if he recalled commenting the student would fuck around with all the D-1 athletes and Day stated he could not speak to the conversation

Day 000834

Transcript of Hearing
Conducted on October 19, 2023                    288

and it was not something that he would say, correct?

A. That's what's in the transcript, correct.

Q. And then, you asked him specifically if he recalled commenting that a female student would or had fucked the whole football team, and his response was, never. Correct?

A. Correct.

Q. And then you asked him if he recalled commenting to a student, you are always on your knees and he responded that he could not recollect a conversation of that nature and that he did not make the statement. Correct?

A. Correct.

Q. And then you asked him if he ever commented that a student was looking whorey or insinuated that students look like whores, and he responded, that is not something I would say, and I don't have any recollection of that. Correct?

A. Correct.

Q. And then you asked if he ever made a comment about the football manager's clothing being too skimpy, and he says, I don't recall, it doesn't sound

Transcript of Hearing
Conducted on October 19, 2023                    289

like something I would say. Correct?

A.   Correct.

MR. JOHNSON:   If we can get page numbers and line items or something.

Q.   It's LCPS00008. Your -- your second -- it's the paragraph there.

BY MR. PLOFCHAN

Q.   And then it says if he recalled discussing swingers or pineapple shorts with students, and he said, well, he knew pineapple is a symbol of swingers, but I do not recollect a conversation about shorts. And that he did recall a student wearing pineapple shorts, but he doesn't recall any conversations, correct?

A.   Correct.

MR. JOHNSON:   I'm going to have to object, Your Honor. At this point, we're going line by line in the report and this was not something that was permitted on direct in terms of the summary of the testimony.

So, we've -- we've limited our testimony to the statements based on the objections and now we're going through several statements that's already stated

Day 000836

Transcript of Hearing
Conducted on October 19, 2023                    290

there in the record or what -- what -- what -- what is -- what is in this exhibit?

MR. PLOFCHAN:  I don't understand the objection. I'm just confirming that my client denied every single allegation of these two students and that's -- and I'm -- there's only about three more that I wish to go over specifically with the statements.

THE COURT:  I'll -- okay, go ahead, we'll finish.

BY MR. PLOFCHAN

Q.  Thank you. And then you asked him if he ever said that if he were in high school that they would be all over him and he would have rejected them, and he had no recollection of conversations with students or managers where he would have made that comment.

And then you asked Day if he had recalled a conversation in which he stated he would buy a student gifts from Toys R Us for a baby shower. He said he did not recall. And asked if he recalled stating that guys would use G█████ for her body, he would say, I don't recall. Now, you agree that those are the

Transcript of Hearing
Conducted on October 19, 2023                    291

conversations, correct?

A.  Based on -- yes.

Q.  Okay. And did you ever provide any instruction in the interview to Mr. Day that when you phrased the question, do you recall saying this, that if he answered that he was to say no, it never happened or deny it happened, and not simply answer your question, I do not recall.

A.  I did not instruct him to answer a question either way.

Q.  Okay. So, but then you drew a negative conclusion against Mr. Day because in some of these questions you asked him do you recall stating this and he said I do not recall, correct?

A.  Are you asking me if I drew a negative?

Q.  Yeah.

A.  I based it on his statements, yes.

Q.  Okay. And then, he also gave you a reason why they could be upset with him because he had caught them parking in the staff parking lot, correct?

A.  He did.

Q.  And that the emails show that he reported

Day 000838

them in February and in March, correct?

A.   What emails?

Q.   The emails to Mr. Elliott.

A.   I don't have -- I did not have the emails to Mr. Elliott. That was not something that Mr. Day provided to me.

Q.   They're in your LCPS binder.

A.   But I'm saying he did not provide those to me regarding his statement that he made when we interviewed him and met.

Q.   Did you ask Mr. Elliott for them?

A.   I did not ask Mr. Elliott for the emails.

Q.   Okay. So, if there were emails from Mr. Day, did you confirm that Mr. Day emailed Mr. Elliott about the students parking in the staff parking lot in February and March?

A.   I do not recall a conversation about Mr. Day saying that he emailed him. I remember a conversation in where Mr. Day shared with me during the interview that he felt that the basis for this complaint was because of those two students, K▇▇▇ and G▇▇▇ being retaliatory for him reporting that

Transcript of Hearing

Conducted on October 19, 2023                    293

behavior to Mr. Elliott.

Q.  If you look at the last full paragraph on 00008, you write, Wiley spoke with Mr. Brian Elliott to verify Day's allegation, Elliott stated that Day reported concerns regarding parking in February.

A.  Correct, but you asked him about an email, and there's no reference with email.

Q.  But in your investigation, you didn't ask him for any documents?

A.  No.

Q.  Okay. Did you ask him -- so how long was your conversation with Mr. Elliott?

A.  I don't recall specifically how long the conversation was. I know that it was only surrounding this, so it shouldn't have been more than a five to ten minute conversation.

Q.  So, would you agree that maybe it would have been a more thorough investigation to ask Mr. Elliot if he had any documents or Mr. Ford or Mr. Windows if they had any documents?

A.  So, the -- the basis of the investigation was about the conduct.

Day 000840

Transcript of Hearing
Conducted on October 19, 2023                    294

Q.  I didn't ask that. I asked if you thought it would have been a more thorough investigation if you had asked them if they had any documents.

A.  Possibly.

Q.  Okay. Did you ask Mr. Day if he had any documents?

A.  I'm sure that I did, but I cannot be sure unless I looked at our transcript.

Q.  Okay. And so, you don't know -- now you indicated earlier too that the -- the principal said that the girls wrote their statements in separate rooms. Correct?

A.  I didn't say separate rooms, I just said separately.

Q.  Oh, so they could have been in the same room, sitting next to each other on the desk, and they were writing it?

MR. JOHNSON:  Objection. Calls for speculation.

BY MS. JOHNSON

Q.  Well, in your -- well I'll rephrase it. In your investigation, when you say that they wrote it

Day 000841

separately, I assume that meant they were not together. In your investigation, did you ever confirm that they were not in -- not in the same room at the same desk, across from each other or anything else writing this report?

A.   Other than Mr. Gabrielle's statement, no.

Q.   Okay. And did you ever ask -- did you ever interview Mr. Gabrielle about whether he was even there or where he could confirm or deny that.

A.   No, because that's why we do an intake with the student after we've received the written statement. The written statement is only to provide us with context to figure out if we need to investigate or not.

Q.   And no student told you that they were in a separate room or separately, that they were at a separate table or anything, did they?

A.   No.

Q.   Because you didn't ask that.

A.   I did not.

Q.   Okay. And you agree that Mr. Gabrielle wasn't present when they wrote their reports, correct?

Transcript of Hearing
Conducted on October 19, 2023                    296

A.  I could not speak to that.

Q.  Okay. And when you were doing your investigation, you didn't find it strange that there were no dates and that there were allegations that things were taking place for two and a half years?

A.  No.

Q.  Okay. And you didn't think it would be appropriate to kind of hone in on those dates credibility wise so Mr. Day could examine them to develop an alibi?

A.  They stated that they couldn't recollect dates. The specific dates of some of these alleged comments.

Q.  Okay. If they say they couldn't elect dates, did that cause you to challenge their credibility at all because no one could disprove or prove the existence of those statements?

A.  No, they were private conversations.

Q.  So, they could have been made up and no one could prove or disprove them, correct?

A.  Potentially.

Q.  Okay. So then, you could not -- you could

Day 000843

Transcript of Hearing
Conducted on October 19, 2023                                  297

not conclude that those statements were actually made because there's, other than he said, she said, there's nothing for you to -- to evaluate with regard to whether or not they actually occurred. Correct?

A.   No, that's not correct.

Q.   It's not correct? So, do you know if -- would you agree that it would be a different statement for Mr. Day to say, I think girls dress too scantily in today's society, that would be different than saying Gabrielle, you dress too scantily. Are those different statements that have a different impact as to whether they're sexist or not?

A.   I thought we couldn't talk about sex.

Q.   Not sex, if they're sexual or not.

A.   I'm kind of not understanding your question.

Q.   Well, the allegation is that in -- and in the statement, let me get to the -- the comment makes me feel like he's implying that I'm a whore, and that's not the best feeling. Now, the question -- the statement before that, some things he said are that I'll never get a boyfriend because I've been around too

much, comments about outfits being skimpy, said guys only use me for my body, and many more.

A.   Right.

Q.   Okay. Now, did you think it would be important to say that, or to find out whether Mr. Day actually said something along the lines of people should be chased because they won't ever get a boyfriend and not directed directly toward G███a, or he actually said that young ladies and young men dress too skimpily, or he actually said you have to watch out for guys because guys always want to use girls for their body.

Now, would you agree if he had said that to a young lady that, that would not be sexual in nature? That would be counseling, correct?

A.   It's still inappropriate conversation for a teacher and a student to be having.

Q.   Why would it be inappropriate? Where is it in any guideline that says it's inappropriate conversation for a teacher to say to a student -- to a student saying, you have to watch out for guys because teenage guys have one thing on their mind and they

Transcript of Hearing

Conducted on October 19, 2023                                299

always want to use girls for their body. Why would that be inappropriate of a sexual nature that would require dismissal?

A.   I'm talking about specifically -- you're talking about how someone is dressed. That is something that we do address at our -- our 7560 professional conduct policy, not having conversations about how people dress.

Q.   Is there a rule or regulation that says you face dismissal if you tell people that, I don't think that that is an appropriate outfit for school? Is there a rule or regulation that if someone were to say that to a student that they -- they -- if they say that, that they should face dismissal?

A.   It's part of our policy.

Q.   I didn't ask that. Is there a rule or regulation that says if they say something like that, they'll face dismissal? No, isn't there -- there isn't, is there?

A.   I can't really say yes or no to that question because if it's a policy violation and we investigate it, that's what -- that's why we're

Day 000846

Transcript of Hearing
Conducted on October 19, 2023                    300

investigating it.

Q.  Well, if there's -- if you can't say yes or no, then that means you haven't -- would you agree that means you haven't properly articulated a policy so that a teacher doesn't know what line can't be crossed?

A.  It's very clear in 7560 and 7014.

Q.  Well, in 70 -- I'm looking at 7014. Where is it very clear that someone can't say that I don't think that's an appropriate attire? I'm looking at page 3. I -- I'm looking at the list of A through M. I don't -- Judge, I'm in Exhibit 5 at page 3.

MR. JOHNSON:  Your Honor, the witness does not have reference at this point. She's not been directed.

THE COURT:  Okay.

MR. JOHNSON:  And I object on that regard, and and to add to it, what the question is. He got quite a few compounded questions.

MR. PLOFCHAN:  It's -- it's her Exhibit in the white book in number 16. Yours doesn't have the whole policy? Does yours have the entire policy?

THE WITNESS:  Only the last two pages.

MR. JOHNSON:  I have the policy and the

Transcript of Hearing
Conducted on October 19, 2023                                301

regulations.

BY MR. PLOFCHAN

Q.   Okay, so if you look at, on page 3 of the policy, 2 and 3, it lists a whole bunch of stuff on page -- the bottom of page 2, it says see IV, examples that may constitute sexual harassment. And they list all these things, not one of them says that if an adult comments on the appropriateness of attire that someone should be faced dismissal.

A.   Okay. So, no, it doesn't specifically say that you should face dismissal.

Q.   Okay. All right. And/or that they'll be disciplined for commenting on attire. It doesn't say that either. And so, correct?

A.   It's part of our policy, which is why we're investigating it.

Q.   Well, but in order to enforce a policy, would you agree, you have to give enough indication to someone so that they know what is permitted under the policy and what is not permitted under the policy?

MR. JOHNSON:   I'm going to object at this point, because we have not established that Ms. Wiley

Day 000848

Transcript of Hearing
Conducted on October 19, 2023                            302

is the one that makes the call one way or another to make a recommendation to the -- about -- regarding termination. And her findings, her conclusions have already been -- that objection was made and it was sustained.

So, you keep asking her about what is appropriate to recommend for dismissal or terminable offenses when -- when she's not been, you know, she can't testify to that it is -- it is not appropriate.

MR. PLOFCHAN:  I -- I -- if that was the way it had come on, let me rephrase the question, Your Honor.

BY MR. PLOFCHAN

Q.  Is -- can you point to a policy that a comment about inappropriate -- a policy directive -- a comment upon dress indicates that Mr. Day, which -- let me rephrase it again.

Can you identify a policy that Mr. Day should be aware of that says if you make a comment about dress, that it's -- it -- you could be subject to dismissal. Not that you will be or not, but that if you make a comment about dress?

Transcript of Hearing
Conducted on October 19, 2023                     303

A.   So, there is --

MR. JOHNSON:  Again, excuse me -- again, I want to object because the -- again, the lack of foundation has already been something that's been stricken. She's not been permitted to testify as to what her conclusions or -- or what she based her conclusions on with regard to any policy violations or recommendations to the superintendent. It was established.

THE COURT:  I don't think so. I think the question is, is can she point to anything that says that.

MR. JOHNSON:  I understand, Your Honor. I just want to clarify for the record, she -- she has not been permitted to testify as to what her conclusions are regarding any dismissal. She has not made the recommendation.

BY MR. PLOFCHAN

Q.   That's not the question though. The question is, can you identify in -- in 7014 or 7018, which are the two policies in question where Mr. Day is put on notice that if he makes a comment, which he's

Day 000850

Transcript of Hearing

Conducted on October 19, 2023                                        304

denied, but even if he had made a comment relating to

dress, that he is on notice that he would be in

violation of that policy?

A.  So, I would direct you to 7560, which is

professional conduct.

Q.  We're not here under 7560, ma'am. We're

here on 7014 and 70 --

MR. JOHNSON:  7560, objection.

MR. PLOFCHAN:  7018.

MR. JOHNSON:  The objection is the -- the

letter put on notice that we are here under 7014 and

7560.

BY MR. PLOFCHAN

Q.  Right. And so you're saying under 7560?

A.  Point one regulation. It's LCPS0003 under

18, tab 18, number two.

Q.  Number?

A.  B. Commentary on a student's physical

appearance.

THE COURT:  Where -- where are you reading?

I'm sorry.

THE WITNESS:  I'm sorry. It's -- it's section

Transcript of Hearing
Conducted on October 19, 2023                                    305

18.

THE COURT:  Oh, that's tab 18?

THE WITNESS:  Yes, tab 18.

THE COURT:  Tab 18.

THE WITNESS:  LCPS00003. And it is number 2, inappropriate or intimate social relationships and communication. B. Commentary on student's physical appearance or clothing that could reasonably be interpreted as sexual, flirtatious, or harassing.

BY MR. PLOFCHAN

Q.  So, when, if he -- if someone were to say, I don't think that's appropriate attire, are you claiming that that would be interpreted as sexual, flirtatious, or harassing? Or would it be interpreted as an adult correcting a minor?

A.  Looking whorey or looking like a slut? Yes.

Q.  Well, he's denied saying that. And the young lady didn't put anything in quotes, correct?

A.  Correct.

Q.  And so, and what she really said is, he said things that, generally, that made -- that implied

Day 000852

Transcript of Hearing
Conducted on October 19, 2023                    306

she was whore -- a whore. So, the implication is her interpretation, correct?

A.   Her -- her perception.

Q.   Okay, so if his -- if we have a young lady like G█████ who it's established has some mental health issues over the last several years and is overly sensitive or distressed because an adult says that's not appropriate attire, that doesn't mean he's engaged in -- made a comment that could be interpreted as sexual, flirtatious, or harassing.

MR. JOHNSON:  Objection. That calls for speculation and lack of foundation.

MR. PLOFCHAN:  Well, I think it's all speculation at this point because we have him denying it. She's -- the girls are not precise. I'm asking where is the regulation that -- that he's on notice of his behavior?

MR. JOHNSON:  This is not argumentative --
[Talking over each other]

THE COURT:  It is argumentative.

BY MR. PLOFCHAN

Q.   Let me ask it a different way. Would you

agree that under 2B, it doesn't prohibit Mr. Day from someone -- looking at someone's appearance or clothing and saying they look nice.

A.  I can't have an -- I mean, you're asking me for my opinion. I don't think --

Q.  Well, it's the rule. There's no rule that says you can't compliment a student. Correct.? I'm just asking.

A.  I mean --

Q.  And would you agree there's no -- there's no -- and there's no rule that says that you can't be critical.

So, that if someone were to say, there was a person with rips in their jeans, and Mr. Day says to a young boy, you should wear pants without holes in them, that would not be violation, because it's not sexual, flirtatious, or harassing, correct?

A.  But could it be reasonably perceived by the student as that? I don't know.

Q.  Where is it that the standard for the teacher is that it could be -- reasonably perceived by the student?

Transcript of Hearing

Conducted on October 19, 2023                    308

A.  It doesn't specifically say that.

Q.  Oh.

A.  It says reasonably could be interpreted --
interpreted in my opinion --

Q.  Where is that?

A.  Number two. It says reasonably perceived --

Q.  Oh, but it -- it's not perceived as
sexual, flirtatious, or harassing to say you shouldn't
wear clothes with holes?

MR. JOHNSON:  Objection. She was asked and
answered the question.

Q.  So, then when we get to going back to the
statements of the young ladies. Okay. I'm going to
number 12. The comments make it -- the comments he
makes make me feel like he's implying something. Did
you ever ask her to elaborate on any comments?

A.  Are you referring to their written
statement?

Q.  Written statements.

A.  Can I look at that in here?

Q.  You can look at the written statement. I'm

Day 000855

Transcript of Hearing
Conducted on October 19, 2023                    309

asking if you ever asked her to elaborate it and get --
I need the specific words he said.

          MR. JOHNSON:  Angel is -- is tab 10 and then
underneath tab 10 is tab 8.

          THE WITNESS:  All right, you are asking about
K████    or G████?
BY MR. PLOFCHAN

          Q.  I'm looking at G████    right now.
          A.  Okay.
          Q.  She says, the comments make me feel like
he's implying that I'm a whore and that's not the best
feeling. Did you ever ask her to specifically identify
the exact words of any comment?
          A.  Again, I would have to look at my -- my
notes to see exactly what my questions were.
          Q.  Can you -- can you point to anything in
that binder that the department has put out that the
court's allowed to look at that says that you
specifically asked the question, asking her to clarify
or be more precise in her statements?
          A.  I would have to look at it. I don't know.
          Q.  Now, you've been -- did you get training

Transcript of Hearing
Conducted on October 19, 2023                          310

as an investigator?

A. I have been trained.

Q. Okay. And isn't it true that in your investigative training they taught you to be suspicious of people who immediately try to self-authenticate their material by saying, oh, this is not something I would ever lie about.

A. I wouldn't -- not -- no.

Q. You've never had that in your training?

A. To the best of my recollection, I've never heard anyone say specifically that, no.

Q. Okay. All right. Do you have -- did you ever ask for K███ to provide you specific quotes?

A. Specific quotes about?

Q. What he says. What he said.

A. Again, I would have to look at my specific -- specific --

Q. You don't have anything in any document that's -- that's presented here today?

A. The transcripts would be --

Q. But that -- if that's not been provided, then you wouldn't. Okay. Is there some reason when you

Transcript of Hearing
Conducted on October 19, 2023                          311

have 17-year-old students making pretty serious allegations of a teacher, you don't put them under oath?

A.  I've -- we've never put students under oath. We've never put anyone under oath.

Q.  Why not?

A.  In investigations.

Q.  Why not?

A.  That would be not a question for me. That would be a question for probably our --

Q.  So, no one ever can get penalized if they lie to you, because they're not under oath, correct?

A.  We specifically ask them to be honest with us and keep it confidential. We talk about retaliation, but no.

Q.  So, you have a scenario where Mr. Day is telling the truth and these unreported statements for more than two years are not credible. You have a scenario where Mr. Day is credible, and the girls are credible.

And you have a scenario where someone can say Mr. Day is not credible and the girls are credible.

Day 000858

Transcript of Hearing
Conducted on October 19, 2023                    312

Correct? Those are the three scenarios that you could have. Correct?

A.  We could have a lot of scenarios.

Q.  No, I don't think you can. I think logically it's either Day is credible, and the others aren't, they're both credible, they're both incredible, or the girls are credible and Day is not.

MR. JOHNSON:  Objection. Objection, asked and answered.

THE COURT:  Sustained.

BY MR. PLOFCHAN

Q.  Okay. Can you point to -- no, I'll just save it for argument. Let me just see if I have anything else here, Your Honor. Would you agree that if somebody's rehearsed their statement they could be consistent and not stray, not come across as reading and exhibit no ill will? They could do that, right?

A.  You're asking me for my opinion on it, and I would say that, I mean, there are very much a lot of variables in all of that.

Q.  Okay. I'm just asking you if somebody rehearsed their statement, they could come across as

Transcript of Hearing
Conducted on October 19, 2023                313

consistent, not straying, not reading, and no ill will.
Correct?

A.  Possibly.

Q.  Okay. And actors, for example, are trained
to try to come across as convincing as possible,
correct?

A.  Correct.

Q.  Okay. Is there some reason why you didn't
explore further why they could not provide any date or
time frame when these statements were made?

MR. JOHNSON:  Objection, assumes facts not in
evidence that she actually did not explore anything
further.

MR. PLOFCHAN:  She did. She said before, Your
Honor, that she asked them and they said they didn't
know when it was and she didn't ask any further
questions. And I'm now asking why she didn't ask any
further questions.

MR. JOHNSON:  And my recollection was she
already addressed that she needed her notes before her
to be able to testify to the specifics.

BY MR. PLOFCHAN

Day 000860

Q.  That was not her answer, Your Honor, but I'll just rephrase it now. Just because I want to -- I don't want to belabor the issue, Your Honor, so I'll withdraw the question and ask this one.

When they told you that they didn't recall when the questions or the statements were allegedly made, did you attempt to refresh their memory?

A.  Again, I'd have to look at my notes to recall.

Q.  So, right now, do you have any recollection of attempting to refresh their memory?

A.  I possibly could have asked them if it was this school year or last school year. I possibly could have asked them --

Q.  But you don't have any recollection of doing that?

A.  I do not.

Q.  Okay. And you don't have any recollection of trying to say was it in the spring or the fall or the winter or anything like that, do you?

A.  I -- I could have.

Q.  But you don't have any recollection and it

Transcript of Hearing
Conducted on October 19, 2023                                    315

doesn't appear in your report, it doesn't appear anywhere, correct?

A.  Not unless it's in the transcript.

Q.  Okay. And the transcripts aren't here today. So, absent that -- well I'll just make -- let me just see if there's anything else. Of course, indulgence. Would you agree that the statements of K█████ and G█████ were different statements?

A.  Different in what way?

Q.  Well, one was K█████ talking and G█████ was the other and they didn't use the exact same words.

A.  I couldn't say definitively without looking at the notes.

Q.  So, they could have used the exact same words?

A.  I don't believe so, but like I said, I would have to look at the actual statements to decipher because there were some statements that both K█████ and G█████ shared that they were together for.

Q.  Would you look at 000148 -- not 148, that's -- it's Exhibit 10, 0007. And I'm about five lines from the bottom, Your Honor. She shared that Day

Transcript of Hearing
Conducted on October 19, 2023                316

commented that her outfits were inappropriate and skimpy, and now she's self-conscious about her clothing.

So, in it, this isn't even Day, this is G███ saying that an adult told her, her outfits were inappropriate and skimpy. He doesn't say sexual, he doesn't harass her, and he doesn't do anything flirtatious. Correct?

A.  I don't know. That -- that -- I mean based on what you're saying to me --

Q.  But you didn't -- you didn't go -- you didn't ask, was this sexual, was this flirtatious, was this harassing?

A.  She said that his statements made her feel uncomfortable.

Q.  So what?

A.  And she made it -- made it feel like he was looking at her body.

Q.  So what?

MR. JOHNSON:  Objection, argumentative.

MR. PLOFCHAN:  I'm asking under the policy. Sexual, flirtatious, or harassment has nothing to do

Day 000863

Transcript of Hearing

Conducted on October 19, 2023                    317

with how someone perceives it. Just because you have a young -- young teenager with mental health issues being distressed doesn't make my client having violated any policy on sexual misconduct.

MR. JOHNSON:  Objection, Your Honor. It's argumentative.

THE COURT:  Madam, would you agree?

MR. JOHNSON:  And -- and it -- and -- and on top of that, the statement is a compound statement, is it? Or a question?

THE COURT:  Well, it is a compound statement.

MR. PLOFCHAN:  All right. Would you agree that just because a -- a student with no mental health issues feels uncomfortable doesn't mean that my client is engaged in sexual misconduct?

MR. JOHNSON:  Again, objection to the form of the question?

MR. PLOFCHAN:  What's wrong with the form?

THE COURT:  I think that she could answer that question.

MR. JOHNSON:  Just to establish for the record, there has been no foundation laid for the

Day 000864

Transcript of Hearing

Conducted on October 19, 2023                    318

students' mental health issues and how they relate to this at all.

THE COURT:  I -- I --

MR. PLOFCHAN:  Principal Gabrielle said that she -- she -- he called her a student with mental health issues. I'm just quoting him.

MR. JOHNSON:  And again, there's been no statement -- there's been several statements made about this student's mental health issues, and there's no lack of foundation, and there's -- there's being this correlation made about the student's mental health issues and whether she could actually provide an accurate report.

That has never been any testimony here today, outside of one statement that provided -- that had a totally different context to it. And there's nothing on the record that demonstrates that Ms. Wiley was aware of any of that.

MR. PLOFCHAN:  I didn't ask whether she was aware of it, I asked in the -- in the sense of a hypothetical.

THE COURT:  I'm going to sustain as the form

Day 000865

Transcript of Hearing
Conducted on October 19, 2023                    319

of the question.

BY MR. PLOFCHAN

Q.   [Inaudible] is what I was going to put on the record, but that's fine. So, it's the form of, if -- is there any statement, regardless of mental health issues, that says because a student doesn't like the comment, that that means an adult is engaged in sexual comment?

A.   It depends on what the comment is. It depends on what the allegation of the comment is.

Q.   And you -- it's not the -- it's actually -- doesn't it depend on what the comment is? And we don't know what the comment is because there's a difference between G_____, K_____ and Mr. Day. And they all say either -- Mr. Day says the comments didn't occur, and the girls don't provide quotes. Correct?

MR. JOHNSON:  Objection to the question. He is awfully compound.

THE COURT:  I think it's understood.

THE WITNESS:  I don't understand your question, actually.

MR. PLOFCHAN:  I made my point. Do I have

Day 000866

Transcript of Hearing
Conducted on October 19, 2023                                   320

anything else? I have nothing else.

THE COURT:  Anything further?

MR. JOHNSON:  Just a couple of questions if you will.

REDIRECT

BY MS. JOHNSON

Q.  Ms. Wiley, do you -- did you investigate policy violations?

A.  Yes.

Q.  What policies did you consider or review in conducting your investigation?

A.  7560 and 7420.

A.  Actually, a follow on that, did you apply those policies to -- could you explain whether the policies apply to this conduct here, when it was when you were charged with the investigation?

Q.  I'm going to object. I think that is for the court to determine.

A.  The fact of her investigation and what she investigated is whether there are policy violations.

Q.  I understand, but she can --

A.  She can -- she can -- excuse me -- she can

Transcript of Hearing
Conducted on October 19, 2023                     321

attest to whether she actually applied the policies in

doing or conducting her investigation. That's the whole

undertone of Mr. Plofchan's --

THE COURT:  I will allow her to answer that

question.

Q.  Thank you.

A.  Yes, I did.

MR. JOHNSON:  All right, nothing further, Your

Honor.

THE COURT:  All right. She --

MR. JOHNSON:  Yeah, she's -- we do reserve the

right to recall if necessary, but based on what's going

on today, I don't expect that. But I do want to reserve

that right.

THE COURT:  Okay. Well, she's free.

MR. JOHNSON:  She can leave. She can leave.

MS. WILEY-SMITH:  You want me to hang around?

THE COURT:  Stay in the building.

MS. WILEY-SMITH:  Or, you know, I live right

across the street, so.

MR. JOHNSON:  Okay. Thank you.

MR. PLOFCHAN:  Thank you, ma'am.

Day 000868

Transcript of Hearing
Conducted on October 19, 2023                        322

MS. WILEY-SMITH:  Thank you. Thank you as well.

THE COURT:  Yes, ma'am.

MR. JOHNSON:  At this time, we do not have any further witnesses. We're resuming right for rebuttal, and they actually are still here. So, I'm not -- most of it is about an argument that was alluded to previously -- I'm sorry, before we begin that, I just -- let me stop myself and interrupt myself to say that Mr. Martin has to leave.

THE COURT:  Okay. Yes, sir.

MR. MARTIN:  Great meeting you. Thank you.

MR. JOHNSON:  Thank you. And, but he's going to make his supervisor -- one of his supervisors, Ms. Alex Smith stand in, in his place as the representative if that's -- thank you.

So -- so, I'm not sure if that's where we are. I mean, where we are in terms of the evidence that's going to be put on, but if there's -- if -- if there's a -- if we can at least get, you know, just kind of like an outline of -- of what the rebuttal is, is it going to -- if there's -- or the actual case in chief

for Mr. Day, if there's, you know, what those actual legal arguments are going to be so I can assess whether we do not intend to call the other witnesses in.

THE COURT:  I'm going to ask the court for -- I'm sorry.

MR. JOHNSON:  Go ahead.

THE COURT:  I'm going to ask the court for a legal interpretation.

MR. PLOFCHAN:  Under this -- under normal circumstances in a hearing, I would ask for a motion to strike at this point in time. That -- there are no formal rules, so I don't know if the court considers a motion to strike or not, and so I would like to make one, but I -- if the court says that's not appropriate for these kinds of hearings.

THE COURT:  I don't believe it is appropriate for this kind of hearing, unfortunately. Well, I mean, not unfortunately, but I do say, I mean, in -- in court, it makes sense to do that, but for this type of a hearing, I don't believe that's appropriate.

MR. PLOFCHAN:  I'm going to make a proffer then, Your Honor. I'll be able to tell the court that

Transcript of Hearing
Conducted on October 19, 2023                                    324

I'm going to proffer the exhibits in our binder, and I'm going to move to have them all admitted, and then I'm going to proffer that my -- I'm going to go write down the statements or allegations of the two young ladies.

And I'm going to ask my client if he ever made those statements, and he's going to say no, and that will be the evidence, and it'll be -- and since we did talk about a precise proffer, I want to be very clear. So, I will ask my client have you on numerous occasions made multiple inappropriate things while walking along with G████ L████? And the answer is going to be no.

Have you ever made any comments since the 15th of February 2023 of an improper nature? The answer will be no. Have you ever made any comments of an improper nature since you came to the school? The answer will be no.

MR. JOHNSON:  Can I object that he's -- that's he's offering testimony, his client's sitting right here?

THE COURT:  Yeah --

MR. PLOFCHAN:  I was trying to do a proffer to

Transcript of Hearing
Conducted on October 19, 2023                          325

make it quick, so we're not doing, you know?

MR. JOHNSON:  I can understand proffering certain things, but we're talking about the gist of the case.

THE COURT:  But I thought that what you wanted him to do is to -- to give a proffer as to whether or not you feel that what he's going to put on would necessitate having a rebuttal witness.

MR. JOHNSON:  Correct, but --

THE COURT:  So, you were just making a proffer as to his denial of all of these statements, okay. Are you making any other kind of proffer?

MR. PLOFCHAN:  I'm -- I'm going to make -- I'm going to -- I have the exhibits. I have that -- the proffer, that's going to be the evidence we have. So, I was just trying to say that's what we're going to put in.

THE COURT:  Okay, well then that's your proffer. I mean I -- we don't have to go down each and every, who has one of them to make the proffer. You're just going to say that all of these things -- okay. And what is your position?

Transcript of Hearing
Conducted on October 19, 2023                         326

MR. JOHNSON:  Well, the entire binder is coming in. I would have an objection to -- to several documents in there unless we're going to be able to admit our entire binder, which setting aside the -- the -- the evidence that that had already been ruled as is not permitted to be included into this case. So, otherwise, I have an objection to that. It still doesn't quite tell me if I can release any witnesses, so I'll still reserve the right to call a rebuttal if necessary. Thank you.

MR. PLOFCHAN:  Okay, so then -- I guess then let me put on my evidence or -- and I can do it by proffer now, Your Honor. I -- I'm just going to repeat the proffer. I'm going to move in Exhibits 1 through 17. 1 through 22, I apologize. 1 through 22.

MR. JOHNSON:  You can have a moment just to look to see exhibits, yes, and I still -- I maintain my objection to some of these, because they have actually not been -- we haven't had a proper foundation laid. I would have to say, look a little bit more closely, but then there's also, I mean, Exhibit 11 in the -- in the --

Transcript of Hearing
Conducted on October 19, 2023                327

MR. PLOFCHAN:  I was just about to address that, I apologize, Ms. Johnson. 11, 12, and 13, which are the investigative report, and I will withdraw that because they're already in from -- to the extent permitted, from the school. So, 1 through 10 and then 14 through 22.

MR. JOHNSON:  And asking -- some of these are statutes -- is that -- are you asking, and then there are policies. Is this something that, you know, obviously taking judicial notice of as far as their authenticity and then we're moving them in? Is that -- is that your plan counsel?

MR. PLOFCHAN:  I'm going to leave that also to the judge in this case. I don't have to admit a statute if the court will take judicial notice of them.  I routinely do have a copy just so that the court has and it's -- and it's admitted as part of the record. But a hearing officer is clearly entitled to take notice of the law and that doesn't necessarily mean that a copy of the law has to be an exhibit.

So, I would leave that up to Your Honor. If you don't need a copy of the law, I only need then 5

Transcript of Hearing
Conducted on October 19, 2023                       328

through 10 and then 14 through 22. 14 through 20 and then 22 because Grimes v. Nottoway is law and I would argue that.

THE COURT:  So, at this time the defendant is moving his Exhibits 5 through 10, 14 through 20 and 22.

MR. PLOFCHAN:  That's correct. And what is the county's position?

MR. JOHNSON:  Yes, 5 through 10 with the exception of -- excuse me. No, I'm sorry. 5 through 10, yes. I have no objection to moving those in. And I'm sorry. The other ones are 14 through 22. I do not object to 14 through 17. At this time, I object to the admission of 18.

MR. PLOFCHAN:  18 was authenticated by Ms. Wiley Smith and testified to.

MR. JOHNSON:  19 --

THE COURT:  What is your response to the 18?

MR. JOHNSON:  18, that's the Child Protective Services letter. She -- she did acknowledge that she admitted to receiving it but -- but my argument is relevance.

This is not conducted, or it could be

Day 000875

Transcript of Hearing
Conducted on October 19, 2023                              329

relevant, but if it's being admitted for the truth of what it actually states, that it's an unfounded finding by CPS, that has no bearing on the investigation itself with regard to what LCPS -- LCPS's findings are.

So, that's the extent of my objection with that -- that document, and it's not clear to me what it was admitted for based on the testimony to Ms. Wiley, except the fact that it did occur and that investigation was closed out.

MR. PLOFCHAN:  It's not binding, but I think it is relevant, Your Honor, to the issue of --

THE COURT:  All right. Over objection, The Court will receive 18.

MR. JOHNSON:  And 19 and 20, no objection provided they're the same, you know, we did not -- these were not admitted  from days from this binder, but we did have these documents as part of the exhibits and in the -- the school division's binder and provided they're the same email as they appear to be looking at them right here, then I would have no objection to those two.

THE COURT:  Okay.

Day 000876

Transcript of Hearing
Conducted on October 19, 2023                           330

MR. JOHNSON:  And 21, you know, I defer to, you know, Your Honor with -- with regards to --

THE COURT:  He's not moving 21.

MR. JOHNSON:  I thought he said --

MR. PLOFCHAN:  I'm not moving that crimes fee not a way, I'm not, it's case law, so.

MR. JOHNSON:  22, I have no objection.

THE COURT:  I thought I was reading the room on case law and statutes.

MR. JOHNSON:  Yep. I probably -- I might have missed it. I thought that 22 was still coming in, as I asked about.

MR. PLOFCHAN:  22 is, not 21.

MR. JOHNSON:  I mean 20 -- 14 through 22. So, I was not sure that you asked to take judicial notice, but I'm fine with that and 22, I have no objection.

THE COURT:  Okay.

MR. JOHNSON:  And to that extent, I would reserve and ask at -- at the end of this. I wanted to take a moment to look to make sure that we were complying with the court's earlier ruling before asking to move some exhibits in -- in our binder -- the school

Day 000877

Transcript of Hearing
Conducted on October 19, 2023                                    331

division's binder, but if -- I will certainly be able to do that before we leave here today.

So, I ask to reserve to be able to make that -- that request at -- at the end of this -- at the conclusion of the -- the employee's case in chief.

MR. PLOFCHAN:  The only -- the only issue on -- since we had a conversation offline about a case I'm working on now regarding the sufficiency of Crawford, I want to be very clear that Mr. Day's testimony will be that none of the alleged statements by either of the two young ladies occurred.

None specifically didn't occur from the 15th of February. 2021 through today and that it's his position that they were retaliating against him for getting them kicked out from using the teacher's parking lot and we will have argument about the sufficiency of the school's case with regard to whether he was on notice or not with regard to regulations.

And that whether they can point to anything not just because someone made -- was made or felt uncomfortable, but whether his specific statements and they don't have those.

Transcript of Hearing
Conducted on October 19, 2023                                    332

THE COURT:  Okay.

MR. PLOFCHAN:  And that's my proffer.

THE COURT:  All right.

MR. PLOFCHAN:  Will she accept the proffer or?

MR. JOHNSON:  I accept that you've made the proffer.

MR. PLOFCHAN:  Well, will you accept the proffer?

MR. JOHNSON:  I accept that you've made it. I did not. No, I will not accept that the arguments that have been made as the proffer --

THE COURT:  He's not making an argument, that's his proffer as to what the testimony would be.

MR. JOHNSON:  I accept that.

THE COURT:  Yeah.

MR. PLOFCHAN:  Okay. So, that -- and then I don't think -- we don't have anything other than arguing that.

THE COURT:  All right, then the defendant would rest at that point.

MR. JOHNSON:  Okay. Based on what has been proffered, then I have a couple of witnesses. Ms. Evans

Day 000879

Transcript of Hearing
Conducted on October 19, 2023                          333

will not be testifying. And I'll -- so I'm going to go ahead and withdraw her from our witness -- proposed witness list, as stated today.

THE COURT:  All right.

MR. JOHNSON:  And that -- that's all for now.

THE COURT:  So, what else are you intending to put on?

MR. JOHNSON:  My proffer based on his evidence, you know, it really would be a cross about, you know, the statements that he already offered into evidence that he's already stated during his witness interview that he cannot recall with regard to some of these statements.

Not that they did not happen. There was an investigation. I would also proffer there was an investigation that -- that did conduct the, the student statements and two of the students statements and that -- that evidence was taken, and it should have been taken as credible or credible statements by the students. And so, they were therefore investigated for that reason.

MR. PLOFCHAN:  And -- and I would object

Day 000880

Transcript of Hearing
Conducted on October 19, 2023                                          334

there. That's not a proffer. That's argument. I

understand.

THE COURT:  It is argument at this point.

MR. JOHNSON:  And again, I, you know, I said

that's -- I don't have any other proffer outside of

what we've already offered previously. And like I said,

I'll go through -- I reserve the right to actually

amend my exhibits into evidence.

MR. PLOFCHAN:  I think if we're closing the

case, if I've entered, they don't have any rebuttal, I

don't think they can reserve to put more in. I think we

would need --

THE COURT:  Well, if they had asked to reserve

to be allowed to put in their exhibits, that was the --

that was -- they've already had asked, and I said all

right, I will give you an opportunity to do so.

MR. PLOFCHAN:  Oh, to put in their exhibit,

but not to -- for --

MR. JOHNSON:  Correct.

MR. PLOFCHAN:  And we're just doing closing,

Your Honor, and then the -- the question is we do

closing orally. You had asked us each to prepare

Day 000881

Transcript of Hearing
Conducted on October 19, 2023                                    335

findings of fact and conclusions of law.

THE COURT:  I did.

MR. PLOFCHAN:  And we have a version that's prepared, unfortunately. Obviously, we now have the benefit of testimony and what evidence you have heard and it probably needs -- we don't want that to be the final. I have something to be responsive to the court's request, but we would want leave to amend.

And I don't know if the court would rather just give us 10 days to get you an answer -- to get us a revised or -- based on the evidence? Well, you have to decide in 10 days at the conclusion, so.

THE COURT:  So, that's -- that's the --

MR. PLOFCHAN:  So, you can hold it open for 10 days to provide this information that allows them -- do you have 10 days after that?

MR. JOHNSON:  Based on some of the arguments that were made today, I would not have an objection to that, but I -- I think 10 days is -- is a little lengthy.  I would like to request that we are able to, as part of this --

THE COURT:  I think that -- that you ought to

Transcript of Hearing
Conducted on October 19, 2023                                    336

-- you all ought to be able to both submit your -- your proposed findings of fact and conclusions of law based upon the evidence that's been adjudicated and heard by the court today and based upon the exhibits which have been received and I'd say by the close of business next Thursday.

          MR. PLOFCHAN:  I have a major appellate brief due Monday, so as long as you didn't say Monday.

          THE COURT:  No.

          MR. PLOFCHAN:  Thursday is fine, Your Honor.

          THE COURT:  And -- and this hearing will not close.

          MR. PLOFCHAN:  Until then.

          THE COURT:  And the closing -- okay, the hearing closes as of -- well, no, I wouldn't -- I don't know, because then that's what I got to come up with, and -- and -- and --

          MR. PLOFCHAN:  Ten days.

          THE COURT:  Yeah. Yeah. Then thereafter. Now, certainly I have to admit, if both of you are going to be getting me, by the close of business next Thursday, your proposed findings, it gives me an opportunity to

certainly review my notes and so forth, and then review what you all submit, hopefully, which can then make it easy for me to get it done within the 10 days.

This is -- and I think that's why I asked, because as I start looking at this, I said, oh, this is a little different, a little bit more involved and so forth, a lot of stuff.

MR. PLOFCHAN:  And that's good. I presume you want it into word format as well as a PDF.

THE COURT:  That -- I think that would make it easy. Yeah, that would make it very easy. Well, easier, let's put it that way. So, what we will do is I'm going to direct everybody to have their -- this hearing will remain open until next Thursday, close of business next Thursday.  You can certainly -- and then get me, both sides, get me there findings and -- and conclusions.

MR. PLOFCHAN:  And I -- and I don't want to be picky, but lawyers are that way. Under the court of appeals and federal court, close of business is midnight. Under the circuit court, it's usually 5.

THE COURT:  5:00.

MR. PLOFCHAN:  So, that's what I'm asking. I -

Transcript of Hearing
Conducted on October 19, 2023                                338

- I don't want to be like --

THE COURT:  This is a -- this is a -- a state proceeding. It's 5:00.

MR. PLOFCHAN:  Okay. And are they exchanged with the other side or is it there will not be rebuttal, it's just what --

THE COURT:  It's not rebuttal, it's just what your -- your arguments were.

MR. PLOFCHAN:  Okay. Okay.

THE COURT:  Not rebuttal.

MR. PLOFCHAN:  Okay. Very well, Your Honor.

THE COURT:  Because that would necessitate us leaving it open even longer.

MR. PLOFCHAN:  Right. Right. The only -- the issue I will make with regard to -- the -- the only clarification I need with regard to the proffer they want to move some exhibits in is this binder contains exhibits that were not part of the pretrial provision and therefore if we didn't -- I will tell the court -- I will, based on if they tell us what they're going to try to move in and so forth.

I just need to know that by Monday, if we

Day 000885

Transcript of Hearing

Conducted on October 19, 2023                    339

could, so that if there's any objection, we could --

MR. JOHNSON:  Well, I can tell you now, you know, what we're going to move in. My concern was, because of the way this proceeding has gone, there was the exception of not putting in the -- admitting the entire, you know, the -- the report, because it is also contained in the school divisions binder, but there are several pieces of the report that I believe may have to be eliminated.

THE COURT:  I would [inaudible] that.

MR. JOHNSON:  Right. So, or redacted or -- or, you know, to sit here and admit them now, you know, it would be very piecemeal and very arduous and I -- and I -- I -- I am concerned about running the risk of violating a ruling that was made earlier and then being objected to for it and having potentially the entire case thrown out as a -- as, you know, a sanction or something close to it, so --

THE COURT:  I can't imagine I would ever make that motion.

MR. JOHNSON:  So -- so, that -- so, that being said, that's -- that's my hesitancy to move exhibits

Transcript of Hearing
Conducted on October 19, 2023                                    340

now, you know?

MR. PLOFCHAN:  I -- I just wouldn't, if she -- if we -- if they can make their motion by close of business Monday, then if we have any objection we can inform Your Honor as to, and the court can then make a decision as to any objection. That's all.

And I just -- and -- and what we will say is if this wasn't included, or it was included, and that's -- that's basically the only --

THE COURT:  I'll tell you what, I'm going to give you all a little bit more. I'm going to say close of business Friday.

MR. PLOFCHAN:  Okay.

THE COURT:  That gives everybody an opportunity to then -- for you to look through and pull out everything that you don't want to try to have admitted, and which gives you a day to look to make sure there's no objections.

MR. PLOFCHAN:  Okay, so they have to just give it to us Thursday then. I just need it one day before Friday so that I can -- as to what their exhibits are, so I can make whatever objection is necessary.

Day 000887

Transcript of Hearing
Conducted on October 19, 2023                    341

MR. JOHNSON:  You know, if I was allowed to finish what I was saying earlier, I can tell you the rest of it with the exception of this report that we would like to move if that would help speed it along. Otherwise, I'm happy to -- I would gladly take the Friday. I guess we're talking tomorrow, not next week.

THE COURT:  Well then, we could just go through those quickly. I'm sorry. I was going to say no. I was saying I was going to leave that your -- your -- your findings and conclusions have to be submitted by next Friday closing. Because I, at that time the court would -- I mean, the -- the hearing officers have it.

The -- the hearing officer would close the case at that point and the 10 days would start to run thereafter.

MR. PLOFCHAN:  Okay.

MR. JOHNSON:  Okay.

MR. PLOFCHAN:  So, which -- which are you looking to move in that haven't been received already? Yeah, 28, Kristi.

MR. JOHNSON:  What's been received? Are you

Day 000888

talking to me or?

MR. PLOFCHAN:  I was asking you. You said you wanted to identify very quickly as --

MR. JOHNSON:  Yeah. I thought you said something about 28. That's what I was asking. You have 28.

MR. PLOFCHAN:  You have 28 proposed exhibits in the binder, and I just.

MR. JOHNSON:  No. Yeah, so what's --

THE COURT:  No, no, no. On second thought, I hate to do this, but I'm going to leave it close of business Thursday.

MR. PLOFCHAN:  Okay.

THE COURT:  I -- I -- I'm thinking about -- I've got to do, because I need to get it done. So, I'm going to say close the business on Thursday, 5:00.

MR. PLOFCHAN:  Okay.

MR. JOHNSON:  Okay. All right. And you know, I'd like to admit some of these, it's going to seem redundant, but because they -- there is a little bit of difference here.

Exhibits 19 through 24 [inaudible] some of the

Transcript of Hearing
Conducted on October 19, 2023                    343

preliminaries and then that would be -- those are the only ones with the exception of 10, being able to go through that. Oh sorry, 19 through 24 and 26 -- 25 and 26 as well. So, 19 through 26.

MR. PLOFCHAN:  Okay, so in the -- I'll just tell the court, we'll do it any way you want, it might be easier. But I know, for example 19, the notice of the proposed dismissal has already been admitted as one of ours. 20, the reasons for the termination has already been admitted.

21, the request for hearing and documents, pardon, that wasn't -- correspondence for the reasons for dismissal recommendation was not, but 23, that response is fine. Just 24 and 25.

MR. JOHNSON:  I'm fine with 20 -- d20 for sure, 20 --

THE COURT:  Well, hold on right now. This is -- this going to take a while, because you all are going to piecemeal about what will and what -- why don't you pull everything that you don't wish to have and when can you get it to him?

MR. JOHNSON:  We can get that done today after

Transcript of Hearing
Conducted on October 19, 2023                                    344

we close for the day. We can sit here and get that done. The only -- you know, with 10 being the exception, I think that might take a little bit longer. And I -- and I actually have to -- I'm leaving here immediately to go out of state.

MR. PLOFCHAN:  That was why I was suggesting if they -- if they could get us it by close of this Monday or even close of business Tuesday, we can get you a list of documents with the -- with the closing on Thursday.

The only thing I will tell you in anticipation, Ms. Johnson can -- I will tell the court, but Ms. Johnson can hear me in this regard, there is in 24 and 25, there's huge sections of his personnel file that are not part of this that I don't know how they -- did they -- and I will more likely than not be objecting to parts of the personnel file, like his athletics contract.

THE COURT:  Well, I don't know that those things are relevant.

MR. JOHNSON:  It's not. It's -- it's -- it's admitted for the purpose -- there was an argument about

Day 000891

Transcript of Hearing
Conducted on October 19, 2023                          345

the procedural pieces of this.

This is -- it was attached as part of that. So, that is not being admitted for relevancy, it's for the exhibit, the -- the procedural argument with regard to timing and the arguments that went back and forth with that.

It could certainly come without the personnel file, but I -- I personally did not want to submit that all -- all that was provided was the cover letter there when those documents went with the whole package, and there was an argument that the agent -- the school division did not comply with procedure. That's the big argument.

MR. PLOFCHAN: If we could have -- they could provide us those pages they want to admit within those documents, and whatever version they want of 10, if they can provide us by close of business Monday, we can have whatever objections to the court by close of business Tuesday, and then we all have our submissions by Thursday.

THE COURT: Because of the volume here, this is another concern of mine. We're talking about just

Day 000892

Transcript of Hearing
Conducted on October 19, 2023                                    346

volumes of paper.

MR. PLOFCHAN:  I actually don't think we are, Your Honor. It's just there's -- and that's why I wanted to see because Ms. Johnson indicated she just wanted to create enough of a record under 24.

That's the only really big document, it's like an inch thick, but it's like two pages of correspondence with the rest of his personnel file, and I'm hoping when she reviews it, she's going to say, I just need the first two pages.

MR. JOHNSON:  I just stated on the record, the only reason that this is actually submitted this way is because there's a big challenge to what was actually done procedurally, and that document, that supporting documentation is part of that challenge.

So, if they're willing to accept that, that was -- and you agree on the record here that they -- that this was received as part of the cover pages, it -- the cover corresponds to that email and then the letter that went with it, then I don't need to have that admitted because we're not relying on the substance of any of the personnel record outside of

Day 000893

saying it was produced on the day that it was produced.

THE COURT:  Okay. What I'm going to do then, so I don't have to then reproduce all of these papers. I want you all to pull and you are going to have to either FedEx, UPS or whatever, them to me. Usually, I don't want volumes and reams of paper, but I -- I don't want to have to then go copy all of this stuff.

MR. PLOFCHAN:  Right.

THE COURT:  To -- to look through. I don't want to have to do that. So, what I'm going to do is -- is that you -- I'm going to -- well, I believe you all have my address, but if not, I will supply it so that those things can be sent to me by whatever your preferred carrier may be overnighted.

MR. PLOFCHAN:  I've heard of pretty sneaky ways of getting a Christmas card, but you don't [inaudible].

THE COURT:  I'm just saying, just being the reality of it.

MR. PLOFCHAN:  Yeah, I get it, Your Honor.

THE COURT:  The reality.

MR. PLOFCHAN:  What address should we send it

Transcript of Hearing
Conducted on October 19, 2023                    348

to?

THE COURT:  Yeah, I'm going to send it to my Arlington address.

MR. PLOFCHAN:  Okay.

THE COURT:  And that's 4671.

MR. PLOFCHAN:  Do you want that on the record, or do you want us to --

THE COURT:  Yeah, just let me just get off the record.

MR. PLOFCHAN:  Okay.

THE COURT:  Yeah, just one moment.

MR. PLOFCHAN:  Think an official pronouncement that it's --

THE COURT:  Yeah.

MR. PLOFCHAN:  Your going to be until Thursday.

THE COURT:  Yeah. This hearing will remain open until next Thursday, the 26th of October. I believe that's correct. I have a calendar.

MR. PLOFCHAN:  Yes.

THE COURT:  Yeah, the 26th of October at 5:00 p.m. for further submissions of findings of each side's

Transcript of Hearing
Conducted on October 19, 2023                                   349

findings of fact and proposed conclusions of law based upon, as I said earlier all of the testimony and exhibits which have been heard by the court and exhibits received into evidence by this hearing office -- officer for the Loudoun County Public Schools grievance procedures hearing. Anything further for the record?

          MR. PLOFCHAN:  No, sir.

          THE COURT:  Everybody comfortable now?

          MR. JOHNSON:  Yes, Your Honor.

Day 000896

Transcript of Hearing
Conducted on October 19, 2023                                    350

CERTIFICATE OF COURT REPORTER - NOTARY PUBLIC

I, Donald E. Lane II, the officer before whom the foregoing proceedings were taken, do hereby certify that any witness(es) in the foregoing proceedings were fully sworn; that the proceedings were recorded by me and thereafter reduced to typewriting by a qualified transcriptionist; that said digital audio recording of said proceedings are a true and accurate record to the best of my knowledge, skills, and ability; and that I am neither counsel for, related to, nor employed by any of the parties to this case and have no interest, financial or otherwise, in its outcome.

Notary Registration No.: 7727988

My Commission Expires: 6/30/2025

_____

DONALD E. LANE II,

NOTARY PUBLIC FOR THE COMMONWEALTH OF VIRGINIA

CERTIFICATE OF TRANSCRIBER

I, Chris Naaden, a transcriber, hereby declare under penalty of perjury that to the best of my ability from the audio recordings and supporting information; and that I am neither counsel for, related to, nor employed by any of the parties to this case and have no interest, financial or otherwise, in its outcome, the above 350 pages contain a full, true and correct transcription of the tape-recording that I received regarding the event listed on the caption on page 1.

I further declare that I have no interest in the event of the action.

_____

October 25, 2023

Chris Naaden

(493213, Dismissal hearing of Brian Day, 10-19-23)

Transcript of Hearing
Conducted on October 19, 2023

352

| A | | | |
|---|---|---|---|
| **aaron** 2:3 | 192:14, 192:16, 192:17, 192:18, 194:8, 194:10, 195:6, 195:7, 195:13, 196:5, 200:22, 201:5, 217:3, 217:15, 267:6 | **accurately** 127:9 | 221:10, 222:17, 257:4, 264:20, 315:17, 322:22, 323:1 |

**aaron**
2:3
**abided**
116:17
**abigail**
47:16
**ability**
5:6, 219:17,
244:21, 256:9,
350:11, 351:3
**able**
39:3, 39:14,
43:5, 49:1,
63:21, 83:17,
84:10, 89:2,
96:22, 116:22,
136:12, 155:12,
156:8, 179:14,
180:16, 238:12,
264:6, 264:13,
278:14, 313:21,
323:22, 326:3,
331:1, 331:3,
335:20, 336:1,
343:2
**above**
47:17, 47:18,
72:8, 243:1,
351:8
**abs**
204:22
**absence**
205:1
**absent**
315:5
**absolutely**
33:5, 33:20,
54:21, 65:17,
72:16, 112:18,
165:14
**abuse**
27:9, 144:8,
188:10, 189:2,
189:9, 189:15,
189:18, 192:2,
192:9, 192:13,

192:14, 192:16,
192:17, 192:18,
194:8, 194:10,
195:6, 195:7,
195:13, 196:5,
200:22, 201:5,
217:3, 217:15,
267:6
**abused**
188:7, 188:15,
189:7, 189:22,
190:15, 193:17
**abusive**
59:17, 197:17,
197:20
**ac**
74:12
**academically**
204:5
**academy**
151:19
**accept**
166:10, 332:4,
332:5, 332:7,
332:9, 332:10,
332:14, 346:16
**acceptance**
151:21
**accepted**
274:18
**accepts**
242:20
**accord**
168:1
**accordance**
33:21, 53:18,
84:6, 158:2
**accorded**
179:5
**according**
235:8, 242:18,
275:20
**account**
120:13, 215:2
**accurate**
127:10, 202:7,
246:16, 267:1,
318:13, 350:10

**accurately**
127:9
**accusation**
74:12, 196:6,
231:6
**accusations**
226:16
**accused**
221:14, 225:22
**acknowledge**
42:5, 328:19
**acknowledging**
49:16
**across**
295:4, 312:16,
312:22, 313:5,
321:20
**act**
12:6, 40:22,
41:8, 52:4,
210:13
**acted**
84:5
**acting**
131:2, 158:14
**action**
8:22, 12:19,
76:6, 95:8,
104:3, 351:13
**actions**
11:8, 71:12,
82:10, 170:18,
274:19
**activities**
9:7, 269:21,
282:1
**activity**
9:11
**actors**
313:4
**actual**
25:19, 27:11,
28:4, 29:18,
32:2, 56:6,
128:18, 163:8,
169:17, 170:13,
181:17, 190:2,
200:6, 200:22,

221:10, 222:17,
257:4, 264:20,
315:17, 322:22,
323:1
**actually**
8:1, 13:8,
16:15, 18:7,
21:21, 27:11,
29:21, 30:7,
30:17, 37:1,
37:15, 38:13,
38:18, 41:16,
45:18, 46:9,
49:6, 52:1,
71:10, 71:19,
72:6, 72:18,
78:19, 81:19,
108:4, 144:15,
156:3, 159:19,
165:6, 165:22,
172:6, 177:20,
178:10, 180:17,
181:17, 181:18,
182:16, 182:19,
195:18, 196:14,
217:4, 234:4,
236:20, 237:22,
276:5, 279:10,
287:17, 287:19,
297:1, 297:4,
298:6, 298:9,
298:10, 313:12,
318:12, 319:11,
319:21, 320:13,
321:1, 322:6,
326:18, 329:2,
334:7, 344:4,
346:2, 346:12,
346:13
**ad**
156:1
**ada**
119:15
**add**
74:12, 229:15,
300:16
**adding**
185:16

Transcript of Hearing
Conducted on October 19, 2023

353

**addition**
10:9, 21:9,
69:20, 72:4,
76:16, 115:14,
218:8
**additional**
40:7, 52:18,
64:16, 113:21,
155:10, 226:17,
226:19, 226:20,
229:14, 266:7,
268:8
**additionally**
143:18
**address**
7:2, 28:14,
28:22, 32:2,
32:10, 32:12,
45:11, 49:1,
49:3, 51:11,
71:14, 72:7,
79:5, 84:8,
84:9, 168:15,
169:20, 171:4,
299:6, 327:1,
347:12, 347:22,
348:3
**addressed**
7:15, 37:14,
45:17, 46:6,
46:9, 48:19,
71:11, 75:16,
123:3, 156:1,
161:4, 200:15,
281:22, 313:20
**adequate**
53:16
**adjudicated**
336:3
**adjusting**
49:8
**admin**
124:1, 124:11
**administration**
172:6, 175:14,
218:12, 233:3,
250:19, 273:21,
274:4, 274:11,

275:14, 281:11,
281:19, 281:22
**administrative**
4:6, 11:6,
15:15, 15:19,
17:13, 18:9,
25:20, 26:13,
26:15, 30:3,
30:5, 33:22,
45:1, 61:22,
62:19, 101:10,
116:18, 117:18,
130:4, 130:20,
130:22, 132:2,
159:21
**administratively**
15:9, 30:14
**administrator**
98:3, 174:21,
175:3, 175:6
**admissible**
162:11, 229:17
**admission**
328:13
**admit**
326:4, 327:14,
336:20, 339:12,
342:19, 345:15
**admitted**
324:2, 327:17,
328:20, 329:1,
329:7, 329:16,
340:17, 343:8,
343:10, 344:22,
345:3, 346:21
**admitting**
339:5
**adopted**
34:4, 35:13,
62:2
**adopts**
44:21, 61:22
**adult**
226:12, 226:16,
226:18, 226:20,
248:1, 251:14,
258:8, 301:7,
305:15, 306:7,

316:5, 319:7
**advance**
17:7, 26:9,
26:10, 212:2,
212:5, 212:11
**advancement**
20:5
**advise**
50:22, 182:9
**advisement**
14:15, 14:18,
14:20, 15:3,
66:17
**advocate**
63:8
**affirm**
5:5
**affirmative**
156:11
**afford**
65:19
**after**
9:9, 9:12,
9:17, 10:11,
10:19, 13:21,
20:19, 21:4,
22:5, 22:10,
22:11, 23:21,
32:22, 33:18,
37:8, 42:9,
65:13, 74:17,
74:19, 94:3,
94:20, 117:4,
117:20, 152:15,
152:17, 152:20,
161:6, 172:14,
174:17, 175:1,
176:1, 177:11,
202:3, 246:14,
247:13, 252:1,
256:2, 256:3,
259:10, 260:3,
261:17, 262:14,
266:9, 295:11,
335:16, 343:22
**afternoon**
85:1
**afterwards**
22:15, 127:2

**again**
23:7, 25:1,
30:22, 31:12,
31:22, 32:5,
45:21, 47:12,
55:21, 59:6,
59:9, 63:3,
66:16, 79:19,
89:12, 89:14,
95:21, 98:3,
107:3, 110:2,
110:4, 113:9,
117:2, 120:12,
129:8, 136:18,
137:4, 140:7,
143:14, 145:11,
153:6, 153:18,
154:22, 157:2,
158:21, 159:3,
162:14, 164:5,
166:2, 166:12,
170:19, 172:8,
177:14, 179:3,
179:12, 180:1,
180:14, 185:9,
187:8, 187:14,
192:5, 194:4,
196:21, 197:11,
198:16, 200:14,
212:6, 226:18,
231:2, 231:15,
237:20, 238:11,
242:9, 243:21,
244:8, 245:13,
245:15, 245:17,
248:12, 260:1,
261:9, 261:14,
262:9, 263:5,
265:1, 267:8,
280:11, 302:17,
303:2, 303:3,
309:14, 310:16,
314:8, 317:16,
318:7, 334:4
**against**
13:4, 28:16,
82:10, 146:10,
158:1, 217:16,

Day 000900

Transcript of Hearing
Conducted on October 19, 2023

354

251:6, 291:12,
331:14
**age**
198:5
**agencies**
60:14
**agency**
8:5, 17:13,
29:11, 33:22,
45:1, 48:15,
61:2, 61:22
**agency's**
45:12
**agenda**
278:21
**agent**
345:11
**ago**
37:13, 43:21,
44:1, 85:10,
139:18, 210:3,
270:10, 270:15
**agree**
152:9, 177:8,
253:18, 256:22,
257:18, 263:1,
267:11, 269:20,
270:13, 270:16,
271:4, 271:9,
290:22, 293:17,
295:21, 297:7,
298:13, 300:3,
301:18, 307:1,
307:10, 312:14,
315:7, 317:7,
317:12, 346:17
**agreed**
5:15, 37:1
**agreement**
60:7, 60:14,
62:10, 65:8
**agreements**
60:15
**ahead**
28:5, 93:9,
121:18, 179:10,
179:18, 198:12,
223:4, 290:8,

323:6, 333:2
**aiii**
155:4
**alabama**
139:4, 151:16
**albeit**
31:5
**alex**
220:15, 322:15
**alibi**
296:10
**allegation**
9:11, 10:18,
69:14, 80:19,
144:8, 189:14,
247:14, 285:20,
290:5, 293:4,
297:17, 319:10
**allegations**
13:15, 18:9,
28:16, 37:12,
39:22, 72:17,
73:11, 73:18,
73:21, 74:5,
74:6, 76:18,
76:21, 226:13,
226:22, 230:16,
231:13, 243:22,
251:6, 283:10,
296:4, 311:2,
324:4
**allege**
8:10, 8:15
**alleged**
10:15, 69:15,
70:14, 80:8,
190:6, 190:7,
219:4, 219:14,
226:11, 230:18,
251:16, 271:6,
282:5, 283:5,
296:12, 331:10
**allegedly**
8:13, 13:15,
37:13, 82:5,
171:8, 232:17,
241:3, 250:21,
251:13, 272:19,

274:15, 275:5,
275:8, 314:6
**alleging**
31:19, 32:16,
34:8, 205:3,
274:2
**alleviate**
181:13
**allow**
58:3, 62:9,
66:17, 66:18,
67:2, 105:6,
107:12, 126:11,
130:8, 133:3,
135:5, 146:4,
155:5, 160:12,
160:16, 162:18,
164:14, 167:20,
171:11, 181:20,
234:18, 239:17,
242:19, 264:2,
265:17, 277:5,
321:4
**allowed**
32:1, 33:22,
35:17, 48:22,
52:11, 52:13,
128:20, 128:21,
130:6, 133:1,
266:1, 309:18,
334:14, 341:1
**allowing**
194:11
**allows**
20:4, 60:7,
335:15
**alluded**
322:7
**alm**
21:4
**almost**
20:19, 65:13,
134:7, 216:13
**along**
39:3, 39:14,
41:15, 54:5,
133:4, 194:20,
215:5, 260:5,

265:17, 298:6,
324:11, 341:4
**alper**
24:21
**already**
48:19, 49:16,
58:21, 108:22,
109:5, 109:6,
109:15, 110:4,
110:12, 111:21,
113:22, 114:2,
123:12, 152:15,
155:22, 156:8,
170:19, 170:22,
177:6, 177:16,
178:5, 200:15,
205:18, 237:13,
237:20, 238:8,
264:4, 269:4,
269:7, 269:14,
278:12, 289:22,
302:4, 303:4,
313:20, 326:5,
327:4, 333:10,
333:11, 334:6,
334:15, 341:20,
343:8, 343:10
**also**
6:6, 14:3,
14:9, 18:17,
19:2, 46:15,
49:2, 49:17,
60:4, 61:7,
62:13, 64:5,
68:11, 74:7,
74:8, 74:13,
82:16, 83:10,
85:20, 86:22,
92:18, 109:19,
114:2, 136:3,
140:12, 141:22,
165:3, 170:12,
173:6, 177:20,
188:6, 192:6,
202:17, 218:9,
218:16, 231:12,
232:22, 245:22,
250:21, 251:5,

Transcript of Hearing
Conducted on October 19, 2023                    355

251:7, 255:9,
262:3, 262:5,
268:4, 271:9,
273:19, 274:10,
275:2, 276:12,
280:12, 291:18,
326:21, 327:13,
333:15, 339:6
**alteration**
178:9
**always**
32:11, 62:17,
83:2, 128:8,
175:13, 198:1,
199:13, 219:17,
231:10, 288:9,
298:11, 299:1
**ambush**
116:12, 116:14,
119:5, 167:15
**amend**
334:8, 335:8
**amendments**
19:8
**amount**
200:22, 242:22
**ample**
118:11
**analyzing**
245:3
**and-a-half**
21:4
**angel**
18:14, 45:17,
46:6, 100:9,
100:13, 100:15,
101:14, 114:3,
114:13, 114:14,
216:10, 309:3
**angela**
3:14, 114:13,
178:11, 209:8,
214:15, 216:1,
216:7
**another**
29:11, 47:9,
48:3, 52:16,
54:2, 126:21,

153:19, 173:6,
176:14, 181:7,
200:2, 200:17,
233:1, 258:8,
302:1, 345:22
**answer**
78:14, 79:1,
79:2, 96:11,
96:12, 96:19,
100:2, 102:11,
105:15, 107:12,
107:17, 126:17,
130:11, 136:1,
138:15, 144:6,
146:4, 164:22,
168:3, 172:3,
179:10, 182:10,
186:4, 187:12,
193:5, 193:6,
194:12, 213:11,
234:19, 235:1,
243:4, 256:8,
259:13, 259:15,
261:7, 264:11,
264:13, 270:5,
277:3, 277:10,
280:17, 286:14,
291:7, 291:9,
314:1, 317:19,
321:4, 324:12,
324:14, 324:16,
335:10
**answered**
106:3, 106:5,
106:7, 106:22,
110:12, 111:21,
156:10, 187:4,
201:7, 202:3,
291:6, 308:12,
312:9
**answering**
78:11, 78:13
**answers**
78:7, 187:7,
193:19, 229:20
**anticipate**
83:20
**anticipating**
83:21

**anticipation**
344:12
**antidiscriminati-
on**
59:16
**antiharassment**
59:15
**anxiety**
136:9
**anxious**
136:10
**anybody**
114:20, 120:1,
126:20, 214:6,
252:3, 281:12
**anymore**
89:5
**anyone**
75:22, 101:2,
101:6, 102:3,
116:5, 118:3,
119:17, 147:11,
149:1, 213:15,
249:3, 249:13,
253:16, 282:9,
310:11, 311:5
**anything**
10:11, 12:16,
26:10, 33:8,
36:13, 39:6,
39:16, 42:15,
43:14, 45:8,
54:3, 54:14,
65:18, 66:22,
70:19, 74:17,
74:19, 81:15,
82:15, 83:8,
87:1, 87:13,
89:21, 90:5,
95:18, 102:2,
102:21, 104:22,
112:17, 116:16,
126:7, 126:10,
126:15, 137:22,
138:5, 138:6,
138:17, 140:11,
143:21, 144:4,
149:9, 153:5,

153:16, 159:14,
160:8, 165:21,
166:13, 167:6,
169:9, 188:19,
191:7, 191:12,
197:15, 197:19,
197:20, 200:13,
204:8, 205:2,
210:20, 210:21,
211:1, 211:2,
214:5, 225:3,
228:1, 230:6,
230:11, 245:4,
250:10, 255:22,
259:20, 260:9,
260:12, 260:22,
261:4, 261:11,
261:21, 283:3,
295:4, 295:17,
303:11, 305:19,
309:16, 310:18,
312:14, 313:12,
314:20, 315:6,
316:7, 320:1,
320:2, 331:19,
332:17, 349:6
**anywhere**
281:16, 315:2
**apologize**
32:21, 45:13,
46:3, 71:6,
91:9, 142:17,
157:17, 227:17,
232:5, 326:15,
327:2
**apparently**
117:2
**appeals**
337:19
**appear**
108:1, 243:12,
245:17, 315:1,
329:19
**appearance**
49:16, 50:9,
304:19, 305:8,
307:2
**appeared**
243:13, 243:14,

Transcript of Hearing
Conducted on October 19, 2023

356

243:17, 244:13,
255:11
**appears**
178:11
**appellate**
336:7
**applicability**
13:1
**applicable**
10:9, 12:6,
15:14, 15:15,
19:9
**application**
31:7, 61:2
**applied**
321:1
**applies**
10:4, 30:5,
48:11, 242:18
**apply**
28:15, 29:8,
48:12, 271:1,
320:13, 320:15
**appointed**
24:5, 123:21,
124:3
**appreciate**
166:11, 180:20
**approaches**
134:13
**appropriate**
90:6, 170:17,
220:1, 248:8,
286:8, 296:8,
299:11, 300:9,
302:7, 302:9,
305:12, 306:8,
323:14, 323:16,
323:20
**appropriateness**
301:8
**approval**
193:20
**approve**
180:19
**april**
18:7, 18:11,
20:11, 22:1,

22:3, 23:1,
23:7, 33:18,
37:8, 51:17,
52:6, 58:14,
58:16, 58:17,
128:17, 258:2,
263:1, 263:11
**arduous**
339:13
**areas**
88:21
**aren't**
312:6, 315:4
**argue**
31:13, 63:17,
81:16, 328:3
**arguing**
159:13, 332:18
**argument**
14:14, 46:9,
52:9, 64:15,
117:12, 132:9,
169:14, 312:13,
322:7, 328:20,
331:16, 332:12,
334:1, 334:3,
344:22, 345:4,
345:11, 345:13
**argumentative**
306:18, 306:20,
316:20, 317:6
**arguments**
63:7, 83:22,
158:11, 323:2,
332:10, 335:17,
338:8, 345:5
**arlington**
5:14, 348:3
**arose**
63:13
**around**
22:17, 37:14,
124:15, 126:2,
147:22, 155:18,
198:4, 199:17,
201:3, 216:22,
229:19, 231:9,
241:9, 282:17,

287:21, 297:22,
321:17
**around"**
287:13
**arrangements**
220:22
**arrive**
247:18
**arrived**
248:19
**articulated**
300:4
**ascribed**
111:13, 143:19
**ashburn**
1:17, 2:9
**asheboro**
125:17
**aside**
159:4, 212:16,
326:4
**asked**
43:18, 66:8,
70:4, 73:9,
77:14, 78:2,
86:1, 88:19,
89:4, 103:19,
106:3, 106:7,
106:9, 106:10,
106:11, 109:14,
110:12, 110:16,
136:18, 138:2,
138:12, 152:22,
153:16, 156:5,
158:19, 174:19,
179:22, 186:13,
189:6, 191:3,
191:14, 192:14,
192:19, 193:1,
193:2, 195:5,
195:16, 196:15,
197:10, 200:12,
201:6, 201:10,
202:3, 208:9,
210:1, 210:19,
212:20, 234:5,
241:8, 250:17,
276:8, 276:22,

277:2, 284:3,
285:6, 286:14,
287:11, 287:20,
288:3, 288:8,
288:14, 288:20,
290:11, 290:17,
290:20, 291:13,
293:6, 294:1,
294:3, 308:11,
309:1, 309:19,
312:8, 313:15,
314:12, 314:14,
318:20, 330:12,
330:15, 334:13,
334:15, 334:22,
337:4
**asking**
45:13, 50:10,
70:17, 74:14,
75:9, 100:11,
105:4, 134:11,
143:16, 146:3,
146:6, 179:13,
194:6, 194:21,
199:3, 200:2,
207:19, 228:1,
238:8, 255:22,
259:17, 264:3,
264:8, 264:9,
270:3, 274:9,
274:10, 287:5,
287:7, 291:15,
302:6, 306:15,
307:4, 307:8,
309:1, 309:5,
309:19, 312:18,
312:21, 313:17,
316:21, 327:7,
327:8, 330:21,
337:22, 342:2,
342:5
**aspect**
39:9, 77:1
**assess**
242:1, 245:11,
323:2
**assessed**
246:4

Day 000903

Transcript of Hearing
Conducted on October 19, 2023                                    357

assessments
242:16
assigned
85:22, 218:19,
218:20, 219:2
assistant
81:19, 124:8,
125:20, 127:11
associate
5:21
associated
39:21, 119:12
assume
60:22, 254:1,
295:1
assumes
204:14, 313:11
assuming
254:1, 282:22
athletes
198:4, 231:9,
287:13, 287:21
athletic
127:11
athletics
125:9, 125:11,
344:18
attached
4:4, 69:21,
111:12, 115:17,
115:21, 169:22,
170:7, 170:9,
181:10, 218:16,
345:2
attaches
13:9
attachment
69:22, 70:1,
209:7, 233:16
attempt
157:19, 314:7
attempting
314:11
attention
62:20, 92:14
attentive
122:2
attest
321:1

attire
4:15, 300:9,
301:8, 301:13,
305:12, 306:8
attorney
63:6, 63:7,
224:12, 246:8
attorneys
253:10
audio
350:9, 351:4
august
22:13, 54:5,
203:9
authenticated
328:14
authenticity
327:11
authority
26:20, 38:17,
38:21, 39:8,
39:11, 39:13,
39:15, 45:2,
45:3, 264:2,
265:17, 266:2,
266:7, 266:8,
270:17
authorized
110:6
authorizes
263:15, 265:12
availability
260:6
available
60:16, 113:14,
224:8
average
243:1
aware
15:8, 29:5,
77:6, 101:9,
102:10, 142:18,
142:22, 144:8,
146:3, 148:9,
150:16, 151:5,
217:18, 229:21,
264:1, 264:9,
265:16, 266:5,

273:21, 302:19,
318:17, 318:20
awfully
319:18
awhile
149:21

**B**

b
23:7
baby
198:2, 199:16,
290:19
back
28:4, 42:13,
43:7, 54:15,
71:6, 82:21,
83:5, 83:8,
86:3, 92:12,
99:1, 124:18,
128:16, 153:15,
153:18, 153:21,
168:5, 168:15,
171:12, 171:14,
176:13, 181:15,
187:13, 214:21,
221:18, 223:11,
226:6, 226:7,
247:2, 254:18,
276:4, 308:13,
345:5
background
43:22, 129:9,
134:22
backing
172:8
backwards
32:10, 168:18
bad
17:22
bailiff
84:15, 84:17,
121:9
based
7:20, 64:19,
69:17, 71:21,
78:6, 78:20,
78:21, 82:20,

120:6, 131:20,
135:2, 137:20,
163:5, 188:19,
192:9, 193:15,
193:18, 195:17,
195:21, 196:1,
196:3, 207:11,
214:16, 214:18,
244:4, 249:8,
249:9, 250:3,
256:10, 262:12,
264:5, 265:8,
276:19, 283:7,
286:17, 289:21,
291:2, 291:17,
303:6, 316:9,
321:12, 329:7,
332:21, 333:8,
335:11, 335:17,
336:2, 336:4,
338:20, 349:1
basic
29:7
basically
127:7, 180:2,
232:3, 247:4,
249:7, 249:8,
340:9
basis
10:20, 12:5,
12:14, 12:19,
22:19, 49:18,
49:19, 49:20,
58:5, 81:17,
148:7, 194:6,
195:12, 196:5,
241:15, 249:2,
292:20, 293:21
batch
92:21
bate
228:18
bated
247:3
bates
95:11, 170:8,
170:10, 170:11,
173:19, 176:19,

Transcript of Hearing
Conducted on October 19, 2023

358

227:16, 228:18
**bearing**
329:3
**beating**
201:18
**beautiful**
215:18, 215:20
**became**
145:15, 165:16,
217:14, 282:9
**become**
180:22, 217:18
**becomes**
34:16, 196:4
**becoming**
132:3
**bed**
171:5
**before**
10:11, 22:8,
38:16, 42:15,
46:11, 83:16,
103:5, 103:6,
106:9, 113:6,
113:16, 121:15,
124:6, 133:10,
140:3, 152:22,
154:21, 161:1,
180:18, 181:12,
183:5, 193:19,
215:8, 229:12,
233:13, 246:17,
250:18, 263:21,
277:20, 297:21,
313:14, 313:20,
322:8, 330:21,
331:2, 340:20,
350:3
**beforehand**
7:18, 14:9,
36:1, 119:5
**began**
41:6, 109:8
**begin**
76:1, 121:15,
161:1, 203:6,
226:7, 265:13,
322:8

**beginning**
73:13, 86:17,
155:4, 170:11,
226:7, 226:11,
282:20
**begins**
38:13, 154:21,
182:5, 183:14
**begun**
42:20
**behalf**
32:14, 53:4,
71:9, 146:7
**behavior**
8:15, 53:3,
129:20, 271:10,
272:8, 273:20,
274:3, 274:10,
274:18, 275:3,
275:9, 276:1,
277:1, 293:1,
306:17
**being**
17:13, 27:10,
31:14, 31:15,
35:4, 37:13,
39:13, 47:19,
62:3, 63:21,
75:6, 79:13,
89:14, 96:20,
102:18, 109:19,
119:14, 165:22,
169:12, 172:10,
174:16, 176:6,
189:20, 197:22,
204:13, 204:17,
205:5, 205:13,
207:22, 221:11,
231:10, 241:20,
243:11, 244:17,
249:10, 250:6,
250:16, 260:6,
263:18, 264:12,
272:16, 273:11,
276:8, 279:11,
288:21, 292:22,
298:1, 317:2,
318:10, 329:1,

339:15, 339:21,
343:2, 344:2,
345:3, 347:18
**belabor**
314:3
**believe**
7:20, 11:5,
22:11, 26:19,
31:11, 40:4,
48:19, 50:13,
51:14, 61:8,
71:20, 75:4,
78:20, 80:2,
83:16, 87:18,
88:14, 89:10,
89:12, 92:18,
98:22, 105:13,
106:8, 106:22,
109:19, 113:8,
120:22, 125:21,
140:12, 146:18,
161:14, 163:17,
170:1, 170:8,
183:6, 193:16,
197:16, 201:22,
207:21, 213:16,
227:21, 245:18,
246:9, 255:8,
263:17, 265:19,
273:14, 276:6,
286:19, 315:16,
323:16, 323:20,
339:8, 347:11,
348:19
**believed**
72:19, 81:13
**believes**
167:21
**benefit**
335:5
**best**
5:6, 63:8,
106:22, 141:2,
159:21, 193:14,
205:19, 227:20,
238:4, 238:9,
238:12, 241:6,
256:8, 281:17,

297:20, 309:11,
310:10, 350:10,
351:3
**better**
134:5, 219:13
**between**
12:21, 35:5,
99:9, 101:18,
147:7, 215:8,
261:5, 261:22,
286:1, 319:14
**beyond**
14:12, 72:5,
75:10, 95:19,
96:14, 116:2,
120:8, 126:7,
146:1, 146:19,
158:7, 160:14,
237:14, 243:1
**bias**
81:17, 142:1
**big**
287:19, 345:12,
346:6, 346:13
**bill**
75:9, 75:10
**binder**
8:19, 9:4,
9:21, 13:3,
16:8, 17:21,
41:22, 71:7,
71:8, 90:14,
111:17, 139:9,
170:1, 173:7,
176:15, 211:20,
212:12, 227:14,
250:2, 254:16,
257:7, 284:10,
284:13, 284:14,
284:15, 284:17,
284:18, 292:7,
309:17, 324:1,
326:1, 326:4,
329:16, 329:18,
330:22, 331:1,
338:17, 339:7,
342:8
**binders**
45:14, 65:18

Transcript of Hearing
Conducted on October 19, 2023

359

**binding**
329:10
**bit**
120:9, 125:5,
127:2, 129:6,
229:19, 235:3,
326:20, 337:6,
340:11, 342:20,
344:3
**black**
8:1, 17:21,
257:6, 263:8,
273:5, 284:15,
284:16
**blame**
44:5
**blew**
35:19, 35:20,
42:21, 42:22,
44:3, 44:5
**blow**
44:2
**blown**
43:14
**blue**
12:14, 12:18,
12:20
**board**
12:4, 17:5,
24:5, 26:7,
29:2, 36:4,
43:8, 44:16,
46:11, 76:14,
128:10, 216:22,
217:1, 226:2,
226:3, 230:18,
247:21, 255:6
**board's**
27:9
**body**
201:4, 231:14,
290:21, 298:2,
298:12, 299:1,
316:18
**boland**
2:4
**book**
69:12, 211:18,

240:4, 254:9,
263:8, 273:5,
273:6, 300:19
**both**
5:18, 21:7,
53:9, 64:2,
133:19, 133:22,
136:8, 196:1,
196:3, 221:6,
225:8, 267:12,
272:12, 282:15,
312:6, 315:18,
336:1, 336:20,
337:15
**bottom**
71:15, 174:20,
182:1, 182:2,
183:12, 301:5,
315:22
**bound**
7:16, 7:17,
17:13, 17:19,
34:2, 70:21,
75:3, 75:4,
75:6, 75:7,
130:6, 267:11,
267:17, 268:2
**bounds**
63:14
**box**
182:3, 182:6,
183:14
**boy**
170:5, 176:15,
307:15
**boyfriend**
201:2, 297:22,
298:8
**boys**
198:13
**break**
102:18, 113:6,
113:16, 115:1,
115:3, 195:2,
195:3, 197:14,
215:2, 215:7,
251:22, 252:3,
252:4

**brenda**
219:9
**brevity**
32:6
**brian**
1:7, 2:13, 3:4,
5:9, 45:19,
46:10, 84:18,
85:4, 87:14,
104:21, 125:13,
125:21, 127:2,
127:12, 149:21,
217:16, 261:12,
261:16, 283:14,
283:18, 293:3,
351:19
**brief**
11:4, 27:5,
60:12, 133:3,
215:3, 336:7
**briefings**
49:2
**bring**
26:16, 119:17,
122:22, 126:19,
235:13
**bringing**
92:13, 125:20
**broke**
61:1
**broken**
214:18
**brought**
21:7, 25:19,
47:22, 62:20,
82:10, 153:18,
261:17, 281:2
**building**
68:8, 85:20,
97:6, 101:11,
113:11, 124:1,
124:4, 124:11,
124:13, 128:19,
149:21, 321:18
**bunch**
301:4
**burden**
62:15, 62:16,

62:17, 62:19,
62:21, 65:4,
84:10
**business**
336:5, 336:21,
337:14, 337:19,
340:4, 340:12,
342:12, 342:16,
344:8, 345:17,
345:19
**buy**
198:1, 199:16,
290:18

**C**

**c**
64:3, 65:3,
74:19
**c-h-a**
6:2
**c2**
155:4
**cake**
63:17
**calendar**
348:19
**call**
14:3, 34:13,
68:13, 81:18,
100:16, 113:14,
114:18, 117:20,
119:22, 133:13,
133:19, 153:15,
156:6, 159:1,
168:11, 172:16,
198:18, 208:13,
221:2, 284:2,
302:1, 323:3,
326:9
**called**
105:15, 118:4,
118:12, 132:21,
137:6, 173:22,
194:4, 204:18,
204:19, 318:5
**calling**
113:18, 114:20,
144:10, 192:5,

Day 000906

Transcript of Hearing
Conducted on October 19, 2023

360

| | | | |
|---|---|---|---|
| **192:6** | 300:5, 300:8, | **case** | **categories** |
| **calls** | 302:9, 307:4, | 5:9, 5:16, 8:2, | 76:12 |
| 102:8, 137:17, | 307:7, 307:11, | 8:9, 9:13, 9:19, | **category** |
| 149:14, 180:11, | 339:19 | 9:20, 9:22, | 76:13 |
| 185:3, 198:16, | **candidate** | 13:2, 14:2, | **caught** |
| 222:2, 223:15, | 190:15 | 18:6, 24:7, | 291:19 |
| 244:8, 294:18, | **cannot** | 28:19, 35:16, | **cause** |
| 306:11 | 12:10, 14:10, | 38:16, 38:17, | 17:6, 26:9, |
| **came** | 38:19, 74:20, | 39:6, 39:17, | 36:6, 40:6, |
| 8:12, 8:14, | 121:17, 229:18, | 40:12, 42:3, | 43:10, 44:18, |
| 24:1, 69:3, | 229:21, 237:17, | 42:14, 42:19, | 58:4, 204:12, |
| 124:18, 125:16, | 294:7, 333:12 | 65:8, 67:13, | 205:4, 209:20, |
| 128:10, 129:17, | **capacity** | 73:2, 73:3, | 296:15 |
| 130:2, 165:6, | 136:13, 285:14 | 75:13, 79:6, | **caused** |
| 168:4, 168:5, | **caption** | 84:10, 113:8, | 136:5, 210:2 |
| 169:7, 171:20, | 351:10 | 115:12, 116:3, | **causes** |
| 175:20, 184:12, | **capture** | 116:15, 117:6, | 53:22 |
| 187:16, 200:7, | 230:12 | 117:7, 118:10, | **causing** |
| 204:11, 226:16, | **captured** | 119:9, 121:2, | 190:10 |
| 239:6, 271:11, | 135:3, 161:16 | 126:7, 130:20, | **cc** |
| 324:16 | **car** | 135:1, 144:22, | 178:14 |
| **campus** | 107:8, 107:19, | 149:5, 150:20, | **cc'd** |
| 86:19, 88:9 | 107:21, 108:3, | 150:21, 155:11, | 178:12 |
| **can't** | 108:15 | 158:17, 160:11, | **central** |
| 12:15, 14:1, | **card** | 162:16, 180:1, | 113:13 |
| 35:21, 39:5, | 347:16 | 210:6, 218:18, | **certain** |
| 51:16, 57:21, | **care** | 218:19, 218:21, | 15:12, 18:15, |
| 57:22, 62:6, | 42:3, 52:5 | 219:18, 220:11, | 19:9, 69:8, |
| 62:9, 63:16, | **career** | 220:12, 220:14, | 122:8, 168:16, |
| 63:17, 65:8, | 39:19, 204:5 | 221:2, 223:17, | 207:19, 229:16, |
| 75:3, 75:10, | **cares** | 223:20, 225:10, | 242:16, 242:22, |
| 77:9, 97:20, | 52:21 | 226:4, 227:10, | 325:3 |
| 108:10, 120:17, | **carnadi** | 236:2, 236:6, | **certainly** |
| 126:1, 140:18, | 81:16, 250:6, | 249:6, 249:11, | 14:13, 29:6, |
| 159:17, 160:10, | 250:14, 251:10, | 264:16, 264:17, | 31:6, 60:12, |
| 162:15, 167:9, | 260:13, 260:16 | 322:22, 325:4, | 64:5, 64:16, |
| 177:11, 182:14, | **carrier** | 326:6, 327:14, | 96:9, 115:2, |
| 184:16, 184:18, | 347:14 | 330:6, 330:9, | 122:10, 122:11, |
| 184:19, 184:20, | **carry** | 331:5, 331:7, | 126:22, 181:12, |
| 185:10, 185:20, | 60:1, 221:21 | 331:17, 334:10, | 228:4, 331:1, |
| 187:22, 192:4, | **cars** | 339:17, 341:15, | 336:20, 337:1, |
| 215:16, 237:14, | 86:21, 89:11, | 350:13, 351:6 | 337:15, 345:7 |
| 238:4, 241:16, | 89:13, 89:14, | **case-by-case** | **certificate** |
| 244:15, 246:9, | 90:10, 99:4, | 29:7 | 350:1, 351:1 |
| 258:22, 262:9, | 99:13, 99:18, | **cases** | **certify** |
| 262:17, 263:21, | 99:19, 109:1, | 264:18 | 350:4 |
| 265:13, 270:13, | 109:10, 109:21, | **caseworker** | **chair** |
| 299:20, 300:2, | 110:6 | 219:2, 219:8 | 232:18 |

Day 000907

Transcript of Hearing
Conducted on October 19, 2023                                     361

challenge
166:19, 296:15,
346:13, 346:15
challenged
71:10, 71:20,
244:18
challenges
244:20
challenging
253:20, 254:4
champe
85:16, 124:9
chance
93:3, 186:16,
242:7
change
67:22, 275:17
changed
117:3, 216:14,
275:18
character
132:21, 132:22,
137:14, 137:15,
138:1, 138:11,
138:18, 138:20,
139:6, 141:13,
141:16, 141:22,
164:2, 164:3,
164:6, 164:12
characterization
191:2
charge
73:4, 73:7
charged
320:16
charges
26:16
chartered
8:7
chased
298:7
check
86:20
chief
117:6, 144:22,
155:11, 223:2,
322:22, 331:5
child
257:1, 328:18

choose
119:18, 182:21
choosing
245:19
chose
226:13
chris
351:2, 351:17
christi
47:16
christian
1:22
christmas
347:16
circuit
5:14, 9:20,
10:1, 10:2,
337:20
circumstance
28:20, 33:7
circumstances
28:15, 30:22,
63:13, 64:8,
67:7, 185:13,
323:10
cited
28:7, 36:15,
46:22, 64:11
citing
7:22
claim
34:5, 37:14
claiming
305:13
claims
38:15, 72:17,
81:20, 81:21,
233:4, 249:21
clarification
239:5, 338:16
clarification's
156:16
clarify
14:17, 156:13,
213:12, 223:22,
224:1, 227:2,
234:5, 234:13,
255:9, 276:19,

303:14, 309:19
clarifying
180:18
classic
85:22
clear
44:10, 48:10,
59:19, 109:3,
109:10, 116:4,
121:8, 122:13,
132:20, 159:13,
180:2, 300:6,
300:8, 324:9,
329:6, 331:9
clearly
11:22, 13:4,
13:19, 36:3,
137:7, 327:18
clerk
5:3, 68:18,
84:19, 91:5,
115:4, 121:13,
154:17, 154:19,
216:2
client
6:7, 10:3,
10:6, 10:13,
10:19, 19:20,
20:5, 25:3,
32:14, 33:14,
34:18, 36:12,
37:10, 41:10,
42:4, 44:7,
45:6, 45:19,
46:10, 66:22,
70:7, 71:9,
77:4, 78:10,
83:16, 119:14,
290:4, 317:3,
317:14, 324:6,
324:10
client's
21:5, 52:21,
63:7, 63:8,
324:19
close
38:16, 49:2,
54:20, 106:11,

106:13, 112:21,
133:9, 240:4,
250:1, 336:5,
336:12, 336:21,
337:14, 337:19,
339:18, 340:3,
340:11, 341:14,
342:11, 342:16,
344:1, 344:7,
344:8, 345:17,
345:18
closed
39:6, 39:17,
264:17, 329:9
closely
326:20
closer
12:17
closes
265:14, 336:15
closing
11:5, 42:14,
42:19, 49:2,
334:9, 334:20,
334:22, 336:14,
341:11, 344:9
clothes
308:10
clothing
288:21, 305:8,
307:2, 316:3
cluster
52:20
coach
81:20, 87:18,
125:19, 125:20,
126:21, 128:1,
128:2, 197:22,
232:18, 233:1,
250:18, 261:7,
262:4, 285:14,
285:15
coaches
97:1, 125:10,
125:18, 247:14,
260:21
coaching
68:5, 127:21

Transcript of Hearing
Conducted on October 19, 2023

362

| | | | |
|---|---|---|---|
| **code**<br>15:15, 15:19,<br>18:17, 25:20,<br>26:13, 30:3,<br>30:5, 30:9,<br>62:12, 64:4,<br>117:18, 166:3<br>**code's**<br>116:18<br>**codes**<br>61:1<br>**collateral**<br>34:16, 34:17,<br>34:21<br>**collaterally**<br>35:8<br>**collect**<br>175:21<br>**collected**<br>175:21, 230:21<br>**collectively**<br>186:13, 187:2<br>**college**<br>151:21, 152:16,<br>152:21, 198:3,<br>204:5, 231:8<br>**color**<br>94:16<br>**com**<br>73:22<br>**come**<br>5:10, 12:17,<br>58:13, 89:22,<br>123:8, 124:11,<br>127:3, 127:8,<br>127:19, 128:15,<br>129:11, 141:11,<br>166:12, 212:9,<br>212:16, 215:21,<br>217:13, 220:22,<br>244:15, 252:12,<br>254:18, 267:15,<br>302:11, 312:16,<br>312:22, 313:5,<br>336:16, 345:7<br>**comes**<br>25:7, 76:12,<br>88:6, 102:16, | 162:6, 163:1,<br>181:7, 218:10<br>**comfort**<br>115:1, 215:2<br>**comfortable**<br>240:7, 349:9<br>**coming**<br>105:11, 122:18,<br>128:2, 141:20,<br>208:22, 213:22,<br>215:3, 221:3,<br>326:2, 330:11<br>**comment**<br>82:6, 191:22,<br>192:1, 288:21,<br>290:16, 297:18,<br>302:15, 302:16,<br>302:19, 302:22,<br>303:22, 304:1,<br>306:9, 309:13,<br>319:7, 319:8,<br>319:9, 319:10,<br>319:12, 319:13<br>**commentary**<br>304:18, 305:7<br>**commented**<br>288:15, 316:1<br>**commenting**<br>287:12, 287:20,<br>288:4, 288:9,<br>301:13<br>**comments**<br>50:6, 69:15,<br>70:11, 70:14,<br>73:12, 73:19,<br>74:1, 129:19,<br>168:6, 189:20,<br>191:14, 193:4,<br>193:9, 200:7,<br>200:9, 218:2,<br>230:16, 231:13,<br>231:18, 241:3,<br>241:6, 241:9,<br>241:10, 241:18,<br>244:12, 249:14,<br>249:15, 250:20,<br>251:1, 251:7,<br>251:11, 251:13, | 251:15, 262:12,<br>272:11, 272:12,<br>273:10, 274:1,<br>274:6, 274:14,<br>282:12, 283:20,<br>284:4, 285:21,<br>286:2, 296:13,<br>298:1, 301:8,<br>308:15, 308:17,<br>309:10, 319:15,<br>324:13, 324:15<br>**commission**<br>151:20, 152:13,<br>350:18<br>**commonwealth**<br>350:22<br>**communicate**<br>150:17<br>**communicated**<br>183:18<br>**communication**<br>89:1, 92:10,<br>93:19, 223:21,<br>305:7<br>**communications**<br>79:7, 79:11,<br>93:17<br>**compile**<br>226:1<br>**complainant**<br>29:5, 41:10<br>**complainants**<br>77:2, 227:8,<br>227:9, 227:10<br>**complained**<br>9:7, 230:7,<br>272:15<br>**complaint**<br>3:21, 3:22,<br>8:17, 11:9,<br>11:11, 13:5,<br>19:11, 19:18,<br>20:8, 20:19,<br>21:5, 21:11,<br>28:5, 28:8,<br>28:13, 28:16,<br>28:22, 29:9,<br>31:19, 32:16, | 32:20, 33:1,<br>34:8, 40:14,<br>42:5, 61:16,<br>61:18, 81:5,<br>83:7, 119:15,<br>131:19, 143:12,<br>143:13, 143:22,<br>145:7, 145:14,<br>145:17, 145:21,<br>146:3, 146:10,<br>157:11, 184:7,<br>206:20, 207:5,<br>209:18, 212:21,<br>213:2, 217:21,<br>218:1, 223:4,<br>227:8, 251:2,<br>263:3, 268:2,<br>270:10, 292:21<br>**complaints**<br>4:4, 8:10,<br>8:15, 11:10,<br>13:7, 13:9,<br>80:4, 97:10,<br>97:15, 104:12,<br>125:9, 144:15,<br>146:7, 162:6,<br>184:9, 267:14,<br>278:17, 281:6,<br>281:20, 282:6<br>**complete**<br>50:21, 53:20,<br>60:20, 81:16,<br>175:2<br>**completed**<br>19:15, 20:11,<br>21:6, 22:1,<br>28:9, 28:10,<br>33:3, 54:6,<br>65:12, 177:19,<br>257:1, 267:22<br>**completely**<br>78:14<br>**completing**<br>144:11, 268:14<br>**compliance**<br>21:13, 21:15,<br>216:19, 223:3<br>**complied**<br>17:11, 17:15, |

Day 000909

Transcript of Hearing
Conducted on October 19, 2023

363

49:7, 62:18,
65:5, 117:17,
159:6
**compliment**
307:7
**comply**
17:5, 20:4,
26:7, 36:5,
43:9, 44:16,
51:3, 53:4,
62:5, 62:7,
66:1, 345:12
**complying**
330:21
**components**
136:8
**compound**
317:9, 317:11,
319:18
**compounded**
300:17
**con**
182:18
**concern**
81:9, 127:4,
163:2, 167:2,
339:3, 345:22
**concerned**
29:14, 48:15,
59:20, 64:15,
87:1, 88:7,
122:6, 156:19,
201:19, 266:11,
339:14
**concerning**
47:17, 48:17,
49:8
**concerns**
87:12, 129:12,
129:13, 129:14,
129:16, 129:19,
136:4, 142:19,
162:6, 165:8,
168:6, 174:17,
181:13, 281:10,
293:5
**concession**
83:5

**conclude**
283:6, 297:1
**concluded**
66:14, 75:22,
125:22, 234:8
**conclusion**
222:2, 222:4,
222:8, 225:6,
234:1, 243:13,
243:18, 244:15,
248:9, 254:4,
264:4, 264:9,
291:12, 331:5,
335:12
**conclusion's**
78:6
**conclusions**
78:17, 78:20,
147:20, 147:21,
147:22, 148:2,
148:7, 198:15,
249:3, 249:5,
264:7, 302:3,
303:6, 303:7,
303:15, 335:1,
336:2, 337:16,
341:10, 349:1
**conclusive**
148:10, 148:12,
148:14, 256:15,
256:16, 256:20
**conduct**
18:10, 18:13,
31:20, 32:17,
71:5, 74:6,
123:2, 123:9,
129:15, 146:11,
146:12, 161:3,
161:10, 216:22,
217:1, 217:5,
217:6, 217:7,
217:10, 221:21,
229:22, 230:2,
230:7, 230:17,
236:20, 246:5,
274:13, 276:7,
293:22, 299:7,
304:5, 320:15,

333:16
**conducted**
24:8, 222:18,
237:6, 244:21,
246:13, 258:1,
328:22
**conducting**
219:10, 224:5,
224:7, 246:7,
320:11, 321:2
**conference**
43:17, 188:2
**confided**
282:16
**confidential**
91:15, 259:19,
311:14
**confidentiality**
39:21
**confined**
29:16
**confirm**
183:17, 272:8,
283:8, 283:11,
283:14, 283:18,
285:5, 292:14,
295:2, 295:9
**confirming**
290:4
**confirms**
48:1
**confront**
83:13
**confrontation**
77:5, 83:9
**confused**
222:19
**conscientious**
245:19
**consequence**
10:8, 23:11,
24:18, 35:4,
35:7, 50:8,
276:2
**consequences**
139:1, 143:10
**consider**
67:14, 69:19,

70:18, 74:22,
80:16, 84:3,
84:4, 84:5,
161:8, 320:10
**considerable**
130:5
**consideration**
77:14
**considered**
14:1, 137:21
**considering**
70:13, 175:17
**considers**
323:12
**consistent**
184:15, 243:6,
244:1, 244:13,
245:21, 253:17,
312:16, 313:1
**constantly**
202:3
**constitute**
301:6
**constitution**
25:4
**construed**
31:14
**consult**
266:22
**cont'd**
4:2
**contact**
80:7, 97:17,
220:22, 260:18,
273:15, 274:21
**contacted**
30:21, 33:17,
81:1, 262:7
**contacting**
103:2, 261:1,
261:2, 261:5,
261:22
**contain**
11:12, 74:20,
351:8
**contained**
46:22, 157:20,
339:7

PLANET DEPOS
888.433.3767 | WWW.PLANETDEPOS.COM

Transcript of Hearing
Conducted on October 19, 2023                    364

contains
197:10, 338:17
contemporaneously
206:16
content
140:21, 141:1,
155:19, 157:10,
254:14
contest
45:1
context
27:10, 27:11,
76:19, 78:4,
78:6, 135:2,
135:4, 135:5,
169:13, 169:16,
295:13, 318:16
contextual
135:1
continually
51:18
continuant
8:12
continue
59:22, 61:5,
96:18, 97:22,
210:13, 224:9,
229:12, 232:13,
241:20, 245:20
continued
10:7, 97:22
continuing
10:7, 19:21,
25:5, 155:9
continuous
204:11, 271:10
continuously
205:4
contract
262:4, 344:18
contractually
261:3, 261:8
conversation
82:2, 94:22,
95:5, 95:18,
97:19, 103:16,
103:17, 104:9,
147:11, 149:1,

154:2, 181:18,
181:19, 247:16,
279:10, 281:14,
282:3, 282:5,
286:16, 287:14,
287:22, 288:11,
289:11, 290:18,
292:17, 292:19,
293:12, 293:14,
293:16, 298:16,
298:20, 331:7
conversations
82:1, 82:5,
89:16, 147:20,
147:22, 233:1,
278:4, 278:7,
279:2, 279:6,
280:15, 281:13,
283:5, 283:8,
283:12, 283:15,
283:19, 289:13,
290:14, 291:1,
296:18, 299:7
conveyed
236:11, 236:13
convincing
313:5
coordinate
220:20
coordinator
46:7, 216:18
copied
181:2
copies
15:21
copy
9:20, 16:9,
16:18, 16:19,
16:20, 16:21,
72:3, 135:14,
155:6, 178:8,
178:10, 178:19,
180:12, 180:15,
206:9, 209:4,
209:5, 255:11,
327:16, 327:19,
327:22, 347:7
corporation
8:5

correcting
305:15
correctly
37:17, 94:5,
163:11, 222:20
correlation
318:11
correspondence
47:5, 47:9,
47:15, 56:11,
159:4, 343:12,
346:8
correspondences
99:10
corresponds
346:19
corroborate
272:19, 273:16
corroborated
251:8
couldn't
25:22, 26:16,
26:17, 39:16,
42:19, 62:8,
79:17, 82:1,
153:1, 203:15,
203:17, 203:21,
259:7, 263:18,
264:16, 274:8,
296:11, 296:14,
297:13, 315:12
counsel
2:5, 2:14,
5:17, 5:21, 6:3,
6:6, 6:21, 29:4,
29:5, 29:19,
30:21, 32:12,
32:13, 43:3,
46:20, 48:4,
49:14, 52:8,
56:10, 56:11,
71:13, 110:8,
111:21, 114:6,
117:6, 117:12,
120:18, 122:1,
136:21, 137:7,
141:9, 158:12,
166:5, 169:15,

177:7, 193:7,
204:19, 207:18,
208:1, 255:14,
257:16, 259:12,
265:3, 281:22,
327:12, 350:12,
351:5
counsel's
135:2
counseling
85:20, 129:18,
130:21, 151:3,
163:7, 168:13,
168:22, 169:1,
204:1, 281:10,
281:18, 298:15
counselor
130:1, 150:11,
150:12, 150:18,
151:8, 156:2,
158:21, 159:12,
160:2, 161:20,
163:14, 163:16,
166:5, 167:18,
199:11, 201:17,
201:22, 202:1,
203:4, 203:7,
205:21, 210:14,
233:3, 239:13,
240:19, 245:14,
275:13
counselors
205:11
count
27:21
counting
150:5
county
1:1, 2:7, 5:9,
5:11, 5:22,
6:18, 8:6,
15:11, 29:11,
34:5, 40:21,
85:2, 85:11,
124:16, 162:2,
218:8, 219:21,
255:6, 256:14,
260:18, 260:20,

Transcript of Hearing
Conducted on October 19, 2023                                    365

265:11, 349:5
**county's**
328:7
**couple**
7:4, 7:14,
45:9, 60:5,
88:7, 88:12,
89:11, 115:1,
162:18, 182:6,
275:19, 320:3,
332:22
**course**
27:5, 47:18,
48:20, 63:6,
96:21, 118:2,
118:7, 128:15,
134:22, 245:14,
250:17, 251:17,
278:5, 279:7,
315:6
**court's**
66:16, 66:17,
67:1, 77:17,
82:18, 228:4,
309:18, 330:21,
335:7
**courteous**
128:8
**cover**
45:16, 345:9,
346:18, 346:19
**covered**
109:6, 110:12,
118:9, 123:12,
177:18, 228:4
**covers**
71:4
**cps's**
60:21
**cpss**
225:3
**craft**
221:14
**crafted**
225:13, 228:16
**crafting**
223:12, 225:20
**crawford**
331:8

**create**
32:13, 346:5
**created**
136:9
**credibility**
137:6, 141:8,
212:8, 238:13,
242:1, 242:5,
242:10, 244:6,
244:12, 245:8,
245:12, 246:3,
296:9, 296:16
**credible**
242:13, 311:18,
311:19, 311:20,
311:22, 312:5,
312:6, 312:7,
333:19
**crimes**
330:5
**criminal**
73:3
**critical**
307:12
**cross**
3:6, 3:9, 3:12,
3:16, 77:9,
100:6, 100:7,
145:4, 184:4,
202:1, 208:2,
215:8, 234:20,
235:13, 244:14,
252:15, 333:9
**crossed**
300:5
**crosstalk**
214:3, 248:1,
257:13
**crux**
244:22
**culturally**
69:15, 70:14,
73:22
**curious**
191:18
**current**
85:2, 85:7,
123:14, 123:18,

151:22, 161:19,
161:22, 216:11,
216:17
**currently**
68:7, 125:1,
171:4, 214:11
**cut**
64:2, 87:10

|   D   |
| --- |

**d-1**
198:4, 231:9,
287:13, 287:21
**daily**
217:9, 217:10
**damned**
41:14, 41:15
**darker**
94:16
**darn**
53:20
**date**
1:13, 8:11,
8:21, 9:5, 9:13,
12:9, 13:10,
20:15, 30:18,
80:6, 83:8,
111:8, 153:19,
175:20, 206:20,
206:22, 207:6,
209:18, 209:22,
212:21, 213:2,
213:5, 213:7,
213:14, 246:8,
246:10, 246:22,
254:14, 255:17,
257:5, 260:21,
262:10, 263:6,
271:6, 276:15,
277:16, 313:9
**dated**
46:4, 47:10,
56:10, 146:15,
207:5, 254:10
**dates**
10:15, 37:6,
37:8, 56:19,
111:13, 145:11,

227:19, 258:5,
261:14, 271:19,
272:2, 278:8,
296:4, 296:8,
296:12, 296:15
**dave's**
274:2
**day's**
22:22, 31:11,
46:10, 46:22,
54:10, 55:7,
72:9, 81:19,
117:6, 129:20,
144:22, 161:10,
224:12, 246:5,
273:10, 273:20,
273:22, 274:10,
274:18, 275:3,
275:9, 277:1,
279:7, 279:12,
282:12, 293:4,
331:9
**days**
19:17, 19:19,
20:21, 21:13,
21:20, 22:12,
22:13, 22:14,
22:15, 23:6,
23:21, 24:2,
24:6, 24:7,
24:9, 24:17,
28:12, 29:3,
29:16, 30:12,
30:13, 33:4,
33:9, 33:13,
36:19, 37:3,
37:4, 40:4,
40:5, 40:7,
40:8, 40:11,
40:17, 40:20,
42:7, 47:8,
50:11, 50:21,
51:1, 51:5,
51:8, 51:14,
52:18, 53:20,
54:6, 56:15,
57:19, 58:1,
58:3, 58:8,

Day 000912

Transcript of Hearing
Conducted on October 19, 2023

366

58:13, 58:14,
58:15, 58:16,
62:5, 62:9,
63:1, 63:14,
63:19, 64:4,
64:5, 65:11,
65:13, 65:16,
266:6, 266:8,
266:9, 268:1,
268:8, 268:14,
268:17, 268:22,
329:16, 335:10,
335:12, 335:15,
335:16, 335:19,
336:18, 337:3,
341:15
**de**
65:11, 248:21,
249:8
**dead**
201:18
**deadline**
33:18, 44:3,
56:13, 65:14
**deadlines**
35:12, 35:19,
35:20, 42:22,
43:15, 62:2
**deaf**
80:1
**deal**
49:3, 52:2,
155:13, 167:4
**dealing**
125:9, 192:18
**deals**
189:22, 239:15
**debate**
60:11
**december**
125:16, 203:10
**decide**
22:17, 23:4,
52:17, 63:4,
160:15, 226:8,
335:12
**decided**
117:4, 208:19,

223:17, 226:10
**decipher**
315:17
**decision**
4:8, 17:9,
17:17, 21:1,
23:1, 23:6,
23:10, 23:21,
26:11, 36:7,
43:12, 43:13,
44:19, 51:7,
51:8, 58:13,
65:14, 66:1,
119:16, 155:7,
220:12, 220:15,
245:7, 248:7,
248:19, 256:2,
340:6
**decisions**
221:20
**declare**
351:2, 351:12
**deemed**
266:1
**defend**
158:1
**defendant**
328:4, 332:19
**defense**
202:6
**defer**
330:1
**deficient**
71:11
**define**
147:8, 201:5
**definitely**
248:17
**definition**
186:18, 188:10,
188:13, 189:1,
189:17, 192:15,
256:15, 256:19
**definitively**
315:12
**dehass**
219:9, 219:11,
240:20

**demonstrates**
318:17
**denial**
286:8, 286:19,
325:11
**denied**
25:6, 36:1,
36:9, 39:12,
72:22, 290:4,
304:1, 305:18
**deny**
14:14, 66:10,
283:20, 291:7,
295:9
**denying**
14:17, 306:14
**department**
18:12, 31:18,
78:18, 115:8,
232:18, 263:2,
281:19, 309:17
**depend**
319:12
**dependent**
190:6, 190:10
**depending**
144:21, 229:19
**depends**
266:15, 319:9,
319:10
**describe**
85:17, 87:22,
88:10, 98:11,
125:3, 128:6,
137:14, 143:12,
143:16, 162:21,
164:1
**described**
89:9, 97:18,
168:16, 169:17,
221:22
**describing**
223:11, 234:16
**description**
222:6
**design**
124:13
**designed**
44:6

**designee**
2:4
**desk**
294:16, 295:3
**detail**
118:8
**details**
11:13, 150:9,
241:17
**determination**
21:11, 21:17,
22:2, 26:22,
192:8, 220:1,
222:16, 225:16,
249:1
**determine**
200:5, 200:12,
226:2, 244:11,
247:21, 267:18,
320:18
**determined**
74:12, 257:2
**determining**
205:12
**develop**
296:10
**development**
31:18
**dialogue**
161:9
**dickerson**
105:13
**dicre**
222:17
**dictate**
29:8
**difference**
319:14, 342:21
**differences**
99:14
**different**
15:9, 71:7,
76:12, 78:14,
99:18, 99:19,
106:18, 143:4,
164:15, 171:9,
188:22, 191:6,
199:10, 219:16,

Transcript of Hearing
Conducted on October 19, 2023                    367

297:7, 297:9,
297:10, 297:11,
306:22, 315:8,
315:9, 318:16,
337:6
**difficulty**
8:9
**digital**
350:8
**diligently**
133:21
**direct**
79:1, 84:21,
110:5, 121:21,
122:15, 153:15,
160:21, 215:7,
216:3, 220:10,
289:18, 304:4,
337:13
**directed**
104:17, 298:8,
300:13
**direction**
109:3
**directive**
302:15
**directly**
117:14, 250:19,
262:22, 298:8
**director**
6:15, 127:11,
130:21, 163:7,
168:13, 168:21,
169:1, 220:3,
220:4, 223:2,
262:19
**disagree**
198:20
**disappeared**
35:13
**discern**
156:8, 201:21
**discerned**
249:4
**disciplinary**
14:10, 95:8,
104:3
**discipline**
9:8, 98:4,

98:18, 123:4,
138:21
**disciplined**
79:17, 143:7,
270:14, 301:13
**disclose**
155:9, 156:21,
157:1, 157:6,
158:18, 159:16,
159:17
**disclosed**
104:11, 158:17
**discovery**
10:14
**discredit**
273:16
**discrep**
204:18
**discrepancy**
204:12, 204:19,
204:21, 204:22
**discretion**
221:20, 222:3,
222:8, 222:9,
222:17
**discrimination**
61:16, 61:18,
217:3, 267:6,
267:14
**discuss**
112:16, 112:17,
122:21, 153:16,
165:7, 214:5,
229:22
**discussed**
27:4, 63:10,
64:18, 74:11,
231:3, 241:18,
278:8, 279:3
**discussing**
73:17, 230:8,
289:8
**discussion**
33:18, 123:5,
278:18
**discussions**
22:18, 164:19
**disingenuous**
72:20, 73:2

**dismissal**
1:12, 4:3, 4:8,
5:10, 9:3,
10:21, 12:15,
12:19, 15:18,
16:16, 21:2,
23:21, 50:5,
69:16, 73:10,
73:20, 74:4,
74:15, 117:10,
135:10, 135:15,
135:17, 135:20,
155:7, 249:2,
265:12, 299:3,
299:10, 299:14,
299:18, 301:9,
301:11, 302:7,
302:21, 303:16,
343:8, 343:13,
351:19
**dismissals**
23:19
**dismissed**
48:8, 70:7
**disparaging**
73:19, 82:6
**displayed**
88:19
**disprove**
296:16, 296:20
**disruptive**
53:21
**distinct**
35:1
**distinctions**
99:8, 99:15
**distress**
189:19, 190:10
**distressed**
190:5, 190:14,
201:13, 306:7,
317:3
**distributing**
86:18
**disturbing**
39:1
**disturbingly**
39:7, 42:12

**divided**
265:2
**division**
11:3, 19:16,
21:10, 27:6,
28:11, 29:14,
30:1, 30:8,
30:17, 31:2,
31:3, 31:4,
32:1, 33:3,
47:6, 47:14,
47:20, 47:21,
48:16, 49:6,
55:1, 55:13,
55:19, 56:5,
59:20, 60:6,
61:3, 85:13,
116:17, 116:20,
118:10, 135:13,
153:9, 155:5,
156:7, 156:19,
158:11, 159:6,
345:12
**division's**
45:15, 56:3,
59:15, 60:21,
71:8, 166:4,
329:18, 331:1
**divisions**
339:7
**doc**
117:11
**document**
19:4, 19:5,
91:3, 93:14,
118:17, 135:18,
139:15, 140:1,
140:2, 155:17,
155:19, 155:21,
159:18, 159:19,
165:14, 165:17,
166:18, 170:16,
174:12, 178:21,
179:8, 180:3,
181:1, 181:5,
181:7, 181:10,
181:14, 181:17,
182:14, 182:15,

Transcript of Hearing
Conducted on October 19, 2023                                368

183:4, 193:11,
206:4, 209:5,
212:12, 212:22,
227:16, 228:6,
228:11, 228:14,
228:18, 231:1,
237:13, 237:15,
237:18, 237:19,
238:3, 238:6,
238:7, 239:16,
239:20, 248:15,
257:5, 265:8,
278:6, 279:1,
310:18, 329:6,
346:6, 346:14
**documentary**
119:13, 141:16,
157:22
**documentation**
11:11, 55:2,
253:8, 254:15,
346:15
**documented**
281:16, 282:3,
282:5
**documents**
14:5, 33:15,
65:7, 69:9,
72:5, 86:7,
91:15, 99:21,
115:8, 116:10,
116:20, 117:13,
119:3, 119:4,
135:15, 140:8,
143:3, 143:19,
155:6, 155:8,
155:10, 155:12,
155:19, 156:7,
158:2, 158:7,
159:16, 173:15,
180:2, 180:6,
182:13, 197:9,
208:20, 209:1,
211:21, 212:7,
257:10, 293:9,
293:19, 293:20,
294:3, 294:6,
326:3, 329:17,

343:11, 344:9,
345:10, 345:16
**doing**
17:18, 33:8,
42:6, 68:6,
96:22, 168:12,
176:12, 204:4,
222:21, 224:17,
224:18, 225:5,
228:2, 268:7,
268:12, 296:2,
314:16, 321:2,
325:1, 334:20
**dominion**
162:3
**donald**
350:2, 350:21
**done**
10:16, 20:16,
20:20, 22:6,
29:7, 33:19,
34:11, 36:10,
39:18, 51:17,
52:6, 62:8,
65:15, 65:16,
113:16, 120:11,
120:16, 136:11,
176:13, 178:6,
190:20, 191:4,
198:8, 210:5,
337:3, 342:15,
343:22, 344:2,
346:14
**down**
61:3, 89:2,
89:15, 96:21,
97:19, 129:18,
168:4, 168:11,
172:15, 182:1,
191:16, 191:17,
191:19, 193:7,
193:8, 200:10,
200:11, 241:5,
271:16, 324:4,
325:19
**draconian**
36:2
**draw**
244:12

**dress**
297:8, 297:10,
298:9, 299:8,
302:16, 302:20,
302:22, 304:2
**dressed**
299:5
**drew**
291:11, 291:15
**drive**
2:18
**drivers**
89:15
**drove**
94:4, 94:15,
111:4
**due**
10:3, 10:8,
25:1, 25:2,
36:10, 36:11,
75:2, 151:21,
336:8
**duly**
84:18, 121:12,
154:18, 216:1
**during**
11:6, 46:21,
55:22, 61:9,
63:10, 64:18,
88:3, 98:13,
102:22, 118:9,
128:4, 141:9,
144:22, 156:5,
158:14, 159:1,
219:1, 242:1,
242:6, 244:19,
285:22, 292:19,
333:11
**duties**
85:18, 85:22,
86:2, 86:13,
86:14, 125:4,
162:6, 162:22,
216:20, 217:4,
222:6
**duty**
155:9, 168:9,
222:15

**E**

**e-mail**
47:11, 56:16
**e-mailed**
57:15
**e-mails**
56:9
**each**
82:19, 111:12,
164:2, 185:2,
187:18, 294:16,
295:4, 306:19,
325:19, 334:22,
348:22
**ear**
80:1
**earlier**
99:4, 120:14,
122:20, 132:20,
161:2, 171:2,
175:19, 176:21,
201:11, 228:5,
233:6, 241:19,
294:10, 330:21,
339:15, 341:2,
349:2
**earliest**
23:8
**easier**
26:2, 90:10,
91:20, 240:14,
337:11, 343:7
**easy**
337:3, 337:11
**eat**
63:17
**echo**
15:13
**ed**
2:3, 128:13,
128:19
**education**
1:16, 2:8, 19:8
**effectively**
10:18
**efficiency**
60:9

Transcript of Hearing
Conducted on October 19, 2023                    369

**effort**
32:11, 102:20
**eight**
49:5, 69:20,
69:22, 106:18,
203:13, 205:2,
216:13, 227:21
**eight-eight**
94:13
**either**
20:5, 40:12,
47:2, 80:7,
142:20, 165:6,
166:1, 169:10,
176:7, 192:15,
210:9, 210:14,
239:21, 285:14,
291:10, 301:14,
312:5, 319:15,
331:10, 347:5
**elaborate**
225:19, 308:17,
309:1
**elect**
296:14
**eleventh**
163:15
**eleventh-grade**
163:20
**eliminate**
120:14
**eliminated**
339:9
**elliot**
3:4, 84:14,
84:16, 84:18,
84:20, 85:4,
95:6, 109:8,
110:1, 112:14,
112:21, 113:2,
261:12, 261:16,
261:22, 293:19
**elliot's**
86:6, 118:3
**elliott**
268:21, 269:16,
283:14, 292:3,
292:5, 292:11,

292:12, 292:14,
293:1, 293:3,
293:4, 293:12
**else**
46:13, 51:21,
52:1, 89:21,
90:5, 120:1,
160:8, 188:1,
213:15, 214:6,
230:11, 249:13,
249:20, 262:12,
295:4, 312:14,
315:6, 320:1,
333:6
**else's**
249:3
**elsewise**
12:22
**emaciated**
136:6
**email**
89:13, 92:6,
92:8, 92:11,
92:12, 94:1,
99:15, 102:21,
104:16, 104:18,
109:9, 111:9,
111:12, 156:11,
156:18, 177:3,
178:11, 209:10,
218:20, 233:15,
293:6, 293:7,
329:19, 346:19
**emailed**
292:14, 292:18
**emails**
92:14, 104:22,
105:21, 106:2,
106:14, 111:13,
111:20, 291:22,
292:2, 292:3,
292:4, 292:12,
292:13
**embarrassing**
53:21
**embarrassment**
51:19
**embellish**
238:6

**emergencies**
69:5
**emergency**
68:13
**emotional**
163:2, 189:8,
189:18, 192:16,
192:18, 194:10,
195:6, 195:13,
196:5, 200:22,
201:5
**emotionally**
189:22, 190:15,
193:17, 204:3
**employed**
350:12, 351:6
**employee**
1:9, 2:12,
10:8, 11:7,
11:13, 19:21,
25:6, 26:7,
36:4, 43:9,
44:16, 47:16,
51:20, 145:16,
216:22, 253:9,
260:17, 261:3,
262:4
**employee's**
29:5, 331:5
**employees**
125:7
**employer**
1:3
**employment**
10:7, 147:16,
161:10
**enclosed**
45:19, 46:10,
56:4
**end**
6:3, 63:17,
84:3, 87:9,
97:8, 103:3,
126:16, 157:21,
160:13, 224:18,
225:11, 330:19,
331:4
**ended**
81:16

**enforce**
301:17
**enforcement**
219:1
**engaged**
18:10, 18:12,
31:20, 32:16,
306:8, 317:15,
319:7
**enough**
134:6, 136:12,
248:8, 281:21,
282:9, 282:11,
301:18, 346:5
**ensure**
161:16
**ensuring**
125:7
**entered**
50:9, 334:10
**entering**
123:22
**entire**
28:18, 55:22,
124:11, 223:11,
231:15, 244:17,
274:8, 279:5,
300:20, 326:1,
326:4, 339:6,
339:16
**entirety**
271:5
**entitle**
17:7, 26:9,
36:6, 43:11,
44:18
**entitled**
21:22, 22:6,
26:11, 26:22,
34:18, 34:19,
34:22, 35:21,
35:22, 36:9,
43:13, 45:6,
49:19, 53:2,
53:13, 53:14,
53:16, 53:17,
54:13, 65:22,
327:18

Transcript of Hearing
Conducted on October 19, 2023

370

| | | | |
|---|---|---|---|
| **environment** 59:16, 59:17, 267:5 **environments** 217:2 **equity** 216:18 **equivalent** 26:13, 75:7, 75:9, 159:21 **especially** 82:17, 110:5, 141:16, 287:2 **esquire** 2:6, 2:15, 2:16 **essentially** 12:4, 74:18, 77:11, 82:22, 83:6, 106:20, 167:10 **establish** 10:15, 12:9, 13:20, 40:6, 66:11, 133:1, 133:2, 178:4, 184:20, 242:12, 317:21 **established** 51:15, 67:5, 108:22, 110:4, 157:16, 157:17, 170:22, 177:16, 179:7, 204:20, 264:5, 280:16, 301:22, 303:9, 306:5 **establishes** 126:9 **establishing** 86:9, 109:4, 109:18 **establishment** 182:18 **estopped** 35:8 **estoppel** 34:16, 34:18, 34:21 | **etc** 33:7, 37:9, 50:7, 51:10, 51:19, 62:9 **etcetera** 80:12, 131:19, 178:9, 239:6, 242:11, 249:5 **ethics** 68:4 **evaluate** 76:17, 77:3, 110:1, 297:3 **evaluation** 33:16 **evans** 114:4, 114:10, 114:11, 114:15, 115:6, 117:1, 117:13, 119:8, 119:12, 332:22 **even** 12:13, 13:15, 14:6, 20:19, 20:22, 21:20, 26:16, 26:20, 33:17, 36:10, 38:16, 38:22, 40:19, 41:5, 42:20, 46:13, 48:10, 51:13, 52:11, 57:20, 58:10, 58:20, 64:4, 65:12, 68:8, 70:16, 75:5, 84:7, 158:12, 179:14, 208:12, 209:13, 244:19, 272:6, 295:8, 304:1, 316:4, 338:13, 344:8 **event** 8:11, 12:10, 29:2, 30:18, 120:15, 351:10, 351:13 **events** 12:11, 22:21, | 33:16, 77:12, 77:13, 161:5 **eventually** 14:3 **ever** 26:18, 81:21, 97:9, 98:5, 98:17, 101:16, 103:8, 104:2, 104:6, 129:11, 140:6, 142:18, 143:7, 145:7, 145:16, 147:19, 148:22, 151:14, 164:18, 164:19, 165:5, 202:18, 202:21, 202:22, 204:8, 205:1, 205:4, 210:5, 258:7, 258:10, 270:22, 279:19, 280:8, 280:20, 288:14, 288:20, 290:12, 291:3, 295:2, 295:7, 298:7, 308:17, 309:1, 309:12, 310:7, 310:13, 311:11, 324:6, 324:13, 324:15, 339:19 **every** 44:3, 44:5, 86:17, 118:8, 262:10, 283:21, 290:5, 325:20 **everybody** 15:21, 252:3, 337:13, 340:14, 349:9 **everyone** 6:5, 156:6, 252:11, 252:20 **everyone's** 40:13 **everything** 20:20, 33:19, 65:18, 125:5, | 135:1, 158:18, 168:8, 266:16, 340:16, 343:20 **evidence** 3:18, 7:17, 26:20, 32:2, 47:21, 47:22, 49:1, 50:22, 51:15, 54:22, 55:2, 58:4, 64:17, 65:17, 66:18, 66:21, 67:12, 71:21, 72:10, 72:15, 76:5, 76:11, 76:18, 77:3, 77:8, 78:1, 78:8, 79:6, 82:17, 84:5, 116:14, 116:21, 117:7, 119:14, 132:19, 135:16, 140:10, 140:12, 140:18, 141:2, 141:16, 141:17, 148:10, 148:12, 148:14, 149:2, 157:22, 159:21, 192:2, 192:13, 238:4, 238:10, 242:17, 249:10, 256:15, 256:16, 256:20, 272:22, 278:14, 313:12, 322:18, 324:8, 325:15, 326:5, 326:12, 333:9, 333:11, 333:18, 334:8, 335:5, 335:11, 336:3, 349:4 **evidentiary** 13:17, 57:13 **ex** 47:10 **exact** 66:6, 149:22, 159:3, 207:8, |

Transcript of Hearing
Conducted on October 19, 2023

371

246:22, 263:6,
309:13, 315:11,
315:14
**exactly**
61:9, 68:2,
117:5, 173:1,
191:3, 191:19,
196:17, 215:10,
225:19, 239:8,
250:3, 259:2,
259:8, 309:15
**exam**
208:2
**examination**
3:4, 3:5, 3:6,
3:7, 3:8, 3:9,
3:10, 3:11,
3:12, 3:14,
3:15, 3:16,
84:21, 100:7,
122:15, 145:4,
160:21, 184:4,
216:3, 252:15
**examine**
202:1, 244:14,
296:9
**examined**
77:9
**examining**
78:17
**example**
30:4, 30:15,
64:12, 111:19,
284:3, 313:4,
343:7
**examples**
301:5
**except**
152:12, 329:8
**exception**
128:12, 158:10,
252:22, 328:9,
339:5, 341:3,
343:2, 344:3
**exchanged**
338:4
**exclude**
12:10

**excluded**
241:17
**excuse**
28:6, 28:9,
59:10, 64:12,
72:1, 139:8,
143:15, 166:15,
170:4, 176:18,
211:21, 223:8,
227:17, 228:7,
228:18, 231:6,
236:7, 247:6,
303:2, 320:22,
328:9
**excused**
112:5, 112:7,
213:18, 213:19
**excusing**
222:15
**exercised**
24:14, 24:16
**exhi**
74:8
**exhibit**
8:18, 8:19,
9:3, 13:10,
13:11, 16:4,
17:21, 18:8,
18:11, 20:12,
20:13, 20:18,
21:2, 21:17,
21:19, 23:14,
24:10, 27:12,
32:15, 32:19,
32:21, 32:22,
34:7, 37:21,
37:22, 41:21,
42:13, 44:11,
44:12, 45:20,
47:4, 49:12,
50:2, 56:1,
56:3, 61:14,
64:11, 70:21,
73:14, 95:10,
95:12, 141:20,
155:13, 157:9,
196:18, 197:8,
254:20, 257:6,

263:7, 264:22,
273:6, 278:2,
284:8, 285:5,
290:2, 300:11,
300:18, 312:17,
315:21, 326:21,
327:20, 334:17,
345:4
**exhibits**
3:18, 31:11,
45:12, 45:15,
47:1, 56:3,
91:20, 324:1,
325:14, 326:14,
326:17, 328:5,
329:17, 330:22,
334:8, 334:14,
336:4, 338:17,
338:18, 339:22,
340:21, 342:7,
342:22, 349:3,
349:4
**exist**
65:9
**existence**
283:8, 283:11,
283:15, 283:19,
296:17
**exonerated**
35:3, 35:4
**expect**
78:8, 83:11,
214:16, 321:13
**expectation**
70:2, 74:10,
77:1
**expected**
155:15
**experience**
126:22, 244:4
**experiencing**
189:19
**expert**
86:8, 131:22,
244:10
**expertise**
243:1
**expires**
350:18

**explain**
126:18, 135:4,
180:9, 225:19,
233:11, 268:10,
282:14, 320:14
**explained**
89:7, 231:5,
241:4, 241:12,
243:6
**explaining**
234:16, 240:22
**explanation**
269:5
**explore**
313:9, 313:12
**exploring**
109:11, 202:8,
277:3
**expressed**
125:19
**extended**
127:16
**extension**
58:2
**extensively**
109:7
**extent**
61:10, 76:12,
80:19, 116:10,
131:10, 133:10,
138:12, 157:18,
158:12, 221:19,
222:8, 222:9,
237:18, 269:5,
327:4, 329:5,
330:18
**extra**
254:16
**extreme**
12:16
**eyewitness**
77:12
**eyewitnesses**
77:13

**F**

**face**
154:14, 299:10,

Transcript of Hearing
Conducted on October 19, 2023

372

299:14, 299:18,
301:11
**faced**
301:9
**facilities**
86:15
**fact**
29:22, 30:18,
31:15, 33:7,
33:10, 42:9,
63:11, 68:6,
71:5, 71:11,
84:5, 90:5,
119:13, 125:7,
138:11, 140:18,
242:21, 245:2,
256:3, 257:22,
269:18, 270:19,
284:1, 320:19,
329:8, 335:1,
336:2, 349:1
**facts**
78:19, 123:5,
162:9, 204:15,
204:16, 249:4,
313:11
**factual**
67:15
**failure**
17:4, 20:3,
26:6, 36:4,
43:8, 44:15,
58:2, 65:19
**fair**
244:22
**fairly**
120:13, 211:12
**fairness**
121:7
**faith**
156:20, 158:15,
159:14
**fall**
8:16, 128:11,
128:20, 246:12,
314:19
**falls**
2:19

**familiar**
109:20, 124:6,
180:22, 266:12,
266:17, 267:2
**familiarize**
182:9
**familiarized**
41:2
**family**
69:2
**far**
29:13, 47:7,
47:21, 48:3,
48:15, 59:20,
64:15, 68:4,
86:13, 117:16,
156:18, 208:3,
214:17, 215:6,
245:5, 251:7,
266:11, 272:1,
327:10
**fashion**
241:11
**fast**
129:6, 217:11
**fault**
31:2, 41:3
**favor**
17:10, 17:17,
20:7, 26:11,
26:22, 34:20,
36:8, 43:12,
44:19, 45:7,
54:13, 64:2,
66:1, 66:14,
84:11
**fear**
181:15
**february**
9:6, 9:9, 9:12,
10:11, 10:19,
12:12, 12:19,
12:21, 13:21,
13:22, 21:2,
24:2, 24:12,
24:19, 29:21,
31:4, 37:16,
46:14, 47:4,

49:13, 79:8,
79:10, 88:14,
92:10, 94:4,
94:6, 111:19,
145:6, 145:12,
145:16, 147:7,
148:20, 148:21,
203:11, 271:21,
292:1, 292:16,
293:5, 324:14,
331:13
**federal**
34:3, 34:4,
35:12, 35:13,
130:6, 337:19
**fedex**
347:5
**fee**
330:5
**feeding**
185:1
**feel**
80:9, 190:13,
192:1, 193:4,
193:10, 201:13,
231:1, 241:19,
241:20, 297:19,
308:16, 309:10,
316:14, 316:17,
325:7
**feeling**
193:15, 282:16,
297:20, 309:12
**feels**
27:6, 66:19,
67:4, 317:14
**felonies**
73:4, 73:6
**felony**
73:5
**felt**
71:12, 71:13,
232:15, 241:4,
245:3, 281:21,
282:9, 282:10,
292:20, 331:20
**female**
50:7, 218:2,

284:4, 285:21,
288:4
**few**
130:16, 172:9,
176:9, 219:5,
300:17
**fiduciary**
41:9
**field**
241:11
**fifth**
123:22, 162:4
**figure**
295:13
**file**
14:7, 19:11,
62:14, 72:6,
135:14, 344:14,
344:17, 345:8,
346:8
**filed**
56:15, 130:14,
146:7, 156:3
**filing**
19:18, 28:13,
33:1, 52:12,
143:22, 268:2
**fill**
174:2, 174:19
**filled**
174:6, 174:9,
174:13, 174:16
**final**
14:22, 17:8,
17:9, 20:5,
20:6, 26:10,
36:7, 43:11,
44:18, 53:2,
53:7, 65:22,
69:9, 158:9,
335:7
**finally**
80:19
**financial**
350:14, 351:7
**find**
12:14, 45:19,
46:10, 61:4,

Transcript of Hearing
Conducted on October 19, 2023

373

80:1, 84:11,
95:3, 244:6,
287:17, 296:3,
298:5
**finding**
13:4, 20:6,
20:17, 35:16,
54:13, 74:3,
80:17, 98:2,
188:17, 225:3,
248:14, 248:15,
270:20, 329:2
**findings**
4:7, 19:16,
21:1, 28:10,
28:11, 33:3,
62:4, 146:17,
147:3, 247:18,
248:4, 248:5,
254:12, 255:5,
256:9, 267:22,
302:3, 329:4,
335:1, 336:2,
336:22, 337:16,
341:10, 348:22,
349:1
**finds**
164:8
**fine**
69:6, 87:4,
91:21, 113:1,
191:11, 197:19,
223:9, 243:17,
252:13, 319:4,
330:16, 336:10,
343:14, 343:15
**finish**
50:16, 95:15,
120:17, 130:10,
252:7, 290:9,
341:2
**finished**
11:16, 29:10,
53:18, 54:1,
100:2, 136:21,
189:12, 202:11,
223:5
**finite**
29:3

**first**
7:16, 11:2,
11:8, 16:19,
40:11, 45:11,
47:5, 55:19,
56:5, 57:13,
76:13, 79:20,
84:12, 88:13,
88:14, 89:13,
92:9, 97:17,
98:5, 119:7,
123:22, 124:3,
130:16, 133:11,
134:6, 140:5,
141:9, 151:14,
152:4, 152:5,
153:2, 155:21,
158:9, 170:12,
174:6, 174:7,
179:14, 182:5,
212:11, 239:2,
240:12, 246:20,
246:21, 247:5,
261:20, 278:2,
278:3, 282:15,
346:10
**firsthand**
182:19
**five**
18:20, 18:21,
19:5, 19:12,
22:12, 23:5,
27:17, 27:18,
27:19, 28:6,
51:8, 65:11,
66:7, 75:19,
81:2, 81:5,
81:6, 199:10,
293:15, 315:21
**flip**
46:15, 90:16,
90:19, 93:9,
173:10, 176:14,
211:15
**flirtatious**
305:9, 305:14,
306:10, 307:17,
308:9, 316:8,

316:12, 316:22
**floor**
32:8
**focus**
122:8
**focused**
204:6
**focusing**
124:22, 230:16
**follow**
42:2, 51:5,
117:19, 159:4,
211:12, 234:19,
235:14, 247:9,
247:11, 247:12,
247:15, 278:15,
320:13
**followed**
34:22, 72:2,
116:17, 144:16,
156:11, 159:2,
285:12
**follows**
47:14
**football**
8:16, 80:11,
81:20, 87:18,
95:3, 96:20,
96:22, 97:1,
126:1, 133:17,
196:7, 198:4,
231:15, 232:18,
233:1, 241:11,
241:12, 241:13,
241:21, 272:7,
272:16, 273:9,
273:13, 273:15,
285:22, 288:5,
288:21
**ford**
81:16, 250:6,
250:14, 251:1,
251:10, 260:13,
260:16, 268:21,
269:16, 275:3,
275:9, 275:11,
276:1, 277:2,
279:17, 279:19,

279:22, 282:15,
282:19, 283:2,
283:11, 293:19
**forego**
33:22, 76:7
**foregoing**
350:3, 350:5
**form**
144:12, 147:6,
157:10, 173:21,
218:10, 222:1,
222:11, 249:18,
317:16, 317:18,
318:22, 319:4
**formal**
323:12
**formally**
278:6
**format**
337:9
**former**
151:12, 262:19
**formula**
29:8
**forth**
9:8, 9:14,
12:2, 18:16,
18:17, 22:21,
25:5, 32:18,
33:6, 38:19,
51:9, 54:16,
57:20, 65:21,
116:19, 140:5,
151:4, 158:5,
190:5, 260:7,
267:12, 337:1,
337:7, 338:21,
345:5
**forward**
7:19, 7:21,
35:9, 35:21,
37:20, 43:18,
45:5, 47:22,
59:14, 61:5,
62:22, 66:21,
67:2, 74:8,
129:6, 181:12,
217:11, 236:19,

Transcript of Hearing
Conducted on October 19, 2023

374

257:10
**forwarded**
181:4
**forwarding**
181:8
**foul**
285:8
**found**
9:3, 14:8,
15:19, 32:19,
34:10, 70:7,
78:12, 148:10,
155:1, 155:2,
167:10, 192:2,
257:18, 270:21,
282:4
**foundation**
86:9, 126:9,
137:17, 162:14,
162:17, 162:18,
177:1, 177:6,
177:12, 178:7,
178:16, 179:7,
179:12, 179:16,
180:15, 181:16,
233:19, 234:3,
235:12, 242:9,
270:2, 276:6,
276:12, 280:13,
303:4, 306:12,
317:22, 318:10,
326:19
**founded**
21:11, 21:18,
22:2, 23:2,
52:15
**four**
19:11, 33:1,
51:10, 61:14,
73:14, 74:19,
81:2, 113:21,
138:21, 139:13,
199:10
**fourth**
9:20, 9:22,
10:2
**frame**
283:16, 313:10

**frank**
6:2
**frankly**
22:21, 64:4,
188:18
**free**
112:12, 153:12,
217:2, 231:1,
267:5, 321:15
**free-flowing**
243:11
**freeze**
77:15
**frequently**
217:9
**friday**
151:22, 340:12,
340:21, 341:6,
341:11
**friends**
127:12
**front**
72:6, 90:14,
139:9, 173:7,
227:15, 243:9,
263:19, 264:12,
272:11, 272:12
**fuck**
231:8, 271:16,
287:21
**fucked**
288:5
**full**
5:18, 35:1,
71:15, 72:4,
85:2, 95:12,
114:14, 128:17,
161:16, 169:2,
216:5, 273:7,
278:3, 281:4,
293:2, 351:8
**fully**
58:2, 128:12,
350:5
**function**
204:1
**further**
45:8, 54:14,

95:18, 116:6,
147:5, 175:14,
183:6, 190:16,
190:17, 190:21,
191:4, 191:7,
201:10, 215:5,
248:4, 313:9,
313:13, 313:16,
313:18, 320:2,
321:8, 322:5,
348:22, 349:6,
351:12
**future**
147:16, 153:15

**G**

**gabriel**
3:7, 114:2,
114:9, 114:13,
114:15, 115:15,
119:6, 120:3,
121:12, 121:17,
122:18, 123:15,
126:9, 134:17,
137:14, 139:12,
144:20, 153:12,
153:13, 153:18,
153:21, 154:4,
236:14, 236:15
**gabrielle**
281:14, 295:8,
295:21, 297:10,
318:4, 319:14
**gabrielle's**
295:6
**game**
166:21
**gap**
223:19
**gave**
25:7, 25:15,
49:14, 74:20,
160:6, 160:7,
187:18, 201:11,
201:14, 205:18,
236:8, 241:5,
277:4, 291:18
**gears**
217:12

**gen**
128:19
**general**
80:10, 86:8,
125:3, 220:8
**generally**
85:17, 90:1,
90:8, 134:11,
134:13, 162:5,
162:12, 258:17,
305:22
**generated**
196:20
**gentleman**
6:12
**germane**
162:15
**gestured**
177:20
**get-go**
52:20
**getting**
42:5, 68:13,
152:11, 167:13,
167:14, 199:17,
221:16, 238:18,
246:3, 331:15,
3██, 347:16
**g**
3:21, 3:22,
8:18, 82:17,
82:19, 92:17,
93:1, 94:1,
94:3, 94:8,
95:6, 96:3,
96:20, 97:3,
97:10, 97:12,
97:15, 98:6,
98:12, 98:17,
103:9, 103:10,
103:13, 104:6,
104:11, 110:19,
131:5, 133:12,
133:13, 134:5,
134:6, 136:3,
136:15, 137:15,
142:20, 145:7,
145:17, 145:21,

Transcript of Hearing
Conducted on October 19, 2023

375

146:11, 146:12, 151:1, 157:11, 163:10, 163:14, 163:19, 164:22, 174:14, 176:7, 182:6, 183:21, 185:6, 185:18, 185:22, 196:4, 203:2, 210:9, 229:11, 231:12, 245:11, 245:13, 246:14, 249:16, 250:15, 251:2, 251:16, 272:6, 272:10, 281:10, 282:16, 290:21, 292:22, 298:8, 306:5, 309:6, 309:8, 315:8, 315:10, 315:19, 3███ 324:12

**g████'s**
110:10, 111:1, 150:11, 251:6, 281:6

**giant**
52:20

**gift**
198:1, 199:16

**gifts**
290:19

**girls**
130:13, 281:18, 294:11, 297:8, 298:11, 299:1, 306:15, 311:19, 311:22, 312:7, 319:16

**gist**
241:17, 325:3

**give**
15:21, 16:9, 16:19, 17:3, 50:21, 51:4, 60:1, 63:1, 73:9, 76:9, 79:2, 91:10, 142:16, 154:20,

164:22, 174:5, 186:5, 189:4, 194:22, 195:4, 234:18, 242:7, 242:22, 276:18, 277:9, 301:18, 325:6, 334:16, 335:10, 340:11, 340:19

**given**
70:13, 74:2, 78:7, 115:21, 120:22, 135:3, 176:2, 208:1, 208:2, 218:11, 237:14, 238:2, 242:21

**gives**
270:9, 336:22, 340:14, 340:17

**giving**
13:4, 201:22, 270:20

**gladly**
341:5

**go**
7:21, 9:9, 12:16, 19:10, 20:18, 23:12, 28:5, 35:21, 36:11, 41:12, 42:13, 44:11, 45:5, 54:15, 62:22, 66:21, 67:2, 69:20, 71:6, 73:21, 74:9, 75:10, 86:13, 90:9, 91:10, 106:1, 112:12, 113:2, 114:22, 120:7, 121:18, 122:7, 144:21, 153:12, 153:21, 153:22, 154:1, 158:6, 167:22, 168:12, 176:3, 179:4, 179:10, 179:18,

183:5, 187:13, 194:20, 196:17, 198:3, 198:12, 201:9, 202:15, 205:21, 206:1, 216:8, 221:15, 221:17, 223:4, 227:13, 231:8, 237:14, 253:10, 253:16, 277:7, 278:1, 278:14, 283:22, 290:7, 290:8, 316:11, 323:6, 324:3, 325:19, 333:1, 334:7, 341:7, 343:2, 344:5, 347:7

**goes**
28:14, 38:4, 48:4, 66:5, 71:16, 92:18, 95:19, 114:14, 116:2, 117:16, 117:18, 124:13, 141:1, 141:4, 170:11, 171:2, 175:13, 177:8, 215:7, 222:22, 223:1, 223:2, 225:16, 242:20, 245:5

**gone**
120:7, 201:10, 339:4

**good**
6:5, 40:5, 93:3, 127:12, 138:20, 156:20, 158:15, 159:14, 240:9, 337:8

**google**
247:7, 252:22

**govern**
266:13

**governing**
189:2

**government**
62:17

**governs**
51:2

**grade**
163:15, 163:17

**grades**
136:17

**graduated**
152:22

**graduates**
151:12

**granted**
75:13, 120:14, 269:11

**gray**
146:16, 147:2, 148:3, 148:6, 149:1, 254:11, 255:4, 256:2, 262:18, 262:19, 263:10

**great**
127:13, 133:19, 287:2, 322:12

**grievance**
5:11, 9:2, 19:22, 23:13, 23:20, 25:19, 30:2, 48:2, 48:4, 48:6, 48:13, 49:9, 51:9, 116:19, 155:2, 157:3, 265:11, 266:19, 349:6

**grievances**
30:6

**grievant**
17:7, 26:9, 36:7, 43:11, 44:18

**grieve**
12:1

**grimes**
9:19, 25:3, 53:15, 75:1, 77:5, 83:12, 328:2

**ground**
202:2

Day 000922

Transcript of Hearing
Conducted on October 19, 2023

376

| | | | |
|---|---|---|---|
| **grounds**<br>11:14, 15:18,<br>85:20, 86:15<br>**group**<br>1:15, 2:17,<br>111:19<br>**guar**<br>25:2<br>**guarantee**<br>68:6<br>**guaranteed**<br>25:2<br>**guess**<br>129:13, 154:15,<br>190:9, 326:11,<br>341:6<br>**guidance**<br>158:21, 159:11,<br>160:2<br>**guideline**<br>298:19<br>**guidelines**<br>4:15<br>**guilt**<br>78:15<br>**guy**<br>127:13<br>**guys**<br>201:4, 224:5,<br>290:20, 298:1,<br>298:11, 298:21,<br>298:22<br><br>**H**<br><br>**half**<br>120:16, 120:21,<br>154:6, 154:10,<br>203:16, 296:5<br>**hand**<br>133:11, 168:10,<br>176:13, 177:21<br>**handed**<br>174:18, 175:2,<br>175:4, 175:5,<br>175:11, 255:11<br>**handful**<br>128:13<br>**handle**<br>175:11 | **handling**<br>125:8<br>**hang**<br>321:17<br>**happen**<br>20:14, 69:5,<br>92:16, 198:2,<br>275:5, 276:3,<br>333:14<br>**happened**<br>35:9, 37:12,<br>37:13, 67:20,<br>88:13, 105:16,<br>165:11, 238:13,<br>238:16, 246:21,<br>277:19, 291:6,<br>291:7<br>**happening**<br>176:11, 225:12,<br>241:2<br>**happens**<br>61:22, 218:17,<br>221:9, 221:14,<br>221:19<br>**happy**<br>64:16, 341:5<br>**harass**<br>316:7<br>**harassing**<br>305:9, 305:14,<br>306:10, 307:17,<br>308:9, 316:13<br>**harassment**<br>61:15, 61:17,<br>217:3, 267:5,<br>267:14, 301:6,<br>316:22<br>**harassments**<br>27:9<br>**hard**<br>108:7, 285:17<br>**harm**<br>51:19, 163:2<br>**hate**<br>133:19, 342:11<br>**head**<br>97:2, 125:19,<br>232:18, 240:18, | 250:18<br>**health**<br>136:4, 136:7,<br>136:8, 150:11,<br>151:2, 151:3,<br>306:5, 317:2,<br>317:13, 318:1,<br>318:6, 318:9,<br>318:11, 319:5<br>**healthy**<br>136:12<br>**hear**<br>28:20, 36:22,<br>48:22, 49:1,<br>64:21, 74:22,<br>172:1, 179:3,<br>185:13, 344:13<br>**heard**<br>14:14, 60:2,<br>98:6, 186:12,<br>187:17, 191:8,<br>191:13, 234:8,<br>251:11, 310:11,<br>335:5, 336:3,<br>347:15, 349:3<br>**hearing**<br>1:12, 1:13,<br>1:14, 4:13,<br>4:14, 5:10,<br>5:15, 9:1,<br>11:22, 12:1,<br>12:5, 14:11,<br>24:3, 24:4,<br>24:5, 24:6,<br>24:13, 24:17,<br>24:18, 24:19,<br>24:20, 26:20,<br>30:11, 30:12,<br>30:16, 30:18,<br>30:21, 31:1,<br>36:14, 36:21,<br>37:2, 37:5,<br>43:14, 46:11,<br>46:12, 47:5,<br>47:18, 48:1,<br>48:9, 50:10,<br>50:12, 51:13,<br>55:9, 55:13, | 55:20, 56:4,<br>56:6, 58:3,<br>58:16, 58:18,<br>58:22, 59:1,<br>60:13, 62:20,<br>65:21, 67:2,<br>67:21, 69:18,<br>70:18, 70:20,<br>72:9, 73:20,<br>74:16, 77:2,<br>78:16, 141:5,<br>142:8, 168:1,<br>248:7, 248:10,<br>248:22, 249:8,<br>249:9, 249:10,<br>253:7, 259:18,<br>259:19, 323:10,<br>323:17, 323:20,<br>327:18, 336:11,<br>336:15, 337:13,<br>341:12, 341:14,<br>343:11, 348:17,<br>349:4, 349:6,<br>351:19<br>**hearings**<br>15:10, 323:15<br>**hearsay**<br>130:3, 130:5,<br>250:9<br>**heart**<br>164:13<br>**held**<br>29:2, 30:21,<br>85:7, 216:11<br>**hello**<br>68:17<br>**help**<br>77:16, 86:18,<br>154:15, 341:4<br>**helped**<br>175:21<br>**helping**<br>220:19<br>**hence**<br>141:12<br>**here**<br>5:8, 28:15,<br>31:7, 31:14, |

Day 000923

Transcript of Hearing
Conducted on October 19, 2023                                    377

31:22, 35:9, 38:22, 41:6, 46:13, 47:13, 47:19, 48:3, 48:7, 49:5, 49:22, 54:8, 59:9, 59:22, 77:2, 83:15, 84:15, 93:4, 105:11, 111:14, 113:13, 116:14, 117:14, 120:3, 122:22, 124:1, 124:3, 124:18, 126:5, 131:22, 137:6, 139:8, 140:2, 140:8, 153:17, 172:9, 178:6, 181:17, 188:13, 201:18, 215:21, 217:12, 245:1, 248:5, 248:13, 269:1, 275:11, 279:9, 304:6, 304:7, 304:11, 308:21, 310:19, 312:14, 315:4, 318:14, 320:15, 322:6, 324:20, 329:20, 331:2, 339:12, 342:21, 344:1, 344:4, 345:21, 346:17

**hereby**
350:4, 351:2
**hesitancy**
339:22
**hey**
97:2, 97:20, 104:20
**hi**
43:1
**high**
85:5, 85:13, 86:16, 98:14, 123:16, 124:8, 124:9, 124:10,

124:17, 124:19, 131:7, 138:19, 161:11, 161:20, 162:3, 175:12, 198:3, 218:3, 218:12, 221:3, 221:7, 233:15, 233:18, 235:5, 235:9, 240:20, 241:14, 279:8, 290:12
**highlighted**
265:4
**highlights**
255:12, 255:13, 257:10, 257:12, 265:2
**himself**
31:19
**hire**
124:12
**hired**
52:1, 124:7
**history**
41:20, 126:1
**hold**
15:20, 16:7, 31:3, 136:20, 186:19, 194:13, 335:14, 343:17
**holes**
307:15, 308:10
**holiday**
125:18
**hon**
1:14
**hone**
296:8
**honest**
138:20, 243:14, 243:18, 311:13
**honestly**
102:1
**hopefully**
60:9, 337:2
**hoping**
35:19, 43:3, 346:9

**horse**
201:18
**hostile**
59:16
**hotline**
172:17, 180:11
**hour**
120:16, 120:21, 154:7, 154:11, 156:12, 203:16
**hourly**
260:16
**house**
125:17
**how'd**
235:14
**however**
117:11, 153:14, 236:7, 240:14, 269:18
**hr**
127:16, 147:13, 219:20
**hrtd**
31:17, 216:18, 218:10, 221:11, 221:12
**huge**
344:14
**huh**
103:13, 148:4
**human**
31:18, 223:2, 262:19
**hybrid**
128:17
**hypothetical**
318:21
**hypothetically**
271:14

---
**I**
---

**idea**
73:2, 126:21, 155:15, 285:7, 286:4
**identical**
80:4

**identification**
160:2
**identified**
18:14, 20:1, 49:12, 50:3, 50:13, 50:18, 76:16, 77:16, 79:11, 79:12, 79:13, 82:9, 86:6, 86:7, 89:14, 95:7, 95:14, 103:10, 103:14, 113:19, 113:22, 114:2, 115:7, 115:9, 116:4, 116:6, 117:21, 155:10, 156:14, 156:19, 165:22, 168:20, 196:3, 196:14, 196:18, 197:7, 229:8, 230:2, 230:4, 244:9, 244:10
**identifies**
18:21, 19:2, 23:19
**identify**
80:6, 80:7, 80:8, 90:11, 117:20, 148:6, 149:11, 155:16, 228:6, 263:14, 265:10, 271:5, 272:18, 273:12, 302:18, 303:20, 309:12, 342:3
**identifying**
166:16, 166:17
**ignore**
43:5, 51:16
**ii**
350:2, 350:21
**ill**
243:12, 245:17, 312:17, 313:1
**illegally**
41:15

Transcript of Hearing
Conducted on October 19, 2023                                    378

imagine
339:19
immediate
181:2
immediately
117:20, 159:2,
176:1, 176:2,
310:5, 344:5
impact
297:11
impacted
136:8
implica
63:12
implicated
32:4
implication
158:11, 306:1
implications
13:18
implied
305:22
imply
165:21
implying
132:10, 193:10,
297:19, 308:16,
309:11
important
17:20, 18:5,
245:3, 298:5
importantly
20:22, 50:12,
159:13
impossible
30:14, 62:22
impractical
62:21
imprecise
75:6
impressed
141:9
improper
244:9, 324:14,
324:15
inappropriate
50:6, 70:11,
73:12, 73:18,

129:19, 238:9,
250:8, 250:16,
259:20, 274:1,
274:6, 274:7,
284:4, 285:8,
285:15, 285:20,
286:3, 298:16,
298:18, 298:19,
299:2, 302:15,
305:6, 316:1,
316:6, 324:11
inch
346:7
incident
8:12, 14:8,
89:9, 102:22,
168:11, 174:4,
174:18, 175:1,
175:13, 176:3,
177:18, 196:19,
197:8, 210:17,
210:20
incidents
19:14, 62:3,
89:18, 89:22,
126:15, 210:6,
267:21
include
25:12, 123:2,
123:9
included
25:13, 72:15,
143:2, 224:10,
257:14, 263:3,
326:6, 340:8
including
27:11, 29:10,
45:3, 46:21,
55:22, 64:9,
64:18, 77:5
inconsistency
205:3
incorporated
66:5
incorrect
97:11, 169:11
incredible
312:6

independence
85:5, 85:13,
85:15, 86:16,
87:17, 98:14,
123:16, 123:19,
123:20, 124:17,
124:19, 127:8,
128:1, 128:5,
131:7, 138:21,
161:11, 161:20,
162:4, 175:12,
218:3, 218:12,
221:3, 221:7,
233:15, 233:18,
235:5, 235:9,
240:20, 241:14,
279:8
independent
38:18, 39:9
independently
36:17, 56:9,
234:2
indicate
13:3, 42:10,
279:9
indicated
18:12, 168:5,
202:17, 262:3,
268:19, 271:10,
294:10, 346:4
indicates
8:4, 33:7,
197:20, 255:3,
255:4, 275:2,
302:16
indication
301:18
indicative
78:14, 149:12
individual
166:5, 168:21,
169:3, 280:14
individuals
79:7, 81:2,
81:3, 81:4,
81:6, 81:7,
118:12, 131:7,
131:11, 164:18,

164:21, 212:8,
233:2
indulgence
77:17, 315:7
inference
78:22
inferences
13:19
inferred
231:15
inferring
231:11
inform
32:15, 340:5
information
33:14, 39:5,
43:22, 69:18,
95:13, 115:11,
116:11, 129:22,
141:11, 143:2,
150:16, 151:1,
151:3, 156:21,
157:7, 157:19,
163:5, 163:6,
166:10, 166:13,
166:17, 167:1,
170:21, 172:16,
173:4, 175:22,
182:17, 206:8,
206:17, 207:3,
207:14, 209:16,
211:5, 218:14,
218:15, 226:1,
229:1, 230:20,
232:4, 248:9,
251:9, 258:13,
258:15, 258:20,
259:3, 259:9,
270:11, 270:20,
282:8, 335:15,
351:4
informed
130:12, 281:19
initially
43:19, 247:13
inquiries
72:7
inquiry
126:12

Day 000925

Transcript of Hearing
Conducted on October 19, 2023                                    379

ins
266:10
insensitive
69:15, 70:14,
73:22, 284:4,
285:20, 286:2
inside
129:2, 151:6
insinuated
288:16
inspect
135:14, 155:6
instance
29:11
instances
29:6, 88:11
instead
14:17, 21:20,
22:4, 22:14,
42:6, 219:15
instruct
291:9
instructed
112:15, 275:12,
275:13
instruction
125:8, 291:4
insufficiency
84:4
insufficient
72:19
int
66:2
intake
144:10, 218:18,
219:3, 221:10,
295:10
intend
119:3, 119:9,
323:3
intending
333:6
interacting
127:1
interaction
88:16, 98:15,
129:1
interactions
88:5, 98:12,

128:7, 128:14,
241:15
interagency
60:7, 62:10,
65:8
interest
76:3, 125:19,
350:14, 351:7,
351:12
interested
127:8
interesting
66:3, 117:11
interestingly
277:7
internal
144:2, 144:11,
218:10
interpretation
31:7, 306:2,
323:8
interpreted
27:10, 305:9,
305:13, 305:14,
306:9, 308:3,
308:4
interrupt
322:9
intervening
64:13
interview
39:15, 46:21,
55:22, 58:20,
149:4, 149:13,
149:18, 223:15,
223:18, 224:13,
224:15, 226:9,
226:10, 231:22,
238:12, 238:14,
239:1, 239:7,
242:2, 242:6,
246:5, 246:7,
246:17, 246:19,
246:21, 247:6,
247:7, 247:10,
252:17, 258:7,
258:10, 261:18,
261:20, 262:14,

264:16, 291:4,
292:20, 295:8,
333:12
interviewed
33:14, 33:15,
35:17, 116:5,
127:16, 127:21,
149:12, 149:19,
165:22, 232:7,
232:8, 232:9,
233:14, 239:2,
240:12, 240:17,
240:20, 245:22,
246:14, 249:14,
258:6, 260:6,
260:21, 261:17,
261:18, 262:13,
262:15, 262:16,
268:16, 292:10
interviewing
43:4, 223:12,
233:22, 246:10,
260:10, 260:13,
268:8, 268:20,
269:15
interviews
9:13, 39:5,
219:4, 220:20,
220:21, 221:13,
224:11, 224:16,
225:5, 225:22,
229:2, 232:2,
232:14, 232:15,
236:20, 237:6,
246:13, 258:1,
265:18, 283:7
intimate
305:6
intriguing
126:22
introduced
6:12, 85:9
investigate
34:9, 58:2,
59:9, 73:3,
146:20, 147:6,
147:9, 175:15,
202:21, 225:4,

230:3, 249:21,
267:21, 269:21,
270:11, 295:13,
299:22, 320:7
investigated
28:9, 31:15,
59:18, 81:3,
229:9, 230:3,
231:4, 320:20,
333:20
investigating
18:22, 300:1,
301:16
investigation
19:13, 19:14,
20:10, 20:13,
21:6, 21:21,
22:1, 22:5,
28:5, 28:9,
32:3, 33:2,
33:9, 33:12,
34:6, 35:1,
35:2, 35:14,
38:18, 39:10,
39:22, 42:20,
48:18, 50:20,
51:3, 52:13,
53:20, 54:7,
59:8, 59:14,
60:19, 61:5,
62:3, 64:13,
70:2, 70:15,
80:13, 118:6,
132:1, 186:10,
190:1, 190:21,
191:4, 197:8,
199:22, 200:5,
210:5, 219:10,
219:13, 220:2,
221:21, 222:18,
222:22, 224:5,
224:7, 224:10,
224:14, 224:17,
224:20, 225:10,
226:8, 237:18,
238:1, 244:21,
247:19, 248:14,
257:2, 263:15,

Day 000926

Transcript of Hearing
Conducted on October 19, 2023

380

265:13, 265:14,
268:7, 268:14,
269:3, 270:12,
280:1, 280:9,
280:16, 281:3,
282:4, 293:8,
293:18, 293:21,
294:2, 294:22,
295:2, 296:3,
320:11, 320:16,
320:19, 321:2,
329:3, 329:9,
333:15, 333:16
**investigations**
19:3, 60:8,
216:21, 217:5,
217:6, 217:8,
217:10, 222:22,
267:13, 311:7
**investigative**
4:7, 4:11,
20:17, 59:19,
61:16, 61:18,
69:10, 72:4,
83:2, 115:9,
117:22, 146:16,
147:3, 169:22,
181:10, 228:15,
237:19, 254:12,
256:10, 310:4,
327:3
**investigator**
18:15, 31:22,
35:6, 38:8,
46:7, 60:19,
64:9, 65:2,
67:16, 67:17,
77:7, 77:8,
78:18, 81:1,
82:9, 103:9,
114:3, 116:5,
242:15, 242:22,
244:5, 270:19,
310:1
**investigator's**
78:2
**investigators**
218:10

**inviting**
137:20
**invoke**
12:4
**invoking**
7:21
**involve**
39:13, 144:10
**involved**
73:10, 73:18,
82:18, 131:22,
158:12, 218:18,
219:1, 219:13,
224:13, 225:9,
280:15, 337:6
**involvement**
29:11, 158:16,
183:21
**involves**
38:20
**involving**
28:16, 70:2
**irrelevant**
65:21, 86:5,
90:4, 169:9
**issue**
11:4, 13:16,
14:12, 22:22,
34:16, 34:21,
35:5, 37:18,
46:8, 48:7,
48:18, 49:5,
53:8, 53:9,
53:14, 60:14,
64:10, 65:3,
65:20, 67:11,
67:15, 67:19,
68:12, 73:17,
74:10, 77:22,
83:11, 84:7,
98:20, 106:19,
140:4, 140:22,
155:3, 155:18,
159:15, 162:9,
162:13, 164:7,
164:13, 166:22,
167:15, 182:16,
188:13, 238:13,

242:9, 255:21,
266:6, 314:3,
329:11, 331:6,
338:15
**issued**
29:19, 35:15,
38:8
**issues**
37:20, 50:19,
53:10, 63:12,
79:4, 98:13,
141:8, 151:2,
155:13, 161:9,
162:15, 212:8,
306:6, 317:2,
317:14, 318:1,
318:6, 318:9,
318:12, 319:6
**it'll**
120:9, 324:8
**items**
289:4
**itself**
11:10, 13:5,
45:12, 48:11,
48:14, 55:1,
159:5, 170:14,
172:13, 178:22,
237:11, 237:13,
238:4, 238:7,
276:16, 329:3
**iv**
301:5
**ix**
4:5, 18:13,
18:14, 18:15,
19:3, 19:8,
19:9, 19:10,
20:20, 21:6,
31:8, 31:15,
31:21, 32:18,
32:20, 32:22,
33:10, 34:3,
34:6, 35:1,
35:7, 35:12,
35:14, 35:15,
35:17, 35:18,
36:10, 41:14,

44:4, 48:18,
50:20, 51:2,
54:4, 58:1,
59:5, 59:6,
59:8, 59:11,
59:12, 62:1,
62:6, 66:4,
66:5, 66:6,
263:3, 267:13

**J**

**j-o-h-n-s-o-n**
5:21
**jackie**
17:22, 26:3,
77:17
**jaclyn**
130:21, 169:4,
170:13, 172:15,
177:22, 178:4,
178:14, 178:17,
179:1, 180:10,
182:11
**james**
157:12, 157:14,
175:4, 175:8,
175:11
**janette**
114:4, 114:9,
114:11, 115:6
**january**
127:15, 127:22,
203:10
**jaqueline**
2:16, 6:5
**jeans**
307:14
**jeep**
94:4, 94:7,
94:9, 94:15,
94:16, 94:17,
110:10, 110:14,
110:18, 111:1,
111:2, 111:4,
111:5
**job**
1:20, 51:21,
51:22, 52:2,

81:19, 85:22, 205:8, 205:9

**john**
3:7, 85:16, 114:2, 114:9, 114:13, 121:12, 123:15, 124:9, 236:15, 281:14

**johnson's**
53:8

**joint**
60:8, 224:5, 224:7, 224:14, 224:15, 224:22, 263:15

**jointly**
39:3, 39:8, 60:20, 218:22, 219:14, 219:17, 220:16, 224:15, 224:18, 225:4

**jr**
1:14, 2:15, 5:13

**judge**
5:13, 16:6, 16:9, 17:4, 24:21, 55:14, 106:6, 142:9, 198:19, 199:14, 201:20, 252:9, 300:11, 327:14

**judge's**
16:3

**judgment**
53:3

**judicated**
249:10

**judicial**
33:11, 39:20, 143:17, 327:10, 327:15, 330:15

**jullianne**
258:21

**july**
13:6, 13:8, 20:14, 20:15, 21:16, 22:12,

38:8, 40:18, 65:13, 100:16, 101:15, 101:16, 101:19, 102:6, 102:15, 103:7, 103:8, 103:12, 103:13, 223:20, 246:15, 247:8, 253:1, 261:1, 261:5, 261:6, 261:13, 261:15, 262:1

**jump**
223:10, 229:18, 232:5

**june**
20:15, 139:3, 153:1, 260:13

**junior**
6:3

**jurisdiction**
12:4

**jury**
142:9

**justification**
22:18

**justin**
6:15, 214:12

**K**

**k-r-a-m-e-r**
6:6

**k-r-i-s-t-i**
5

**k**█
1

**k**█
92:17, 93:6, 146:12, 157:12, 157:13, 163:10, 239:3, 239:12, 240:17, 241:1, 243:5, 245:4, 246:15, 249:16, 250:15, 251:2, 251:6, 251:16, 271:15, 272:6, 272:10, 273:8,

273:17, 275:21, 281:6, 281:9, 282:15, 292:21, 309:6, 310:13, 315:8, 315:10, 3█ 19:14

**k**█
239:13, 242:1, 2

**k**█
2

**k**█
92:18, 93:1, 93:6, 131:5, 134:3, 134:5, 136:15, 137:16, 139:2, 139:20, 142:20, 145:8, 145:17, 145:21, 163:10, 163:16, 165:3, 174:10, 176:7, 183:15, 183:22, 185:6, 185:18, 185:22, 2

**k**█
107:8, 107:19, 1█, 110:16

**k**█
229:10, 231:7

**keep**
126:17, 154:15, 154:16, 251:21, 302:6, 311:14

**keeping**
86:18, 231:2

**keeps**
157:5

**kelly**
157:12, 157:14, 175:4, 175:8, 175:11

**kept**
113:10

**kicked**
331:15

**kid**
98:1, 98:2

**kids**
90:11, 287:2

**kind**
8:4, 8:5, 9:8, 10:1, 33:17, 35:16, 39:3, 43:21, 73:2, 85:22, 97:2, 97:7, 97:19, 133:20, 136:14, 137:4, 222:19, 241:5, 285:7, 296:8, 297:15, 322:20, 323:17, 325:12

**kinds**
151:17, 323:15

**knees**
17:22, 198:1, 199:13, 231:10, 288:9

**knew**
35:18, 101:11, 133:16, 133:22, 134:5, 134:6, 136:3, 136:13, 236:17, 250:15, 275:17, 276:7, 289:10

**knowledge**
86:6, 116:7, 117:22, 118:5, 120:12, 123:6, 131:6, 131:11, 131:18, 133:11, 137:8, 137:15, 143:18, 161:8, 162:11, 164:2, 164:6, 164:20, 165:1, 165:4, 167:8, 167:11, 167:12, 167:19, 182:19, 202:18, 238:2, 259:18, 279:21, 280:20, 280:21, 350:11

**knowledgeable**
274:18

Transcript of Hearing
Conducted on October 19, 2023

382

**known**
9:18, 47:14, 87:18, 106:1, 106:4, 122:5, 160:8, 217:14

**knows**
54:1, 102:11, 107:13, 138:10, 167:21, 177:4, 177:12, 233:21, 270:6, 276:14, 280:18

**kramer**
2:16, 6:5, 6:6, 6:9, 7:8, 16:1, 16:4, 16:13, 16:17, 18:1, 25:14, 27:17, 38:2, 41:18, 41:20, 45:17, 47:12, 50:8, 55:21, 68:10, 71:9, 72:3, 72:18, 77:19, 77:21

**kramer's**
36:16, 36:18, 49:15, 55:16

**kristi**
2:6, 5:20, 45:18, 341:21

**L**

**l-o**
6:2

**label**
227:16, 228:19

**labeled**
94:10, 211:21, 2

**l**
3:21, 3:22, 8:18, 8:22, 82:17, 82:19, 92:17, 115:16, 131:5, 133:12, 145:8, 145:17, 145:21, 146:11,

146:12, 157:11, 157:20, 163:10, 174:14, 196:4, 229:11, 259:4, 268:16, 324:12

**lack**
276:12, 303:3, 306:12, 318:10

**lackadaisical**
37:9

**ladies**
13:9, 79:13, 81:20, 81:21, 82:19, 160:9, 298:9, 308:14, 324:5, 331:11

**lady**
298:14, 305:19, 306:4

**lady's**
195:17

**laid**
177:6, 179:16, 181:16, 276:6, 280:13, 317:22, 326:19

**lane**
350:2, 350:21

**language**
27:10, 28:7, 28:18, 29:15, 30:9, 31:12, 66:6, 231:6, 256:12, 274:2, 274:7, 285:8, 285:16

**languishing**
26:14

**large**
22:18

**last**
25:17, 25:18, 26:1, 37:18, 38:13, 59:1, 65:1, 65:2, 87:9, 92:18, 95:11, 110:13, 134:7, 158:8,

206:13, 206:14, 206:15, 208:6, 210:8, 210:19, 210:22, 219:6, 224:10, 265:22, 282:21, 293:2, 300:21, 306:6, 314:13

**late**
72:14

**later**
20:2, 28:21, 51:10, 61:3, 72:2, 79:20, 89:11, 127:17, 144:22, 155:10, 246:4

**latest**
23:8

**laughed**
97:7, 273:11

**launched**
280:16

**laura**
154:18, 161:18

**lauren**
3:10, 114:5, 114:7, 114:10, 114:12, 115:7, 239:13

**law**
10:4, 10:9, 31:7, 35:13, 38:18, 61:1, 62:22, 218:22, 249:5, 249:7, 266:6, 327:19, 327:20, 327:22, 328:2, 330:6, 330:9, 335:1, 336:2, 349:1

**lawyers**
337:18

**lax**
67:13

**lay**
243:1

**laying**
162:16

**lays**
162:14

**lc**
228:18

**lcps**
39:2, 39:8, 39:10, 47:16, 95:11, 140:1, 161:19, 170:11, 170:12, 170:14, 172:5, 173:19, 174:7, 174:12, 176:17, 176:19, 176:20, 178:12, 180:3, 180:4, 182:1, 183:4, 183:12, 196:9, 206:1, 211:21, 211:22, 212:3, 212:21, 212:22, 216:12, 221:6, 223:21, 224:9, 227:16, 227:17, 228:19, 247:4, 261:3, 261:8, 263:15, 266:13, 273:6, 277:8, 287:18, 289:5, 292:7, 304:15, 305:5, 329:4

**lcps's**
329:4

**lead**
85:5, 85:9

**leading**
78:5, 98:8, 138:3, 182:12, 242:3, 249:17

**lean**
80:1

**learn**
129:11, 185:7, 218:5

**learned**
47:6, 123:9, 129:21

**learning**
128:18

Day 000929

Transcript of Hearing
Conducted on October 19, 2023

383

**least**
134:9, 162:16, 203:13, 203:16, 282:20, 322:20
**leave**
4:6, 18:9, 26:15, 101:10, 127:5, 129:3, 144:10, 244:2, 259:10, 260:3, 321:16, 322:10, 327:13, 327:21, 331:2, 335:8, 341:9, 342:11
**leaving**
338:13, 344:4
**led**
11:10, 197:16
**leeway**
135:3, 208:2
**left**
113:22
**legal**
2:17, 41:9, 60:11, 82:18, 222:2, 222:4, 222:8, 222:15, 264:4, 264:7, 264:8, 323:2, 323:8
**lengthiest**
214:18
**lengthy**
113:7, 115:20, 335:20
**let's**
88:10, 107:5, 126:5, 126:20, 130:17, 133:11, 164:17, 174:7, 187:13, 190:12, 201:18, 202:15, 206:1, 283:22, 337:12
**letter**
4:4, 11:9, 13:7, 14:7, 42:8, 45:16,

46:15, 47:9, 49:15, 49:17, 49:21, 49:22, 50:2, 50:4, 51:12, 55:11, 55:16, 56:1, 69:17, 70:21, 71:3, 71:6, 71:10, 71:14, 72:11, 139:3, 139:6, 139:16, 139:17, 140:5, 140:14, 140:19, 142:2, 146:15, 146:20, 147:2, 147:6, 147:11, 147:15, 147:20, 147:21, 148:1, 148:3, 148:13, 151:16, 254:10, 254:13, 255:1, 255:3, 256:10, 257:20, 263:2, 263:10, 304:11, 328:19, 345:9, 346:20
**letters**
56:21, 142:4, 151:11, 151:17, 152:10, 152:14, 152:19
**letting**
83:22
**level**
163:6
**lie**
42:21, 83:1, 310:7, 311:12
**light**
141:11
**liked**
131:18
**likely**
15:8, 344:16
**likes**
164:8
**limbo**
59:1

**limine**
69:8, 70:17, 74:21
**limit**
45:10, 123:5, 126:10, 126:11, 126:14, 160:16
**limitations**
7:22, 8:8, 10:10, 12:7, 13:1, 14:12, 25:20, 44:3, 45:3, 48:12, 53:15, 76:20, 84:8, 269:22, 271:1
**limited**
86:5, 120:13, 121:1, 126:12, 128:14, 135:9, 157:5, 159:9, 160:9, 269:20, 289:20
**limiting**
177:15
**limits**
121:17, 122:21, 161:3
**linda**
208:15
**line**
38:5, 133:4, 178:1, 202:8, 260:5, 289:4, 289:16, 300:5
**lines**
38:3, 38:7, 38:12, 77:11, 265:4, 286:11, 286:13, 298:6, 315:22
**lisa**
2:4, 146:16, 147:2, 148:3, 149:1, 254:11, 256:2, 262:18, 262:19, 263:10
**list**
70:1, 300:10,

301:6, 333:3, 344:9
**listed**
177:2, 351:10
**lists**
301:4
**little**
21:3, 40:9, 40:10, 72:20, 125:5, 127:2, 129:6, 215:5, 229:19, 235:3, 240:6, 326:20, 335:19, 337:6, 340:11, 342:20, 344:3
**live**
321:19
**liz**
256:2
**locate**
96:22, 114:5, 171:16
**located**
113:13
**location**
1:16
**locker**
129:2
**logically**
78:21, 312:5
**long**
34:13, 43:21, 44:1, 63:5, 82:18, 85:7, 120:5, 123:17, 150:7, 161:22, 178:1, 194:20, 197:12, 203:14, 216:11, 293:11, 293:13, 336:8
**longer**
203:19, 203:20, 338:13, 344:3
**longest**
214:17
**look**
16:7, 16:8,

Transcript of Hearing
Conducted on October 19, 2023                                                384

16:12, 16:15,
17:20, 18:8,
18:18, 18:20,
19:4, 20:8,
20:12, 23:14,
23:18, 24:4,
24:10, 24:14,
25:10, 25:12,
25:22, 37:21,
37:22, 41:21,
45:12, 45:13,
49:12, 73:8,
76:11, 78:1,
78:3, 83:4,
90:22, 91:11,
99:2, 104:17,
104:21, 105:9,
105:21, 106:2,
106:14, 107:2,
107:5, 108:8,
108:16, 110:10,
156:14, 157:9,
173:17, 174:7,
181:22, 208:19,
209:1, 209:2,
227:11, 228:19,
230:22, 246:16,
254:8, 254:15,
257:4, 259:7,
262:18, 264:20,
282:14, 284:7,
284:8, 285:2,
287:18, 288:16,
293:2, 301:3,
307:3, 308:21,
308:22, 309:14,
309:18, 309:21,
310:16, 314:8,
315:17, 315:20,
326:17, 326:20,
330:20, 340:15,
340:17, 347:9
**looked**
56:21, 99:2,
104:16, 209:17,
294:8
**looking**
55:14, 56:8,

78:9, 108:2,
111:8, 112:21,
197:7, 227:14,
246:10, 247:1,
254:14, 257:6,
258:22, 262:11,
273:5, 273:6,
283:7, 285:4,
288:15, 300:7,
300:9, 300:10,
305:16, 307:2,
309:8, 315:13,
316:18, 329:19,
337:5, 341:20
**looks**
108:4, 108:6,
182:2, 212:21
**lost**
235:3
**lot**
30:14, 39:18,
79:12, 79:14,
86:21, 88:17,
90:1, 90:4,
90:8, 97:4,
97:11, 120:10,
125:6, 125:12,
136:5, 208:2,
254:15, 284:21,
284:22, 291:20,
292:15, 312:3,
312:19, 331:16,
337:7
**lots**
87:13
**loudon**
85:10
**loudoun**
1:1, 2:7, 5:9,
5:11, 5:21,
6:18, 8:6,
15:11, 40:21,
85:2, 124:16,
218:8, 219:20,
255:6, 256:14,
260:17, 260:20,
265:11, 349:5
**lunch**
113:6, 154:8

**lydia**
208:15
**lying**
81:17, 83:3

**M**

**ma**
61:10
**ma'am**
71:1, 196:10,
210:1, 213:21,
269:19, 304:6,
321:22, 322:3
**madam**
317:7
**made-up**
52:9
**mail**
47:12
**main**
130:2, 144:17
**maintain**
280:12, 326:17
**maintained**
272:13
**maintains**
47:20
**major**
336:7
**majority**
176:9
**make**
7:4, 15:21,
16:8, 21:1,
21:10, 43:15,
46:19, 48:3,
51:7, 52:12,
56:17, 63:7,
66:19, 67:3,
83:11, 91:19,
91:20, 110:11,
114:6, 114:17,
121:8, 122:4,
122:5, 122:12,
131:16, 131:19,
132:9, 137:19,
138:3, 141:6,
158:9, 160:14,

172:6, 177:1,
180:1, 193:4,
204:3, 214:3,
214:5, 219:22,
220:22, 221:5,
221:20, 242:16,
243:13, 248:19,
248:22, 257:5,
266:22, 277:16,
279:19, 280:2,
282:13, 288:11,
302:2, 302:19,
302:22, 308:15,
308:16, 309:10,
315:5, 317:3,
322:14, 323:13,
323:21, 325:1,
325:13, 325:20,
330:20, 331:3,
337:2, 337:10,
337:11, 338:15,
339:19, 340:3,
340:5, 340:17,
340:22
**makes**
22:16, 48:10,
59:19, 90:10,
117:12, 163:8,
168:13, 169:6,
171:19, 172:16,
172:17, 190:13,
192:8, 193:9,
193:10, 206:6,
219:22, 222:16,
223:15, 240:6,
297:18, 302:1,
303:22, 308:16,
323:19
**making**
48:5, 51:8,
73:1, 76:1,
78:10, 83:21,
227:1, 229:9,
234:1, 241:3,
273:22, 274:6,
283:20, 284:3,
286:1, 311:1,
325:10, 325:12,

Transcript of Hearing
Conducted on October 19, 2023

385

332:12
**manage**
285:22
**manager**
95:2, 96:21,
133:17, 133:18,
241:13, 241:21
**manager's**
288:21
**managers**
287:3, 290:15
**mand**
81:12
**mandated**
144:7, 144:9
**mandatory**
40:13, 81:7,
81:8, 81:9,
81:10, 82:4,
82:8, 82:11,
82:12, 82:14,
84:6, 145:20,
146:10, 165:16,
167:2, 192:12,
279:15, 279:17,
280:1, 280:5,
280:10, 283:2
**manner**
221:21, 231:10,
284:2
**many**
88:18, 98:11,
113:17, 142:3,
151:11, 152:14,
152:19, 298:2
**march**
8:11, 18:10,
20:9, 24:19,
24:20, 30:1,
30:19, 30:20,
36:19, 36:20,
36:21, 37:6,
37:7, 40:16,
42:6, 46:4,
47:6, 47:8,
47:10, 47:15,
49:15, 50:1,
50:2, 50:11,

50:12, 55:11,
56:2, 56:12,
58:6, 58:17,
71:5, 72:2,
79:8, 79:10,
80:5, 81:22,
89:10, 92:21,
93:20, 101:10,
101:18, 102:6,
102:14, 102:15,
129:9, 129:16,
145:6, 145:12,
145:13, 145:22,
146:13, 146:14,
150:3, 168:4,
173:3, 175:20,
183:21, 184:7,
203:11, 205:5,
206:16, 206:18,
206:20, 206:21,
207:2, 207:4,
207:5, 207:8,
209:18, 210:21,
211:6, 212:18,
213:2, 217:20,
261:6, 261:12,
261:15, 271:18,
275:7, 275:10,
275:15, 275:20,
276:2, 276:3,
277:3, 277:13,
278:22, 279:10,
281:7, 281:8,
282:22, 283:10,
283:13, 292:1,
292:16
**marie**
216:7
**martin**
6:15, 6:18,
6:22, 27:22,
322:10, 322:12
**material**
73:6, 310:6
**materiality**
132:10
**matriculate**
152:18

**matriculating**
152:15, 152:21
**matt**
127:11
**matter**
33:10, 44:8,
45:5, 47:17,
47:18, 48:8,
48:17, 49:4,
57:13, 58:7,
59:11, 60:12,
63:5, 64:19,
67:1, 72:8,
156:6, 161:3,
178:22, 259:14
**matters**
3:3, 7:2, 7:15,
48:21, 63:11,
75:16, 75:22,
122:22
**maybe**
16:7, 36:22,
44:12, 98:6,
171:8, 193:1,
203:8, 207:1,
215:15, 293:17
**mccammon**
1:15
**mean**
55:15, 55:16,
57:11, 60:22,
72:1, 90:10,
93:6, 99:12,
102:18, 130:18,
131:9, 134:5,
136:5, 136:6,
147:8, 147:12,
165:21, 179:5,
188:19, 189:7,
208:6, 223:7,
224:4, 224:22,
227:3, 233:11,
234:9, 235:7,
235:8, 243:16,
255:12, 275:18,
280:21, 306:8,
307:4, 307:9,
312:19, 316:9,

317:14, 322:18,
323:17, 323:18,
325:19, 326:21,
327:19, 330:14,
341:12
**meaning**
178:15, 184:20,
219:20, 221:11
**means**
20:9, 20:10,
24:9, 24:16,
34:9, 134:12,
300:3, 300:4,
319:7
**meant**
147:13, 234:5,
234:14, 234:17,
295:1
**meanwhile**
51:18
**measure**
36:2
**meet**
35:11, 76:14,
84:10, 126:20,
247:7, 252:22
**meeting**
46:17, 126:20,
221:6, 265:18,
322:12
**meetings**
39:4, 39:14,
252:21
**member**
130:22
**members**
85:21, 86:22,
87:12, 127:3,
224:16, 272:7,
272:15
**memorandum**
70:1, 74:9
**memorize**
209:11
**memory**
77:15, 314:7,
314:11
**men**
231:13, 298:9

Transcript of Hearing
Conducted on October 19, 2023

386

| | | | |
|---|---|---|---|
| **mental**<br>136:8, 150:11,<br>151:2, 151:3,<br>306:5, 317:2,<br>317:13, 318:1,<br>318:5, 318:9,<br>318:11, 319:5<br>**mention**<br>46:19, 66:4,<br>69:21, 119:6,<br>119:7, 119:8,<br>119:10, 155:14,<br>204:8, 250:7,<br>250:14<br>**mentioned**<br>35:19, 130:15,<br>151:1, 158:21,<br>159:12, 160:5,<br>224:22, 226:12,<br>251:22<br>**mentions**<br>250:10<br>**mentoring**<br>85:21<br>**mere**<br>141:22<br>**met**<br>30:8, 48:16,<br>66:12, 66:13,<br>156:3, 156:4,<br>166:14, 186:2,<br>239:12, 245:13,<br>247:13, 278:8,<br>292:10<br>**middle**<br>220:7, 235:1<br>**midnight**<br>337:20<br>**might**<br>26:2, 60:20,<br>68:13, 91:19,<br>93:22, 94:7,<br>108:4, 117:4,<br>149:18, 166:10,<br>252:1, 284:13,<br>330:10, 343:6,<br>344:3<br>**min**<br>59:2 | **mind**<br>16:6, 88:6,<br>102:16, 171:14,<br>192:5, 201:1,<br>231:2, 298:22<br>**mindset**<br>185:10<br>**mine**<br>16:10, 345:22<br>**minimis**<br>65:11<br>**minimum**<br>59:2<br>**minor**<br>211:12, 305:15<br>**minors**<br>38:20<br>**minute**<br>134:15, 134:16,<br>186:19, 194:13,<br>196:12, 203:18,<br>203:19, 207:18,<br>293:16<br>**minutes**<br>75:19, 115:1,<br>120:8, 120:12,<br>176:9, 203:20<br>**mis**<br>73:5<br>**mischaracterizes**<br>105:2, 110:3,<br>276:13<br>**misconduct**<br>317:4, 317:15<br>**misdemeanor**<br>73:4, 73:5<br>**misremembering**<br>81:18<br>**misrepresentation**<br>61:8, 61:12<br>**missed**<br>136:5, 330:11<br>**missing**<br>136:7<br>**misstated**<br>176:18<br>**misstatement**<br>187:3, 187:6 | **misstates**<br>187:1, 272:21<br>**mm-hmm**<br>19:6, 22:9,<br>23:17, 46:5,<br>61:20, 125:2,<br>161:13, 163:1,<br>163:12, 164:4,<br>165:12, 168:17,<br>172:14, 174:8,<br>175:9, 175:12,<br>176:1, 176:16,<br>182:4, 182:7,<br>183:13, 183:16,<br>189:13, 213:1,<br>213:3<br>**moment**<br>7:6, 68:16,<br>77:17, 90:22,<br>121:11, 139:8,<br>139:18, 142:16,<br>170:10, 171:15,<br>173:18, 215:21,<br>217:12, 228:22,<br>230:22, 246:3,<br>326:16, 330:20,<br>348:11<br>**monday**<br>336:8, 338:22,<br>340:4, 344:8,<br>345:17<br>**money**<br>198:13<br>**month**<br>79:20, 203:8<br>**months**<br>20:15, 20:19,<br>21:3, 21:4,<br>22:5, 24:20,<br>42:9, 51:10,<br>52:19, 58:7,<br>58:8, 59:1,<br>205:2<br>**more**<br>13:13, 14:9,<br>20:22, 21:3,<br>22:5, 37:13,<br>39:1, 42:12, | 50:12, 89:11,<br>97:9, 101:21,<br>101:22, 106:19,<br>113:6, 113:16,<br>136:9, 136:10,<br>144:20, 150:10,<br>154:6, 154:10,<br>159:12, 193:12,<br>214:12, 237:20,<br>240:6, 246:18,<br>269:6, 270:14,<br>290:6, 293:15,<br>293:18, 294:2,<br>298:2, 309:20,<br>311:18, 326:20,<br>334:11, 337:6,<br>340:11, 344:16<br>**morning**<br>5:8, 6:5,<br>130:14, 275:21,<br>277:18<br>**most**<br>15:8, 15:13,<br>89:14, 109:9,<br>237:22, 266:21,<br>322:6<br>**mostly**<br>89:19, 241:10<br>**mother**<br>239:13, 240:19,<br>245:13, 258:11,<br>258:14<br>**motion**<br>14:4, 49:11,<br>67:3, 67:4,<br>69:8, 70:17,<br>72:21, 74:21,<br>75:12, 120:14,<br>269:12, 323:10,<br>323:13, 339:20,<br>340:3<br>**motions**<br>76:16<br>**mou**<br>263:17, 264:2,<br>265:19, 265:21,<br>265:22<br>**mous**<br>266:3 |

Transcript of Hearing
Conducted on October 19, 2023

387

**move**
38:13, 61:5,
110:7, 110:8,
112:2, 139:22,
140:3, 140:4,
143:1, 187:12,
201:18, 202:4,
227:18, 235:12,
243:16, 250:22,
324:2, 326:14,
330:22, 338:17,
338:21, 339:3,
339:22, 341:4,
341:20
**moved**
3:18, 59:14,
140:9, 140:11,
223:20, 224:4
**moving**
96:10, 141:1,
236:19, 257:10,
327:11, 328:5,
328:10, 330:3,
330:5
**much**
25:22, 97:17,
108:10, 134:2,
158:17, 160:16,
201:3, 205:21,
242:20, 298:1,
312:19
**multiple**
13:18, 50:6,
70:11, 324:11
**multitude**
277:18
**municipal**
8:5
**myself**
131:1, 219:9,
220:15, 223:16,
243:6, 322:9
**mystery**
47:1

**N**

**n-o-r-t-h-a-r-t**
114:8

**naaden**
1:22, 351:2,
351:17
**name**
8:6, 54:3,
85:2, 92:18,
100:18, 100:22,
114:2, 114:14,
117:21, 123:14,
134:6, 134:8,
156:15, 156:16,
158:5, 158:22,
159:12, 161:15,
161:16, 163:11,
169:2, 174:21,
216:5, 216:8
**names**
5:18, 54:3,
92:17, 227:12,
240:18
**narrative**
137:18, 137:20,
182:2, 183:14,
194:21, 197:12
**narrow**
74:16
**narrowly**
27:10
**naturally**
147:17
**nature**
11:20, 28:22,
32:2, 50:6,
70:11, 73:13,
74:1, 74:15,
76:18, 76:20,
88:16, 121:1,
128:6, 149:2,
171:5, 171:7,
214:16, 225:3,
230:4, 230:8,
230:17, 249:15,
249:21, 288:11,
298:14, 299:2,
324:14, 324:16
**nauseum**
156:1
**naval**
151:19

**navy**
6:2
**nd**
20:18, 21:18,
23:3, 206:20,
207:5, 209:18,
209:22
**necessarily**
28:15, 60:22,
192:21, 327:19
**necessary**
71:21, 112:11,
154:3, 321:12,
326:10, 340:22
**necessitate**
29:9, 325:8,
338:12
**need**
7:2, 19:19,
49:17, 57:13,
61:13, 68:15,
75:21, 112:10,
144:22, 154:6,
154:10, 188:14,
215:7, 230:22,
250:3, 252:3,
252:4, 277:15,
295:13, 309:2,
327:22, 334:12,
338:16, 338:22,
340:20, 342:15,
346:10, 346:20
**needed**
153:10, 266:8,
271:15, 274:5,
281:21, 282:10,
282:11, 313:20
**needs**
60:10, 78:17,
221:16, 335:6
**negative**
291:11, 291:15
**neglect**
144:9, 163:3,
188:11, 192:13,
217:15
**neglected**
188:7, 188:16,

189:2, 189:7
**neither**
251:10, 272:10,
350:12, 351:5
**net**
19:7
**never**
83:1, 138:22,
143:9, 152:17,
156:17, 180:15,
201:2, 263:20,
281:11, 282:3,
282:4, 283:2,
283:4, 288:6,
291:6, 297:22,
310:9, 310:10,
311:4, 311:5,
318:14
**new**
124:10, 124:19
**newman**
1:14, 5:13
**next**
6:10, 6:12,
17:8, 21:9,
38:4, 74:5,
113:7, 141:5,
147:14, 150:3,
151:22, 183:3,
200:18, 200:21,
218:13, 221:9,
221:19, 273:19,
277:7, 278:2,
294:16, 336:5,
336:21, 337:14,
341:6, 341:11,
348:18
**nice**
307:3
**nine**
23:18, 155:3,
211:16
**ninth**
163:16
**nobody**
35:19, 42:3,
52:21, 104:19,
208:10

Transcript of Hearing
Conducted on October 19, 2023

388

**non**
162:8, 224:8
**noncompliance**
50:19
**none**
81:6, 81:8,
82:9, 109:12,
204:7, 251:14,
331:10, 331:12
**nonprobative**
169:9
**nonresponsive**
134:11
**norkart**
114:7
**normal**
323:9
**northart**
3:10, 114:5,
114:8, 114:10,
114:12, 114:15,
115:7, 119:8,
119:10, 154:18,
160:5, 161:1,
161:14, 161:18,
172:4, 177:16,
178:13, 178:18,
179:20, 183:6,
197:9, 211:15,
214:1, 214:7,
214:9, 239:13
**northart's**
178:5
**notary**
350:1, 350:17,
350:22
**note**
46:19, 82:8,
141:6, 154:22
**noted**
10:1, 141:13,
181:1, 228:4,
229:13
**notes**
258:22, 259:7,
309:15, 313:20,
314:8, 315:13,
337:1

**nothing**
10:10, 33:5,
33:20, 34:5,
46:13, 62:8,
65:10, 80:14,
83:5, 83:7,
102:16, 127:13,
164:6, 165:14,
171:3, 204:20,
237:16, 242:11,
261:2, 261:9,
268:6, 268:11,
268:20, 269:15,
269:17, 279:9,
297:3, 316:22,
318:16, 320:1,
321:8
**notice**
4:3, 7:22, 9:1,
9:2, 11:5,
11:12, 11:13,
11:21, 13:5,
23:22, 24:1,
29:18, 29:21,
30:10, 31:3,
31:9, 33:11,
36:17, 39:20,
45:11, 46:4,
46:10, 46:14,
46:16, 53:16,
55:12, 56:12,
57:2, 57:3,
57:5, 57:9,
59:7, 72:16,
72:19, 73:20,
74:2, 74:21,
75:1, 116:3,
117:17, 118:11,
118:12, 118:17,
119:20, 143:17,
239:19, 239:21,
303:22, 304:2,
304:11, 306:16,
327:10, 327:15,
327:18, 330:15,
331:18, 343:7
**noticed**
30:8

**notified**
11:7, 23:9,
23:10, 24:12,
166:4, 218:20
**notify**
23:5, 23:20,
24:3, 51:9,
121:16
**noting**
47:7
**notion**
80:1
**nottaway**
83:12
**nottoway**
9:19, 25:3,
53:15, 75:1,
77:5, 328:2
**november**
203:10
**novo**
248:21, 249:8
**nowhere**
192:8
**nufable**
261:5, 262:3,
262:5, 262:9,
268:21, 269:8
**nufable's**
262:11
**number**
8:18, 17:21,
20:12, 20:13,
21:19, 23:14,
27:4, 28:19,
41:22, 45:15,
45:21, 47:10,
48:5, 56:2,
71:17, 83:11,
91:10, 155:13,
156:2, 157:12,
170:8, 170:10,
170:12, 173:10,
200:20, 247:3,
284:12, 300:19,
304:16, 304:17,
305:5, 308:6,
308:15

**numbered**
90:19, 90:20
**numbers**
173:19, 176:18,
176:19, 289:3
**numerous**
324:10

**O**

**oath**
57:16, 252:18,
311:3, 311:5,
311:12
**object**
58:15, 72:18,
86:4, 87:2,
90:3, 91:2,
91:4, 95:4,
108:21, 115:6,
115:13, 115:19,
116:1, 116:8,
126:6, 132:15,
134:10, 136:16,
137:17, 138:11,
143:2, 143:14,
157:15, 157:21,
162:8, 164:5,
165:13, 169:8,
181:6, 186:21,
212:4, 220:5,
222:1, 237:10,
237:12, 242:8,
248:3, 249:17,
250:9, 260:4,
269:1, 276:5,
289:15, 300:15,
301:21, 303:3,
320:17, 324:18,
328:12, 333:22
**objected**
75:5, 339:16
**objecting**
157:16, 187:3,
187:8, 234:3,
344:17
**objection**
11:21, 61:11,
95:16, 96:10,

Day 000935

Transcript of Hearing
Conducted on October 19, 2023                                          389

98:8, 99:20,
102:5, 102:8,
105:2, 106:3,
106:7, 107:10,
107:11, 110:11,
118:13, 130:3,
131:12, 131:16,
132:4, 132:16,
134:16, 134:20,
135:7, 136:22,
142:5, 146:1,
149:14, 154:22,
158:10, 160:15,
171:5, 178:3,
179:16, 180:14,
182:12, 185:3,
185:9, 187:5,
187:9, 188:12,
190:22, 192:4,
193:20, 194:2,
194:9, 194:11,
196:13, 196:22,
197:4, 197:5,
197:6, 198:16,
198:22, 200:14,
200:16, 201:6,
204:14, 205:17,
229:13, 233:19,
235:12, 242:3,
249:11, 255:8,
264:3, 264:5,
270:1, 272:21,
276:10, 276:11,
276:19, 276:22,
278:12, 278:20,
280:3, 280:11,
280:12, 290:4,
294:18, 302:4,
304:8, 304:10,
306:11, 308:11,
312:8, 313:11,
316:20, 317:5,
317:16, 319:17,
326:2, 326:7,
326:18, 328:10,
329:5, 329:12,
329:14, 329:20,
330:7, 330:16,

335:18, 339:1,
340:4, 340:6,
340:22
**objections**
83:12, 91:12,
166:12, 289:21,
340:18, 345:18
**objective**
78:19
**obli**
40:14
**obligated**
81:13, 141:17,
158:18
**obligation**
40:15, 41:9,
41:10, 41:11,
66:9, 66:10,
66:12, 66:13,
158:4, 166:3,
166:4, 260:19
**obligations**
166:14
**observation**
43:16
**obtain**
253:2
**obtained**
56:11
**obvi**
64:4
**obviously**
12:8, 15:10,
24:21, 41:1,
49:11, 54:15,
125:6, 144:21,
248:5, 327:10,
335:4
**occasion**
88:5, 88:13,
282:21
**occasionally**
69:5
**occasions**
81:22, 88:12,
282:20, 324:10
**occur**
30:12, 67:6,

147:14, 319:16,
329:8, 331:12
**occurred**
8:11, 9:9,
9:17, 12:11,
12:15, 13:21,
13:22, 21:12,
98:13, 130:13,
144:18, 161:6,
163:5, 183:1,
238:1, 238:3,
262:14, 269:6,
286:8, 297:4,
331:11
**occurring**
41:5
**ocps**
39:1
**october**
1:13, 117:20,
141:9, 156:6,
159:1, 166:3,
203:10, 212:9,
348:18, 348:21,
351:16
**offenses**
302:8
**offer**
119:3, 127:16
**offered**
65:6, 333:10,
334:6
**offering**
324:19
**office**
35:15, 39:2,
47:17, 96:22,
97:2, 113:13,
129:18, 130:2,
138:22, 144:17,
223:3, 267:15,
349:4
**officer**
1:14, 5:15,
12:5, 24:3,
24:4, 30:16,
46:12, 69:18,
70:18, 77:2,

78:16, 85:5,
87:11, 88:4,
141:5, 142:8,
144:11, 168:1,
223:3, 248:11,
249:9, 327:18,
341:14, 349:5,
350:2
**officer's**
21:13, 21:15,
248:7
**officers**
248:22, 341:12
**official**
348:12
**offline**
331:7
**often**
61:21, 150:16,
151:9, 203:6,
217:7
**oftentimes**
130:19, 150:16
**oh**
6:14, 7:8,
11:19, 16:7,
25:21, 27:15,
27:19, 34:5,
41:12, 41:21,
51:11, 52:10,
62:6, 62:10,
65:11, 66:5,
68:11, 80:10,
107:19, 150:3,
159:17, 167:9,
167:12, 205:11,
214:4, 227:2,
274:14, 277:11,
284:16, 294:15,
305:2, 308:2,
308:8, 310:6,
334:17, 337:5,
343:3
**old**
8:2
**once**
52:12, 89:13,
159:1, 203:8,

Transcript of Hearing
Conducted on October 19, 2023

390

218:14, 218:15,
218:17, 221:12,
221:14, 246:18
**ones**
99:10, 214:20,
328:11, 343:2
**ongoing**
3:22, 8:19,
13:12, 158:4,
197:21
**only**
15:11, 18:7,
19:21, 33:11,
44:2, 44:9,
44:20, 50:9,
55:12, 64:2,
73:4, 79:19,
81:10, 81:21,
88:6, 98:15,
111:9, 115:18,
115:21, 119:6,
160:4, 161:3,
171:7, 193:3,
198:3, 198:13,
201:4, 226:20,
227:6, 228:6,
230:16, 231:7,
231:14, 247:16,
255:21, 268:15,
290:6, 293:14,
295:12, 298:2,
300:21, 327:22,
331:6, 338:14,
338:15, 340:9,
343:2, 344:2,
344:11, 346:6,
346:12
**open**
119:17, 124:5,
124:10, 126:20,
335:14, 337:14,
338:13, 348:18
**opened**
87:19, 124:13,
124:18
**opening**
76:1, 76:7,
76:9, 83:21,

85:15, 124:12,
244:18
**operate**
45:2
**operated**
33:21
**operating**
68:4
**opinion**
86:8, 90:5,
137:20, 138:11,
138:12, 141:22,
164:7, 189:4,
189:21, 192:9,
201:11, 201:12,
201:14, 201:16,
205:15, 205:19,
234:17, 242:10,
244:9, 255:22,
307:5, 308:4,
312:18
**opinions**
161:8
**oppo**
30:20
**opportunity**
11:2, 11:4,
60:1, 179:17,
202:1, 241:22,
275:22, 277:9,
334:16, 336:22,
340:15
**opposed**
64:20, 169:6,
171:19, 190:1,
192:20, 194:21,
242:10
**opposing**
29:19, 48:4,
71:13, 114:6,
117:5, 120:18,
135:2, 166:5,
169:14, 177:7
**option**
17:7
**oral**
159:18
**orally**
334:22

**order**
13:19, 32:10,
48:6, 116:15,
246:12, 263:5,
301:17
**organization**
49:6, 64:13
**original**
15:22, 65:14
**other**
13:12, 22:21,
28:14, 30:4,
32:7, 37:20,
63:12, 65:19,
67:1, 68:12,
69:7, 72:5,
72:8, 73:5,
75:15, 77:9,
79:4, 81:6,
81:7, 83:10,
85:22, 91:14,
95:6, 97:1,
99:16, 102:18,
112:18, 116:7,
117:18, 129:15,
135:14, 142:4,
146:7, 147:21,
161:11, 177:22,
180:13, 183:20,
183:22, 185:2,
192:21, 193:1,
214:20, 216:8,
221:13, 230:7,
241:16, 247:14,
249:22, 250:5,
251:14, 259:15,
270:19, 272:4,
272:12, 273:22,
274:5, 274:17,
274:21, 283:10,
283:13, 294:16,
295:4, 295:6,
297:2, 306:19,
315:11, 323:3,
325:12, 328:11,
332:17, 334:5,
338:5
**others**
312:5

**otherwise**
8:7, 16:9,
27:6, 34:11,
150:14, 157:6,
192:11, 230:4,
326:7, 341:5,
350:14, 351:7
**ought**
335:22, 336:1
**out**
9:22, 29:15,
29:20, 31:9,
40:20, 60:1,
60:4, 61:4,
61:7, 63:18,
64:6, 64:7,
68:15, 74:9,
89:18, 90:9,
111:14, 113:10,
136:10, 141:7,
142:1, 150:2,
152:21, 156:20,
157:5, 171:2,
173:1, 174:2,
174:6, 174:9,
174:13, 174:16,
174:19, 179:21,
215:18, 215:20,
219:3, 220:22,
221:3, 229:7,
244:6, 295:13,
298:5, 298:10,
298:21, 309:17,
329:9, 331:15,
339:17, 340:16,
344:5
**outcome**
88:22, 350:15,
351:7
**outfit**
299:11
**outfits**
201:3, 298:1,
316:1, 316:5
**outline**
322:21
**outlined**
61:17, 116:19,

Transcript of Hearing
Conducted on October 19, 2023

391

232:15
**outright**
283:20
**outs**
266:10
**outside**
40:10, 40:18,
41:5, 45:2,
150:15, 151:4,
162:11, 215:16,
249:4, 260:19,
276:15, 318:15,
334:5, 346:22
**outstanding**
72:7
**over**
39:19, 80:16,
81:19, 89:4,
97:5, 97:20,
98:1, 98:2,
100:21, 121:9,
125:20, 126:5,
126:19, 127:19,
128:2, 130:2,
138:21, 158:13,
180:8, 180:11,
187:14, 189:19,
198:5, 198:20,
202:2, 206:6,
218:12, 232:20,
240:20, 241:7,
251:17, 270:10,
275:18, 278:5,
279:7, 282:2,
283:22, 290:7,
290:13, 306:6,
306:19, 329:12
**overcome**
57:22, 82:14
**overheard**
251:15
**overly**
306:6
**overnighted**
347:14
**overrule**
86:11, 251:3,
276:22

**overruled**
87:6, 90:7,
96:6, 99:22,
118:13, 135:21
**owe**
202:1
**own**
8:6, 17:12,
17:14, 20:2,
33:21, 34:1,
34:2, 42:2,
44:21, 45:2,
61:1, 61:6,
68:4, 118:3,
208:20, 220:21,
234:13, 234:16

**P**

**p**
31:9
**pa**
25:17
**package**
181:8, 345:10
**page**
3:2, 18:20,
18:21, 19:4,
19:5, 19:10,
19:12, 23:14,
23:18, 24:4,
25:18, 26:1,
27:13, 27:21,
28:2, 28:6,
33:1, 38:2,
38:3, 38:4,
38:11, 38:12,
39:1, 42:13,
44:13, 61:14,
61:19, 66:7,
69:13, 69:21,
70:3, 71:16,
73:13, 73:21,
74:6, 74:9,
74:11, 74:19,
91:10, 92:4,
93:10, 93:11,
93:15, 94:10,
95:10, 119:7,

155:3, 155:9,
170:13, 179:1,
228:18, 228:20,
247:3, 264:22,
265:6, 273:4,
277:8, 278:2,
281:4, 284:8,
285:4, 286:9,
286:10, 287:16,
289:3, 300:9,
300:11, 301:3,
301:5, 351:10
**pages**
1:21, 91:6,
91:14, 93:10,
99:1, 228:18,
300:21, 345:15,
346:7, 346:10,
346:18, 351:8
**paid**
97:6
**pants**
307:15
**paper**
187:18, 266:22,
346:1, 347:6
**papers**
347:3
**paragraph**
26:3, 26:5,
34:6, 38:1,
44:15, 61:14,
61:21, 62:1,
69:11, 69:20,
69:22, 71:15,
71:22, 95:12,
135:10, 155:3,
273:7, 278:3,
281:5, 282:15,
287:20, 289:6,
293:2
**parallels**
30:2
**pardon**
343:12
**parent**
125:8
**parental**
221:4

**parents**
221:5, 221:11,
240:18, 258:16
**park**
86:19, 89:4,
89:7, 97:4,
97:20, 97:21,
109:5, 109:20
**parked**
95:7, 98:7,
103:10, 103:14,
109:6, 110:6
**parking**
79:11, 79:12,
79:14, 86:15,
86:18, 87:13,
88:8, 88:17,
88:18, 88:20,
89:3, 95:7,
95:9, 95:10,
97:10, 97:16,
98:1, 98:7,
98:12, 103:11,
103:15, 104:7,
107:14, 107:21,
108:3, 108:5,
108:8, 108:13,
108:16, 108:19,
109:10, 109:12,
109:21, 142:19,
142:20, 142:21,
143:8, 143:10,
291:20, 292:15,
293:5, 331:16
**parkview**
124:8
**part**
9:16, 15:13,
22:15, 40:21,
48:6, 57:14,
64:11, 65:19,
73:7, 74:7,
74:20, 102:19,
127:5, 129:20,
135:18, 143:18,
154:2, 159:19,
177:2, 181:8,
181:18, 182:16,

Day 000938

Transcript of Hearing
Conducted on October 19, 2023

392

202:6, 217:4,
234:12, 251:2,
260:16, 266:21,
269:9, 270:4,
270:12, 281:3,
299:15, 301:15,
327:17, 329:17,
335:21, 338:18,
344:15, 345:2,
346:15, 346:18

**participate**
39:9, 52:11,
52:13, 255:5,
256:1, 265:18

**participation**
60:8

**particular**
5:16, 14:15,
29:10, 46:8,
55:4, 79:5,
89:18, 106:2,
106:14, 175:20,
218:18, 219:18,
220:2, 220:14,
223:17, 223:18,
225:9, 231:19,
236:2, 236:6,
256:10, 280:14

**particularly**
81:15, 88:12,
117:1, 120:13,
155:13, 158:12,
158:19, 218:2,
219:6

**particulars**
75:9, 75:11

**parties**
157:4, 180:13,
225:9, 350:13,
351:6

**parts**
168:16, 227:19,
229:16, 269:2,
344:17

**party**
125:18, 127:1

**party's**
155:11

**pass**
107:14, 107:21,
108:3, 108:5,
108:9, 108:13,
108:17, 108:19

**passage**
279:5

**passes**
109:10, 109:13,
109:21

**past**
8:20, 13:12,
20:15, 121:19,
210:11, 275:19

**patrick**
261:5

**paul**
3:4, 84:18,
85:4

**pdf**
337:9

**pe**
87:17

**pedagogical**
129:14

**peeked**
97:2

**penalized**
311:11

**penalty**
351:3

**people**
81:5, 97:6,
109:2, 125:11,
134:13, 152:11,
162:10, 166:1,
178:12, 184:10,
219:16, 252:18,
259:15, 268:8,
268:15, 298:6,
299:8, 299:10,
310:5

**perceived**
161:9, 286:2,
307:18, 307:21,
308:6, 308:8

**perceives**
222:9, 317:1

**percent**
236:9

**perception**
195:18, 195:22,
306:3

**perhaps**
188:2, 229:19

**period**
103:1, 193:15,
232:20, 241:7,
285:22

**periodically**
86:20

**perjury**
351:3

**permissible**
62:11

**permission**
221:5

**permits**
86:18, 86:21,
88:19, 89:3

**permitted**
20:16, 26:12,
28:21, 86:19,
133:1, 289:18,
301:19, 301:20,
303:5, 303:15,
326:6, 327:5

**person**
100:22, 142:2,
156:2, 156:14,
157:11, 157:13,
192:20, 192:21,
205:12, 243:1,
262:10, 262:15,
307:14

**personal**
131:6, 131:18,
135:14, 137:8,
137:14, 164:2

**personally**
276:6, 345:8

**personnel**
14:7, 72:6,
259:14, 344:14,
344:17, 345:7,
346:8, 346:22

**perspective**
60:21, 271:14

**pertains**
118:5, 231:5

**peter**
6:2

**ph**
19:7, 47:16

**phase**
53:2, 65:22

**phone**
69:1, 100:16,
180:8, 180:12,
206:6, 208:13

**photo**
93:5, 111:7

**photos**
88:17, 89:11,
92:21, 93:2

**phrase**
167:16

**phrased**
236:7, 284:1,
291:5

**physical**
16:21, 85:19,
163:2, 189:8,
189:15, 192:16,
192:17, 194:8,
195:6, 195:7,
304:18, 305:7

**pick**
59:13, 263:9

**picky**
337:18

**pictures**
89:3, 89:13,
90:10, 94:6,
107:3, 111:12

**piece**
268:4

**piecemeal**
339:13, 343:19

**pieces**
339:8, 345:1

**pineapple**
289:9, 289:10,
289:12

Transcript of Hearing
Conducted on October 19, 2023                                    393

**place**
9:12, 28:20,
125:8, 155:21,
181:16, 252:18,
269:21, 270:14,
271:6, 286:16,
296:5, 322:15
**placed**
18:8, 101:10,
164:12
**placements**
151:18
**plain**
30:9
**plaintiff's**
29:4
**plan**
114:18, 114:20,
124:5, 124:12,
327:12
**planning**
113:18, 123:22
**play**
128:20, 128:21,
173:1
**players**
273:9, 273:11,
273:13, 273:16
**pleasant**
88:2
**please**
45:19, 46:10,
85:1, 90:16,
91:3, 92:3,
93:14, 96:18,
123:13, 124:22,
129:4, 134:4,
136:20, 137:13,
138:9, 139:8,
139:12, 141:6,
142:17, 161:7,
162:21, 171:16,
172:3, 180:9,
182:8, 186:3,
193:20, 214:4,
215:21, 216:6,
223:8, 228:17,
229:15, 231:22,

235:20, 238:22,
247:2, 250:1,
278:19
**pledging**
139:5
**plofcham**
220:5, 222:1,
222:7, 222:13,
234:11, 234:19
**plofchan's**
91:12, 321:3
**plus**
40:8, 175:18
**point**
11:21, 17:18,
26:2, 29:15,
31:9, 40:20,
43:7, 44:1,
48:3, 48:19,
51:5, 53:7,
58:22, 60:4,
61:7, 81:18,
106:22, 112:2,
127:15, 128:15,
128:19, 136:4,
137:19, 139:2,
141:7, 147:14,
149:20, 151:20,
153:14, 168:10,
179:2, 179:5,
181:17, 182:17,
193:2, 201:18,
214:19, 228:6,
239:16, 277:19,
289:16, 300:13,
301:22, 302:14,
303:11, 304:15,
306:14, 309:16,
312:12, 319:22,
323:11, 331:19,
332:20, 334:3,
341:15
**pointed**
29:20, 64:6,
64:10, 171:2
**pointing**
157:5
**points**
27:4, 45:9

**poli**
23:15
**policies**
15:12, 15:13,
17:12, 17:14,
18:16, 18:19,
18:21, 19:1,
23:16, 32:4,
48:5, 71:4,
217:16, 266:13,
267:3, 303:21,
320:10, 320:14,
320:15, 321:1,
327:9
**policy**
4:9, 4:10,
4:15, 18:18,
18:19, 19:2,
20:2, 21:7,
21:8, 21:12,
22:18, 23:13,
27:9, 27:12,
30:2, 41:14,
44:21, 49:8,
53:1, 54:12,
59:15, 61:17,
61:19, 64:3,
81:11, 172:5,
217:1, 217:2,
226:2, 226:3,
230:19, 236:3,
247:20, 247:21,
256:20, 265:10,
266:18, 266:19,
267:4, 267:12,
267:19, 299:7,
299:15, 299:21,
300:4, 300:20,
300:22, 301:4,
301:15, 301:17,
301:20, 302:14,
302:15, 302:18,
303:7, 304:3,
316:21, 317:4,
320:8, 320:20
**polite**
128:9
**poor**
31:7

**pos**
53:17
**position**
37:11, 63:8,
85:2, 85:8,
85:9, 85:18,
86:13, 123:14,
123:18, 125:1,
125:4, 128:10,
159:6, 161:19,
162:1, 162:5,
216:12, 216:13,
216:14, 216:17,
216:20, 222:5,
325:22, 328:7,
331:14
**positions**
125:12, 133:20,
133:21
**positive**
134:9
**possible**
94:16, 313:5
**possibly**
111:2, 115:12,
185:8, 294:4,
313:3, 314:12,
314:13
**post**
124:17, 152:14
**postpone**
60:13
**potential**
18:13, 31:15,
31:20, 32:17,
34:6, 34:8,
34:17, 40:9,
59:7, 67:22,
195:13, 221:13,
263:3
**potentially**
153:20, 185:14,
276:12, 296:21,
339:16
**potomac**
2:19
**power**
83:15

Transcript of Hearing
Conducted on October 19, 2023

394

**practicable**
28:12, 63:15,
63:20, 64:7,
64:17, 268:2,
268:4
**practical**
19:17, 62:14,
65:12, 67:7
**practice**
277:20, 286:1
**pre**
14:4
**pre-hearing**
61:9, 63:10,
64:18, 212:9,
244:19
**precedes**
12:6
**precise**
13:15, 306:15,
309:20, 324:9
**predates**
14:9
**predicate**
195:5
**predicates**
195:1, 195:5
**prefer**
121:16
**preferred**
347:14
**prehearing**
116:15, 141:10,
156:5
**preliminaries**
343:1
**preliminarily**
121:14
**preliminary**
7:2, 45:5,
75:15, 75:22
**preparation**
206:13, 207:9,
233:22
**prepare**
104:14, 105:5,
111:16, 208:5,
208:7, 208:9,

334:22
**prepared**
156:3, 158:1,
233:7, 335:4
**prepped**
106:20
**prepping**
67:17
**pres**
19:8
**presence**
178:17, 185:7
**present**
32:6, 60:18,
64:16, 160:3,
160:5, 206:5,
258:8, 258:11,
295:22
**presented**
55:3, 243:22,
310:19
**preserve**
118:22
**preserving**
187:9
**presume**
337:8
**presumed**
207:9
**pretrial**
43:16, 76:16,
338:18
**pretty**
36:2, 97:17,
106:11, 113:7,
120:11, 133:22,
158:17, 311:1,
347:15
**prevent**
260:9, 260:12,
261:11, 268:13
**prevented**
33:8, 37:20,
102:3, 260:22,
261:2, 261:4,
261:9, 261:21,
268:7, 268:12,
268:20, 269:15

**preventing**
27:9, 269:17
**previous**
93:9, 140:4,
200:16, 200:21,
228:5, 274:12
**previously**
93:18, 195:1,
232:21, 273:20,
274:3, 274:11,
274:15, 322:8,
334:6
**primarily**
216:21, 216:22
**principal**
123:15, 124:8,
124:15, 128:5,
236:10, 236:15,
294:10, 318:4
**principalship**
124:9
**printed**
111:14
**printout**
25:18
**prior**
9:1, 12:11,
13:22, 14:6,
26:18, 49:13,
50:12, 56:9,
70:2, 70:15,
74:10, 74:12,
81:22, 85:14,
85:15, 101:16,
123:2, 123:9,
126:15, 141:10,
145:22, 146:13,
146:14, 155:20,
156:22, 161:11,
184:10, 215:3,
229:22, 260:10,
260:13, 261:18,
264:5, 271:18,
271:21
**private**
241:11, 296:18
**privately**
251:17, 272:13

**privy**
148:8, 280:14
**pro**
57:14
**probably**
31:13, 76:9,
120:7, 120:11,
311:10, 330:10,
335:6
**probative**
132:8, 132:12,
162:9, 162:13,
164:7, 164:9,
171:7, 178:4,
248:10, 248:18,
249:5, 280:5,
280:7
**probe**
162:15
**problem**
10:13, 22:22,
32:13, 32:14,
41:7, 52:16,
54:10, 68:20,
97:22, 113:20,
215:13
**problematic**
13:14
**problems**
53:22, 84:4
**proc**
10:16
**proce**
48:13
**procedural**
3:3, 7:15,
10:3, 12:1,
17:6, 22:15,
25:1, 26:21,
35:11, 37:3,
37:15, 42:22,
43:6, 43:10,
44:4, 44:6,
49:4, 53:5,
53:10, 53:12,
59:2, 63:11,
64:19, 67:19,
76:14, 76:15,

Transcript of Hearing
Conducted on October 19, 2023

395

84:4, 345:1,
345:4
**procedurally**
14:4, 35:20,
52:21, 57:19,
58:5, 63:4,
63:10, 269:5,
346:14
**procedure**
4:9, 4:10,
17:8, 19:22,
23:14, 25:8,
25:11, 26:8,
30:2, 36:6,
44:17, 48:2,
48:4, 48:6,
48:10, 48:11,
48:14, 49:8,
67:13, 155:2,
157:3, 159:5,
222:21, 237:17,
345:12
**procedures**
5:12, 15:18,
18:16, 18:22,
19:3, 23:12,
23:13, 23:19,
25:19, 30:4,
34:19, 61:16,
61:18, 116:19,
135:10, 265:12,
349:6
**proceed**
11:14, 28:21,
30:22, 31:1,
32:1, 48:22,
53:18
**proceeded**
28:22, 32:3
**proceeding**
11:6, 46:20,
61:15, 130:5,
214:17, 338:3,
339:4
**proceedings**
5:6, 10:17,
350:3, 350:5,
350:6, 350:9

**process**
9:2, 10:3,
10:9, 10:14,
12:1, 25:1,
25:2, 29:1,
36:10, 48:13,
53:17, 55:22,
60:1, 75:2,
97:14, 119:19,
124:6, 143:13,
143:17, 143:22,
144:2, 144:16,
158:14, 159:7,
173:1, 220:8,
221:16, 223:11,
223:18, 235:9,
238:12, 239:6,
240:22, 241:1,
242:2, 264:18
**processed**
131:21
**processes**
38:19
**procure**
30:17
**produce**
155:10
**produced**
156:8, 347:1
**profanity**
74:7
**professional**
32:17, 88:1,
217:1, 299:6,
304:5
**professionalism**
278:5, 279:7
**proffer**
56:18, 57:12,
57:14, 57:15,
323:21, 324:1,
324:3, 324:9,
324:22, 325:6,
325:10, 325:12,
325:15, 325:19,
325:20, 326:13,
326:14, 332:2,
332:4, 332:6,

332:8, 332:11,
332:13, 333:8,
333:15, 334:1,
334:5, 338:16
**proffered**
332:22
**proffering**
325:2
**prohibit**
307:1
**prompt**
26:12, 226:19
**prompted**
226:17, 233:2,
243:11, 275:6,
281:9
**promptly**
19:15, 22:17,
33:2, 62:4, 73:9
**promulgate**
36:13
**pronounced**
92:19
**pronouncement**
348:12
**proof**
13:17, 76:15
**proper**
167:3, 326:19
**properly**
190:7, 300:4
**property**
10:5, 10:6
**proposed**
4:3, 4:8, 9:3,
21:2, 23:21,
333:2, 336:2,
336:22, 342:7,
343:8, 349:1
**protect**
22:16, 44:6
**protection**
53:6, 53:9
**protective**
257:1, 328:18
**prove**
63:20, 296:17,
296:20

**provide**
35:18, 43:1,
43:2, 53:5,
70:5, 71:3,
72:21, 76:15,
116:9, 117:4,
117:19, 119:3,
119:4, 119:20,
135:12, 141:18,
155:8, 155:21,
157:19, 160:11,
169:13, 169:16,
181:12, 196:16,
213:14, 242:12,
258:13, 264:6,
270:12, 291:3,
292:8, 295:12,
310:13, 313:9,
318:12, 319:16,
335:15, 345:15,
345:17
**provided**
7:18, 19:16,
22:7, 24:3,
27:13, 28:11,
30:11, 31:10,
33:3, 36:15,
36:17, 46:15,
58:4, 62:4,
62:11, 69:17,
72:3, 80:14,
95:5, 115:8,
116:20, 117:15,
117:17, 118:11,
118:17, 135:19,
140:1, 143:3,
155:12, 158:3,
166:9, 166:10,
170:21, 182:10,
182:11, 182:17,
212:1, 212:5,
212:6, 212:10,
232:3, 233:13,
233:14, 235:5,
237:21, 243:7,
253:21, 255:13,
256:11, 257:16,
257:20, 258:16,

Transcript of Hearing
Conducted on October 19, 2023

396

| | | | |
|---|---|---|---|
| 258:20, 259:4, 265:3, 267:22, 269:5, 276:14, 279:11, 292:6, 310:21, 318:15, 329:15, 329:18, 345:9 | **purposefully** 113:10 | **questions** 32:7, 55:4, 67:16, 67:18, 77:21, 78:2, 78:4, 78:5, 100:5, 105:16, 105:17, 106:18, 121:20, 133:3, 144:20, 147:12, 147:19, 148:2, 149:9, 153:3, 162:19, 184:3, 190:16, 190:17, 193:2, 207:19, 211:12, 212:20, 241:8, 244:20, 247:11, 247:12, 284:1, 286:21, 291:13, 300:17, 309:15, 313:17, 313:18, 314:6, 320:3 | **r-a-v-a-s** 92:19 |
| | **purposes** 32:5, 60:9, 135:4, 255:10 | | **raining** 215:17 |
| **provides** 30:10, 72:12 | **pursuant** 5:11, 33:12, 70:5, 135:7, 135:8, 154:22 | | **raised** 78:5, 123:3 |
| **providing** 37:15, 78:13, 116:2, 129:8, 134:21, 155:18, 220:17, 220:19, 234:17 | **put** 11:13, 16:2, 32:1, 57:10, 57:12, 57:16, 59:7, 61:11, 63:13, 63:21, 65:7, 66:18, 74:7, 76:5, 77:3, 117:3, 118:11, 119:9, 119:13, 141:16, 155:19, 171:5, 182:20, 237:20, 238:5, 284:17, 303:22, 304:11, 305:19, 309:17, 311:2, 311:4, 311:5, 319:3, 322:19, 325:7, 325:16, 326:12, 333:7, 334:11, 334:14, 334:17, 337:12 | | **ramifications** 52:3 |
| | | | **randomly** 86:20 |
| **proving** 65:4 | | | **rather** 48:12, 117:7, 137:19, 246:4, 2██ , 335:9 |
| **provision** 11:9, 30:9, 338:18 | | | **r██** 92:19, 93:6, 115:16, 131:5, 139:2, 145:8, 145:17, 145:22, 146:12, 157:12, 157:13, 157:20, 163:11, 163:16, 174:10, 229:10, 242:13, 258:21, 268:16 |
| **provisions** 15:15 | | **quick** 115:1, 325:1 | |
| **public** 1:1, 2:7, 5:9, 5:11, 5:22, 6:18, 8:6, 40:22, 85:3, 218:8, 219:21, 255:6, 256:14, 260:18, 260:20, 265:11, 349:5, 350:1, 350:22 | | **quickly** 31:9, 120:11, 141:7, 156:20, 232:6, 341:8, 342:3 | **rd** 30:20, 36:20, 36:21, 37:5, 47:8, 47:10 |
| | | | **re-ask** 133:7 |
| | **putting** 7:22, 119:21, 174:1, 212:15, 339:5 | **quite** 109:3, 120:9, 131:13, 300:16, 326:8 | **re-familiar** 182:8 |
| | | | **re-hash** 219:15 |
| **publicly** 60:16 | | **quote** 28:10, 28:18, 63:18, 80:3, 80:12, 109:21, 199:18, 287:19 | **reach** 69:2, 102:3, 163:6 |
| **pull** 340:15, 343:20, 347:4 | **Q** | | |
| | **qualified** 237:22, 350:8 | | **reached** 219:3, 248:9 |
| **pulling** 48:5 | **quasi-contractual** 260:19 | **quoted** 80:7, 80:9, 279:5 | **reaching** 135:15, 155:7 |
| **punish** 12:5 | **quasi-identical** 80:4 | **quotes** 174:1, 305:19, 310:13, 310:14, 319:16 | **reaction** 189:22, 190:6 |
| **punitive** 139:1, 143:9 | **questioned** 149:6 | | **reacts** 192:20 |
| **purely** 132:1 | **questioning** 248:4 | **quoting** 318:6 | **read** 16:19, 49:10, |
| **purpose** 70:20, 74:14, 248:12, 344:22 | | **R** | |
| | | **r** 63:1 | |

Transcript of Hearing
Conducted on October 19, 2023

397

92:3, 171:14,
182:21, 193:13,
239:18, 263:20,
263:21, 279:4
**reading**
50:16, 239:15,
239:20, 243:10,
244:13, 304:20,
312:16, 313:1,
330:8
**ready**
243:4, 252:9
**reality**
347:19, 347:21
**realize**
27:3, 151:15
**really**
45:10, 85:22,
136:6, 141:6,
166:20, 192:7,
205:11, 206:19,
216:14, 232:6,
243:7, 255:21,
256:4, 299:20,
305:21, 333:9,
346:6
**reams**
347:6
**rear**
108:15
**reason**
18:6, 47:19,
70:13, 73:9,
73:11, 74:3,
74:4, 74:7,
126:3, 128:14,
140:7, 188:7,
194:7, 198:3,
231:8, 234:12,
245:1, 247:12,
247:16, 248:16,
253:5, 262:16,
286:18, 291:18,
310:22, 313:8,
333:21, 346:12
**reasonably**
305:8, 307:18,
307:21, 308:3,

308:6
**reasons**
11:8, 34:17,
50:4, 69:16,
70:6, 70:10,
71:3, 71:10,
72:11, 72:12,
135:12, 343:9,
343:12
**rebut**
71:21
**rebuttal**
117:1, 117:7,
135:16, 155:8,
322:5, 322:21,
325:8, 326:9,
334:10, 338:6,
338:7, 338:10
**rec**
46:2, 68:18
**recall**
78:10, 78:11,
87:9, 88:12,
92:6, 92:20,
92:22, 93:1,
94:3, 96:1,
97:12, 98:16,
101:17, 102:20,
104:2, 104:3,
104:6, 104:8,
104:10, 112:10,
133:6, 145:1,
148:5, 148:13,
149:10, 149:17,
149:22, 150:9,
153:10, 184:16,
184:18, 184:19,
185:20, 185:22,
187:22, 224:12,
235:2, 236:13,
240:12, 243:4,
246:6, 246:7,
246:9, 246:10,
246:21, 246:22,
254:9, 254:10,
254:13, 258:20,
259:3, 264:15,
265:7, 278:7,

279:2, 284:3,
287:12, 288:22,
289:12, 289:13,
290:20, 290:22,
291:5, 291:8,
291:13, 291:14,
292:17, 293:13,
314:5, 314:9,
321:12, 333:12
**recalled**
96:2, 287:20,
288:4, 288:8,
289:8, 290:17,
290:20
**receipt**
21:13, 32:20,
32:22
**receive**
31:4, 33:15,
69:18, 70:18,
72:20, 74:22,
97:9, 97:14,
146:15, 147:1,
160:17, 179:3,
218:15, 329:13
**received**
31:19, 32:16,
33:14, 34:7,
42:5, 55:7,
55:13, 55:20,
56:5, 56:13,
57:3, 57:5,
57:9, 92:9,
92:22, 96:9,
109:9, 115:16,
115:21, 116:7,
131:20, 139:1,
143:9, 143:20,
167:1, 170:7,
206:15, 217:22,
218:14, 263:3,
276:17, 295:11,
336:5, 341:20,
341:22, 346:18,
349:4, 351:9
**receiving**
23:22, 146:19,
178:15, 328:20

**recently**
89:20
**recess**
154:13, 215:3
**recipient**
178:20
**recipients**
181:2
**recognize**
139:15, 179:21,
180:2, 211:20,
228:11
**recollect**
288:10, 289:11,
296:11
**recollection**
101:15, 110:21,
166:18, 183:1,
183:17, 205:20,
228:2, 228:7,
229:5, 231:1,
239:17, 239:22,
241:6, 281:17,
284:5, 285:10,
286:5, 286:7,
286:19, 287:6,
288:18, 290:14,
310:10, 313:19,
314:11, 314:15,
314:18, 314:22
**recollects**
167:21
**recommend**
155:7, 302:7
**recommendation**
51:6, 70:6,
72:13, 117:9,
135:12, 139:3,
151:11, 151:17,
152:10, 152:20,
225:7, 248:17,
248:20, 302:2,
303:17, 343:13
**recommendations**
21:14, 21:16,
73:11, 303:8
**recommending**
148:15

Transcript of Hearing
Conducted on October 19, 2023

398

**record**
5:17, 43:17, 61:11, 114:22, 115:4, 117:3, 118:16, 118:18, 118:20, 119:21, 123:13, 141:5, 141:7, 141:14, 154:1, 154:17, 156:2, 156:13, 161:15, 171:14, 173:18, 192:7, 202:6, 202:11, 204:15, 204:16, 216:6, 227:15, 232:1, 252:20, 255:10, 255:11, 257:9, 290:1, 303:14, 317:22, 318:17, 319:4, 327:17, 346:5, 346:11, 346:17, 346:22, 348:6, 348:9, 349:7, 350:10
**recorded**
252:21, 350:6
**recording**
143:13, 350:9
**recordings**
351:4
**recraft**
237:19
**recurring**
169:14
**redacted**
339:11
**redirect**
3:13, 3:17, 112:3, 153:5, 153:6, 211:9, 211:10, 320:5
**reduced**
167:12, 350:7
**redundant**
342:20
**refer**
92:8, 98:3,

276:4, 277:15
**reference**
27:12, 31:8, 47:3, 69:9, 80:20, 140:4, 283:16, 293:7, 300:13
**referenced**
31:10, 46:14, 47:17, 47:18, 72:8, 156:4, 158:22, 170:12, 173:6
**references**
169:12, 213:6, 229:22, 230:1
**referencing**
166:7, 167:6
**referral**
138:22, 143:15, 161:4, 161:5, 162:7, 163:3, 168:14, 169:12, 169:20, 170:22, 172:10, 172:13, 175:16, 176:4, 178:2, 178:17, 179:1, 180:7, 180:10, 181:3, 181:19, 182:20, 188:18, 194:8, 195:13, 206:6, 217:15, 276:16
**referrals**
169:21, 175:18, 176:20
**referred**
98:17, 131:4, 139:18, 172:9, 175:19, 176:21, 219:5
**referring**
68:3, 94:9, 159:11, 174:3, 227:8, 231:9, 269:9, 274:12, 274:14, 287:16, 308:18

**refers**
28:8, 230:7
**refined**
269:7
**reflect**
76:6, 93:18, 255:11, 257:9
**reflects**
47:11, 47:22
**refresh**
182:22, 229:4, 231:1, 240:3, 250:3, 314:7, 314:11
**refreshed**
228:8, 240:1
**refresher**
228:2
**refreshes**
182:22
**refreshing**
228:2
**regard**
9:14, 24:15, 29:16, 29:18, 42:12, 61:11, 63:22, 67:18, 69:8, 69:19, 70:13, 74:18, 76:21, 78:15, 80:15, 83:7, 86:14, 92:15, 94:1, 98:12, 117:8, 119:14, 134:1, 143:12, 149:5, 155:3, 159:22, 162:22, 164:10, 167:14, 172:12, 212:19, 221:18, 242:16, 244:16, 247:19, 250:22, 265:11, 267:13, 297:3, 300:15, 303:7, 329:4, 331:17, 331:18, 333:12, 338:15, 338:16, 344:13, 345:4

**regarding**
13:8, 14:7, 28:17, 55:13, 66:22, 72:7, 93:19, 99:8, 115:14, 129:1, 129:12, 143:22, 145:8, 145:17, 145:21, 146:11, 146:12, 146:16, 147:2, 147:11, 147:12, 147:16, 147:20, 148:10, 162:13, 165:8, 165:14, 165:15, 210:6, 211:7, 228:3, 241:8, 244:20, 248:4, 249:21, 251:1, 254:11, 262:16, 267:3, 270:20, 278:4, 279:6, 282:5, 282:16, 283:16, 292:9, 293:5, 302:2, 303:16, 331:8, 351:10
**regardless**
36:19, 52:7, 319:5
**regards**
330:2
**registration**
350:17
**regu**
16:21
**regular**
158:11, 241:15
**regularity**
76:15
**regularly**
157:2
**regulars**
265:2
**regulation**
16:20, 17:4, 20:1, 34:3, 34:4, 44:8,

Transcript of Hearing
Conducted on October 19, 2023                                                    399

44:9, 44:20,
44:22, 53:1,
54:12, 135:8,
256:19, 263:14,
267:20, 299:9,
299:12, 299:17,
304:15, 306:16
**regulations**
4:12, 15:10,
15:12, 16:13,
17:12, 17:14,
17:16, 19:21,
20:4, 20:20,
32:18, 42:3,
44:10, 45:3,
45:4, 48:6,
49:19, 53:5,
53:19, 61:2,
61:22, 65:5,
266:11, 266:13,
266:18, 267:3,
267:12, 267:17,
301:1, 331:18
**regulatory**
49:7, 256:15
**rehearsed**
109:11, 109:12,
109:16, 312:15,
312:22
**reject**
117:9, 198:5
**rejected**
290:13
**rejecting**
117:8
**relate**
318:1
**related**
129:16, 152:11,
155:17, 192:20,
210:20, 211:3,
250:10, 250:20,
265:12, 269:11,
282:2, 350:12,
351:5
**relates**
73:19
**relating**
146:17, 267:14,

304:1
**relations**
6:16, 262:20
**relationship**
88:1, 287:2
**relationships**
305:6
**relaxed**
67:13
**relay**
173:4
**relayed**
95:13
**rele**
131:13
**release**
326:8
**relevance**
108:22, 131:12,
132:9, 136:17,
171:7, 188:12,
260:4, 280:3,
280:12, 328:21
**relevancy**
13:20, 262:11,
345:3
**relevant**
10:12, 65:7,
73:6, 74:13,
90:6, 115:12,
126:7, 126:8,
131:17, 132:20,
248:10, 248:18,
280:4, 329:1,
329:11, 344:20
**relied**
135:15, 135:19,
155:6
**relief**
10:20, 25:6,
35:21, 36:1
**rely**
10:21, 267:9
**relying**
7:5, 44:20,
44:21, 346:21
**remain**
337:14, 348:17

**remarks**
230:1, 249:16
**remember**
82:2, 94:2,
94:4, 94:8,
94:19, 95:1,
95:2, 95:3,
96:20, 100:17,
100:22, 101:6,
102:1, 103:2,
103:16, 103:21,
103:22, 127:1,
148:14, 149:19,
171:13, 254:14,
262:9, 292:18
**reminded**
97:3
**remote**
128:12
**removed**
24:22
**rendition**
253:17
**renew**
67:4
**repeat**
87:8, 185:8,
237:12, 239:7,
326:13
**repercussions**
79:18
**rephrase**
137:10, 190:9,
205:1, 258:19,
294:21, 302:11,
302:17, 314:2
**rephrased**
242:7
**replicated**
255:13
**reported**
19:14, 62:3,
73:12, 81:15,
145:21, 171:8,
182:6, 183:15,
190:7, 190:13,
191:20, 192:12,
196:16, 199:6,

202:7, 206:18,
206:21, 232:21,
250:16, 251:8,
251:12, 273:20,
273:22, 274:3,
274:6, 274:11,
274:15, 275:2,
275:14, 275:21,
276:15, 277:1,
281:11, 283:3,
291:22, 293:5
**reporter**
5:2, 5:7, 5:19,
40:14, 82:4,
165:16, 171:18,
192:13, 206:7,
279:15, 279:17,
283:2, 350:1
**reporters**
81:7, 81:8,
81:10, 82:9,
82:14, 144:7,
145:20, 146:10,
280:2, 280:5,
280:10
**reporting**
42:11, 82:11,
84:6, 205:13,
276:7, 280:9,
292:22
**reports**
97:10, 98:1,
115:17, 115:22,
116:7, 169:17,
172:9, 174:15,
174:18, 175:17,
177:10, 177:13,
177:17, 177:18,
178:1, 178:6,
183:21, 196:19,
225:21, 232:17,
275:5, 275:6,
275:20, 279:19,
282:2, 295:22
**represent**
50:9
**representations**
60:6

Day 000946

Transcript of Hearing
Conducted on October 19, 2023                                    400

| | | | |
|---|---|---|---|
| **representative** 221:12, 322:15 | 22:16, 26:8, 36:6, 43:10, 44:17, 49:7, 116:18 | 135:7, 135:16 | **revealed** 67:21, 95:19 |
| **represented** 46:20, 47:2, 55:21, 244:19 | **reserve** 112:10, 144:21, 153:7, 321:11, 321:13, 326:9, 330:19, 331:3, 334:7, 334:11, 334:13 | **responded** 50:1, 75:10, 97:3, 109:15, 187:2, 288:10, 288:17 | **review** 11:3, 80:22, 93:14, 228:22, 320:10, 337:1 |
| **representing** 47:13 | | **responding** 27:5, 197:6 | **reviewed** 59:11, 80:22, 208:8, 233:21, 248:14 |
| **reprimand** 14:7 | | **response** 4:14, 11:20, 12:8, 50:2, 50:4, 79:15, 79:16, 131:16, 134:20, 156:18, 157:8, 157:16, 158:9, 276:20, 276:21, 284:5, 285:16, 288:5, 328:17, 343:14 | **reviews** 346:9 |
| **reproduce** 347:3 | **reserved** 88:8, 88:20, 97:6, 117:2, 214:19 | | **revised** 335:11 |
| **reputation** 53:22 | **reserves** 153:9 | | **revisiting** 177:15 |
| **reputational** 51:19 | **resolution** 26:12, 26:13, 45:6 | | **revolving** 82:5 |
| **request** 4:13, 4:14, 11:3, 11:8, 17:17, 24:6, 36:14, 55:8, 55:13, 55:20, 56:4, 56:6, 72:9, 72:12, 112:10, 114:5, 114:6, 114:18, 116:21, 156:22, 159:1, 331:4, 335:8, 335:20, 343:11 | **resolve** 266:6 | **responses** 87:3 | **reword** 273:2 |
| | **resolved** 152:2 | **responsibility** 95:9, 104:7 | **rid** 126:4 |
| | **resolves** 91:11 | **responsive** 224:9, 335:7 | **ridiculous** 58:9 |
| | **resource** 223:3 | **rest** 113:9, 332:20, 341:3, 346:8 | **ridiculousness** 52:9 |
| | **resources** 31:18, 262:20 | **restate** 190:3 | **rights** 10:8, 23:11, 37:16, 39:12, 42:4, 42:22, 43:6, 52:6, 52:22, 53:12, 54:11, 58:5, 59:21, 63:1, 65:20, 66:13, 75:2, 77:4 |
| **requested** 50:10, 72:5, 117:13, 157:7, 159:9 | **resp** 158:8 | **result** 22:14, 35:16, 54:7, 191:7, 191:12 | |
| **requesting** 46:11, 117:8 | **respect** 36:11, 50:9, 70:19, 76:18, 77:10, 119:8 | **results** 38:19 | |
| **requests** 47:5 | | **resuming** 322:5 | **rips** 307:14 |
| **require** 299:2 | **respectful** 128:9 | **ret** 1:14 | **risk** 339:14 |
| **required** 65:6, 82:6, 116:9, 135:9, 155:5, 157:4, 157:6, 266:6 | **respectfully** 29:14, 49:9, 193:21 | **retaliating** 331:14 | **riverside's** 125:22 |
| | **respective** 155:11 | **retaliation** 79:16, 311:14 | **road** 61:3 |
| **requirement** 10:3, 37:3 | **respond** 49:11, 51:4, 56:8, 86:22, 87:12, 96:4, 118:15, 118:16, | **retaliatory** 292:22 | **roaming** 69:2 |
| **requirements** 10:4, 17:6, | | **retired** 5:13 | **role** 86:14, 88:3, |

PLANET DEPOS
888.433.3767 | WWW.PLANETDEPOS.COM

Transcript of Hearing
Conducted on October 19, 2023

401

162:16, 172:12,
173:2, 174:15,
205:12, 222:17,
225:20, 270:4
**roman**
19:7, 135:11
**room**
67:21, 129:2,
187:20, 188:2,
225:8, 235:10,
236:10, 294:16,
295:3, 295:16,
330:8
**rooms**
294:12, 294:13
**roughly**
203:12, 275:18
**routinely**
327:16
**rule**
54:12, 57:22,
67:14, 67:20,
70:5, 141:2,
154:22, 155:18,
157:3, 158:2,
159:21, 299:9,
299:12, 299:16,
307:6, 307:11
**ruled**
106:6, 179:5,
269:11, 326:5
**rules**
15:10, 15:12,
17:12, 17:14,
17:15, 21:22,
32:18, 33:21,
34:1, 34:2,
34:22, 41:1,
53:18, 53:19,
62:1, 62:18,
65:5, 67:12,
73:8, 116:9,
116:14, 130:7,
141:17, 159:16,
159:17, 323:12
**ruling**
14:22, 34:19,
66:19, 67:3,

118:21, 122:20,
161:2, 179:9,
196:22, 197:3,
202:13, 228:4,
229:16, 248:6,
249:9, 278:13,
278:19, 330:21,
339:15
**rulings**
227:19, 231:2
**run**
241:5, 341:15
**runaround**
157:22
**running**
339:14

### S

**s**
32:20, 51:13
**sacrosanct**
40:2
**safeguard**
44:4, 44:6
**safety**
88:4, 98:20
**sake**
32:5, 156:17
**same**
8:17, 18:11,
27:12, 33:13,
35:6, 66:6,
72:2, 83:6,
89:12, 89:15,
98:1, 98:2,
99:12, 99:18,
106:13, 114:6,
114:17, 117:18,
166:17, 174:12,
181:15, 186:1,
187:20, 197:9,
202:2, 209:10,
209:13, 209:14,
209:15, 209:21,
210:2, 216:15,
219:15, 221:6,
225:8, 232:4,
235:10, 245:20,

259:5, 261:7,
281:4, 294:15,
295:3, 315:11,
315:14, 329:15,
329:19
**sanction**
339:17
**sandbagged**
167:14
**sat**
170:20, 175:7,
236:6
**save**
312:13
**saw**
203:2, 203:9,
203:13, 203:22,
205:2, 265:22
**saying**
13:12, 49:17,
50:4, 57:2,
57:11, 66:20,
92:13, 104:2,
104:3, 104:6,
144:4, 163:11,
176:10, 179:4,
179:16, 192:8,
193:18, 194:7,
198:22, 199:4,
205:1, 215:19,
224:3, 227:7,
243:14, 277:17,
286:6, 291:5,
292:8, 292:18,
297:9, 298:21,
304:14, 305:18,
307:3, 310:6,
316:5, 316:10,
341:2, 341:9,
347:1, 347:18
**says**
21:9, 26:6,
36:3, 40:3,
40:19, 45:18,
46:9, 51:11,
53:1, 57:14,
61:21, 66:3,
66:11, 78:11,

83:3, 101:14,
115:19, 115:21,
169:20, 190:13,
192:21, 193:1,
193:11, 193:12,
199:13, 199:14,
204:10, 206:19,
222:7, 234:6,
234:14, 237:17,
242:21, 245:2,
250:11, 255:20,
273:8, 273:19,
276:16, 277:1,
278:3, 278:22,
285:9, 285:18,
286:5, 288:22,
289:8, 298:19,
299:9, 299:17,
301:5, 301:7,
302:19, 303:11,
306:7, 307:7,
307:11, 307:14,
308:3, 308:6,
309:10, 309:18,
310:15, 319:6,
319:15, 323:14
**scantily**
297:8, 297:10
**scenario**
311:16, 311:19,
311:21
**scenarios**
312:1, 312:3
**schedule**
219:3, 221:13
**scheduled**
31:2
**scholarship**
152:12, 152:17
**scholarships**
152:15
**school's**
331:17
**schools**
1:1, 2:7, 5:9,
5:22, 6:19, 8:7,
40:22, 85:3,
152:11, 218:8,

Transcript of Hearing
Conducted on October 19, 2023

402

219:21, 255:7,
256:14, 260:18,
260:20, 265:11,
349:5
**scope**
118:4, 120:12,
146:1
**screwed**
35:10
**screwup**
52:20
**scrutiny**
22:21
**season**
8:16, 119:17,
125:22, 203:3
**seated**
6:8
**sec**
73:16
**second**
14:3, 25:17,
26:1, 38:10,
68:14, 71:16,
80:2, 83:7,
89:8, 93:19,
99:11, 142:16,
154:20, 170:6,
174:11, 212:22,
247:7, 247:9,
272:14, 273:7,
281:4, 285:2,
289:5, 342:10
**secondly**
15:7, 158:20
**secret**
47:2, 52:14,
154:16
**section**
30:3, 73:17,
74:18, 229:1,
304:22
**sections**
344:14
**security**
85:5, 85:19,
87:11, 88:4,
98:21

**see**
14:11, 16:12,
19:7, 25:22,
26:4, 26:5,
44:13, 45:16,
46:3, 46:16,
47:8, 52:15,
56:4, 56:20,
59:12, 65:8,
65:10, 66:22,
67:4, 86:21,
94:5, 99:14,
99:17, 107:5,
108:8, 108:10,
108:13, 108:16,
108:19, 112:9,
113:9, 113:12,
113:15, 138:2,
160:1, 164:18,
169:7, 170:7,
171:20, 173:15,
182:21, 184:14,
203:7, 206:2,
215:6, 215:16,
215:20, 252:6,
253:16, 257:9,
263:5, 274:21,
301:5, 309:15,
312:13, 315:6,
326:17, 346:4
**seeing**
140:6, 150:11,
212:11, 267:9
**seek**
12:5, 20:5
**seem**
243:10, 342:19
**seemed**
245:21
**seems**
42:3, 64:2,
87:9, 169:13
**seen**
55:15, 118:3,
140:2, 181:11,
255:1
**segregate**
184:14, 184:20

**segregating**
184:19
**self-authenticate**
310:5
**self-conscious**
316:2
**semifinalist**
124:16
**send**
57:2, 58:12,
90:9, 347:22,
348:2
**sender**
178:20
**sending**
178:15
**sense**
136:8, 282:13,
318:20, 323:19
**sensitive**
306:7
**sent**
29:21, 29:22,
36:16, 47:11,
49:17, 51:11,
56:9, 56:11,
56:18, 79:6,
88:17, 89:11,
109:1, 111:9,
179:8, 180:12,
180:16, 206:4,
209:3, 209:5,
209:9, 263:2,
263:10, 281:18,
281:20, 347:13
**sentence**
21:9, 87:9,
115:14, 115:15,
115:18, 115:20,
119:7, 273:19
**sentiments**
215:10
**separate**
35:1, 45:13,
127:21, 232:14,
233:18, 235:6,
235:7, 236:7,
237:5, 282:20,

294:11, 294:13,
295:16, 295:17
**separately**
21:8, 127:3,
232:9, 232:12,
233:9, 234:6,
234:9, 234:10,
234:15, 236:6,
236:12, 294:14,
295:1, 295:16
**september**
20:18, 21:18,
23:3, 54:6,
65:15, 146:16,
146:21, 147:1,
147:7, 148:16,
148:22, 203:10,
254:10, 255:17
**sequestered**
68:7
**serious**
311:1
**serve**
5:15
**services**
257:1, 328:19
**session**
101:3
**sessions**
203:14
**set**
15:9, 18:16,
18:17, 24:5,
24:7, 24:9,
24:16, 24:18,
24:20, 25:4,
30:21, 32:18,
33:6, 36:21,
37:4, 37:5,
37:6, 37:8,
48:1, 50:11,
51:13, 57:20,
58:15, 58:16,
58:18, 58:21,
94:6, 99:18,
99:19, 116:19,
174:12, 267:12
**sets**
177:17

Day 000949

Transcript of Hearing
Conducted on October 19, 2023                                    403

| | | | |
|---|---|---|---|
| **setting**<br>47:17, 326:4<br>**seven**<br>81:2, 81:3,<br>81:4, 106:18<br>**seventy-five**<br>93:13<br>**several**<br>109:1, 113:10,<br>142:22, 228:5,<br>241:13, 289:22,<br>306:6, 318:8,<br>326:2, 339:8<br>**severe**<br>281:21, 282:9<br>**severity**<br>281:5<br>**sex**<br>196:7, 231:14,<br>297:13, 297:14<br>**sexist**<br>69:15, 70:14,<br>73:22, 74:1,<br>297:12<br>**sexual**<br>50:6, 70:11,<br>73:13, 73:18,<br>74:1, 80:6,<br>82:5, 192:14,<br>192:15, 196:5,<br>230:4, 230:8,<br>230:17, 231:10,<br>249:15, 249:21,<br>283:4, 283:8,<br>283:12, 283:15,<br>283:19, 297:14,<br>298:14, 299:2,<br>301:6, 305:9,<br>305:13, 306:10,<br>307:16, 308:9,<br>316:6, 316:12,<br>316:22, 317:4,<br>317:15, 319:7<br>**sexualized**<br>250:20, 251:7,<br>251:15, 272:1,<br>272:11<br>**shall**<br>17:6, 19:15, | 21:10, 24:5,<br>26:9, 28:8,<br>33:2, 36:6,<br>43:10, 44:18,<br>60:22<br>**shannon**<br>127:11<br>**shape**<br>147:6<br>**share**<br>38:19, 127:3,<br>134:2, 172:16,<br>173:4, 174:17,<br>241:16, 253:6,<br>253:8, 253:11<br>**shared**<br>129:19, 148:11,<br>168:8, 173:5,<br>207:3, 207:8,<br>207:11, 207:12,<br>207:13, 207:14,<br>209:16, 232:22,<br>241:1, 241:10,<br>241:18, 265:9,<br>273:8, 273:20,<br>274:10, 274:17,<br>278:4, 279:5,<br>281:5, 282:19,<br>292:19, 315:19,<br>315:22<br>**sharing**<br>104:10<br>**sheet**<br>187:18<br>**sheriff**<br>39:9<br>**shock**<br>76:10<br>**shorts**<br>289:9, 289:11,<br>289:12<br>**should**<br>23:7, 23:8,<br>24:7, 25:11,<br>39:2, 48:8,<br>51:17, 63:18,<br>72:7, 72:15,<br>76:6, 79:22, | 121:1, 121:21,<br>133:1, 137:21,<br>153:21, 153:22,<br>159:8, 190:9,<br>196:15, 215:12,<br>249:9, 259:14,<br>278:14, 298:7,<br>299:14, 301:9,<br>301:11, 302:18,<br>307:15, 333:18,<br>347:22<br>**shouldn't**<br>165:20, 293:15,<br>308:9<br>**show**<br>40:21, 55:7,<br>57:2, 57:8,<br>66:6, 66:20,<br>82:17, 119:4,<br>181:7, 254:17,<br>257:12, 291:22<br>**shower**<br>198:2, 199:16,<br>290:19<br>**showing**<br>62:15, 62:17,<br>62:21<br>**shown**<br>26:21, 40:6,<br>66:20<br>**shows**<br>57:5, 57:7<br>**shut**<br>239:17, 271:16<br>**sick**<br>101:18<br>**side**<br>97:5, 166:20,<br>225:12, 338:5<br>**side's**<br>348:22<br>**sides**<br>5:18, 337:16<br>**signature**<br>36:16, 36:18<br>**signature-mig2k**<br>350:19<br>**signature-p1kal**<br>351:14 | **signed**<br>31:5, 49:13,<br>57:6, 57:8,<br>175:8, 186:1<br>**significant**<br>40:1<br>**similarities**<br>99:8<br>**simply**<br>220:19, 291:7<br>**since**<br>8:12, 20:6,<br>26:9, 29:6,<br>53:2, 58:6,<br>67:12, 85:11,<br>85:16, 87:18,<br>169:7, 172:20,<br>181:1, 181:4,<br>204:11, 205:4,<br>206:11, 206:12,<br>271:11, 282:20,<br>284:13, 287:3,<br>324:8, 324:13,<br>324:16, 331:7<br>**single**<br>44:3, 44:6,<br>80:6, 118:9,<br>139:5, 262:10,<br>271:5, 283:21,<br>290:5<br>**sir**<br>6:9, 17:21,<br>100:2, 136:2,<br>194:18, 234:21,<br>322:11, 349:8<br>**sit**<br>22:17, 60:20,<br>172:15, 177:21,<br>271:16, 339:12,<br>344:1<br>**sitting**<br>26:14, 93:4,<br>173:2, 176:11,<br>185:11, 294:16,<br>324:19<br>**situation**<br>30:15, 105:10,<br>283:13 |

Day 000950

Transcript of Hearing
Conducted on October 19, 2023

404

| | | | |
|---|---|---|---|
| **situations**<br>30:15, 157:2<br>**six**<br>20:19, 50:13,<br>50:19, 51:10,<br>52:17, 73:21,<br>74:19, 81:2,<br>95:10, 155:2,<br>162:3<br>**skills**<br>350:11<br>**skimpily**<br>298:10<br>**skimpy**<br>201:3, 288:22,<br>298:1, 316:2,<br>316:6<br>**skip**<br>121:19<br>**sky**<br>12:14, 12:18,<br>12:20<br>**sleeping**<br>80:11<br>**slightly**<br>164:14<br>**slut**<br>197:22, 231:11,<br>231:16, 305:16<br>**smiled**<br>97:7<br>**smith**<br>130:22, 168:12,<br>168:20, 169:4,<br>169:5, 169:10,<br>169:12, 170:13,<br>170:15, 171:18,<br>172:15, 173:3,<br>175:7, 176:4,<br>177:11, 177:13,<br>177:22, 178:4,<br>178:14, 178:17,<br>178:20, 179:1,<br>180:11, 181:4,<br>182:11, 183:18,<br>206:5, 207:15,<br>208:21, 209:3,<br>213:14, 220:15, | 322:15, 328:15<br>**smith's**<br>170:18, 171:6<br>**sneaky**<br>347:15<br>**social**<br>125:17, 126:19,<br>305:6<br>**society**<br>297:9<br>**solely**<br>225:4, 225:7<br>**solemnly**<br>5:4<br>**some**<br>12:6, 14:5,<br>16:4, 16:5,<br>22:20, 28:14,<br>30:4, 39:4,<br>39:14, 60:5,<br>60:8, 61:8,<br>62:10, 68:7,<br>78:1, 79:18,<br>85:19, 88:7,<br>88:8, 88:17,<br>89:11, 96:22,<br>105:16, 119:13,<br>122:7, 122:21,<br>126:12, 127:15,<br>128:15, 128:19,<br>129:19, 130:5,<br>133:3, 134:22,<br>135:3, 135:5,<br>136:4, 153:14,<br>167:17, 167:18,<br>168:6, 173:22,<br>188:17, 195:5,<br>202:9, 209:14,<br>210:10, 218:1,<br>226:12, 226:15,<br>231:12, 232:16,<br>232:19, 250:7,<br>250:15, 253:5,<br>256:12, 264:18,<br>268:13, 269:2,<br>269:5, 273:10,<br>286:21, 291:12,<br>296:12, 297:21, | 306:5, 310:22,<br>313:8, 315:18,<br>326:18, 327:7,<br>330:22, 333:12,<br>335:17, 338:17,<br>342:19, 342:22<br>**somebody**<br>51:21, 52:1,<br>103:2, 178:15,<br>253:17, 312:21<br>**somebody's**<br>312:15<br>**somehow**<br>61:1, 78:14<br>**someone**<br>77:7, 77:10,<br>78:22, 83:3,<br>95:7, 100:17,<br>100:21, 102:21,<br>103:10, 103:14,<br>117:22, 120:3,<br>134:8, 134:12,<br>149:12, 152:15,<br>152:20, 166:16,<br>178:16, 189:21,<br>190:15, 239:6,<br>261:16, 262:12,<br>267:18, 270:9,<br>270:13, 282:10,<br>282:12, 299:5,<br>299:12, 300:8,<br>301:8, 301:19,<br>305:11, 307:2,<br>307:13, 311:21,<br>317:1, 331:20<br>**someone's**<br>53:22, 307:2<br>**something**<br>40:1, 40:17,<br>42:6, 43:3,<br>54:4, 55:4,<br>55:17, 59:12,<br>63:3, 63:4,<br>65:12, 67:6,<br>81:12, 82:11,<br>102:10, 105:9,<br>119:12, 134:18,<br>147:15, 148:19, | 160:13, 167:11,<br>177:15, 178:10,<br>178:19, 185:6,<br>185:16, 188:15,<br>195:18, 197:17,<br>208:6, 222:5,<br>224:1, 225:11,<br>227:2, 230:7,<br>234:10, 238:5,<br>253:9, 262:16,<br>264:12, 266:9,<br>267:8, 269:11,<br>270:14, 280:10,<br>284:21, 284:22,<br>285:13, 285:16,<br>286:22, 287:14,<br>288:1, 288:17,<br>289:1, 289:4,<br>289:17, 292:5,<br>298:6, 299:5,<br>299:17, 303:4,<br>308:16, 310:6,<br>327:9, 335:7,<br>339:18, 342:5<br>**sometimes**<br>87:11, 220:21<br>**somewhere**<br>85:14, 126:2<br>**soon**<br>19:17, 28:12,<br>62:14, 63:14,<br>63:20, 64:7,<br>64:17, 67:6,<br>83:3, 130:1,<br>268:1, 268:4<br>**sororities**<br>151:12, 152:2<br>**sorority**<br>139:4, 151:15,<br>151:16, 152:6<br>**sorry**<br>6:14, 11:16,<br>13:6, 18:1,<br>27:15, 28:3,<br>34:7, 38:5,<br>38:10, 44:11,<br>45:20, 50:15,<br>68:12, 79:9, |

87:8, 91:9,
94:11, 97:7,
100:13, 107:19,
114:10, 133:6,
134:18, 146:21,
163:18, 169:19,
185:10, 186:3,
186:7, 186:16,
186:21, 196:17,
197:13, 198:8,
204:19, 215:14,
242:6, 254:16,
259:16, 261:14,
263:9, 286:15,
304:21, 304:22,
322:8, 323:5,
328:9, 328:11,
341:8, 343:3
**sort**
173:22
**sound**
288:22
**sounded**
223:7
**sounds**
172:10, 223:22,
224:3
**source**
9:8
**space**
139:5
**spaces**
88:8, 95:10,
104:7
**speak**
92:16, 99:21,
100:9, 100:15,
101:2, 101:12,
102:3, 117:14,
120:18, 137:7,
140:13, 140:14,
147:18, 163:4,
168:4, 168:12,
169:17, 172:14,
174:16, 176:3,
185:10, 192:4,
208:22, 219:14,
221:4, 226:13,

226:17, 226:19,
231:17, 231:18,
233:2, 238:12,
242:5, 247:13,
250:5, 250:17,
259:15, 262:17,
263:18, 263:21,
272:3, 275:12,
275:13, 282:22,
287:14, 287:22,
296:1
**speaking**
92:22, 93:1,
94:2, 94:8,
94:19, 96:1,
96:2, 101:16,
118:18, 132:3,
139:6, 164:21,
171:10, 185:12,
194:16, 225:9,
226:10, 276:18
**speaks**
55:1, 134:8,
159:5, 178:21,
238:4, 238:7
**special**
128:13
**specialized**
244:11
**specific**
76:22, 78:12,
78:13, 83:8,
83:9, 106:10,
106:19, 196:4,
226:22, 246:8,
246:9, 267:8,
275:6, 278:7,
279:2, 284:2,
286:21, 296:12,
309:2, 310:13,
310:14, 310:16,
310:17, 331:21
**specifically**
9:12, 9:18,
32:19, 37:22,
70:4, 71:14,
78:3, 92:20,
92:22, 93:1,

93:8, 94:2,
94:8, 94:19,
97:13, 111:5,
117:13, 139:2,
174:16, 251:11,
258:20, 259:2,
259:4, 264:19,
266:15, 275:11,
276:15, 276:22,
278:22, 285:21,
288:3, 290:7,
293:13, 299:4,
301:10, 308:1,
309:12, 309:19,
310:11, 311:13,
331:12
**specificity**
8:21, 13:13,
76:21, 84:7
**specifics**
72:17, 80:15,
82:2, 103:17,
104:9, 263:18,
263:22, 313:21
**specified**
9:14, 283:4
**specify**
26:17
**speculate**
213:8, 213:9
**speculation**
102:9, 149:15,
185:4, 185:9,
192:6, 194:5,
198:17, 198:19,
294:19, 306:12,
306:14
**speed**
341:4
**speedy**
26:14, 76:19
**spell**
5:18
**spellings**
5:19
**spence**
2:3
**spoke**
89:4, 100:17,

100:18, 100:21,
100:22, 101:14,
157:11, 157:14,
172:20, 174:19,
176:1, 208:21,
210:8, 224:16,
226:12, 226:16,
226:18, 226:20,
227:3, 229:5,
230:20, 249:22,
250:19, 250:21,
251:5, 282:19,
293:3
**spoken**
94:1, 100:13,
256:9
**sports**
128:21
**spot**
97:16, 98:7
**spots**
97:5, 142:21
**spring**
127:17, 128:20,
210:10, 314:19
**sso**
85:5, 85:11,
88:3
**st**
12:11, 18:10,
20:9, 40:16,
80:5, 101:10,
173:3, 175:20,
183:21, 205:5,
206:16, 206:18,
206:21, 207:2,
207:3, 210:21,
211:4, 211:6,
212:18, 217:20,
261:1, 275:7,
275:10, 275:15,
275:21, 276:2,
276:3, 277:3,
277:13, 279:10,
283:13
**staff**
85:21, 86:22,
87:12, 88:8,

Transcript of Hearing
Conducted on October 19, 2023

406

95:7, 98:7,
103:11, 103:14,
104:7, 125:6,
125:10, 125:11,
125:16, 125:18,
126:19, 126:22,
127:3, 128:11,
197:21, 224:16,
291:20, 292:15
**staffing**
124:12
**stage**
20:5, 20:6,
72:14
**stamp**
95:11
**stand**
55:2, 75:21,
84:15, 89:18,
121:9, 121:10,
158:22, 171:16,
215:21, 322:15
**standard**
10:2, 222:21,
242:18, 307:20
**standards**
224:20, 225:2
**standpoint**
13:17, 51:3
**stands**
31:17, 118:10,
214:12
**standup**
127:13
**start**
27:8, 38:17,
99:2, 124:7,
133:12, 202:2,
221:13, 224:17,
226:7, 264:16,
275:16, 337:5,
341:15
**started**
75:19, 96:4,
128:10, 179:13,
225:10
**starting**
99:10, 99:11,

239:1
**starts**
38:3, 38:5
**state**
5:18, 30:12,
72:14, 76:4,
85:1, 105:3,
123:13, 156:1,
161:15, 187:1,
187:11, 216:5,
233:8, 338:2,
344:5
**stated**
47:12, 72:6,
92:9, 109:19,
110:5, 173:21,
177:16, 177:20,
266:3, 272:10,
278:6, 281:4,
282:15, 287:22,
289:22, 290:18,
293:4, 296:11,
333:3, 333:11,
346:11
**statement**
9:15, 9:17,
10:19, 13:21,
13:22, 26:17,
38:22, 75:4,
75:5, 75:8,
76:2, 76:7,
76:9, 78:10,
80:7, 80:9,
80:10, 109:9,
160:3, 160:7,
160:9, 160:10,
165:15, 166:1,
185:7, 190:6,
190:7, 193:16,
193:18, 196:2,
196:3, 196:4,
196:16, 197:16,
199:15, 218:16,
219:6, 233:5,
235:11, 243:8,
243:9, 244:19,
245:16, 246:16,
265:13, 271:6,

271:13, 271:15,
283:21, 288:12,
292:9, 295:6,
295:12, 297:7,
297:18, 297:21,
308:19, 308:22,
312:15, 312:22,
317:9, 317:11,
318:8, 318:15,
319:5
**statements**
9:16, 10:15,
13:15, 13:19,
80:8, 130:13,
157:20, 160:6,
177:19, 189:20,
190:1, 190:2,
190:11, 198:7,
198:14, 198:15,
199:5, 200:6,
200:13, 200:21,
200:22, 202:7,
202:9, 211:7,
231:5, 231:12,
232:3, 232:11,
232:16, 232:19,
233:7, 233:8,
233:13, 233:14,
233:17, 233:21,
234:6, 234:9,
234:14, 235:4,
236:8, 236:11,
236:12, 245:16,
267:1, 271:9,
271:21, 272:1,
272:13, 272:20,
273:16, 283:22,
289:21, 289:22,
290:7, 291:17,
294:11, 296:17,
297:1, 297:11,
308:14, 308:20,
309:20, 311:17,
313:10, 314:6,
315:7, 315:8,
315:17, 315:18,
316:14, 318:8,
324:4, 324:7,

325:11, 331:10,
331:21, 333:10,
333:13, 333:17,
333:19
**states**
31:12, 31:17,
64:5, 178:22,
329:2
**stating**
234:7, 290:20,
291:13
**status**
61:4, 147:16
**statute**
7:21, 8:8,
10:10, 12:6,
13:1, 14:2,
14:12, 15:14,
15:17, 44:2,
53:15, 65:9,
76:20, 84:8,
256:18, 256:19,
263:14, 264:10,
269:22, 271:1,
327:14
**statutes**
189:2, 327:8,
330:9
**statutory**
143:17, 144:2,
256:14, 264:1
**stay**
321:18
**step**
17:8, 17:9,
26:10, 43:11,
44:18, 68:15
**steps**
36:7, 146:19,
218:14
**still**
35:14, 35:15,
35:16, 37:17,
43:18, 53:13,
66:21, 75:6,
75:7, 101:3,
256:13, 266:21,
270:10, 270:12,

Transcript of Hearing
Conducted on October 19, 2023

407

298:16, 322:6,
326:7, 326:9,
326:17, 330:11
**stop**
88:20, 92:4,
93:15, 129:4,
246:2, 252:1,
322:9
**story**
163:4, 184:15
**strange**
296:3
**stray**
243:7, 243:17,
243:21, 244:2,
244:13, 245:15,
253:18, 312:16
**straying**
313:1
**street**
321:20
**stri**
140:4
**stricken**
269:4, 279:11,
303:5
**strictly**
34:2
**strike**
96:11, 139:22,
140:3, 141:1,
173:1, 187:12,
227:18, 235:13,
243:16, 243:20,
250:22, 323:11,
323:13
**striking**
96:12
**string**
93:17
**stuck**
32:13
**student**
40:11, 88:18,
89:15, 97:4,
97:19, 133:12,
133:16, 136:3,
142:4, 142:22,

151:22, 163:1,
172:20, 176:7,
189:19, 190:4,
190:10, 190:12,
226:22, 243:5,
258:7, 258:10,
273:22, 287:12,
287:21, 288:4,
288:9, 288:15,
289:12, 290:18,
295:11, 295:15,
298:17, 298:20,
298:21, 299:13,
307:7, 307:19,
307:22, 317:13,
318:5, 319:6,
333:16
**student's**
177:18, 189:22,
190:5, 192:5,
304:18, 305:7,
318:9, 318:11
**stuff**
301:4, 337:7,
347:7
**subject**
8:8, 14:10,
19:1, 19:10,
69:16, 70:19,
70:20, 74:2,
119:14, 123:4,
161:5, 178:22,
227:20, 249:15,
278:13, 279:22,
280:9, 280:14,
280:20, 302:20
**subjective**
243:18
**subjects**
121:17
**submissions**
345:19, 348:22
**submit**
39:5, 49:9,
64:8, 336:1,
337:2, 345:8
**submitted**
39:16, 218:4,

218:7, 221:15,
341:10, 346:12
**submitting**
218:9
**subparagraph**
19:12, 135:9,
135:10
**subpoena**
83:15
**subsequent**
15:17
**substance**
346:22
**substantial**
17:5, 26:8,
36:5, 43:9,
44:17
**substantially**
20:4
**substantive**
19:20, 21:5,
23:1, 25:1,
27:4, 37:10,
37:15, 42:4,
48:7, 48:13,
48:17, 48:21,
51:16, 52:5,
52:22, 53:9,
59:21, 64:20,
64:21, 75:2,
77:4
**substantively**
23:11, 53:13
**subtab**
170:2, 170:4
**sudden**
35:12, 37:11,
80:3
**sue**
8:6
**suf**
11:12
**suffering**
51:18
**sufficiency**
331:8, 331:17
**sufficient**
11:12, 11:13,

78:7, 118:11,
188:17, 244:16,
249:1
**sufficiently**
78:20, 193:17
**suggest**
33:20, 65:10,
142:1
**suggested**
29:17, 243:19,
282:22
**suggesting**
102:21, 344:6
**sum**
45:10, 95:12
**summaries**
200:6, 200:13,
202:7, 202:10
**summarize**
70:3, 80:21,
127:9, 127:10,
199:4, 231:22,
238:8, 238:22
**summarizing**
233:6
**summary**
118:5, 118:8,
199:8, 199:15,
199:19, 237:1,
237:3, 237:11,
238:7, 238:9,
289:18
**summary's**
237:11
**summer**
40:20, 59:1,
100:18, 100:21,
102:18
**super**
52:14, 135:13
**superintendent**
2:2, 2:3,
19:16, 21:10,
28:11, 28:17,
33:4, 51:7,
135:11, 248:6,
248:16, 248:19,
268:1, 303:8

Transcript of Hearing
Conducted on October 19, 2023

408

**superintendent's**
2:4, 135:20
**superior**
163:7
**supervise**
248:18
**supervision**
125:6
**supervisor**
26:7, 220:4,
220:14, 223:1,
322:14
**supervisors**
322:14
**supervisory**
36:4, 43:9,
44:16
**supplement**
11:4, 158:5,
160:10, 229:14
**supplementation**
158:6, 166:11,
166:19
**supplemented**
166:2, 212:7
**supply**
347:12
**support**
72:12, 82:22,
125:12, 220:17,
220:19, 249:2
**supported**
248:15
**supporting**
220:18, 346:14,
351:4
**supports**
11:11, 72:10,
270:18
**supposed**
33:13, 33:19,
42:7, 43:2,
44:1, 51:21,
52:6, 52:14,
52:17, 58:8,
58:10, 58:12,
58:21, 65:16,
97:21, 105:9,

116:12, 119:10,
119:19, 159:20,
281:7, 281:8
**supposedly**
19:1, 23:16,
42:14, 42:18,
54:9, 80:9,
199:1, 272:7,
282:1
**sure**
7:4, 7:8,
15:21, 16:8,
39:19, 45:22,
68:2, 68:15,
75:20, 84:16,
90:15, 91:11,
91:17, 107:4,
121:6, 122:19,
123:11, 127:16,
149:22, 167:5,
168:17, 168:19,
170:10, 194:15,
204:3, 206:7,
214:5, 216:7,
221:5, 231:4,
240:5, 240:13,
250:5, 257:5,
264:20, 266:22,
277:16, 284:8,
294:7, 322:17,
330:15, 330:20,
340:18, 343:16
**surrounding**
293:14
**suspect**
120:6, 188:7
**suspected**
217:15
**suspicious**
310:4
**sustain**
198:21, 222:12,
249:11, 318:22
**sustained**
98:9, 193:22,
199:21, 200:1,
200:16, 201:8,
205:18, 212:13,

260:8, 302:5,
312:10
**swear**
5:2, 5:5, 126:2
**swingers**
289:9, 289:10
**switch**
217:12
**switched**
223:19
**switching**
217:12
**sworn**
84:17, 84:18,
121:12, 154:18,
183:6, 216:1,
350:5
**symbol**
289:10
**system**
7:17, 10:14,
10:21, 12:9,
13:14, 14:11,
17:11, 22:20,
33:6, 33:21,
36:13, 38:20,
39:13, 40:15,
49:14, 50:1,
52:3, 53:11,
53:12, 54:1,
54:9, 65:4,
82:18, 84:9,
119:18, 175:15
**system's**
35:2

---
**T**
---

**ta**
18:7
**tab**
18:20, 27:16,
27:18, 27:19,
31:11, 46:15,
47:10, 69:11,
70:7, 71:9,
71:16, 71:17,
72:1, 73:10,
90:20, 139:13,

155:2, 170:1,
173:10, 173:12,
176:14, 176:15,
177:18, 206:1,
211:15, 227:15,
247:2, 257:15,
304:16, 305:2,
305:3, 305:4,
309:3, 309:4
**table**
295:17
**tabs**
90:16, 90:19
**tag**
39:3, 39:14,
41:15, 265:17
**tailor**
74:16
**take**
14:15, 16:15,
17:19, 18:8,
18:18, 25:11,
26:20, 33:11,
37:19, 37:22,
39:20, 41:17,
58:8, 61:14,
66:16, 75:19,
77:14, 90:22,
107:5, 131:16,
143:17, 146:19,
147:5, 157:9,
158:10, 160:3,
171:15, 173:17,
208:3, 215:2,
225:21, 228:19,
251:22, 252:6,
327:15, 327:18,
330:15, 330:20,
341:5, 343:18,
344:3
**taken**
95:8, 104:3,
129:1, 333:18,
333:19, 350:4
**taking**
14:18, 14:20,
120:13, 125:8,
165:22, 206:7,

Transcript of Hearing
Conducted on October 19, 2023

409

296:5, 327:10
**talent**
31:18
**talk**
14:6, 63:5,
88:10, 88:19,
102:22, 105:11,
106:15, 106:16,
121:18, 130:17,
134:3, 151:7,
161:12, 197:15,
210:16, 212:16,
228:1, 236:2,
237:22, 274:8,
282:10, 282:11,
297:13, 311:14,
324:9
**talked**
40:11, 80:10,
99:3, 99:4,
103:5, 103:6,
109:1, 127:10,
166:6, 175:6,
175:18, 177:17,
183:22, 185:19,
185:22, 227:6,
228:3, 239:6,
240:16, 249:14
**talking**
30:1, 87:4,
89:19, 98:2,
104:21, 130:19,
130:21, 141:12,
144:2, 144:10,
178:2, 185:2,
222:5, 233:20,
240:11, 261:12,
266:16, 274:13,
275:11, 278:17,
278:22, 299:4,
299:5, 306:19,
315:10, 325:3,
341:6, 342:1,
345:22
**talks**
19:11, 19:13
**tape-recording**
351:9

**tasks**
217:10
**taught**
83:2, 310:4
**teach**
127:19
**teacher**
30:5, 87:17,
127:22, 135:13,
262:5, 262:8,
285:15, 298:17,
298:20, 300:5,
307:21, 311:2
**teacher's**
331:15
**teachers**
79:12, 79:14,
87:12, 90:1,
90:9
**teaching**
125:12, 128:11,
128:18, 129:14
**team**
80:11, 95:3,
129:2, 130:20,
130:22, 196:7,
231:15, 272:7,
272:16, 285:22,
288:5
**technically**
92:12
**teenage**
298:22
**teenager**
317:2
**tell**
7:5, 56:2,
57:17, 63:9,
74:15, 78:8,
99:7, 105:14,
105:17, 105:20,
108:7, 121:4,
150:10, 163:4,
164:17, 176:12,
184:15, 200:9,
203:15, 203:17,
203:21, 227:13,
231:21, 255:15,

265:4, 265:9,
277:11, 285:19,
299:10, 323:22,
326:8, 338:19,
338:20, 339:2,
340:10, 341:2,
343:6, 344:11,
344:12
**telling**
83:20, 132:6,
158:5, 264:15,
265:7, 311:17
**tells**
39:6, 39:16,
287:1
**temporarily**
51:22
**ten**
18:4, 18:5,
95:10, 119:7,
293:15, 336:18
**tenure**
278:5, 279:7
**terminable**
302:7
**termination**
72:13, 148:15,
302:3, 343:9
**terms**
15:20, 23:12,
24:15, 36:12,
36:14, 50:5,
77:4, 125:11,
129:14, 142:19,
158:16, 162:9,
190:10, 246:3,
269:10, 289:18,
322:18
**test**
242:10
**testified**
93:18, 99:4,
170:20, 171:3,
177:5, 177:8,
184:6, 214:6,
229:18, 269:14,
328:15
**testify**
59:10, 64:9,

115:12, 118:4,
119:11, 155:15,
160:13, 167:20,
170:15, 171:1,
196:15, 237:17,
302:9, 303:5,
303:15, 313:21
**testifying**
104:15, 115:13,
157:1, 181:11,
198:9, 208:12,
208:17, 220:7,
220:8, 333:1
**testimony**
28:21, 56:17,
63:22, 64:21,
68:1, 82:20,
105:3, 110:3,
112:18, 115:6,
115:19, 116:2,
118:3, 118:9,
131:20, 139:19,
155:16, 158:6,
159:8, 159:19,
171:2, 171:11,
176:21, 177:15,
178:1, 178:5,
187:1, 191:1,
192:7, 213:5,
228:5, 237:2,
237:3, 237:9,
242:19, 245:15,
247:22, 248:2,
250:4, 262:12,
269:3, 272:22,
276:13, 276:14,
279:11, 289:19,
289:20, 318:14,
324:19, 329:7,
331:9, 332:13,
335:5, 349:2
**th**
9:10, 9:12,
10:11, 10:20,
12:12, 12:20,
12:21, 13:21,
14:1, 20:11,
20:14, 21:2,

Day 000956

Transcript of Hearing
Conducted on October 19, 2023

410

21:16, 22:1,
22:3, 22:11,
22:12, 23:1,
23:7, 24:1,
24:2, 24:10,
24:12, 24:18,
24:19, 24:20,
29:21, 31:5,
33:18, 36:15,
37:7, 38:8,
40:18, 46:14,
47:4, 47:15,
49:13, 49:17,
49:22, 50:1,
50:2, 50:11,
50:12, 52:6,
54:5, 54:6,
56:10, 56:14,
56:16, 56:19,
57:5, 57:8,
57:15, 58:14,
58:16, 58:17,
58:18, 58:19,
58:20, 65:13,
71:5, 71:22,
72:2, 72:10,
162:3, 247:5,
247:8, 247:17,
261:1, 261:21,
271:21, 283:10,
324:13, 331:12,
348:18, 348:21
**thank**
7:10, 7:12,
7:13, 15:6,
22:6, 25:22,
32:9, 50:18,
67:8, 67:10,
71:2, 75:14,
75:20, 76:7,
84:13, 84:19,
84:20, 92:3,
96:18, 100:5,
112:1, 112:2,
112:14, 112:19,
112:20, 113:1,
113:3, 113:4,
118:14, 121:5,

121:13, 122:17,
126:14, 129:8,
130:10, 132:7,
132:17, 132:19,
133:6, 136:1,
139:21, 140:16,
142:13, 143:11,
144:19, 145:3,
154:19, 160:20,
162:21, 164:17,
168:3, 171:12,
171:17, 179:20,
181:22, 183:10,
183:20, 184:2,
194:1, 213:20,
213:21, 214:1,
214:8, 214:9,
214:11, 215:9,
216:2, 222:13,
230:15, 234:21,
238:20, 239:9,
240:8, 240:11,
243:3, 251:18,
252:8, 265:6,
269:19, 280:8,
290:11, 321:6,
321:21, 321:22,
322:1, 322:12,
322:13, 322:16,
326:10
**thanking**
92:13
**thankless**
133:21
**theme**
169:14
**themselves**
86:7, 99:21
**theory**
37:6, 37:7
**thereafter**
336:19, 341:16,
350:7
**therefore**
72:21, 160:4,
160:8, 229:18,
230:17, 249:3,
333:20, 338:19

**they'd**
116:11, 200:9
**thick**
346:7
**thing**
57:18, 69:7,
77:13, 83:6,
88:6, 118:9,
160:4, 166:17,
193:13, 219:15,
234:8, 245:20,
259:5, 298:22,
344:11
**things**
19:9, 32:12,
43:18, 60:5,
69:8, 122:7,
144:21, 190:13,
193:1, 199:10,
243:6, 245:3,
250:15, 268:13,
277:18, 278:8,
279:2, 296:5,
297:21, 301:7,
305:22, 324:11,
325:3, 325:21,
344:20, 347:13
**thinking**
342:14
**thinks**
68:5
**third**
14:4, 71:15,
77:13
**thomas**
2:15, 6:1
**thorough**
293:18, 294:2
**thought**
65:7, 68:21,
69:6, 110:13,
179:6, 190:20,
191:10, 235:4,
239:9, 272:14,
274:7, 277:11,
294:1, 297:13,
325:5, 330:4,
330:8, 330:11,

342:4, 342:10
**thoughts**
161:7, 241:2
**thread**
92:14
**three**
19:4, 19:5,
20:15, 22:5,
37:13, 65:11,
76:12, 81:2,
135:11, 149:20,
150:1, 219:16,
290:6, 312:1
**through**
11:8, 29:1,
38:7, 38:12,
54:9, 69:3,
74:19, 90:22,
91:11, 99:3,
122:7, 130:16,
145:6, 159:18,
165:10, 166:12,
170:11, 173:19,
174:12, 176:17,
176:20, 178:1,
180:4, 203:3,
218:7, 218:11,
221:15, 223:1,
223:2, 226:15,
226:16, 227:16,
227:20, 230:19,
233:15, 237:8,
240:16, 240:22,
253:10, 253:16,
261:12, 261:15,
265:5, 267:15,
286:13, 286:14,
289:22, 300:10,
326:14, 326:15,
327:5, 327:6,
328:1, 328:5,
328:8, 328:9,
328:11, 328:12,
330:14, 331:13,
334:7, 340:15,
341:8, 342:22,
343:3, 343:4,
347:9

Day 000957

Transcript of Hearing
Conducted on October 19, 2023

411

**throughout**
46:20, 55:21, 86:20
**thrown**
63:18, 339:17
**thursday**
100:16, 101:15, 336:6, 336:10, 336:21, 337:14, 337:15, 340:20, 342:12, 342:16, 344:10, 345:20, 348:16, 348:18
**tied**
76:13
**ties**
14:2
**tight**
29:3
**tightly**
29:16, 31:13, 31:14
**time**
11:21, 14:15, 14:19, 17:16, 25:20, 29:10, 32:5, 32:7, 36:15, 37:10, 39:2, 41:6, 43:3, 43:21, 44:1, 45:4, 45:7, 47:5, 47:12, 48:12, 51:5, 54:9, 54:22, 55:19, 56:5, 58:22, 76:1, 76:4, 79:20, 82:19, 83:8, 88:3, 92:21, 98:5, 98:13, 100:5, 103:1, 103:20, 110:13, 114:19, 116:21, 119:15, 125:21, 128:5, 131:15, 136:20, 136:21, 140:6, 144:19, 145:15,

150:7, 153:2, 159:3, 161:11, 165:5, 166:13, 167:12, 167:17, 173:17, 184:3, 186:1, 186:20, 194:20, 197:1, 197:2, 210:8, 210:10, 210:19, 210:22, 212:7, 212:11, 215:3, 217:13, 219:1, 219:2, 219:9, 221:6, 223:21, 225:8, 227:22, 235:10, 259:10, 260:16, 260:17, 262:8, 275:16, 275:18, 276:8, 277:17, 279:20, 285:16, 286:1, 313:10, 322:4, 323:11, 328:4, 328:12, 341:11
**timeframe**
37:9, 54:5
**timeline**
29:4, 30:7, 40:10, 48:2, 147:13, 175:17, 175:19
**timelines**
48:16
**timeliness**
27:6, 47:7
**timely**
21:21, 53:16
**times**
29:6, 88:7, 98:11, 130:16, 203:14, 204:7, 219:5, 219:16, 228:5, 241:21, 277:20, 285:7
**timing**
345:5
**title**
4:5, 18:13,

18:14, 18:15, 19:3, 19:8, 19:9, 19:10, 20:20, 21:6, 21:7, 30:3, 31:8, 31:15, 31:20, 32:17, 32:20, 32:22, 33:10, 34:3, 34:6, 35:1, 35:7, 35:12, 35:14, 35:15, 35:17, 35:18, 36:10, 41:14, 44:4, 48:18, 50:20, 51:2, 54:4, 58:1, 59:5, 59:6, 59:7, 59:11, 59:12, 62:1, 62:6, 66:4, 66:5, 66:6, 216:14, 263:3, 267:13
**today**
7:21, 19:2, 23:16, 35:21, 47:19, 59:22, 93:4, 104:15, 122:20, 140:3, 140:6, 153:17, 153:19, 153:20, 161:2, 161:12, 183:22, 212:12, 230:9, 262:17, 269:3, 310:19, 315:5, 318:14, 321:13, 331:2, 331:13, 333:3, 335:18, 336:4, 343:22
**today's**
297:9
**together**
40:22, 41:8, 52:4, 52:5, 131:2, 149:6, 184:12, 185:21,

186:2, 187:16, 224:6, 225:5, 232:7, 232:9, 295:1, 315:19
**told**
79:17, 105:10, 130:1, 156:10, 208:21, 210:22, 211:2, 272:6, 272:15, 273:9, 277:3, 295:15, 314:5, 316:5
**tomorrow**
341:6
**took**
9:12, 12:19, 28:20, 81:19, 95:9, 104:6, 238:1, 269:21, 270:14, 271:6, 286:16
**top**
44:13, 61:19, 71:16, 178:11, 209:7, 229:1, 240:18, 285:9, 317:9
**topic**
200:15
**topics**
122:21
**total**
95:12
**totally**
69:4, 318:16
**touch**
147:15
**toward**
298:8
**towards**
103:2, 243:12, 244:22, 245:18, 249:16
**toys**
198:2, 290:19
**tr**
76:19
**track**
86:19, 89:2

Transcript of Hearing
Conducted on October 19, 2023

412

**tracking**
89:15, 96:21,
97:18
**train**
235:4
**trained**
310:2, 313:4
**training**
244:5, 244:11,
309:22, 310:4,
310:9
**transcribe**
5:5
**transcribed**
1:22
**transcriber**
351:1, 351:2
**transcript**
40:21, 46:21,
64:11, 78:9,
264:20, 284:7,
284:9, 284:10,
284:22, 285:18,
287:8, 287:10,
288:2, 294:8,
315:3
**transcription**
351:9
**transcriptionist**
350:8
**transcripts**
253:2, 253:6,
253:15, 253:16,
253:19, 253:22,
286:17, 310:20,
315:4
**treat**
67:19
**treated**
40:1
**trial**
26:14, 116:12,
116:13, 119:5,
167:15
**tribunal**
26:19
**tried**
44:5

**triggered**
9:1
**tripped**
192:21
**true**
29:8, 118:16,
119:2, 310:3,
350:10, 351:8
**trustworthy**
164:9, 164:10,
164:11
**truth**
311:17, 329:1
**truthful**
109:19, 204:13,
204:18, 205:13,
205:16, 207:22
**try**
27:5, 45:10,
80:20, 88:20,
113:5, 126:17,
133:9, 142:7,
159:18, 168:18,
170:17, 188:21,
219:17, 238:5,
238:6, 256:7,
256:8, 285:17,
310:5, 313:5,
338:21, 340:16
**trying**
28:3, 32:12,
61:4, 95:3,
113:15, 114:4,
126:4, 137:19,
142:8, 155:18,
155:19, 158:13,
169:13, 169:16,
169:19, 194:22,
199:20, 223:22,
228:6, 235:16,
276:18, 314:19,
324:22, 325:16
**tuesday**
344:8, 345:19
**turmoil**
54:10
**turn**
61:19, 139:12,

215:22, 228:17,
247:2
**turned**
80:16
**twenty-seven**
91:6
**twice**
246:19
**two**
8:20, 8:22,
13:12, 14:9,
23:15, 23:16,
26:3, 26:5,
26:18, 45:13,
56:18, 61:14,
73:3, 73:6,
77:2, 79:6,
79:12, 80:2,
80:3, 80:4,
81:2, 81:4,
81:22, 85:10,
94:20, 99:9,
114:1, 115:21,
116:7, 127:3,
129:17, 130:12,
131:7, 133:17,
135:11, 138:1,
142:19, 156:12,
160:6, 160:9,
162:10, 166:1,
173:5, 177:17,
183:15, 184:10,
185:10, 211:12,
219:15, 226:11,
226:21, 227:3,
227:4, 227:5,
229:10, 232:20,
233:2, 241:7,
251:8, 251:17,
258:6, 268:15,
269:21, 270:10,
270:14, 282:2,
282:7, 282:19,
282:20, 290:5,
292:21, 296:5,
300:21, 303:21,
304:16, 308:6,
311:18, 324:4,

329:21, 331:11,
333:17, 346:7,
346:10
**two-page**
139:5, 142:2
**type**
323:19
**types**
97:15, 137:8,
157:2, 264:6
**typewriting**
350:7
**typically**
40:4, 60:15,
130:6, 218:17,
219:12, 220:3,
220:6, 223:16,
236:3, 285:13,
287:6

**U**

**uh**
103:13, 148:4,
174:2, 177:2,
177:16, 178:14,
179:12, 179:20,
182:8, 182:12,
186:22, 194:5,
199:15, 200:16,
204:19, 208:18,
210:8, 211:12,
214:4, 214:15,
215:1, 223:10,
226:8, 227:18,
229:22, 230:15,
233:21, 234:18,
235:7, 237:21,
238:11, 242:5,
245:3, 245:11,
245:18, 247:6,
248:5, 249:3,
249:13, 255:3,
258:1, 259:17,
261:7
**uh-huh**
214:10, 266:20
**ultimate**
67:3

Transcript of Hearing
Conducted on October 19, 2023                                         413

| | | | |
|---|---|---|---|
| **ultimately**<br>161:5, 250:18,<br>275:14<br>**um**<br>172:9, 173:10,<br>176:1, 180:12,<br>181:12, 185:3,<br>197:21, 201:3,<br>212:7, 217:9,<br>217:12, 217:20,<br>218:1, 218:3,<br>218:17, 219:12,<br>220:3, 220:4,<br>221:12, 222:22,<br>223:4, 223:18,<br>224:12, 224:17,<br>226:15, 227:11,<br>227:14, 231:4,<br>231:6, 231:9,<br>231:11, 231:14,<br>232:11, 232:12,<br>232:22, 233:2,<br>233:17, 234:17,<br>236:5, 236:7,<br>240:20, 241:1,<br>241:4, 241:12,<br>241:14, 241:16,<br>243:5, 243:7,<br>243:8, 243:10,<br>243:11, 243:22,<br>245:13, 245:15,<br>245:17, 245:19,<br>246:8, 246:10,<br>246:14, 246:15,<br>247:5, 247:11,<br>247:20, 247:22,<br>250:6, 250:7,<br>250:17, 250:19,<br>250:21, 251:5,<br>251:10, 251:14,<br>252:17, 253:14,<br>254:13, 256:9,<br>257:10, 258:13,<br>260:16, 260:18,<br>262:11<br>**un**<br>37:16<br>**unauthorized**<br>98:7, 109:5, | 142:21<br>**uncharacteristic**<br>287:1<br>**uncomfortable**<br>200:8, 232:16,<br>232:20, 241:4,<br>241:19, 273:10,<br>282:11, 282:17,<br>316:15, 317:14,<br>331:21<br>**uncommon**<br>60:14<br>**under**<br>9:19, 14:15,<br>14:18, 14:20,<br>15:2, 18:20,<br>19:21, 19:22,<br>21:6, 21:7,<br>21:22, 22:20,<br>23:13, 25:3,<br>25:4, 25:20,<br>26:22, 27:1,<br>28:5, 33:10,<br>34:18, 35:6,<br>35:7, 36:3,<br>37:6, 37:7,<br>45:4, 49:18,<br>51:2, 57:16,<br>59:11, 59:14,<br>59:19, 61:15,<br>62:7, 62:11,<br>62:22, 66:3,<br>66:14, 66:17,<br>67:7, 69:11,<br>71:16, 72:1,<br>73:8, 77:4,<br>77:11, 81:11,<br>83:12, 116:9,<br>135:9, 141:17,<br>159:15, 159:16,<br>166:3, 166:14,<br>182:2, 183:14,<br>189:2, 189:8,<br>210:6, 252:18,<br>257:15, 269:22,<br>301:19, 301:20,<br>304:6, 304:11,<br>304:14, 304:15, | 307:1, 311:2,<br>311:4, 311:5,<br>311:12, 316:21,<br>323:9, 337:18,<br>337:20, 346:5,<br>351:3<br>**undergoing**<br>151:4<br>**underlined**<br>72:11<br>**underneath**<br>309:4<br>**underscore**<br>57:18<br>**understand**<br>22:20, 34:14,<br>68:22, 69:5,<br>83:14, 91:16,<br>96:13, 109:17,<br>119:12, 202:5,<br>214:22, 224:2,<br>234:11, 276:9,<br>278:21, 290:3,<br>303:13, 319:20,<br>320:21, 325:2,<br>334:2<br>**understanding**<br>59:8, 60:17,<br>188:15, 222:20,<br>234:13, 239:5,<br>256:4, 270:4,<br>297:15<br>**understood**<br>270:3, 319:19<br>**undertaken**<br>19:15, 33:2,<br>62:4<br>**undertone**<br>321:3<br>**unfair**<br>31:6<br>**unfortunately**<br>323:17, 323:18,<br>335:4<br>**unfounded**<br>14:8, 21:12,<br>22:2, 34:10,<br>42:11, 52:15, | 74:13, 80:18,<br>257:3, 257:19,<br>329:2<br>**unique**<br>128:9<br>**university**<br>139:4, 151:15<br>**unless**<br>32:7, 55:3,<br>294:8, 315:3,<br>326:3<br>**unpaid**<br>133:21<br>**unprepared**<br>66:11<br>**unpres**<br>32:17<br>**unprofessional**<br>18:10, 18:12,<br>31:20, 74:6,<br>218:2<br>**unquote**<br>63:18, 80:3<br>**unreasonable**<br>31:6, 64:1<br>**unreported**<br>311:17<br>**until**<br>20:14, 20:18,<br>21:2, 29:22,<br>30:1, 33:18,<br>37:8, 37:16,<br>39:6, 39:16,<br>42:8, 42:19,<br>42:20, 52:10,<br>58:20, 65:13,<br>65:15, 145:16,<br>153:1, 212:9,<br>215:4, 261:17,<br>264:16, 265:13,<br>282:9, 336:13,<br>337:14, 348:15,<br>348:18<br>**untoward**<br>81:13<br>**untruthful**<br>79:1, 164:19,<br>165:2, 202:18, |

Transcript of Hearing
Conducted on October 19, 2023

414

202:22, 205:5,
205:20
**upheld**
76:6
**ups**
347:5
**upset**
291:19
**upstairs**
153:22, 215:11
**use**
12:5, 198:13,
201:4, 225:2,
225:3, 226:2,
231:14, 267:18,
290:21, 298:2,
298:11, 299:1,
315:11
**using**
27:12, 28:4,
224:19, 247:20,
247:22, 274:1,
274:7, 331:15
**usually**
77:8, 134:8,
152:10, 176:12,
337:20, 347:5

**V**

**v8**
20:3
**va**
1:17, 64:10,
166:14
**vac-**
25:12
**valiant**
32:11
**valid**
11:5, 188:17,
194:7, 265:20
**validate**
182:14
**validating**
182:13, 182:15,
253:20, 254:4
**validity**
242:17

**value**
178:5
**variables**
312:20
**various**
88:18, 273:9,
273:12
**varsity**
125:20, 126:21
**vehicle**
93:8
**vehicles**
88:18, 93:2,
93:5, 99:5,
99:8, 99:15,
109:4
**verbal**
164:22, 278:4,
279:6
**verbatim**
15:14, 44:22,
62:1
**verify**
293:4
**version**
33:15, 255:13,
265:3, 266:22,
335:3, 345:16
**versus**
58:8, 200:13
**via**
47:11, 100:16,
218:20, 247:7
**victims**
219:4, 219:14,
225:22, 226:11,
226:21, 227:3,
227:5, 227:7
**video**
129:1
**view**
135:2
**violate**
65:9, 70:12
**violated**
21:8, 23:12,
54:12, 58:6,
66:13, 71:4,

267:19, 317:3
**violating**
339:15
**violation**
4:5, 18:13,
18:14, 21:12,
26:21, 31:16,
31:21, 32:18,
34:8, 59:3,
59:21, 81:10,
141:2, 148:11,
217:16, 226:3,
247:22, 263:4,
299:21, 304:3,
307:16
**violations**
18:15, 51:16,
58:1, 71:14,
303:7, 320:8,
320:20
**violative**
230:18
**vir**
59:16
**virginia**
2:9, 2:19,
15:15, 25:4,
44:10, 350:22
**virginia's**
30:3
**virtually**
15:14, 109:21
**volume**
345:21
**volumes**
346:1, 347:6
**volunteers**
287:3
**volvo**
107:6
**voracity**
109:22, 242:17
**vouch**
127:14
**vs**
5:9

**W**

**wait**
7:6, 12:22,

16:7, 38:16,
41:13, 42:14,
42:18, 52:10,
64:14, 134:15,
134:16, 186:19,
194:13, 194:17,
197:1, 207:18,
215:4, 215:14
**waited**
52:19
**waiting**
50:15, 66:21,
107:16, 107:17,
252:10
**waiver**
52:8, 150:17
**walk**
130:16, 165:10,
218:13, 230:19,
237:8, 240:15
**walking**
324:11
**walks**
252:12
**want**
7:4, 14:6,
15:21, 31:8,
41:17, 44:9,
45:10, 45:11,
46:18, 49:20,
52:16, 60:4,
61:10, 67:12,
67:15, 67:17,
75:18, 83:11,
91:13, 93:11,
106:15, 107:2,
113:5, 138:3,
139:4, 141:13,
155:1, 159:13,
170:7, 176:14,
180:14, 186:21,
213:9, 213:12,
214:2, 215:2,
223:10, 224:1,
224:13, 227:2,
227:12, 229:13,
229:21, 236:2,
237:4, 237:8,

Transcript of Hearing
Conducted on October 19, 2023

415

240:3, 240:15, 241:20, 243:13, 245:20, 246:15, 251:22, 256:1, 257:8, 258:17, 265:1, 268:11, 276:5, 282:8, 298:11, 299:1, 303:3, 303:14, 314:2, 314:3, 321:13, 321:17, 324:9, 331:9, 335:6, 335:8, 337:9, 337:17, 338:1, 338:17, 340:16, 343:6, 345:8, 345:15, 345:16, 347:4, 347:6, 347:7, 347:10, 348:6, 348:7

**wanted**
29:14, 41:15, 41:16, 61:7, 102:3, 102:22, 105:20, 121:8, 122:12, 141:7, 141:15, 223:17, 234:13, 255:9, 255:10, 276:19, 325:5, 330:19, 342:3, 346:4, 346:5

**wanting**
16:11, 201:20

**wants**
188:16

**warrant**
162:7, 163:3

**washington**
124:17

**watch**
298:10, 298:21

**way**
60:18, 64:3, 90:9, 99:3, 111:9, 120:7, 126:7, 134:9,

137:18, 147:6, 154:14, 167:16, 200:17, 214:18, 223:7, 225:10, 225:11, 244:22, 253:19, 254:3, 278:14, 286:16, 291:10, 302:1, 302:10, 306:22, 315:9, 330:6, 337:12, 337:18, 339:4, 343:6, 346:12

**ways**
64:2, 158:14, 347:16

**we'll**
7:6, 75:19, 76:5, 81:16, 86:20, 99:2, 129:3, 134:16, 134:17, 150:17, 154:1, 171:11, 215:6, 246:2, 250:2, 250:11, 252:5, 252:6, 254:18, 290:8, 343:6

**we're**
5:8, 17:18, 25:2, 26:3, 28:3, 30:1, 37:11, 52:2, 59:22, 61:15, 62:6, 65:1, 68:4, 68:5, 68:6, 70:13, 73:1, 74:16, 75:1, 76:17, 79:22, 83:20, 84:10, 104:21, 109:4, 115:4, 115:5, 123:21, 133:1, 141:12, 144:2, 150:15, 157:6, 159:20, 160:8, 167:13, 167:14, 169:16,

177:14, 181:15, 192:18, 194:11, 200:8, 222:5, 225:5, 227:14, 245:1, 248:5, 248:13, 254:1, 254:17, 271:13, 289:16, 289:21, 299:22, 301:16, 304:6, 322:5, 325:1, 325:3, 325:16, 326:3, 327:11, 334:9, 334:20, 339:3, 341:6, 345:22, 346:21

**we've**
32:16, 89:19, 106:17, 108:22, 123:12, 177:5, 177:17, 228:4, 289:20, 295:11, 311:4, 311:5, 334:6

**wear**
307:15, 308:10

**wearing**
289:12

**week**
58:7, 206:13, 206:14, 206:15, 208:6, 341:6

**weeks**
80:2, 89:11

**weigh**
82:13

**weight**
141:4, 167:22, 171:3, 177:9, 179:4

**went**
28:10, 126:1, 150:2, 172:15, 177:11, 178:1, 179:6, 240:22, 345:5, 345:10, 346:20

**weren't**
148:17, 237:19

**west**
151:20

**westlake**
2:17, 2:18

**whatever**
18:6, 50:22, 86:1, 126:3, 170:16, 239:2, 277:17, 340:22, 345:16, 345:18, 347:5, 347:13

**whatnot**
54:19

**whenever**
252:9

**whether**
12:3, 21:11, 21:18, 22:2, 23:2, 29:9, 48:17, 49:5, 52:7, 52:15, 57:19, 59:12, 60:11, 66:8, 66:19, 67:4, 76:13, 78:6, 82:13, 90:4, 90:6, 93:4, 94:3, 104:11, 106:19, 109:11, 131:18, 151:1, 155:16, 156:6, 160:15, 164:8, 164:9, 181:11, 181:16, 182:10, 182:16, 185:22, 188:20, 189:21, 190:7, 193:3, 193:16, 200:6, 200:12, 202:21, 204:13, 205:5, 205:12, 205:16, 206:15, 209:21, 210:2, 220:1, 234:14, 242:17, 242:20, 244:16, 248:8, 249:1, 253:16, 253:17, 259:9, 260:2,

Day 000962

Transcript of Hearing
Conducted on October 19, 2023

416

280:13, 280:18,
295:8, 297:4,
297:11, 298:5,
318:12, 318:19,
320:14, 320:20,
321:1, 323:2,
325:6, 331:17,
331:19, 331:21
**whichever**
239:1, 240:14
**white**
90:14, 139:9,
173:7, 211:20,
227:14, 254:9,
284:14, 284:17,
300:19
**whole**
38:9, 43:22,
53:14, 74:14,
140:22, 182:17,
193:13, 196:7,
203:2, 203:3,
238:13, 239:7,
244:22, 287:5,
288:5, 300:19,
301:4, 321:2,
345:10
**wholesale**
62:1
**wholly**
71:11
**whomever**
221:16
**whore**
190:14, 192:2,
193:4, 193:10,
197:22, 231:11,
231:16, 297:19,
306:1, 309:11
**whores**
288:16
**whorey**
288:15, 305:16
**wiley**
13:8, 18:14,
38:13, 42:13,
52:9, 59:9,
78:9, 80:13,

91:18, 91:19,
100:9, 100:13,
100:15, 101:14,
103:9, 114:3,
114:12, 178:11,
209:8, 214:15,
228:1, 228:12,
229:13, 230:15,
238:22, 243:21,
252:17, 276:13,
285:6, 287:20,
293:3, 301:22,
318:17, 320:7,
328:15, 329:7
**wiley's**
244:21
**wiley-smith**
3:14, 45:17,
46:7, 114:14,
114:16, 149:5,
216:1, 216:7,
273:8, 277:4,
321:17, 321:19,
322:1
**william**
1:14, 5:13
**willing**
64:9, 81:17,
346:16
**window**
108:12
**windows**
125:19, 232:19,
251:6, 251:10,
259:10, 260:2,
260:10, 268:21,
269:16, 275:3,
275:9, 275:12,
276:1, 277:2,
278:3, 279:5,
279:15, 279:19,
279:22, 281:5,
282:22, 283:7,
293:20
**winning**
125:22
**winter**
314:20

**wise**
175:17, 296:9
**wish**
76:1, 290:7,
343:20
**wishes**
60:13
**withdraw**
269:9, 314:4,
327:3, 333:2
**withhold**
180:19
**within**
19:17, 20:2,
20:20, 21:13,
23:5, 24:2,
24:6, 24:7,
24:8, 24:9,
24:17, 26:18,
28:11, 30:5,
30:11, 30:13,
33:4, 33:9,
33:13, 37:2,
37:4, 40:17,
42:6, 48:1,
48:2, 48:10,
50:21, 50:22,
51:5, 51:8,
51:14, 52:17,
52:18, 53:10,
53:12, 53:20,
54:6, 58:3,
62:4, 62:9,
63:1, 63:13,
63:19, 65:16,
68:4, 76:19,
80:2, 116:18,
118:4, 156:11,
173:12, 175:15,
266:6, 268:1,
268:8, 268:14,
268:16, 268:22,
269:21, 337:3,
345:15
**without**
13:13, 17:6,
26:8, 36:6,
43:3, 43:10,

43:13, 44:17,
48:8, 49:3,
63:21, 112:21,
114:1, 162:16,
223:20, 224:4,
238:18, 246:10,
246:22, 254:14,
258:7, 258:10,
258:22, 262:10,
263:18, 264:12,
307:15, 315:12,
345:7
**withstanding**
158:20
**witness**
84:12, 84:18,
90:5, 90:8,
91:16, 106:20,
112:5, 112:7,
112:18, 117:1,
117:16, 117:19,
121:12, 132:22,
134:14, 138:19,
143:19, 144:7,
146:6, 154:18,
154:21, 155:14,
157:18, 163:20,
165:20, 165:21,
167:1, 170:17,
170:18, 170:19,
170:22, 171:9,
183:2, 186:4,
194:12, 196:15,
198:8, 214:3,
214:12, 216:1,
226:20, 231:17,
237:22, 239:12,
242:6, 242:12,
250:7, 250:14,
251:5, 254:17,
264:4, 264:12,
300:12, 300:21,
304:22, 305:3,
305:5, 309:5,
319:20, 325:8,
333:2, 333:3,
333:11
**witness's**
159:8

Transcript of Hearing
Conducted on October 19, 2023                                417

| | | | |
|---|---|---|---|
| **witness(es** 350:4 **witnessed** 272:8 **witnesses** 67:14, 67:20, 67:22, 68:5, 68:7, 83:13, 83:15, 109:2, 113:9, 113:12, 113:18, 113:22, 118:2, 156:9, 157:1, 164:12, 221:14, 226:1, 226:12, 226:14, 226:17, 226:18, 226:22, 227:3, 241:8, 248:1, 249:22, 250:6, 251:15, 269:2, 272:4, 322:5, 323:3, 326:8, 332:22 **woman** 165:19, 165:20, 166:22 **women** 80:5 **word** 65:2, 118:8, 169:14, 238:18, 337:9 **words** 72:9, 182:6, 183:15, 207:8, 209:14, 234:16, 245:19, 267:9, 309:2, 309:13, 315:11, 315:15 **work** 39:8, 97:1, 136:11, 168:18, 176:12, 216:21, 218:22, 219:17, 220:2, 220:15, 271:1 **worked** 54:4, 133:21, | 200:17 **worker** 218:19, 218:20, 224:8, 245:14 **workers** 223:19 **working** 19:17, 19:19, 23:6, 28:12, 29:3, 29:16, 30:11, 30:13, 33:4, 39:3, 40:10, 62:5, 63:14, 63:19, 64:5, 85:21, 220:13, 260:17, 261:8, 331:8 **workplace** 6:16, 262:20 **works** 219:13 **worry** 127:13 **worse** 215:20 **wouldn't** 43:4, 111:16, 177:3, 271:17, 271:20, 310:8, 310:22, 336:15, 340:2 **wrap** 46:18 **wrestling** 133:18 **write** 42:8, 151:12, 151:17, 152:10, 152:14, 167:2, 167:10, 168:11, 176:3, 186:13, 187:18, 191:16, 197:10, 200:10, 207:16, 207:20, 293:3, 324:3 **writes** 142:2, 197:21 **writing** 135:12, 176:5, | 187:21, 235:10, 294:17, 295:4 **written** 64:4, 142:4, 151:14, 152:5, 152:20, 168:9, 206:7, 218:16, 232:3, 232:11, 232:12, 233:7, 233:8, 233:9, 233:12, 233:17, 234:2, 234:6, 234:15, 235:11, 236:12, 237:11, 243:8, 245:16, 254:11, 295:11, 295:12, 308:18, 308:20, 308:22 **wrong** 36:12, 53:8, 54:18, 97:16, 227:12, 317:18 **wrote** 77:10, 81:5, 130:13, 139:3, 140:15, 140:19, 170:20, 191:17, 191:19, 193:7, 193:8, 200:11, 234:9, 256:11, 294:11, 294:22, 295:22 <br> **Y** <br> **yeah** 8:2, 25:21, 28:3, 32:21, 41:19, 41:21, 44:12, 55:10, 56:22, 69:13, 75:21, 86:17, 92:11, 94:14, 94:15, 99:14, 101:5, 101:22, 102:13, 103:5, 103:6, 103:7, 103:8, 105:8, 110:20, 111:15, | 118:20, 119:1, 122:11, 122:14, 126:14, 126:18, 129:3, 148:4, 150:22, 152:7, 154:9, 180:10, 183:9, 186:5, 212:1, 214:4, 235:21, 237:16, 239:11, 240:2, 291:16, 321:11, 324:21, 332:15, 336:19, 337:11, 341:21, 342:4, 342:9, 347:20, 348:2, 348:8, 348:11, 348:14, 348:17, 348:21 **year** 8:22, 24:19, 86:18, 86:20, 87:19, 87:20, 100:18, 123:22, 124:1, 124:3, 124:5, 124:12, 124:16, 124:18, 134:7, 149:20, 150:1, 150:3, 150:4, 150:5, 162:3, 162:4, 163:15, 163:18, 163:21, 165:7, 167:18, 203:2, 210:3, 210:11, 282:21, 314:13 **year-and-a-half** 26:15 **year-old** 311:1 **years** 8:2, 8:20, 8:22, 13:13, 14:9, 26:18, 37:13, 85:10, 85:12, 138:21, 162:2, 162:3, 216:14, 232:21, 241:7, 241:14, |

Transcript of Hearing
Conducted on October 19, 2023

418

| | | | |
|---|---|---|---|
| 251:17, 269:21, 270:10, 270:15, 275:19, 282:2, 296:5, 306:6, 311:18 | **00007** 273:6 | 197:15, 197:19 **0015** 200:21 | 309:3, 309:4, 315:21, 327:5, 328:1, 328:5, 328:8, 328:9, 335:10, 335:12, |
| **yellow** 284:13 | **00008** 278:2, 281:4, 289:5, 293:3 | **0016** 197:7 | 335:14, 335:16, 335:19, 337:3, 341:15, 343:2, |
| **yep** 6:22, 38:14, 44:14, 90:18, 119:1, 133:14, 139:14, 163:12, 330:10 | **00013** 174:7 | **0017** 206:1 | 344:2, 345:16, 351:19 |
| | **00014** 174:7 | **003** 227:20 | **100** 3:6, 236:9 |
| | **000144** 170:14 | **008** 227:21 | **11** 4:4, 13:10, 20:13, 21:17, |
| **yield** 29:12, 32:8 | **000148** 315:20 | **017** 176:19 | 31:11, 34:7, 69:11, 73:14, |
| **young** 13:9, 79:13, 82:19, 160:9, 166:1, 192:20, 195:17, 298:9, 298:14, 305:19, 306:4, 307:15, 308:14, 317:2, 324:4, 331:11 | **000149** 95:11 | **018** 23:13 | 95:10, 155:13, 162:2, 162:3, 286:14, 326:21, 327:2 |
| | **00015** 174:12 | **03** 276:17 | **1100** 2:10 |
| | **000158** 170:11 | **075** 99:10 | **115** 8:1 |
| | **00016** 174:13 | **085** 99:11 | **12** 3:21, 8:18, 13:11, 157:9, 157:10, 286:14, 308:15, 327:2 |
| | **000161** 170:12 | **088** 94:10, 94:14 | |
| **yourself** 121:16, 123:10, 182:9 | **00017** 176:17, 176:19, 180:3, 182:1, 212:21 | **1** 1 120:8 | **122** 3:8 |
| **0** | **00018** 180:3, 196:9, 196:11 | **10** 1:13, 3:18, 4:5, 17:21, 18:11, 21:3, 21:4, 23:21, 24:2, 24:4, 25:18, 27:13, 28:2, 32:15, 34:7, 50:1, 50:2, 56:15, 56:16, 58:12, 58:15, 58:17, 58:18, 58:19, 69:13, 69:14, 70:3, 74:9, 74:11, 155:9, 170:1, 173:10, 203:20, 227:15, 247:3, 252:6, 263:7, 273:4, 278:2, 287:19, | **13** 3:22, 8:19, 13:11, 42:9, 44:13, 52:19, 157:9, 157:13, 260:13, 261:1, 261:6, 327:2 |
| **00** 120:8, 176:19, 200:20, 275:18, 337:21, 338:3, 342:16, 348:21 | **00019** 180:4, 183:4, 183:12, 212:22 | | **14** 3:18, 4:4, 4:7, 20:18, 21:19, 24:19, 24:20, 37:7, 50:11, 50:12, 100:16, 101:15, 101:16, 101:19, 102:7, 102:15, 254:20, |
| **000** 176:17 | **00020** 176:20, 180:4 | | |
| **0000** 227:16 | **00026** 227:17 | | |
| **00001** 211:22 | **0003** 304:15 | | |
| **000013** 173:19 | **0007** 315:21 | | |
| **00002** 212:3 | **0008** 277:8, 282:14, 287:18 | | |
| **00003** 227:16, 305:5 | **001** 140:2, 211:21, 257:15 | | |
| **00006** 228:19, 247:4 | **0013** 196:18, 197:7, | | |

Day 000965

Transcript of Hearing
Conducted on October 19, 2023

419

261:13, 261:15,
262:1, 300:7,
327:6, 328:1,
328:5, 328:11,
328:12, 330:14
**145**
3:9
**148**
315:20
**15**
4:3, 4:8, 9:2,
9:3, 9:6, 9:10,
9:12, 10:11,
10:20, 12:12,
12:20, 12:21,
13:21, 14:1,
21:2, 21:13,
21:20, 22:3,
22:14, 23:1,
24:1, 24:2,
24:6, 24:7,
24:9, 24:10,
24:11, 24:12,
24:17, 30:11,
30:13, 36:19,
37:3, 37:4,
47:7, 48:1,
50:11, 51:5,
51:14, 52:6,
57:19, 58:13,
58:14, 58:16,
59:1, 65:16,
145:6, 145:12,
145:16, 147:7,
271:21, 324:13,
331:12
**16**
4:15, 24:11,
24:14, 173:19,
300:19
**161**
3:11
**17**
4:14, 47:15,
50:2, 56:14,
58:20, 70:7,
70:22, 71:5,
72:2, 73:10,

247:5, 247:6,
261:21, 261:22,
311:1, 326:15,
328:12
**18**
4:5, 4:6, 4:12,
41:22, 58:7,
58:8, 257:6,
257:15, 304:16,
305:1, 305:2,
305:3, 305:4,
328:13, 328:14,
328:17, 328:18,
329:13
**184**
3:12
**19**
1:13, 26:22,
91:20, 283:10,
328:16, 329:14,
342:22, 343:3,
343:4, 343:7,
351:19
**1972**
9:22, 19:8
**1st**
256:22

---

**2**

**20**
4:13, 15:20,
16:14, 16:18,
17:1, 20:3,
20:18, 21:18,
23:7, 25:12,
25:15, 26:2,
27:1, 30:4,
33:18, 36:3,
43:8, 46:15,
47:4, 48:11,
66:14, 91:20,
120:11, 147:7,
150:2, 163:19,
166:14, 206:20,
209:18, 213:2,
254:10, 255:17,
328:1, 328:5,
329:14, 330:14,

343:9, 343:15,
343:16
**2000**
134:7, 142:1
**2004**
124:7
**2010**
12:15
**2011**
124:8
**2012**
124:14
**2013**
85:11, 85:16
**20148**
1:17, 2:9
**20165**
2:19
**2018**
123:21, 124:15
**2019**
85:15, 87:21,
87:22, 125:16,
163:17
**2020**
8:14, 8:16,
8:17, 20:9,
128:11, 163:17,
204:12, 205:4,
271:11, 271:17
**2021**
8:16, 9:10,
9:12, 10:11,
10:20, 12:12,
12:21, 13:21,
14:1, 128:22,
145:6, 145:12,
145:16, 163:15,
163:20, 165:7,
271:17, 271:21,
282:21, 331:13
**2022**
8:10, 8:11,
13:9, 18:7,
18:10, 18:11,
20:10, 20:11,
20:14, 20:18,
21:16, 21:18,

38:9, 40:16,
42:6, 51:17,
58:6, 64:11,
79:10, 81:22,
88:15, 92:10,
93:20, 100:16,
101:16, 101:19,
102:6, 102:7,
102:15, 129:9,
129:16, 145:7,
145:22, 147:1,
147:7, 148:16,
148:22, 163:20,
165:7, 184:7,
205:5, 206:20,
206:21, 209:18,
211:6, 212:18,
213:2, 217:20,
247:6, 247:8,
254:10, 255:17,
258:2, 259:11,
260:3, 260:10,
260:13, 261:1,
261:6, 261:12,
261:13, 261:15,
261:21, 262:1,
263:2, 271:17,
271:18, 282:21
**2023**
1:13, 9:6,
12:20, 12:21,
21:3, 24:12,
37:16, 42:8,
42:20, 47:4,
47:15, 79:8,
147:7, 148:20,
210:10, 257:1,
257:18, 324:14,
351:16
**2025**
350:18
**21**
4:7, 4:8,
12:11, 45:15,
45:22, 56:3,
167:17, 203:3,
265:5, 330:1,
330:3, 330:13,

Transcript of Hearing
Conducted on October 19, 2023

420

343:11
**21000**
1:16, 2:8
**211**
3:13
**216**
3:15
**22**
3:18, 4:11,
15:19, 20:18,
21:18, 22:13,
23:3, 37:21,
37:22, 38:4,
38:7, 38:12,
42:13, 64:12,
79:8, 100:19,
100:20, 101:15,
145:12, 146:13,
146:16, 147:7,
150:3, 157:12,
163:15, 167:17,
203:3, 206:20,
207:2, 207:5,
209:18, 209:22,
213:2, 254:10,
255:17, 264:22,
284:9, 285:5,
326:15, 327:6,
328:1, 328:2,
328:5, 328:11,
330:7, 330:11,
330:13, 330:14,
330:16
**22.1**
15:17, 19:22
**22.1300**
25:5
**220**
125:11
**23**
4:3, 4:13,
4:14, 9:2, 24:1,
24:2, 24:15,
24:17, 30:20,
36:20, 36:21,
37:5, 47:4,
47:8, 47:10,
71:9, 71:17,

88:14, 92:10,
343:13, 351:19
**24**
4:9, 38:4,
38:7, 38:12,
54:5, 54:6,
71:22, 72:1,
265:5, 342:22,
343:3, 343:14,
344:14, 346:5
**25**
58:16, 247:8,
247:17, 343:3,
343:14, 344:14,
351:16
**252**
2:10, 3:16
**26**
4:11, 13:8,
20:14, 21:16,
22:11, 22:12,
38:8, 40:18,
47:10, 343:3,
343:4, 348:18,
348:21
**27**
4:13, 4:14,
24:10, 24:15,
24:16, 24:17,
29:21, 31:5,
36:15, 46:14,
47:4, 49:13,
49:17, 49:22,
50:11, 56:10,
56:19, 57:5,
57:8, 57:15,
90:20, 91:5
**28**
24:18, 65:13,
341:21, 342:5,
342:6, 342:7
**29**
33:12
**2b**
307:1

**3**

**30**
1:13, 19:17,

19:19, 20:11,
20:21, 22:1,
28:12, 29:3,
29:16, 33:4,
33:9, 33:13,
40:5, 40:8,
40:17, 42:7,
50:21, 51:1,
51:3, 52:18,
53:20, 54:6,
58:1, 58:3,
58:8, 58:17,
62:4, 62:9,
63:1, 63:14,
63:19, 64:4,
65:14, 102:14,
120:8, 266:6,
268:1, 268:8,
268:14, 268:16,
268:22, 350:18
**301**
4:15
**307**
15:17
**308**
15:19, 19:22
**31**
8:10, 8:11,
18:10, 20:9,
22:12, 40:16,
42:6, 58:6,
80:5, 81:22,
101:10, 101:18,
102:6, 102:15,
129:16, 145:6,
145:12, 145:13,
145:22, 146:13,
146:14, 157:12,
168:5, 173:3,
175:20, 183:21,
184:7, 205:5,
206:16, 206:18,
206:21, 207:2,
207:3, 207:8,
210:21, 211:4,
211:6, 212:18,
217:20, 259:10,
260:3, 261:1,

261:5, 261:6,
261:12, 261:15,
271:18, 275:7,
275:10, 275:15,
275:21, 276:2,
276:3, 276:17,
277:3, 277:13,
278:22, 279:10,
283:13
**318**
3:17
**320**
2:18
**328**
3:18
**33**
4:10, 38:1,
38:2, 38:3,
38:11, 38:12,
42:13, 42:15,
264:22, 265:6
**34**
39:1, 42:13,
42:15
**3468**
179:1
**35**
275:21
**350**
351:8
**352**
1:21
**36**
22:13
**38**
4:11
**3b**
44:15

**4**

**406**
2:20
**42**
4:12, 277:17
**46175**
2:18
**4671**
348:5

PLANET DEPOS
888.433.3767 | WWW.PLANETDEPOS.COM

Day 000967

Transcript of Hearing
Conducted on October 19, 2023

421

**47**
4:13
**493213**
1:20, 351:19
**4th**
18:11, 212:9, 263:1, 263:11

---
**5**
---

**5**
3:18, 337:21, 338:3, 342:16, 348:21
**50**
4:14, 15:20
**571**
2:10
**58**
22:13, 22:15

---
**6**
---

**60**
40:7, 40:9, 42:7, 52:18, 266:7
**64**
108:19
**66**
108:16
**68**
108:13
**69**
108:8

---
**7**
---

**70**
108:2, 300:7, 304:7
**7014**
4:10, 18:19, 18:22, 21:7, 23:15, 27:8, 27:15, 28:2, 28:3, 32:21, 35:6, 41:14, 44:4, 44:11, 51:2, 59:14, 61:17, 61:19,

62:2, 62:7, 70:12, 71:4, 81:11, 217:2, 223:4, 230:19, 267:4, 267:12, 300:6, 300:7, 303:20, 304:7, 304:11
**7018**
4:9, 23:15, 27:22, 30:2, 32:19, 35:6, 41:14, 44:4, 81:11, 135:9, 266:18, 303:20, 304:9
**703**
2:20
**708**
23:13
**71**
107:5, 110:16
**714**
66:5, 66:6, 66:7
**72**
110:10, 111:19
**7420**
320:12
**75**
93:12, 99:2, 216:22
**7516**
217:1
**7560**
70:12, 71:4, 230:19, 299:6, 300:6, 304:4, 304:6, 304:8, 304:12, 304:14, 320:12
**7616**
2:20
**7727988**
350:17

---
**8**
---

**8**
275:21, 277:17

**8-3**
126:1
**80**
16:14, 16:18, 17:1, 20:3, 25:12, 25:15, 26:2, 27:1, 36:3, 43:8, 48:11, 66:15
**800**
91:6
**84**
93:15
**85**
3:5, 91:10, 91:11
**89**
91:11, 92:4, 99:3
**8th**
30:1, 30:19, 36:16, 36:18, 36:19, 46:4, 47:6, 47:8, 49:15, 55:11, 56:2, 56:12
**8vac**
66:14
**8vac-**
15:20, 16:18, 17:1, 20:3, 26:2, 27:1, 36:3, 43:8, 48:11

---
**9**
---

**9**
275:18
**90**
15:20, 16:14, 16:18, 17:1, 20:3, 25:12, 25:15, 26:2, 27:1, 30:4, 36:3, 40:4, 40:8, 40:10, 40:20, 42:7, 43:8, 48:11,

65:13, 66:15, 125:10, 166:14, 266:9

---
**"**
---

**"fuck**
287:12